## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE  and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated,<br><br>                            Plaintiffs,<br><br>          v.<br><br>ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI,<br><br>                          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Kevin Burbige and Ziyang Nie ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by ATI Physical Therapy, Inc. ("ATI" or the "Company") f/k/a Fortress Value Acquisition Corp. II ("FVAC") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by ATI; and (c) review of other publicly available information concerning ATI.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that: (a) purchased or otherwise acquired ATI securities between April 1, 2021 and July 23, 2021, inclusive (the "Class Period"); and/or (b) held FVAC Class A common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting. Plaintiffs pursue claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      FVAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

3.      ATI is an outpatient physical therapy company. It owns and operates nearly 900 physical therapy clinics across 25 states.

4.      On June 17, 2021, ATI became public via a business combination with FVAC ("Business Combination").

5.      On July 26, 2021, before the market opened, ATI reported its financial results for second quarter 2021, the period in which the Business Combination was completed. Among other

things, ATI reported that "the acceleration of attrition among [its] therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our labor costs." Though ATI was implementing certain remedial actions, the Company reduced its fiscal 2021 forecast due to the foregoing factors.

6.      On this news, the Company's share price fell $3.62, or 43%, to close at $4.72 per share on July 26, 2021, on unusually heavy trading volume. The share price continued to decline the next trading session by as much as 19%.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; (4) that, as a result of the labor shortage, the Company would open fewer new clinics; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b), 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78n(a) and 78t(a)), and Rules 10b-5 and 14a-4 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5 and 17 C.F.R. § 240.14a-4).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Kevin Burbige, as set forth in the accompanying certification, incorporated by reference herein, purchased ATI securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Plaintiff Ziyang Nie, as set forth in the accompanying certification, incorporated by reference herein, held FVAC Class A common stock as of May 24, 2021, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant ATI is incorporated under the laws of Delaware with its principal executive offices located in Bolingbrook, Illinois. ATI's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ATIP." Its redeemable warrants trade on the

NYSE under the symbol "ATIP WS." Each whole redeemable warrant is exercisable for one share of Class A common stock at an exercise price of $11.50 per share.

16.    Defendant Labeed Diab ("Diab") was the Company's Chief Executive Officer ("CEO") at all relevant times.

17.    Defendant Joseph Jordan ("Jordan") was the Company's Chief Financial Officer at all relevant times.

18.    Defendant Andrew A. McKnight ("McKnight") was the CEO of FVAC before it completed the Business Combination with ATI. He has also served as a director of ATI since the Business Combination. He solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the definitive proxy statement dated May 14, 2021 (the "Proxy Statement").

19.    Defendants Diab, Jordan, and McKnight (collectively the "ATI Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The ATI Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the ATI Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The ATI Individual Defendants are liable for the false statements pleaded herein.

20.     Defendant Joshua A. Pack ("Pack") was the Chairman of the Board of Directors of FVAC. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.

21.     Defendant Marc Furstein ("Furstein") was a director of FVAC at all relevant times. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.

22.     Defendant Leslee Cowen ("Cowen") was a director of FVAC at all relevant times. She solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.

23.     Defendant Aaron F. Hood ("Hood") was a director of FVAC at all relevant times. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.

24.     Defendant Carmen A. Policy ("Policy") was a director of FVAC at all relevant times. She solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.

25.     Defendant Rakefet Russak-Aminoach ("Russak-Aminoach") was a director of FVAC at all relevant times. She solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.

26.     Defendant Sunil Gulati ("Gulati") was a director of FVAC at all relevant times. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement.

27.     Defendants Pack, Furstein, Cowen, Hood, Policy, Russak-Aminoach, and Gulati are collectively referred to herein as "FVAC Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

28.     FVAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses. It completed its initial public offering (the "IPO") on August 14, 2020, selling 34.5 million units at $10.00 per unit. Each unit consists of one share of FVAC Class A common stock and one-fifth of one redeemable public warrant of FVAC, whereby each public warrant entitles the holder to purchase one share of FVAC Class A common stock at an exercise price of $11.50 per share.

29.     FVAC had considerable discretion in identifying and consummating a business combination, subject to three general limitations imposed by the Amended and Restated Certificate of Incorporation:

- *First*, FVAC must acquire a target business with a fair market value equal to at least 80% of the net assets held in the Trust Account following the IPO (net of amounts disbursed for working capital and excluding the amount of any deferred underwriting discount).

- *Second*, FVAC only had 24 months from the closing date of the IPO to complete a business combination, or else its corporate existence would cease, except for purposes of winding up its affairs and liquidating.  As such, FVAC was required to hold the approximately $345 million of proceeds from its IPO in a trust account, which were to be released only upon the consummation of a business combination or liquidation.

- *Third*, if FVAC's stockholders approved an amendment to the Certificate of Incorporation that would affect the substance or timing of FVAC's obligation to

redeem 100% of the public shares if FVAC did not complete a business combination on time, FVAC was required to provide the holders of its public shares with the opportunity to redeem all or a portion of their public shares upon approval of any such amendment.

30.     ATI is an outpatient physical therapy company. It owns and operates nearly 900 physical therapy clinics across 25 states.

31.     On February 21, 2021, FVAC announced its agreement to combine with Wilco Holdco, Inc.

32.     On June 17, 2021, ATI became public via a Business Combination with FVAC.

**Materially False and Misleading**

**Statements Issued During the Class Period**

33.     The Class Period begins on April 1, 2021. On that day, FVAC filed additional proxy materials with the SEC with PowerPoint slides for ATI's Analyst Day presentation. Regarding labor costs, the Company stated that in fiscal 2020, it made "[c]ontinued improvements in clinical labor management model to allow providers to practice at the top of their respective licenses" and ATI "Accelerated Enhancements During COVID," including "Accelerated [its] staffing strategy." It also claimed that "ATI is the Employer of Choice for PT Clinicians," touting its retention of physical therapists:



34.     On May 14, 2021, FVAC filed its definitive proxy statement on Schedule 14A, soliciting votes in favor of the Business Combination of FVAC and Wilco Holdco (the "Proxy Statement"). The Proxy Statement purported to warn that the Company's labor costs "*may* increase," stating in relevant part:

> ***The Company's facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability.***
>
> The Company's ability to attract and retain clinical talent is critical to its ability to provide high quality care to patients and successfully cultivate and maintain strong relationships in the communities it serves. If the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, management and support personnel, its business may decrease and its revenues may decline. The Company competes with other healthcare providers in recruiting and retaining qualified management, physical therapists and other clinical staff and

support personnel responsible for the daily operations of its business, financial condition and results of operations.

The Company may also experience increases in its labor costs, primarily due to higher wages and greater benefits required to attract and retain qualified healthcare personnel, and such increases may adversely affect the Company's profitability. Furthermore, while the Company attempts to manage overall labor costs in the most efficient way, its efforts to manage them may have limited effectiveness and may lead to increased turnover and other challenges.

35. On May 20, 2021, ATI issued a press release announcing its first quarter 2021 financial results, stating in relevant part:

"... While certain geographies currently exceed 100% of pre-COVID visit volumes (2019 comparative), others are still in process of recovering. Across our portfolio, visit volumes were in the high 70%'s of pre-COVID levels as we entered 2021, increasing to approximately 83% as we exited April 2021," said Labeed Diab, Chief Executive Officer of ATI Physical Therapy. . . .

"As we look ahead to the remainder of 2021, we are focused on accelerating hiring to serve outsized demand in specific markets, continuing our growth with a fast pace of new clinic openings and new potential strategic partnerships, and maintaining a high NPS score above 75," concluded Mr. Diab

"As visits increased each month, *we were able to better leverage fixed costs and improve labor productivity. As volume continues to recover, we are excited to fully utilize our platform and deliver margin improvements*," said Joe Jordan, Chief Financial Officer of ATI Physical Therapy.

36. On May 20, 2021, FVAC filed additional proxy materials with the SEC with ATI's financial results for first quarter 2021. It stated that, in response to reduced visit volumes during the coronavirus pandemic, "the Company implemented measures to reduce labor-related costs in relation to the reduced visit volumes through reduced working schedules, voluntary and involuntary furloughs and headcount reductions." However, beginning first quarter 2021, visit volumes rebounded and "the Company continues to match its clinical staffing levels accordingly." As a result, "[a]s of March 31, 2021, no Company employees remained on furlough."

37. On May 24, 2021, FVAC filed additional proxy materials with the SEC with PowerPoint slides that ATI presented at a healthcare conference in May 2021. Among other things,

the presentation stated that the "Key Focus for Remainder of 2021" included "accelerate[d] hiring to serve outsized demand" and "continue to grow through new clinic openings." It also included a slide touting a "Clear Path to $200+ million of [Adjusted] EBITDA and Beyond" that stated the Company would achieve "significant labor savings through more productive staffing model." Specifically, it stated:



38.     The same May 2021 presentation further stated the Company's purported visibility into 2022 expected EBITDA, including based on "clinic staffing optimization." Specifically, it stated:

39. The above statements identified in ¶¶ 33-38 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; (4) that, as a result of the labor shortage, the Company would open fewer new clinics; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Business Combination is Completed**

40.     On June 17, 2021, ATI announced that it had completed the Business Combination

in a press release that stated, in relevant part:

> ATI Physical Therapy, Inc. ("ATI" or the "Company"), a portfolio company of
> Advent International ("Advent") and one of the nation's largest providers of
> outpatient physical therapy services, has completed its business combination with
> Fortress Value Acquisition Corp. II ("FVAC II") (NYSE: FAII), a special purpose
> acquisition company.
>
> The transaction, which was approved on June 15, 2021 by FVAC II's shareholders,
> further positions ATI to lead the rapidly growing physical therapy industry, with an
> emphasis on delivering predictable outcomes for patients with musculoskeletal
> (MSK) issues. Beginning June 17, 2021, the Company will operate as "ATI
> Physical Therapy, Inc.," and ATI's shares of Class A common stock will trade on
> the New York Stock Exchange ("NYSE") under the symbol "ATIP."

**Disclosures at the End of the Class Period**

41.     On July 26, 2021, before the market opened, ATI reported its financial results for

second quarter 2021, the period in which the Business Combination was completed. Among other

things, ATI reported that "the acceleration of attrition among [its] therapists in the second quarter

and continuing into the third quarter, combined with the intensifying competition for clinicians in

the labor market, prevented us from being able to meet the demand we have and increased our

labor costs." Though ATI was implementing certain remedial actions, the Company reduced its

fiscal 2021 forecast due to the foregoing factors. Specifically, ATI issued a press release that stated,

in relevant part:

> "I would like to thank our nationwide team for their dedication, service and tireless
> effort providing the highest quality clinical care to our patients that makes ATI a
> leader in the large and growing physical therapy industry," said Labeed Diab, Chief
> Executive Officer. "***We are seeing growing demand for ATI's services, and visit
> volume increased during the second quarter. However, the acceleration of
> attrition among our therapists in the second quarter and continuing into the third
> quarter, combined with the intensifying competition for clinicians in the labor
> market, prevented us from being able to meet the demand we have and increased
> our expectations for labor costs.*** We are implementing a range of actions related
> to compensation, staffing levels and other items to retain and attract therapists

across our platform to meet our currently underserved patient demand. ***We expect therapist headcount to be below previously anticipated levels for 2021 which, combined with elevated costs for therapists and an unfavorable revenue mix, has caused us to reduce our forecast for 2021.*** We continue to have confidence in the underlying fundamentals driving our business and our ability to leverage our strong position in the market to drive growth and value over time."

*  *  *

## 2021 Earnings Forecast

For full year 2021, ATI is now projecting revenue to be in the range of $640 million to $670 million and Adjusted EBITDA to be in the range of $60 million to $70 million, down from $731 million and $119 million, respectively. ATI does not intend to provide revenue guidance as a future guidance metric. The revised expectations reflect the impact of the following developments which are partially offset by continued strong demand for ATI's services:

- The acceleration of attrition in the second quarter and continuing into the third quarter caused, in part, by changes made during the COVID-19 pandemic related to compensation, staffing levels and support for clinicians. ATI has taken swift actions to offset those changes, but the company expects the impact of attrition in the second and third quarters will impact overall profitability for the year.

- Labor market dynamics that increased competition for the available physical therapy providers in the workforce, creating wage inflation and elevated employee attrition at ATI, negatively affecting our ability to capitalize on continued customer demand.

- Decrease in rate per visit primarily driven by continuing less favorable payor and state mix when compared to pre-pandemic profile, with general shift from workers compensation and auto personal injury to commercial and government, and further impacted by mix-shift out of higher reimbursement states.

***Largely in response to the accelerated attrition, ATI is lowering its estimate for new clinic openings, (i.e., de novo and acqui-novo clinics), to be in the range of 55 to 65 clinics from 90 clinics.*** Our ability to achieve our revised forecast for the remainder of 2021 depends upon a number of factors, including the success of a number of steps being taken to significantly reduce attrition of physical therapists and significant hiring of physical therapists

The Company has determined that the revision to its 2021 forecast constitutes an interim triggering event that requires further analysis with respect to potential impairment to goodwill and trade name intangible assets. ***Accordingly, the Company is currently performing interim quantitative impairment testing during***

13

*the third quarter of 2021*. If it is determined that the fair value amounts are below the respective carrying amounts, the Company will record an impairment charge which could be material.

42.     On this news, the Company's share price fell $3.62, or 43%, to close at $4.72 per share on July 26, 2021, on unusually heavy trading volume. The share price continued to decline the next trading session by as much as 19%. As a result, FVAC investors who could have voted against the Merger and redeemed their shares at $10.00 per share suffered a loss of $5.28 per share.

## CLASS ACTION ALLEGATIONS

43.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that: (a) purchased or otherwise acquired ATI securities during the Class Period, and who were damaged thereby; and/or (b) held FVAC Class A common stock as of May 24, 2021, eligible to vote at FVAC's June 15, 2021 special meeting (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ATI's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class. Millions of ATI shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by ATI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of ATI; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

49.     The market for ATI's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, ATI's securities traded at artificially inflated prices during the Class Period.  Plaintiffs

and other members of the Class purchased or otherwise acquired ATI's securities relying upon the integrity of the market price of the Company's securities and market information relating to ATI, and have been damaged thereby.

50.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ATI's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about ATI's business, operations, and prospects as alleged herein.

51.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ATI's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

52.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

53. During the Class Period, Plaintiffs and the Class purchased ATI's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

54. In addition to the decline in ATI securities caused by the aforementioned corrective disclosure, FVAC shareholders who were eligible to vote on the Business Combination and/or exercise their conversion rights have also been damaged as a result of the materially false and/or misleading statements about ATI's operations and financial results. Had the true financial condition and operations of ATI been known, members of the Class eligible to vote on the Business Combination would have voted against the Business Combination and/or exercised their conversion rights and received $10.00 in cash per share of FVAC stock.

55. It was foreseeable to ATI, the ATI Individual Defendants, and the FVAC Defendants that the false and/or misleading statements about, among others, ATI's financial results, condition and value: (i) would cause those members of the Class that would have received $10.00 in cash per share of FVAC stock upon exercising conversion rights and/or upon liquidation to keep their stock in lieu of receiving $10.00 in cash per share; and (ii) eventually the disclosure of the information about ATI's financial condition and operations resulted in those members of the Class owning shares worth substantially less than $10.00 per share.

56. As a result, ATI, the ATI Individual Defendants, and the FVAC Defendants' conduct proximately caused foreseeable losses to those Plaintiffs and members of the Class

## SCIENTER ALLEGATIONS

57. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the ATI Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding ATI, their control over, and/or receipt and/or modification of ATI's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ATI, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

58.     The market for ATI's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, ATI's securities traded at artificially inflated prices during the Class Period. On June 16, 2021, the Company's share price closed at a Class Period high of $10.28 per share. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of ATI's securities and market information relating to ATI, and have been damaged thereby.

59.     During the Class Period, the artificial inflation of ATI's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ATI's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of ATI and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all

relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

60.     At all relevant times, the market for ATI's securities was an efficient market for the following reasons, among others:

(a)     ATI shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, ATI filed periodic public reports with the SEC and/or the NYSE;

(c)     ATI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     ATI was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

61.     As a result of the foregoing, the market for ATI's securities promptly digested current information regarding ATI from all publicly available sources and reflected such information in ATI's share price. Under these circumstances, all purchasers of ATI's securities during the Class Period suffered similar injury through their purchase of ATI's securities at artificially inflated prices and a presumption of reliance applies.

62.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

63.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of ATI who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against ATI and the ATI Individual Defendants**

64.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

65.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase ATI's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

66.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for ATI's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

67.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about ATI's financial well-being and prospects, as specified herein.

68.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ATI's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about ATI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

69.     Each of the ATI Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the ATI Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

70.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing ATI's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

71.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of ATI's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired ATI's securities during the Class Period at artificially high prices and were damaged thereby.

72.    At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that ATI was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their ATI securities, or, if they had

acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

73.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the ATI Individual Defendants

75.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

76.     The ATI Individual Defendants acted as controlling persons of ATI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the ATI Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The ATI Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, the ATI Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

78.     As set forth above, ATI and the ATI Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the ATI Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## THIRD CLAIM

### Violation of Section 14(a) of The Exchange Act

### Against ATI, the ATI Individual Defendants, and the FVAC Director Defendants

79.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

80.     The claims set forth herein do not sound in fraud and are based on negligent conduct by the Defendants named herein (the "Section 14 Defendants").

81.     The Section 14 Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 thereunder in that these Defendants solicited proxies from Plaintiffs and other members of the Class by means of a proxy statement that, through Defendants' negligence, contained statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, and omitted to state material facts necessary in order to make the statements therein not false or misleading.

82.     Plaintiffs and other members of the Class were misled by the Section 14 Defendants' false and misleading statements and omissions, were denied the opportunity to make an informed decision in voting on the merger, and approved the merger without having been advised of material facts. Accordingly, Plaintiffs and other members of the Class did not receive their fair share of the value of the assets and business of the combined entity, suffered damages when the Company's stock price decreased, and were prevented from benefiting from a value-maximizing transaction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: August 16, 2021                    Respectfully submitted,

                                          **POMERANTZ LLP**

                                          */s/ Jeremy A. Lieberman*
                                          Jeremy A. Lieberman
                                          J. Alexander Hood II
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016

26

Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
(*pro hac vice* application forthcoming)
Charles H. Linehan
(*pro hac vice* application forthcoming)
Pavithra Rajesh
(*pro hac vice* application forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com
prajesh@glancylaw.com

*Attorneys for Plaintiffs Kevin Burbige and Ziyang Nie*