## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-04349 |
| Plaintiffs, | Honorable Edmond E. Chang |
| vs. | |
| ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE ATI DEFENDANTS' MOTION TO DISMISS THE
## <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

MUCH SHELIST P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel: (312) 521-2437
Fax: (312) 521-2100

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for ATI Physical Therapy, Inc. f/k/a Fortress Value Acquisition Corp. II, Labeed Diab, and Joseph Jordan*

Dated: April 11, 2022

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................3

    A.    The Parties ...........................................................................................................3

    B.    FVAC Is Formed To Pursue A Business Combination ............................4

    C.    FVAC Announces Its Intent To Combine With ATI, A Nationally-Renowned Physical Therapy Provider...........................................................5

    D.    FVAC Stockholders Approve The Business Combination.........................6

    E.    ATI Announces Q2 2021 Financial Results And Revises 2021 Guidance .............................................................................................................6

    F.    ATI Releases Selected Q3 Financial Results................................................8

ARGUMENT.................................................................................................................................8

    I.    THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION ...........................................................................................................9

        A.    Plaintiffs Fail To Plead An Actionable Misstatement ................................10

            1.    The Challenged Statements Of Optimism And Puffery Are Not Actionable ...............................................................................10

            2.    The Challenged Forward-Looking Statements Are Protected By The PSLRA Safe Harbor.........................................12

            3.    The Challenged Statements Of Opinion Are Not Actionable.......14

            4.    The Challenged Statement Of Historical Fact Is Not Actionable ...........................................................................16

        B.    Plaintiffs Fail To Plead An Actionable Omission.......................................17

    II.    PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED FOR FAILURE TO PLEAD SCIENTER .........................................................18

        A.    Plaintiffs' Motive And Opportunity Allegations Are Insufficient.............19

        B.    Plaintiffs' Conscious Misbehavior And Recklessness Allegations Are Insufficient ...................................................................................20

        C.    Plaintiffs' Additional Scienter Allegations Are Insufficient ....................25

            1.    The Departures Of Messrs. Diab And Coco Do Not Support Scienter .....................................................................................25

            2.    An SEC Document Request Does Not Support Scienter...............26

        D.    Plaintiffs Fail To Plead Corporate Scienter ...............................................26

i

III. PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED, AT LEAST IN PART, FOR FAILURE TO PLEAD LOSS CAUSATION ................27

IV. PLAINTIFFS' SECTION 14(a) CLAIM MUST BE DISMISSED FOR FAILURE TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b) AND THE PSLRA .......................................29

V. PLAINTIFFS' SECTION 20(a) CLAIMS MUST BE DISMISSED ....................30

CONCLUSION ..............................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abazari v. Rosalind Franklin Univ. of Med. & Sci.*,
40 N.E.3d 264 (Ill. App. Ct. 2015) .........................................................................................14

*In re Allscripts, Inc. Sec. Litig.*,
2001 WL 743411 (N.D. Ill. 2001) ..........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................9

*In re Bally Total Fitness Sec. Litig.*,
2006 WL 3714708 (N.D. Ill. July 12, 2006) .....................................................................19, 21

*In re Bally Total Fitness Sec. Litig.*,
2007 WL 551574 (N.D. Ill. Feb. 20, 2007) .......................................................................11, 26

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988) .................................................................................................................17

*In re Baxter Int'l Inc. Sec. Litig.*,
2021 WL 100457 (N.D. Ill. Jan. 12, 2021) .................................................................5, 26, 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................8, 9

*Boca Raton Firefighters and Police Pension Fund v. Devry Inc.*,
2012 WL 1030474 (N.D. Ill. 2012) ........................................................................................20

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ....................................................................................................5

*Cal. Pub. Emp. Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ....................................................................................................29

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) ...............................................................................................18

*In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litig.*,
390 F.Supp.3d 916 (N.D. Ill. May 29, 2019) ..........................................................................19

*City of Austin Police Ret. Syst. v. ITT Educ. Services, Inc.*,
388 F.Supp.2d 932 (S.D. Ind. 2005) ..................................................................................22, 26

iii

*City of Livonia Emps.' Ret. Sys. & Local 295/Local 851, IBT v. Boeing Co.*,
  711 F.3d 754, 756 (7th Cir. 2013) ..................................................................14, 21

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
  2020 WL 6118571 (N.D. Ill. Oct. 16, 2020), *aff'd sub nom. City of Taylor
  Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021)......................20, 22

*Conlee v. WMS Indus., Inc.*,
  2013 WL 1767648 (N.D. Ill. Apr. 24, 2013) ...........................................................11

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
  916 F.3d 589 (7th Cir. 2019) ...................................................................................9

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) .....................................................................21

*Di Donato v. Insys Therapeutics Inc.*,
  2017 WL 3268797 (D. Ariz. Aug. 1, 2017)...........................................................28

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)...............................................................................................27

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...............................................................................................27

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
  2012 WL 1068761 (N.D. Ill. Mar. 29, 2012).........................................................21

*Green Dolphin Cap. LLC v. JPMorgan Chase Bank, N.A.*,
  2020 WL 5545700 (N.D. Ill. Sept. 16, 2020) ........................................................14

*Hallberg v. Am. Agencies Gen. Agencies, Inc.*,
  2005 WL 563211 (N.D. Ill. Mar. 8, 2005)..............................................................22

*In re Harley-Davidson, Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wis. 2009).....................................................................23

*In re Henry Schein, Inc. Sec. Litig.*,
  2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) .......................................................28

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ............................................................................21, 26

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................................................27

*Kennedy v. Venrock Assocs.*,
  348 F.3d 584 (7th Cir. 2003) ...............................................................................9, 29

iv

*Kuebler v. Vectren Corp.*,
13 F.4th 631 (7th Cir. 2021) ..................................................................................9, 29

*In re Lions Gate Ent. Corp. Sec. Litig.*,
165 F. Supp. 3d 1 (S.D.N.Y. 2016) ................................................................................17

*Lomingkit v. Apollo Educ. Grp. Inc.*,
2017 WL 633148 (D. Ariz. Feb. 16, 2017)...................................................................11

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
735 F. Supp. 2d 856 (N.D. Ill. 2010) ......................................................................27

*In re Midway Games, Inc. Sec. Litig.*,
332 F. Supp. 2d 1152 (N.D. Ill. 2004) .......................................................10, 11, 13

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty.*
*Ret. Ass'n v. MDC Partners, Inc.*,
2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)...............................................................15

*In re Nvidia Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ................................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)..................................................................................................15

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)...................................................................................18

*Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*,
895 F.3d 933 (7th Cir. 2018) ...............................................................................9, 21

*Pierrelouis v. Gogo, Inc.*,
414 F. Supp. 3d 1164 (N.D. Ill. 2019) .............................................................. *passim*

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)...........................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ................................................................................10

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) .......................................................................5, 18, 26

*In re Rhodia S.A. Sec. Litig.*,
531 F. Supp. 2d 527 (S.D.N.Y. 2007)........................................................................27

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ..................................................................................11

v

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019) .................................................................................26

*Silverman v. Motorola, Inc.*,
  2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) .........................................................................11

*Stamatio v. Hurco Companies, Inc.*,
  892 F. Supp. 214 (S.D. Ind. 1995) .......................................................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...........................................................................................9, 18, 19

*Trahan v. Interactive Intel. Grp., Inc.*,
  308 F. Supp. 3d 977 (S.D. Ind. 2018) ...................................................................................14

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
  495 F. Supp. 3d 622 (N.D. Ill. 2020) ................................................................... *passim*

*Walleye Trading LLC v. AbbVie, Inc.*,
  2019 WL 4464392 (N.D. Ill. Sept. 18, 2019),
  *aff'd*, 962 F.3d 975 (7th Cir. 2020) ....................................................................................30

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................... *passim*

15 U.S.C. § 78u-5 ......................................................................................................12, 13

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) ...................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................1

Defendants ATI Physical Therapy, Inc. ("ATI" or the "Company") f/k/a Fortress Value Acquisition Corp. II ("FVAC"), Labeed Diab, and Joseph Jordan (collectively, the "ATI Defendants") respectfully submit this memorandum of law in support of their motion to dismiss, in its entirety and with prejudice, the Consolidated Amended Class Action Complaint (the "Complaint" or "Compl.") filed by Lead Plaintiffs The Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds (together, "Lead Plaintiffs") and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System (together with Lead Plaintiffs, "Plaintiffs") under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) (the "PSLRA").

## PRELIMINARY STATEMENT

Plaintiffs purport to bring this action on behalf of all persons and entities that (a) purchased or otherwise acquired ATI securities between February 22, 2021 and October 19, 2021 (the alleged "Class Period") and/or (b) beneficially owned and/or held FVAC Class A common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting. Plaintiffs assert claims under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and generally allege that ATI failed to disclose that it was suffering from "severe attrition" among its physical therapists during the Class Period, which, unbeknownst to the market, purportedly prevented it from meeting patient demand, caused it to incur increased labor costs, and "negatively impacted its business and limited its ability to open new clinics." Compl. ¶ 8. As a result, Plaintiffs claim that ATI's "securities traded at artificially inflated prices throughout the Class Period." *Id.*

As discussed below, however, there are simply no facts pled in the Complaint to substantiate Plaintiffs' allegations, and no basis to infer that the ATI Defendants committed any wrongdoing, let alone fraud.

*First*, all of Plaintiffs' claims should be dismissed because Plaintiffs fail to plead an actionable misstatement or omission. Indeed, the vast majority of the alleged misstatements -- *e.g.*, that ATI has "best-in-class" care, "engaged employees," "attractive recruiting," "competitive compensation," and "very high retention" -- are the sort of vague optimism and puffery that courts routinely dismiss as immaterial as a matter of law. The remaining alleged misstatements, concerning projections, earnings, and other related financial items, fare no better, as all are forward-looking statements (accompanied by adequate risk disclosures) protected by the PSLRA safe harbor and/or non-actionable opinions. Moreover, because Plaintiffs have failed to establish that the ATI Defendants were aware of any "known" trend with respect to ATI's attrition (including as compared to the alleged "industry" average), no actionable omission is pled either. *See* Point I, *infra.*

*Second*, Plaintiffs' Section 10(b) claim is independently subject to dismissal because the Complaint is devoid of particularized facts sufficient to plead scienter. Plaintiffs plead only that Messrs. Diab and Jordan were motivated to commit fraud because they received increased salaries and bonuses as a result of the business combination between FVAC and Wilco Holdco, Inc., the private company predecessor to the current ATI business. These generic, employment-related allegations, however, are wholly insufficient to establish scienter. Similarly, Plaintiffs' reliance on the allegations of confidential former employees ("FEs") -- none of whom reported directly to either Messrs. Diab or Jordan -- also fails. None of the FEs establish with the requisite particularity that either Messrs. Diab or Jordan possessed knowledge that rendered *any* of ATI's public statements false and/or misleading. Nor do Plaintiffs' remaining attempts to establish scienter -- namely, the departure of certain executives and a voluntary request for documents from the U.S. Securities and Exchange Commission (the "SEC") -- salvage Plaintiffs' claim. *See* Point II, *infra.*

2

*Third*, Plaintiffs' Section 10(b) claim is also independently subject to dismissal because Plaintiffs have not, and cannot, establish loss causation with respect to the alleged October 19, 2021 "corrective disclosure" because that disclosure did not actually "correct" any prior statements relating to attrition. Rather, ATI's further reduction to its forward-looking guidance following the close of the third quarter of 2021 was *specifically and exclusively attributed* to lower patient volume, *not* attrition. See Point III, *infra.*

*Fourth*, Plaintiffs' Section 14(a) claim is based on the same course of conduct that underlies Plaintiffs' Section 10(b) claim. For this reason, the Section 14(a) claim sounds in fraud and is thus subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. Because Plaintiffs have failed to meet their pleading burden, the Section 14(a) claim also must be dismissed. *See* Point IV, *infra.*

*Finally*, because Plaintiffs fail to allege a primary violation of the Exchange Act, their "control person" claims under Section 20(a) also fail. *See* Point V, *infra.*

## BACKGROUND

### A.     The Parties

Defendants respectfully refer the Court to Paragraphs 26 through 28 of the Complaint (and Plaintiffs' certifications) for a description of Plaintiffs and their ATI securities transactions. Dkt. Nos. 25-3 & 58-1.

ATI, headquartered in Bolingbrook, Illinois, is among the nation's largest providers of outpatient physical therapy services. Compl. ¶ 1. It boasts approximately 900 physical therapy clinics across more than 20 states. *Id.* ¶¶ 4, 46. Beginning on June 17, 2021, as a result of its business combination with FVAC, ATI became a publicly-traded company the shares of which trade on the New York Stock Exchange ("NYSE") under the ticker symbol "ATIP." *Id.* ¶ 30. ATI's redeemable warrants trade on the NYSE under the ticker symbol "ATIP WS." *Id.*

3

Labeed Diab served as ATI's Chief Executive Officer and a member of its board of directors from February 2019 through August 7, 2021. *Id.* ¶¶ 31, 185. Joseph Jordan served as ATI's Chief Financial Officer at all relevant times. *Id.* ¶ 32. Andrew A. McKnight was FVAC's Chief Executive Officer until the consummation of the business combination, after which he joined ATI's board of directors. *Id.* ¶ 33. Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati each served as directors of FVAC at all relevant times. *Id.* ¶¶ 35-42.

### B. FVAC Is Formed To Pursue A Business Combination

On June 10, 2020, Fortress Investment Group LLC ("Fortress"), a leading private equity firm, formed FVAC -- "a blank check company," also known as a special purpose acquisition company, or "SPAC" -- for the purpose of "effecting a [m]erger . . . or similar [business combination] with one or more businesses." *Id.* ¶ 47. A SPAC is designed to pool investor capital, identify potential targets, and make an acquisition, typically within a 24-month window; otherwise, the SPAC unwinds and returns capital to its investors. Shares in the SPAC are offered to the public at $10 per share, and stockholders have the right to redeem their shares and receive their money back (plus interest) in lieu of a "de-SPAC" transaction if they do not wish to participate in the post-transaction company.

FVAC completed its public capital raise on August 14, 2020, selling 34.5 million units at a price of $10.00 per unit and raising $345 million in proceeds. Compl. ¶ 52. Each unit consisted of one share of FVAC Class A common stock and one-fifth of one redeemable public warrant of FVAC. *Id.* Each public warrant entitled its holder to purchase one share of FVAC Class A common stock at an exercise price of $11.50 per share. *Id.*

4

**C.     FVAC Announces Its Intent To Combine With ATI, A Nationally-Renowned Physical Therapy Provider**

On February 22, 2021, almost six months following its public offering, FVAC announced a proposed business combination that would result in ATI, then a private company, becoming a publicly-traded company. *Id.* ¶ 58. As noted above, ATI is a nationally-recognized outpatient physical therapy provider, specializing in outpatient rehabilitation, physical therapy, and related healthcare services. Ex. 1 (FVAC's March 12, 2021 Preliminary Proxy Statement on Schedule 14A) at 178.[1] ATI's services include "physical therapy to treat spine, shoulder, knee and neck injuries or pain; work injury rehabilitation services, including work conditioning and work hardening; hand therapy; and other specialized treatment services." *Id.* In addition to hosting patients at its branded outpatient clinics, ATI has a "Worksite Solutions" program that "provides an on-site team of healthcare professionals at employer worksites to promote work-related injury prevention, facilitate expedient and appropriate return-to-work follow-up and maintain the health and well-being of the workforce." *Id.* at 164, 178.

ATI has described itself as "hav[ing] the most advanced platform in the industry" in terms of its "team, [] clinical systems, and [] corporate infrastructure." *Id.* at 162. Indeed, the Company believed it was in a position to transform the "industry toward value-based care" because, among

---

[1] "Ex. __" refers to exhibits attached to the accompanying Declaration of Stefania D. Venezia, dated April 11, 2022. On this motion, the Court may consider and "take judicial notice" of documents that "contain publicly available information," such as "stock prices and SEC filings." *In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *1 n.2 (N.D. Ill. Jan. 12, 2021) (collecting cases); *see also Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record, including publicly reported stock prices, without converting a motion to dismiss into a motion for summary judgment."); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

other reasons, "[c]ombined with a competitive compensation model, [it was] historically . . . able to realize high retention rates across [the] organization." *Id.* at 163; *see also, e.g.*, Compl. ¶¶ 89-91, 138-39. Nevertheless, ATI repeatedly disclosed that the failure to "recruit and retain [the Company's] base of experienced and clinically skilled therapists" may lead the Company's business to "decrease and its revenues may decline." Compl. ¶¶ 131, 145, 154. ATI also warned that its "facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability." *Id.* Relatedly, ATI advised that attempts to manage labor costs efficiently "may have limited effectiveness and may lead to increased turnover and other challenges." *Id.*

### D.     FVAC Stockholders Approve The Business Combination

On May 14, 2021, FVAC filed its definitive proxy statement with the SEC in support of its proposed business combination with ATI. *Id.* ¶ 60. On June 15, 2021, FVAC held a special meeting for its stockholders to vote on the proposed business combination. *Id.* Each FVAC stockholder had the option either to retain his, her, or its shares, which would be converted to shares of ATI Class A common stock upon completion of the business combination, or to redeem his, her, or its shares for $10.00 per share in cash (*i.e.*, the full purchase price). *Id.* On June 17, 2021, the transaction closed and ATI became a publicly-traded company. Compl. ¶¶ 5, 62.

### E.     ATI Announces Q2 2021 Financial Results And Revises 2021 Guidance

On July 26, 2021, before the market opened, ATI reported its second quarter financial results. Compl. ¶ 111. Visits per day increased from 19,520 in the first quarter to 21,569, as compared to 12,643 in the second quarter of 2020. Ex. 2 (ATI's July 26, 2021 Form 8-K) at 5. Net operating revenue increased from $149.1 million in the first quarter to $164 million, as compared to $107.8 million in the second quarter of 2020. *Id.* at 5.

6

Nevertheless, while the Company saw "a growing demand for [its] services, and visit volume increase[s] during the second quarter," it was not able to meet demand as expected and, as a result, reduced forward-looking revenue guidance for fiscal year 2021 from $731 million to $640-70 million, Adjusted EBITDA forecasts from $119 million to $60-70 million, and expected new clinics from 90 to between 55 and 65. Ex. 2 at 7; Compl. ¶ 111. According to the Company, "the acceleration of attrition among our therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our expectations for labor costs." Compl. ¶ 111. Further, the Company "expect[ed] therapist headcount to be below previously anticipated levels for 2021 which, combined with elevated costs for therapists and an unfavorable revenue mix, [] caused [it] to reduce [its] forecast for 2021." *Id.* ATI's earnings release warned, however, that the Company's "ability to achieve [its] revised forecast for the remainder of 2021 depends upon a number of factors, including the success of a number of steps being taken to significantly reduce attrition of physical therapists and significant hiring of physical therapists." *Id.* In its press release, ATI also disclosed that: (i) "the revision to its 2021 forecast constitutes an interim triggering event that requires further analysis with respect to potential impairment to goodwill and trade name intangible assets" (*id.*);[2] and (ii) the Company's Chief Human Resources Officer, Cedric Coco, had resigned. *Id.* ¶ 112. That day, ATI's stock price dropped 43.41% (from $8.34 per share to $4.72 per share). *Id.* ¶ 113. On July 27, 2021, the stock further declined to $3.82 per share (a 19.07% drop). *Id.*

---

[2] On August 16, 2021, ATI subsequently disclosed $33.7 million and $433.2 million non-cash impairment charges because the fair values of ATI's "trade name indefinite-lived intangible asset" and its "single reporting unit," respectively, were below their carrying values. *Id.* ¶ 117.

On August 9, 2021, the Company announced that Mr. Diab "stepped down as CEO and member of the Board of Directors." Ex. 3 (ATI's August 9, 2021 Form 8-K) at 4. ATI Executive Chairman John (Jack) Larsen explained that "[a]s ATI continues to take actions to serve the growing patient demand across our platform and sharpen its growth trajectory, the Board has determined that it is the right time for a leadership change." *Id.* at 4.

### F.      ATI Releases Selected Q3 Financial Results

On October 19, 2021, following the close of trading, ATI released "selected preliminary third quarter 2021 results," which further reduced forward-looking guidance: the yearly revenue forecast dropped from $640-70 million to $620-30 million and Adjusted EBITDA guidance fell from $60-70 million to $40-44 million "due to lower than expected patient volume." Compl. ¶ 118. As ATI disclosed: "Previous guidance anticipated continued visit volume growth in both the third and fourth quarters of 2021 compared to the second quarter." *Id.* Meanwhile, the Company stated that "[m]anagement has implemented targeted measures that reduced clinical staff attrition and improved clinical full-time equivalent (FTE) growth during the last two months of the third quarter of 2021. The Company made progress towards restoring FTEs with ATI hiring roughly 2 clinicians for every 1 departure in August and September 2021 compared to our second quarter 2021 ratio of approximately 1 to 1." *Id.* On October 20, 2021, ATI's stock price closed at $2.86, down 21.64% from the previous day's close. *Id.* ¶ 119.

### ARGUMENT

In deciding this motion, the Court must assume that well-pled factual allegations in the Complaint are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the Court need not accept legal conclusions, naked assertions, mere conclusory statements, or implausible inferences. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 555). Indeed, a claim must raise more than the "mere possibility of misconduct" -- a plaintiff must

8

plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79; *see also Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (citation omitted) (internal quotations omitted). Considered together, Plaintiffs' allegations and the documents properly before this Court demonstrate that Plaintiffs fail to satisfy the plausibility standard of *Twombly* and *Iqbal*, much less the heightened pleading standards of Rule 9(b) and the PSLRA.[3]

## I. THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION

Plaintiffs' claims under Sections 10(b) and 14(a) each require a material misstatement or omission,[4] and Plaintiffs' attempts to plead a material misstatement or omission must satisfy the exacting standards of Rule 9(b) and the PSLRA. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319-21 (2007). Rule 9(b) requires that the party alleging fraud "'state with particularity the circumstances constituting fraud or mistake,'" which "generally means . . . describing the 'who, what, when, where, and how' of the fraud." *Cornielsen*, 916 F.3d at 598 (quoting Rule 9(b)). The PSLRA further demands that Plaintiffs "specify each statement that is allegedly misleading, the reasons why it is so, and, if based on information and belief, what specific facts support that information and belief." *Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1172-

---

[3] Because Section 14(a) does not require scienter, Rule 9(b) does not automatically apply. *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003). As discussed in more detail below, however, Plaintiffs base their Section 14(a) claim on the same alleged conduct that underlies their Section 10(b) claim and, as a result, heightened pleading standards apply. *See* Point IV, *infra.*

[4] *See, e.g.*, *Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018) (Section 10(b) requires "a material misrepresentation or omission by the defendant"); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 637 (7th Cir. 2021) (Section 14(a) requires "that the proxy statement contained a material misstatement or omission").

73 (N.D. Ill. 2019) (internal quotations omitted).  Here, Plaintiffs fail to plead, as they must, the requisite particularized facts demonstrating how *any* of the statements at issue were false or misleading when made or omitted material information.  All of their claims must therefore be dismissed.

<b><u>A.        Plaintiffs Fail To Plead An Actionable Misstatement</u></b>

<b>1.        The Challenged Statements Of Optimism And Puffery Are Not Actionable</b>

Many of the challenged statements constitute non-actionable optimism and puffery, *i.e.*, "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004) (internal quotations omitted); *see also W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 654 (N.D. Ill. 2020).  Indeed, many of the alleged misstatements are nothing more than corporate cheerleading, "'a kind of self-directed corporate puffery'" that "[n]o reasonable investor, much less 'the market' itself, would rely on." *Midway Games*, 332 F. Supp. 2d at 1165 (internal quotations omitted).

For example, statements that ATI has "very high retention," "low turnover," "[e]ngaged [e]mployees," "[a]ttractive [r]ecruiting and [r]etention [c]apabilities," "favorable clinician retention rates and engagement scores," a "competitive compensation model," "[b]est-in-[c]lass [c]are," "[b]est-in-class infrastructure," "[s]trong [r]etention," and is an "[e]mployer of [c]hoice" (Compl. ¶¶ 89, 90, 91, 123, 129, 138, 139, 143, 152) are textbook examples of puffery and routinely dismissed as immaterial. *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (deeming statement that market opportunity is "very, very large" to be "'feel good'" speak that constitutes "'non-actionable puffing'") (internal citations

10

omitted); *Conagra*, 495 F. Supp. 3d at 653 (finding terms like "robust" to be "vague" and non-actionable and dismissing description of company as one of the "fastest-growing companies" as immaterial corporate puffery); *Conlee v. WMS Indus., Inc.*, 2013 WL 1767648, at \*6 (N.D. Ill. Apr. 24, 2013) (dismissing as puffery the term "intense" when used by defendant to describe its "'intense focus' and 'vigilance' in executing [] operational improvements"); *Midway Games*, 332 F. Supp. 2d at 1165 (dismissing statements that certain products "comprise the strongest home video game lineup in the Company's history"); *Silverman v. Motorola, Inc.*, 2008 WL 4360648, at \*9 (N.D. Ill. Sept. 23, 2008) ("[s]tatements that . . . new products are 'competitive' or 'compelling'" or that company is "well positioned to continue creating value" are "immaterial as a matter of law").[5]

Put simply, it is well-settled that corporate officers are expected to be confident about their stewardship and the prospects of the business they manage. *See, e.g.*, *In re Bally Total Fitness Sec. Litig.*, 2007 WL 551574, at \*6 (N.D. Ill. Feb. 20, 2007) (statements "that the stock was a bargain and that Bally would continue to 'grow' its earnings are classic examples of sales 'puffing' and general corporate optimism, which are immaterial for purposes of the federal securities fraud laws"); *Conagra*, 495 F. Supp. 3d at 651-52 (similar). Accordingly, Plaintiffs' attempts to impugn these types of statements about ATI's potential in the industry as materially false and/or misleading should be rejected.

---

[5] *See also, e.g.*, *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003) ("'Our fundamentals are strong,' is obviously immaterial puffery."); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at \*14 (N.D. Cal. July 21, 2020) ("best-in-class" is puffery); *Lomingkit v. Apollo Educ. Grp. Inc.*, 2017 WL 633148, at \*16 (D. Ariz. Feb. 16, 2017) ("[p]hrases like 'a superior' experience, 'meaningful progress,' 'differentiate,' and 'significant enhancements' are classic examples of corporate puffery because they do not provide any objective understanding into what they describe").

### 2. The Challenged Forward-Looking Statements Are Protected By The PSLRA Safe Harbor

Plaintiffs' claims also fail because many of the challenged statements are archetypal forward-looking statements statutorily protected by the PSLRA safe harbor. *See* 15 U.S.C. § 78u-5(i)(1). Because the safe harbor is written in the disjunctive, a party is not liable if the forward-looking statement *either* is identified and accompanied by "meaningful cautionary language" *or* the plaintiff fails to prove that the statement was made with "actual knowledge" that it was false or misleading. *See Conagra*, 495 F. Supp. 3d at 654 (quoting 15 U.S.C. §§ 78u-5(c)(1)(A)(i), 78u-5(c)(1)(B)(i)-(ii)). Here, the challenged forward-looking statements are protected under both prongs.

First, many of the statements challenged by Plaintiffs reflect projections of revenue, earnings, and other related financial items, which fall squarely within the definition of a covered forward-looking statement[6] -- namely, ATI's fiscal year 2021 revenue projections, its fiscal year 2021 Adjusted EBITDA projections, and its expectation that "Clinic Staffing Optimization" would yield $19 million in EBITDA over the next several years. *See* Compl. ¶¶ 94, 125, 133, 139, 141, 147, 156, 167, 169; *see also Conagra,* 495 F. Supp. 3d at 654 ("The PSLRA defines 'forward-looking statement' to include . . . a statement containing a projection of revenues [or] income."). Similarly, ATI's statements concerning its plans to "continue[] to match its clinical staffing levels" to visit volumes (Compl. ¶¶ 93, 163), and its belief that it was "on track" to achieve targets for new clinic openings (*id.* ¶¶ 109, 161), are also protected statements relating to the plans and

---

[6] A "forward-looking statement" is statutorily defined to include "a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share . . . or other financial items," "a statement of the plans and objectives of management for future operations," "a statement of future economic performance," and "any statement of the assumptions underlying" the foregoing. 15 U.S.C. § 78u-5(i)(1).

12

objectives of management for future operations. *See* 15 U.S.C. § 78u-5(i)(1). And, in every instance, the statements were not only expressly identified as forward-looking (*see, e.g.*, Ex.1 at 143-45; Ex. 4 (FVAC's May 20, 2021 Additional Definitive Proxy Soliciting Materials on Schedule 14A) at 18, 32-33), but were accompanied by meaningful cautionary language. *See Conagra*, 495 F. Supp. 3d at 656 ("[t]o be 'meaningful,' a cautionary statement should identify 'those sources of variance that (at the time of the projection) were the principal or important risks'") (internal citations omitted); *Midway Games*, 332 F. Supp. 2d at 1166 ("cautionary language must be sufficiently related in subject matter and strong in tone to counter the statement made") (internal quotations omitted).

In fact, as discussed above, ATI identified the exact risks of which Plaintiffs now complain. For example, the Company warned that "ATI's facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability." Compl. ¶¶ 92, 131, 145, 154. ATI also cautioned that, "[i]f the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, management and support personnel, its business may decrease and its revenues may decline." *Id.* There can be no serious dispute that this cautionary language warned of the impacts that the failure to retain physical therapists and clinicians would have on the Company. *See, e.g.*, *Midway Games*, 332 F. Supp. 2d at 1166 (finding that "[f]ar from being generic or boilerplate, defendants' cautionary statements are highly specific" as they "describe numerous factors that could cause future operating results to be unfavorable").[7]

---

[7] Plaintiffs allege that ATI's risk factors were themselves misleading because "the Company already suffered an attrition rate materially greater than the average in the industry and already suffered negative effects . . . from that attrition rate." Compl. ¶¶ 132, 146, 155. As explained below, however, Plaintiffs have not established that ATI's attrition rate was, in fact, "materially greater than the average in the industry," let alone that the ATI Defendants were aware of it. *See*

13

Second, Plaintiffs do not come close to demonstrating "actual knowledge," which, for purposes of forward-looking statements, is an even higher bar than for statements of current facts. *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851, IBT v. Boeing Co.*, 711 F.3d 754, 756 (7th Cir. 2013).[8] Plaintiffs' conclusory allegations that the ATI Defendants "received" and/or had "access" to certain internal reports does not equate to "actual knowledge" that the Company's statements were false and/or misleading when made. *See, e.g.*, *Gogo*, 414 F. Supp. 3d at 1175-76 ("[T]he inferential leap required to tie [such general allegations] to the conclusion that defendants acted knowingly . . . when presenting relevant information to the market is untenable given the heightened pleading standards [of the PSLRA]."); *see also* Point II, *infra*.

### 3. The Challenged Statements Of Opinion Are Not Actionable

A number of the challenged statements are statements of opinion, such as: (i) ATI's financial projections [9] (which, as noted above, also constitute protected forward-looking statements); (ii) ATI's statements of "Goodwill" and "Trade name and other intangible assets,

---

pp. 14, 20-25, *infr*a.

[8] Plaintiffs must allege "actual knowledge of falsity." *Id*. In contrast, for claims based on current facts, although still a high burden, a plaintiff need only allege "reckless indifference" -- *i.e.*, "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.*

[9] Because "it is hard to express certainty about the future," "numerous courts have held that future predictions are more properly analyzed as opinion statements." *Conagra*, 495 F. Supp. 3d at 648-49 (holding that "pre-merger predictions about the merger's success and effects were statements of opinion, not fact," even though "the challenged statements [did] not contain qualifiers such as 'I think' or 'I believe,'" because "the content of future predictions makes the distinction clear"); *see also, e.g.*, *Trahan v. Interactive Intel. Grp., Inc.*, 308 F. Supp. 3d 977, 987, 991-93 (S.D. Ind. 2018) (analyzing management forecasts as both opinions and forward-looking statements); *Green Dolphin Cap. LLC v. JPMorgan Chase Bank, N.A.*, 2020 WL 5545700, at *5 (N.D. Ill. Sept. 16, 2020) (finding projected anticipated underwriting profits to be non-actionable statements of opinion); *see also Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 273 (Ill. App. Ct. 2015) (similar).

14

net," estimates;[10] (iii) the belief that ATI had "Attractive Recruiting and Retention Capabilities;" and (iv) the belief that the "key elements" of ATI's platform and "competitive advantages" included its "competitive compensation model" and "Engaged Employees and Clinicians Delivering Best-In-Class Care." Compl. ¶¶ 91, 94, 95, 125, 129, 133, 136, 141, 143, 147, 150, 152, 156, 159, 165, 169, 171. Of course, "[a] reasonable person understands, and takes into account, the difference . . . between a statement of fact and one of opinion." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015).

In order to allege an actionable opinion, a plaintiff must (1) plead particularized facts showing that "the opinion [wa]s not 'honestly held,'" or (2) "'identify particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.'" *Conagra*, 495 F. Supp. 3d at 650 (quoting *Omnicare*, 575 U.S. at 186-89). "[W]hether an omission makes an expression of opinion misleading always depends on context," and meeting the standard under *Omnicare* "is no small task for an investor." *Omnicare*, 575 U.S. at 190-94.

Here, Plaintiffs fail to muster any facts (let alone *particularized* facts) establishing that the ATI Defendants did not honestly hold their opinions at the time they were offered or that the ATI Defendants lacked a basis to form such opinions. *See, e.g.*, *Conagra*, 495 F. Supp. 3d at 650 (granting motion to dismiss where "the complaint does not plausibly suggest Defendants did not honestly believe these [challenged] statements [of opinion]"). Plaintiffs' reliance on unnamed FEs

_____

[10] *See N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *10 (S.D.N.Y. Sept. 30, 2016) ("[G]oodwill estimates are opinion statements because they 'depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact' and 'will vary depending on the particular methodology and assumptions used.'") (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-11 (2d Cir. 2011)).

who conclusorily allege that ATI's attrition rate exceeded 40% by early 2021 (*see* Compl. ¶¶ 7, 76-77, 79, 81) fails for the myriad reasons set forth below in Point II; but, more importantly, even if accepted as true, *none* of these allegations establish that the ATI Defendants did not honestly believe their opinions at the time. Indeed, as explained below, only one of the FEs alleges *any* direct contact at all with Messrs. Diab or Jordan. Compl. ¶¶ 7, 9, 67-71, 77-88, 98-104. The rest (six of seven) simply make generalized statements about the mere "access" to information, which cannot possibly suffice to salvage Plaintiffs' claims. *Id.* And, even the allegations of FE-1, which purport to establish that Messrs. Diab and Jordan were present at meetings during which "attrition" was generally discussed, do not come close to containing the *particularized* facts necessary to establish that the opinion statements challenged by Plaintiffs -- namely, estimates about "goodwill" and other "intangible assets," along with beliefs about ATI's competitive advantages and retention capabilities -- are actionable. Compl. ¶¶ 99-101.

### 4. The Challenged Statement Of Historical Fact Is Not Actionable

Finally, Plaintiffs challenge the statement that ATI was "certified as a Great Place to Work" on the grounds that the certification was last updated in August 2019 "for the period from August 2019 through August 2020," and ATI was not so accredited for calendar year 2020. Compl. ¶¶ 88, 123. Mr. Diab, however, expressly stated that ATI enlisted Great Places to Work to validate the Company "[w]hen I joined the organization *a couple of years ago*." Ex. 5 (FVAC's February 22, 2021 Investor Presentation Transcript) at 4 (emphasis added); *see also id.* ("we *were* certified as a Great Places to Work") (emphasis added). In addition, ATI's disclosures expressly state that, "[i]n August 2019, we achieved Great Place to Work certification." Ex. 1 at 167. None of the ATI Defendants claimed to have received that certification in any other year. Courts have repeatedly rejected like attempts to attack such demonstrably accurate *factual* statements. *See Conagra*, 495 F. Supp. 3d at 643 ("Accurate statements of historical fact, such as past financial

16

results, are not actionable.") (quoting *Gallagher v. Abbott Laboratories*, 269 F.3d. 806 (7th Cir. 2001)).[11]

### B. Plaintiffs Fail To Plead An Actionable Omission

Plaintiffs also conclusorily assert that the ATI Defendants omitted the "known trend that [ATI] was suffering attrition rates among its clinical staff that were materially greater than the industry average." Compl. ¶¶ 124, 128, 135, 140, 149, 158. As a threshold matter, there is generally no affirmative independent duty for a company to disclose all information that could potentially affect share prices, even when that information is material, unless such silence renders an affirmative statement misleading. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("[s]ilence, absent a duty to disclose, is not misleading"). To the extent Plaintiffs are alleging a violation of Item 303(a)(3)(ii) of Regulation S-K,[12] which "provides that registration statements and annual 10-K reports must reveal 'any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations,'"[13] such a claim requires that the alleged trend actually be "known;" "[i]t is not enough that [a company] *should have known* of the existing trend, event, or uncertainty." *Conagra*, 495 F. Supp. 3d at 647 (internal citations omitted) (emphasis

---

[11] Similarly, statements that the Company has "historically been able to realize high retention rates across [the] organization" are non-actionable. Compl. ¶¶ 129, 143, 152. Plaintiffs themselves plead that "[p]rior to late 2020, the Company's physical therapist attrition rate hovered at or around 20%, and the average attrition rate for clinical staff and physical therapists in ATI's industry is around 20%." *Id.* ¶ 66. There are *no* facts pled establishing that statements about ATI's historical retention rate are not accurate.

[12] Plaintiffs have not actually pled an Item 303 violation, which alone dooms this claim. *See, e.g.*, *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 14 n.3 (S.D.N.Y. 2016) ("a plaintiff must first allege that the defendant failed to comply with Item 303 in a 10-Q or other filing").

[13] *Conagra*, 495 F. Supp. 3d at 646-47 (N.D. Ill. 2020) (quoting *Gallagher v. Abbott Labs.*, 269 F.3d 806, 810 (7th Cir. 2001)).

17

added).  Thus, even if a Section 10(b) or 14(a) claim could be premised on an Item 303 violation -- a premise rejected by several other Circuits, but not yet decided by the Seventh Circuit[14] -- Plaintiffs have not sufficiently pled, as they must, that the alleged trend was in fact *known* to any of the ATI Defendants.

## II.     PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED FOR FAILURE TO PLEAD SCIENTER

Plaintiffs' Section 10(b) claim is independently subject to dismissal for failure to allege particularized facts sufficient to plead scienter.  In order to sufficiently plead a Section 10(b) violation, the PSLRA requires that, for each alleged misrepresentation and omission, the complaint must "state with particularity facts giving rise to a strong inference" of scienter for each defendant -- *i.e.*, that when making the alleged misrepresentation or omission, *each* defendant acted with an "intention to deceive, manipulate, or defraud."  15 U.S.C. § 78u-4(b)(2); *Tellabs*, 551 U.S. at 314.[15] When it does not, "the court shall, on the motion of any defendant, dismiss the complaint."  15 U.S.C. § 78u-4(b)(3)(A).

In *Tellabs*, the Supreme Court clarified the meaning of a "strong inference" of scienter under the PSLRA.  "To qualify as 'strong,'" the inference of scienter "must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  551 U.S. at 309, 314.  The analysis requires a "comparative evaluation" that weighs "not only inferences urged by the plaintiff, . . . but also competing inferences rationally

---

[14] *See, e.g.*, *Conagra*, 495 F. Supp. at 647-48.  The Third, Ninth, and Eleventh Circuits have held that a failure to disclose under Item 303 does not automatically lead to liability under Section 10(b); to be actionable, the omission must render an affirmative statement misleading.  *See Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000); *In re Nvidia Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1331 (11th Cir. 2019).

[15] "Group pleading" is impermissible; "the plaintiffs must create a strong inference of scienter with respect to each individual defendant."  *Pugh*, 521 F.3d at 693.

18

drawn from the facts alleged." *Id.* A complaint can only survive "if a reasonable person *would*" -- not merely "*could*" -- "deem the inference of scienter cogent and at least as compelling as any opposing inference [of nonfraudulent intent] one could draw from the facts alleged." *Id.* at 324 (emphasis added).

In addition, "[a] plaintiff may 'demonstrate scienter either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litig.*, 390 F.Supp.3d 916, 933 (N.D. Ill. May 29, 2019). Under either test, Plaintiffs have not adequately pled a strong inference of scienter.

## A.      Plaintiffs' Motive And Opportunity Allegations Are Insufficient

In order to raise a strong inference of scienter through an alleged motive and opportunity to defraud, "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708 at *9 (N.D. Ill. July 12, 2006). "Motives that are generally possessed by most corporate directors and officers do not suffice." *Id.* Here, there are no stock sales by Messrs. Diab or Jordan to which Plaintiffs can point to establish motive and opportunity. *See Conagra*, 495 F. Supp. 3d at 666-67 (internal quotations omitted) ("where, as here, the allegations do not support a strong inference of scienter, a lack of stock sales can help seal the deal"). Instead, Plaintiffs' motive and opportunity allegations are limited to the generic (and grossly overbroad) assertion that "the nature of SPACs" gave Messrs. Diab and Jordan "an incentive to take liberties in touting the quality of ATI as an acquisition target because they stood to gain favorable employment by ensuring the SPAC successfully acquired a company that could employ them." Compl. ¶ 184; *see also id.* ¶ 61 (alleging that Messrs. Diab and Jordan received higher salaries, bonuses, and vesting of any then-

19

unvested equity awards as a result of the business combination). Not only is this type of employment-based motive insufficient to give rise to the requisite strong inference of scienter,[16] but even more importantly, it is wholly illogical vis-à-vis Messrs. Diab and Jordan. *They were already ATI employees*; their employment thus did not depend on the acquisition by FVAC, nor did it hinge on stockholder approval of that acquisition. In short, Plaintiffs fail to allege any "concrete and personal benefit" to either Messrs. Diab or Jordan as a result of the alleged fraud that raises *any* inference -- let alone the requisite strong inference -- of scienter.

## B. Plaintiffs' Conscious Misbehavior And Recklessness Allegations Are Insufficient

"Without a motive to defraud, a 'strong inference' of the required state of mind is difficult to make." *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2020 WL 6118571, at *7 (N.D. Ill. Oct. 16, 2020), *aff'd sub nom. City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021). Thus, Plaintiffs' allegations of conscious misbehavior or recklessness must be "correspondingly greater." *Stamatio v. Hurco Companies, Inc.*, 892 F. Supp. 214, 218 n.8 (S.D. Ind. 1995) (internal quotations omitted). Indeed, Plaintiffs must allege "highly unreasonable conduct" that involves "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant

---

[16] *See, e.g.*, *In re Allscripts, Inc. Sec. Litig.*, 2001 WL 743411 (N.D. Ill. 2001) ("Under Plaintiffs' argument, virtually any corporate executive would have the requisite intent to defraud, since most salaries and benefit package have some incentive-based dimension."); *Boca Raton Firefighters and Police Pension Fund v. Devry Inc.,* 2012 WL 1030474, at *12 (N.D. Ill. 2012) ("motive[s] to earn bonuses and awards . . . are too common among corporations and their officers to be considered evidence of scienter"); *see also Conagra*, 495 F. Supp. 3d at 665 ("[I]ncreasing a company's value, 'meeting analyst expectations and reaping higher compensation, are basic motivations not only of fraud, but of running a successful corporation. Were courts to accept these motives as sufficient to establish scienter, most corporate executives would be subject to such allegations, and the heightened pleading requirements for these claims would be meaningless.'") (quoting *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005)).

20

or is so obvious that the actor must have been aware of it." *Bally*, 2006 WL 3714708 at *5 (quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)).  Even "inexcusable negligence" is not enough.  *SPSS*, 385 F. Supp. 2d at 712.[17]

The sum total of Plaintiffs' conscious misbehavior and recklessness allegations are the uncorroborated statements of the seven FEs.  Of course, it is well-settled that confidential witness allegations are subject to a "heavy discount" and "healthy skepticism."  *Boeing*, 711 F.3d at 759; *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, 2012 WL 1068761, at *3 (N.D. Ill. Mar. 29, 2012).  In fact, "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences.  Perhaps these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they don't even exist." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007).[18]

What is more, three of the FEs (FE-3, FE-4, and FE-7) were not even employed by ATI during any portion of the Class Period, and one FE (FE-5) was employed by ATI for just one month of that period.  Compl. ¶¶ 67, 70, 84, 86.  Confidential witness allegations that "merely offer[] speculation" or parrot conclusory allegations contained in a complaint are insufficient. *Hallberg v. Am. Agencies Gen. Agencies, Inc.*, 2005 WL 563211, at *5 (N.D. Ill. Mar. 8, 2005).

---

[17] *See also Kohl's*, 895 F.3d at 936-37 ("We must consider the relative probability of whether, taken as a whole, the false statements alleged here were 'the result of merely careless mistakes at the management level based on false information fed it from below' or reflect 'an intent to deceive or a reckless indifference to whether the statements were misleading.'  If the latter inference is not at least as compelling as the former, dismissal is appropriate.") (quoting *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. 2008) (*Tellabs II*)).

[18] *Boeing*, 711 F.3d at 759 ("The sources may be ill-informed, may be acting from spite rather than knowledge, may be misrepresented, may even be nonexistent -- a gimmick for obtaining discovery costly to the defendants and maybe forcing settlement or inducing more favorable settlement terms.").  Here, at least one FE (FE-3) was fired and three others quit (FE-2, FE-4, FE-5).  Compl. ¶¶ 67, 77, 88, 185.

Instead, confidential witness allegations "must be described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *City of Warren*, 2020 WL 6118571, at *5 (internal quotations omitted). Courts steeply discount confidential witness allegations that do not explain "how or why such employees would have access to the information they purport to possess," which courts find "problematic because there is no way to tell if [the confidential witnesses] are relaying information first, second or even third hand." *City of Austin Police Ret. Syst. v. ITT Educ. Services, Inc.*, 388 F.Supp.2d 932, 943 (S.D. Ind. 2005).

In addition, with the exception of FE-1, *none* of the FEs are alleged to have had *any* direct contact with either Messrs. Diab or Jordan. Compl. ¶¶ 7, 9, 67-71, 77-88, 98-104. Relatedly, *none* of the FEs reported directly to either Messrs. Diab or Jordan; rather, each was several levels removed from ATI's Chief Executive Officer and Chief Financial Officer. *Id*. ¶¶ 67, 70, 72, 81, 83-84, 86. FE-1 is alleged to have "attended quarterly meetings" where Messrs. Diab and Jordan allegedly discussed, "among other things, attrition at ATI." *Id*. ¶¶ 9, 99-100. At these meetings, Mr. Diab purportedly "'gave a spiel' about the Company's attrition numbers" and the general "need to recruit and retain clinicians." *Id*. ¶ 100. And at a quarterly meeting in 2020 (which *pre-dated* the Class Period), FE-1 allegedly explained to Messrs. Diab and Jordan that "certain markets, like the Washington, D.C. market, were 'really bad for attrition.'" *Id.* ¶ 100. But Plaintiffs never identify when the vast majority of these meetings occurred, nor do they provide any specifics or details with respect to the alleged discussions about attrition. None of these conclusory allegations establish, as they must, that Messrs. Diab and Jordan possessed (i) knowledge that rendered any of ATI's public statements false or misleading or (ii) the requisite intent to deceive.[19]

---

[19] For similar reasons, the allegations made by FE-4 and FE-6 that, towards the end of 2020 and/or

22

Furthermore, Plaintiffs' attempts to rely on FE-1 and FE-4 for the proposition that the ATI Defendants "had access to and/or direct knowledge of [ATI's] severe attrition rates," or, "at [a] minimum recklessly disregarded information contradicting their public statements," also fail. Compl. ¶¶ 9, 98-104. "[A] complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information." *Gogo*, 414 F. Supp. 3d at 1175. "[N]ot only is mere receipt of reports insufficient to establish scienter, the inferential leap required to tie [such general allegations] to the conclusion that defendants acted knowingly or recklessly when presenting relevant information to the market is untenable given the heightened pleading standards [of the PSLRA]." *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 999 (E.D. Wis. 2009). Rather, a complaint asserting claims under the PSLRA must make "fact-based connections between a speaker, a statement, and specific, contradictory information presumably known to that speaker at the time the statement was made." *Gogo*, 414 F. Supp. 3d at 1176 (quoting *Harley-Davidson*, 660 F. Supp. 2d at 1000).

FE-1 and FE-4 generally allege that: (i) "ATI executives received reports distributed on a weekly basis that internally reported the Company's high attrition rate;" (ii) "ATI executives had

---

early 2021, non-parties Cedric Coco (ATI's former Chief Human Resources Officer) and Ray Wahl (ATI's Chief Operating Officer) "acknowledged ATI's retention troubles at an HR department lunch" and stated that "they needed to do everything in their power to hold onto people because employees were leaving at an alarming rate," respectively, fall short. Compl. ¶¶ 81, 83. Nothing in these generic comments establishes the requisite intent to deceive on the part of either Mr. Diab or Mr. Jordan. Rather, it is reasonable to infer that ATI did "everything in [its] power" while in the midst of a global pandemic with seismic impacts on, among other things, the labor market, to retain employees and, further, that ATI executives reasonably expected hiring to outpace departures thanks to such efforts. Relatedly, certain of the FEs complain about allegedly low compensation for physical therapists. *See* Compl. ¶¶ 74, 77-78, 80, 82, 101. Putting aside that Plaintiffs wholly ignore the fact that the world was in the midst of a global pandemic, the conclusory allegations about a handful of unhappy employees who are dissatisfied with their compensation levels cannot possibly suffice to establish an inference of scienter (or *any* wrongdoing for that matter). Otherwise, scienter could be found at virtually every company.

access to the Company's attrition rate through their access to ATI's databases and systems, which tracked attrition;" and (iii) a "monthly scorecard" that was "intended for the executive leadership team" included a "graph containing a trend line showing the attrition rate by months." Compl. ¶¶ 9, 99, 103-04.[20] None of these alleged reports, however, are described with the requisite particularity.[21] Indeed, there are *no* details alleged as to the specific attrition information purportedly presented and contained in any of these reports (just the FEs' general belief of what they perceived the attrition rate to be and subjective references to "high" attrition),[22] and, importantly, *none* of the FEs allege that he or she presented any of these reports directly to Mr. Diab or Mr. Jordan.[23] "Because plaintiffs have not alleged that, before or during the class period, defendants were presented with any specific information that demonstrated the scope and

---

[20] FE-7 likewise alleges that "C-suite executives at ATI had attrition numbers, which could be looked up by management on calls that FE-7 attended" (*id.* ¶ 84), but nowhere does FE-7 identify which executives purportedly attended these calls, allege that any executive actually looked up and/or received this information, or specify what "attrition numbers" were actually available and when.

[21] *See Gogo*, 414 F. Supp. 3d at 1174 (noting, for example, that "[i]f a plaintiff asserts a securities fraud claim based on 'internal documents' predicting that a corporation's cash flow would prove to be inadequate in the coming months, without indicating 'who prepared the projected figures, when they were prepared, how firm the numbers were, . . . which [of the corporation's] officers reviewed them,' or 'whether [the documents] reflected a final determination that cash flow would be inadequate,' the plaintiff's 'scanty descriptions of internal memoranda' are insufficient to state a claim with particularity").

[22] Each of FE-1 through FE-7 generally alleges either that ATI's attrition rate was "significantly higher than the industry average of about 20%" or that ATI's "attrition rate [was] about 41%." Compl. ¶¶ 7, 9, 68, 76-77, 79-81, 83. Even assuming, *arguendo*, that ATI's attrition rate was higher than the alleged industry average, Plaintiffs do not cite *any* specific document or plead *any* particularized fact, as they must, evidencing the actual knowledge of *any* of the ATI Defendants.

[23] FE-4 conclusorily alleges that "[t]he attrition rate among physical therapists was presented to Jordan, the Board of Directors, and other executives," but provides no detail on when this information was allegedly presented, by whom, and what was actually presented with respect to the attrition rate. *See id.* ¶¶ 103-04.

24

magnitude of the [attrition] problem, the inference that defendants recklessly disregarded a serious problem in omitting to disclose it to investors is not 'cogent and compelling' in light of opposing, nonfraudulent inferences." *Gogo*, 414 F. Supp. 3d at 1176.[24] For example, "defendants could have reasonably believed . . . that the problem was not serious or widespread and could be easily repaired or avoided, and it may have taken time to realize that they were wrong." *Id.* Moreover, Plaintiffs ignore the fact that, during the Class Period, COVID-19 was wreaking havoc on, among other things, the labor market across the United States. ATI, like many other companies in the health-care industry, was certainly not immune to the pandemic's effects on the labor market. *See* Ex. 2 at 7; *see also* Ex. 1 at 44-46, 169, 179-80; Ex. 4 at 7, 18-19.

### C. Plaintiffs' Additional Scienter Allegations Are Insufficient

#### 1. The Departures Of Messrs. Diab And Coco Do Not Support Scienter

Plaintiffs contend that the departures of Messrs. Diab and Coco (the latter, ATI's former Chief Human Resources Officer) without prior notice to employees support an inference of scienter. *See* Compl. ¶¶ 116, 185. The timing of these departures, however, is "neither remarkable nor surprising," nor is there any requirement that employees be provided with advance notice of management changes. *See In re Baxter Int'l Inc. Sec. Litig.,* 2021 WL 100457, at \*20 (N.D. Ill. Jan. 12, 2021) ("[a]fter a restatement of earnings and a subsequent loan default, it is unremarkable

---

[24] That certain reports allegedly set forth "the number of term[inations], resignations, what that portion was, [and] how long they had been there," Compl. ¶ 99, says nothing about the total attrition rate across the Company. Nor are there any allegations that these reports were actually viewed and read by any ATI executive, let alone Messrs. Diab or Jordan. *See Conagra*, 495 F. Supp. 3d at 660 ("Even if Plaintiffs had adequately pled access to information that would have put Defendants on notice" -- and they have not -- "there are no allegations suggesting that individual defendants actually reviewed the information"); *see also Gogo*, 414 F. Supp. 3d at 1175 ("This Court has previously explained that an inference of scienter based on the argument that the defendants 'had to be monitoring the data because the numbers were so important' is 'weak at best.'") (internal citations omitted).

that the Company would seek to change its management team"). Indeed, a corporation may choose to part ways with key employees for a variety of benign reasons, including that the "optics of changing management are better for investors and regulators." *Schiro v. Cemex, S.A.B. de C.V.,* 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019); *see also Baxter*, 2021 WL 100457, at \*20. Without more, the timing of the departures does nothing to advance Plaintiffs' case.

### 2. An SEC Document Request Does Not Support Scienter

Plaintiffs also rely on the fact that ATI received a voluntary document request from the SEC "relating to the earnings forecast and financial information referenced in the Company's July 26, 2021 Form 8-K" to support an inference of scienter. Compl. ¶ 186. However, "[k]nowing enough to launch an investigation . . . is a very great distance from convincing proof of intent to deceive." *Higginbotham*, 495 F.3d at 758.[25] "[T]he fact that an investigation was opened does not support an inference of scienter on the part of anyone," especially here given that the SEC made its request based entirely on public information. *Bally*, 2007 WL 551574, at \*5.

### D. Plaintiffs Fail To Plead Corporate Scienter

For the reasons set forth above, Plaintiffs have failed to adequately allege scienter on the part of any ATI employee that could be attributed to ATI, especially given that the inquiry "must focus on 'the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.'" *Pugh*, 521 F.3d at 697 (quoting *Tellabs II*, 513 F.3d at 708). Nor have Plaintiffs alleged statements so "dramatically" false that the statements themselves raise a strong inference of corporate scienter. *Baxter*, 2021 WL 100457, at

---

[25] *See also City of Austin,* 388 F. Supp. 2d at 942 ("the mere existence of [an] investigation cannot support any inferences of wrongdoing or fraudulent scienter on the part of the company or its senior management").

*21 (posing "the hypothetical scenario . . . where a court can strongly infer corporate scienter without the names of the individuals who concocted or disseminated the fraud" where "a company announces that it had sold one million products, but the actual number was zero") (internal quotations omitted).

## III. PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED, AT LEAST IN PART, FOR FAILURE TO PLEAD LOSS CAUSATION

To state a Section 10(b) claim, Plaintiffs also have the burden of pleading "loss causation" -- *i.e.*, that the alleged fraud "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811-12 (2011); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005). For the alleged fraud to cause the asserted loss, such loss must follow an alleged corrective disclosure that reveals the falsity of the challenged public statements. *See Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 735 F. Supp. 2d 856, 908 (N.D. Ill. 2010).[26]

Plaintiffs allege two "corrective disclosure" dates: July 26, 2021 and October 19, 2021. *See* Compl. ¶¶ 111-13, 118-19. Although the July 26, 2021 disclosure referenced the attrition issues that drove ATI's downward revision of forward-looking guidance following the close of the second quarter,[27] the October 19, 2021 disclosure did not reference such issues as a driver of ATI's further downward revision of forward-looking guidance following the close of the third quarter.

---

[26] *See also In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 545 (S.D.N.Y. 2007) ("[T]he loss causation requirement is satisfied only if the public disclosure causing injury addressed the specific fact allegedly concealed."); *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *14 (S.D.N.Y. Mar. 30, 2012) ("An alleged corrective disclosure that does not reveal the falsity of Defendants' challenged public statements cannot establish loss causation. . . .") (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005)).

[27] It is nevertheless unclear whether any of the alleged misstatements artificially inflated FVAC's stock price because it hovered around $10.00 per share from the time the proposed business combination was announced through the closing of the transaction. Ex. 6 (stock price chart reflecting an intra-day high of $10.72 and a low of $9.01 during this period). This is not surprising

Accordingly, Plaintiffs' allegations with respect to the October 19, 2021 disclosure fail to establish loss causation because Plaintiffs do not (and cannot) allege that the revised guidance that ATI disclosed on October 19, 2021 revealed *anything* about the alleged fraud -- namely, ATI's alleged failure to disclose that it was "suffering from severe attrition" which "prevented" it from meeting patient demands and increased labor costs. Compl. ¶¶ 2, 118-19. Rather, ATI specifically disclosed that it had "implemented targeted measures that *reduced* clinical staff attrition and *improved* clinical full-time equivalent (FTE) growth during the last two months of the third quarter of 2021," and expressly and exclusively attributed its revised guidance to "*lower than expected patient volume*." *Id.* ¶¶ 118-19. In other words, unlike the July 26, 2021 disclosure, ATI did *not* tie the revised guidance disclosed in October 2021 to increased attrition, and Plaintiffs' claims, at a minimum, should thus be dismissed with respect to the October 19, 2021 disclosure. *See, e.g.*, *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *28 (E.D.N.Y. Sept. 27, 2019) (dismissing plaintiff's claims to the extent they relied on a particular alleged disclosure to allege loss causation); *Di Donato v. Insys Therapeutics Inc.*, 2017 WL 3268797, at *21 (D. Ariz. Aug. 1, 2017) (holding that loss causation was adequately pled only as to certain alleged disclosures and dismissing the other alleged corrective disclosures from the action).

---

because, as is typical in a SPAC transaction, FVAC's stockholders maintained the right to vote against the transaction and redeem their shares for $10.00. In other words, they were guaranteed a 100% return on their investment should they have chosen to redeem their shares. Thus, it was very likely the nature of the SPAC structure itself, and not any alleged misstatement, that kept the stock price around $10 per share. Moreover, the fact that ATI's share price dropped to a low of $7.42 after the business combination was consummated (but before any alleged corrective disclosure) also fails to support Plaintiffs' theory of inflation, as each of the alleged misstatements relating to ATI's attrition occurred *prior to* the consummation of the transaction. Ex. 6.

28

**IV.** **PLAINTIFFS' SECTION 14(a) CLAIM MUST BE DISMISSED FOR FAILURE TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b) AND THE PSLRA**

Because Section 14(a) does not require scienter, Rule 9(b) does not automatically apply. *Venrock Assocs.*, 348 F.3d at 593. It is well established, however, that "if, while the statute or common law doctrine doesn't require proof of fraud, only a fraudulent violation is charged, failure to comply with Rule 9(b) requires dismissal of the entire charge." *Id.* Plaintiffs attempt to insulate their Section 14(a) claim by averring that they "expressly exclude and disclaim any allegation that could be construed as alleging or sounding in fraud" and, instead, pleading that the claim is "based solely on negligence." Compl. ¶¶ 21, 232. Yet, "courts generally look[] beyond such disclaimers." *Conagra*, 495 F. Supp. 3d at 636; *see also Cal. Pub. Emp. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 163-64 (3d Cir. 2004) (refusing to credit plaintiffs' "attempt to insulate their section 11 and 14(a) counts through a one-sentence disavowal of fraud allegations").

Where, as here, a Section 14(a) claim is based on the same "unified course of fraudulent conduct" as a concurrently pled Section 10(b) claim, and the Section 14(a) claim alleges that the same misrepresentations "are allegedly false or misleading for the same reasons,"[28] the Section 14(a) claim sounds in fraud and the heightened pleading requirements of Rule 9(b) and the PSLRA apply. *Conagra*, 394 F.3d at 636-37; *Kuebler v. Vectren Corp.*, 13 F. 4th 631, 638 (7th Cir. 2021) (noting that "the PSLRA imposes heightened pleading requirements on Section 14(a) plaintiffs," notwithstanding their protestations to the contrary). Plaintiffs have failed to meet their burden, and, as a result, the claim must be dismissed for this independent reason.

---

[28] *See, e.g.*, Compl. ¶¶ 1-18, 222-30.

29

## V.     PLAINTIFFS' SECTION 20(a) CLAIMS MUST BE DISMISSED

Because Plaintiffs have failed to plead a primary violation of Section 10(b) or 14(a), their control person claims under Section 20(a) likewise fail.  *See, e.g.*, *Walleye Trading LLC v. AbbVie, Inc.,* 2019 WL 4464392, at \*5 (N.D. Ill. Sept. 18, 2019), *aff'd*, 962 F.3d 975 (7th Cir. 2020) (dismissing Section 20(a) claim because plaintiff failed to plead a primary violation).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

Dated: April 11, 2022                    Respectfully submitted,

*/s/ Jason M. Rosenthal*
Jason M. Rosenthal
**MUCH SHELIST, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel: (312) 521-2437
Fax: (312) 521-2100
jrosenthal@muchlaw.com

-and-

John A. Neuwirth (*pro hac vice*)
Joshua S. Amsel (*pro hac vice*)
Stefania D. Venezia (*pro hac vice*)
Joshua M. Glasser (*pro hac vice forthcoming*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
john.neuwirth@weil.com
joshua.amsel@weil.com
stefania.venezia@weil.com
joshua.glasser@weil.com

*Counsel for ATI Physical Therapy, Inc. f/k/a Fortress Value Acquisition Corp. II, Labeed Diab, and Joseph Jordan*

30