NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI,<br><br>Defendants. | Case No. 1:21-cv-04349<br><br>Honorable Edmond E. Chang |

**MEMORANDUM OF LAW IN SUPPORT OF MR. MCKNIGHT'S AND THE FVAC DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Charles F. Smith
155 North Wacker Drive
Chicago, Illinois 60606
Phone: (312) 407-0700
Facsimile: (312) 407-0411

Scott D. Musoff
Michael M. Powell
One Manhattan West
New York, New York 10014
Phone: (212) 735-5000
Facsimile: (212) 735-2000

*Attorneys for Mr. McKnight and the FVAC Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................6

I.     PLAINTIFFS DO NOT IDENTIFY ANY MATERIAL MISSTATEMENT OR ALLEGE LOSS CAUSATION AS THEIR CLAIMS REQUIRE ....................................7

II.    PLAINTIFFS' SECTION 10(b) CLAIM AGAINST MR. MCKNIGHT SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLEAD A STRONG INFERENCE OF SCIENTER.......................................................................................7

    A.    Mr. McKnight Cannot Be Lumped in with ATI and ATIP Executives. .................7

    B.    Plaintiffs' Confused Confidential Witness Statements Do Not Demonstrate that Mr. McKnight Had Knowledge of Any ATI or ATIP Attrition Issues. ...........9

    C.    Plaintiffs' Other Scienter Allegations Are Deficient............................................10

III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. MCKNIGHT AND THE FVAC DEFENDANTS PURSUANT TO SECTION 20(A) BASED ON THE PROXY SOLICITATION MATERIALS .............................................................13

CONCLUSION..............................................................................................................................15

# **TABLE OF AUTHORITIES**

## **CASES**

Page(s)

*In re Allscripts Securities Litigation*,
 No. 00 C 6796, 2001 U.S. Dist. LEXIS 8897 (N.D. Ill. June 28, 2001) ..........................13

*Appvion, Inc. Retirement Savings & Employee Stock Ownership Plan v. Buth*,
 475 F. Supp. 3d 910 (E.D. Wis. 2020) ............................................................................9

*In re Baxter International Securities Litigation*,
 No. 19 C 7786, 2021 U.S. Dist. LEXIS 5158 (N.D. Ill. Jan. 12, 2021) ..........................12

*Brasher v. Broadwind Energy, Inc.*,
 No. 11 CV 991, 2012 WL 1357699 (N.D. Ill. Apr. 19, 2012).........................................11

*Société Générale Securities Services v. Caterpillar, Inc.*,
 No. 17 cv 1713, 2018 WL 4616356 (N.D. Ill. Sept. 26, 2018)...................................3, 14

*City of New Orleans Employees' Retirement System v. PrivateBancorp, Inc.*,
 No. 10 C 6826, 2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) ...........................................9

*Collins v. D.J. Kibort*,
 143 F.3d 331 (7th Cir. 1998).............................................................................................7

*Cornielsen v. Infinium Capital Management, LLC*,
 916 F.3d 589 (7th Cir. 2019)...........................................................................................11

*DiLeo v. Ernst & Young*,
 901 F.2d 624 (7th Cir. 1990)...........................................................................................12

*Higginbotham v. Baxter International, Inc.*,
 495 F.3d 753 (7th Cir. 2007).......................................................................................8, 10

*Laferriere v. System Parking*,
 No. 04 C 2387, 2005 WL 8178316 (N.D. Ill. Aug. 22, 2005) .........................................3

*Pugh v. Tribune Co.*,
 521 F.3d 686 (7th Cir. 2008)......................................................................... 3, 8, 9, 11

*Rehm v. Eagle Finance Corp.*,
 954 F. Supp. 1246 (N.D. Ill. 1997).......................................................................... 11, 13

*Sakhrani v. Brightpoint, Inc.*,
 No. IP 99-870-C H/G, 2001 U.S. Dist. LEXIS 5023 (S.D. Ind. Mar. 29, 2001) ..............11

*Starr v. !Hey, Inc.*,
    No. 01 C, 6087, 2003 WL 21212596 (N.D. Ill. May 23, 2003) ...................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................... 8, 10

*Wade v. WellPoint, Inc.*,
    892 F. Supp. 2d 1102 (S.D. Ind. 2012) ............................................................................ 9

## STATUTES

15 U.S.C. § 78u-4(b)(1) ............................................................................................................. 7

15 U.S.C. § 78u-4(b)(2) ............................................................................................................. 8

Defendant Andrew A. McKnight and Defendants Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati (the "FVAC Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Class Action Complaint (ECF No. 58, "AC").

## PRELIMINARY STATEMENT

As set forth in the memorandum of law filed by Defendants ATI Physical Therapy, Inc., Laheed Diab, and Joseph Jordan ("ATI Brief") in support of their concurrently-filed motion to dismiss, Plaintiffs' claims should be dismissed for, among other reasons, failing sufficiently to allege any false or misleading statements, the requisite intent, or loss causation. The FVAC Defendants and Mr. McKnight incorporate all such applicable arguments. In addition, this memorandum of law sets forth certain unique arguments applicable to them.

Plaintiffs' allegations against Mr. McKnight and the FVAC Defendants misconstrue the nature of a special purpose acquisition company ("SPAC") and seek to capitalize on overall criticisms of SPACs rather than offer particular factual allegations concerning the SPAC at issue here. A SPAC is a company that conducts an initial public offering with the purpose of using the cash raised in that IPO to then acquire an operating company. "Unlike an operating company that becomes public through a traditional IPO . . . a SPAC is a shell company when it becomes public. This means it does not have an underlying operating business . . . ."[1] Consistent with this, a SPAC and a company it targets for a business combination are legally separate entities until a transaction is completed.

---

[1] SEC's Office of Investor Education and Advocacy, *What You Need to Know About SPACs – Updated Investor Bulletin* (May 25, 2021), *available at* https://www.investor.gov/introduction-investing/general-resources/news-alerts/alerts-bulletins/investor-bulletins/what-you (last accessed April 11, 2022).

Here, the FVAC Defendants were directors of the SPAC "Fortress Value Acquisition Corp. II" ("FVAC"), and Mr. McKnight was its chief executive officer. Plaintiffs' claims arise out of alleged operational issues (employee attrition) of the target company, ATI Physical Therapy, Inc. ("ATI") that FVAC eventually acquired. Neither the FVAC Defendants nor Mr. McKnight had any role whatsoever in the day-to-day operations of ATI prior to the acquisition or after it. Despite this, Plaintiffs seek to impute intimate knowledge of the ground-level operations of ATI, and pre-merger control over the company, to them. But Plaintiffs' conflation of those individuals with ATI's executives and FVAC with ATI cannot disguise their failure to plead claims against the FVAC Defendants or Mr. McKnight.

*First*, as explained in the ATI Brief, contrary to the requirements of Section 10(b) and 14(a), Plaintiffs do not identify any material misstatement or omission, or loss causation, mandating dismissal of those claims and the derivative Section 20(a) claims based on them.

*Second*, Plaintiffs fail to adequately allege that Mr. McKnight, the only defendant here against whom Section 10(b) claims are brought, acted with scienter. Nor could they so allege: The funds with which Mr. McKnight and certain other FVAC Defendants were affiliated invested $75 million in ATI as part of the SPAC transaction, and the value of the so-called "sponsor" shares that FVAC-affiliated defendants (including Mr. McKnight) received depended solely on the post-merger success of ATI. Accordingly, there was absolutely no motive for Mr. McKnight (or any of these defendants) to have gone forward with the transaction if they had known that ATI would disclose negative news in the months following the merger. Plaintiffs' allegations are an impermissible attempt to plead fraud-by-hindsight, and their reliance on group pleading, muddled confidential witness allegations, and generalized allegations of access to

unspecified information fails to satisfy PSLRA standards. *See, e.g.*, *Pugh v. Trib. Co.*, 521 F.3d 686, 693-94 (7th Cir. 2008).

*Third*, Plaintiffs' Section 20(a) claims against Mr. McKnight and the FVAC Defendants should be dismissed because, as set forth in the ATI Brief, the underlying Section 10(b) and 14(a) claims are subject to dismissal, and because they do not allege that Mr. McKnight and the FVAC Defendants exercised actual control as their control person claims require. *See Société Générale Sec. Servs. v. Caterpillar, Inc.*, 2018 WL 4616356, at *4 (N.D. Ill. Sept. 26, 2018).

## STATEMENT OF FACTS[2]

### A. SPACs, the Merger, and Plaintiffs' Conflation of the Entities at Issue

Mr. McKnight and the FVAC Defendants are the former directors of FVAC, a SPAC formed in June 2020. (*See* AC ¶ 46.) FVAC had its initial public offering in August 2020 and then embarked on a pursuit of a suitable operating company to acquire. (*See* AC ¶ 52.) After six months, FVAC carried out a business combination with Wilco Holdco, Inc., a privately-held healthcare company providing outpatient physical therapy services under the name "ATI Physical Therapy." (*See* Smith Decl. Ex. 1 at F-7.) That transaction (the "Merger") was announced on February 22, 2021, and completed on June 17, 2021. (*See* AC ¶ 5.) Solicitation for approval of the Merger by FVAC's shareholders was made via a definitive proxy statement dated May 14, 2021 (the "Proxy Statement"). (*See* AC ¶ 33; ¶¶ 35-41.)

As the Proxy Statement describes, the Merger was structured so that Wilco Holdco, Inc. was merged into FVAC. (*See* Smith Decl. Ex. 1 at 1.) Upon the Merger, FVAC changed its name to "ATI Physical Therapy, Inc.," which is the name of the publicly-traded entity named as

---

[2] The facts set forth herein are drawn from the Amended Complaint together with those "documents appended to the complaint or incorporated in the complaint by reference." *Laferriere v. Sys. Parking*, 2005 WL 8178316, at *1 (N.D. Ill. Aug. 22, 2005). Certain documents incorporated by reference are attached to the accompanying Declaration of Charles F. Smith and referred to as "Smith Decl. Ex. _."

3

a defendant in this action. (*See id.*; *see* AC at 1.) Plaintiffs purport to use the term "the Company" and "ATI" to refer to "FVAC together with ATI Physical Therapy, Inc." (AC at 1), *i.e.*, the SPAC vehicle under both its original and new names. But, careful parsing of their allegations makes clear that they also (and more frequently) use both terms to refer to the private company that was merged into FVAC. For example, Plaintiffs allege that:

- "ATI became a publicly traded company upon the completion of a merger with FVAC." (AC ¶ 5.) As described above, Wilco Holdco, Inc. was the entity that merged "with" FVAC through the Merger, and FVAC had become publicly-traded in August 2020, not upon completion of the Merger. (*See id.* ¶ 52.)

- "ATI was initially founded as Assessment Technologies, Inc. . . . and has been providing physical therapy services since 1996." (*See id.* ¶ 46.)

- "On or about February 6, 2019, as part of the planned Merger, Defendant Diab entered into an employment agreement with the Company and became the Company's CEO, replacing McKnight, the Company's former CEO." (*Id.* ¶ 56.) The source they cite for this statement in reality states that Mr. Diab entered into an employment agreement in 2019 with "the Company," an entity that is defined in that document as the privately-held Wilco Holdco, Inc. (*See* Smith Decl. Ex. 1 at 212, 1.) That document, dated May 14, 2021, moreover lists Defendant McKnight as the CEO of FVAC. (*See, e.g.*, *id* at 1, 3.)

For the purposes of this motion, Mr. McKnight and the FVAC Defendants will use the term "FVAC" to refer to the SPAC vehicle as it existed pre-Merger, "ATI" to refer to the privately-held company providing physical therapy services that was merged into FVAC, and "ATIP" to describe the entity that survived the Merger and is named as a defendant.

### B. Mr. McKnight and the FVAC Defendants

Mr. McKnight and the FVAC Defendants were each directors of FVAC, and Mr. McKnight was its CEO. (*See* AC ¶ 36-41; Smith Decl. Ex. 1 at 7.) Plaintiffs allege that the FVAC Defendants held such positions "at all relevant times." (*See* AC ¶ 36-41.) The Proxy Statement further explains that the Merger was structured so that the FVAC directors resigned from FVAC upon the completion of the Merger on June 17, 2021, other than Mr. McKnight, who

4

assumed the position of director on ATIP's board post-Merger. (*See* Smith Decl. Ex. 1 at 155.) Several aspects of the Merger ensured that Mr. McKnight's and the FVAC Defendants' interests remained tied to ATIP post-Merger, however. First, as the Proxy Statement reported, certain credit funds with which Mr. McKnight and a number of FVAC Defendants were (and are) affiliated invested $75 million in ATIP as part of the Merger. (*See* Smith Decl. Ex. 1 at 4-5.) Next, the Merger featured a unique provision whereby so-called "sponsor" shares held by FVAC, the FVAC Defendants, and Mr. McKnight were subject to certain vesting provisions, which made the vesting of those shares contingent on ATIP's achievement of share price milestones of $12, $14, and $16 per share—each greater than the $10 per share price of the Merger. (*See* Smith Decl. Ex. 1 at Annex E and E-5.)

The Amended Complaint contains very few allegations against the FVAC Defendants. Plaintiffs allege only that each was a director (*see* AC ¶¶ 35-42), and otherwise refer to them as a group with the so-called "ATI Individual Defendants," which includes Mr. McKnight and Defendants Diab and Jordan, the CEO and CFO of ATI and ATIP. (*See* AC ¶¶ 43, 44, 99, 100.) Plaintiffs cite three statements from confidential witnesses supposedly applicable to the FVAC Defendants. They allege that "[a]ccording to FE-1, the Company's officers and directors, including the ATI and FVAC Individual Defendants, had access to and/or received an internally distributed weekly report that detailed, among other things, the attrition rate among physical therapists." (AC ¶ 99.) They also allege that "[a]t quarterly meetings, the ATI Individual Defendants and the FVAC Defendants addressed the sky-high attrition rate among clinicians," and that "ATI executives (including the ATI Individual Defendants and the FVAC Defendants) had access to this information [on attrition] and specifically requested it." (*Id.* ¶ 100-01.)

5

The foregoing confidential witness allegations are largely made without reference to timeframe. With regard to the timing of the attrition issues, Plaintiffs allege that attrition rates began to drastically increase above the industry average "[b]eginning in or around November 2020 and into early 2021," though, as described above, the confidential witnesses are vague on when (if ever) this was conveyed to ATI's executives. (AC ¶ 65.) The Proxy Statement explains that FVAC did not begin discussions regarding a potential transaction with ATI until November 2020 and did not even enter into a confidentiality agreement with ATI to discuss a potential transaction until December 13, 2020. (*See* Smith Decl. Ex. 1 at 93.)

The sole allegations specific to Mr. McKnight are that (i) he was the CEO of FVAC and is now an ATIP director, (ii) he stated on February 22, 2021, that FVAC had "followed ATI for a long time" and "watched and admired the company's growth" since 2016, (iii) Defendant Diab supposedly replaced him as CEO,[3] and (iv) he signed the 8-K filed at the commencement of the class period. (*See* AC ¶¶ 33, 54, 56, 123.) He is otherwise grouped with ATI's and ATIP's CEO and CFO as an "ATI Individual Defendant," despite the facts that he (i) held no position with ATI pre-Merger and, (ii) post-Merger, is just an outside director of ATIP, not an executive.

## ARGUMENT

Plaintiffs do not meet the high pleading bar imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Plaintiffs bring claims under Sections 10(b) and 20(a) against Mr. McKnight (and the other "ATI Individual Defendants") for supposed misstatements. Plaintiffs also bring claims pursuant to Sections 14(a) and Section 20(a) against the ATI Individual and FVAC Defendants relating to supposedly misleading statements in the Proxy Statement and other proxy solicitation materials. None of these claims can survive a motion to dismiss.

---

[3] As described above, Plaintiffs here misread their source document. Defendant Diab was CEO of ATI and ATIP.

The PSLRA requires that Plaintiffs "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). As is further explained in the ATI Brief, the Amended Complaint does not meet this standard as to *any* defendant. But its pleading deficiencies with regard to Mr. McKnight and the FVAC Defendants are even more glaring, and compel dismissal of the claims against them with even greater force.

## I. PLAINTIFFS DO NOT IDENTIFY ANY MATERIAL MISSTATEMENT OR ALLEGE LOSS CAUSATION AS THEIR CLAIMS REQUIRE

As set forth the ATI Brief, Plaintiffs' claims should be dismissed because they do not identify any actionable misstatement, or allege that loss causation exists with regard to the disclosure made in October 2021. Mr. McKnight and the FVAC Defendants respectfully incorporate and refer the Court to the arguments in the ATI Brief rather than repeat them here.

## II. PLAINTIFFS' SECTION 10(B) CLAIM AGAINST MR. MCKNIGHT SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLEAD A STRONG INFERENCE OF SCIENTER[4]

### A. Mr. McKnight Cannot Be Lumped in with ATI and ATIP Executives.

The Amended Complaint fails to state adequately a Section 10(b) claim against Mr. McKnight—the sole FVAC-affiliated defendant against whom Plaintiffs bring Section 10(b)

---

[4] Although Plaintiffs state at one sentence in the Amended Complaint that the FVAC Defendants are among the defendants against whom they bring claims pursuant to Section 10(b) (*see* AC ¶ 19), this appears to be a typographical error, as it is belied by numerous other sections stating clearly that only the "ATI Individual Defendants" and ATI are the subject of the Section 10(b) claims, including in the counts. (*See* AC ¶¶ 187, 205, 210, 220, 217.) To the extent that Plaintiffs did intend to bring Section 10(b) claims against the FVAC Defendants, those claims should be dismissed for failure to comply even with Rule 8, let alone Rule 9(b) and the PSLRA. *See, e.g.*, *Collins v. D.J. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."); *see also, e.g.*, *Evans v. Einhorn*, 855 F.2d 1245, 1249 (7th Cir. 1988) (where a "careful reading" of "ambiguous" complaint revealed that defendant was "not named as a defendant" in count 1, motion by defendant to dismiss count 1 was "denied as moot"). And any such claims are further subject to dismissal on the same grounds as the claims against Mr. McKnight and for the reasons set forth here and in the ATI Brief.

claims—because Plaintiffs do not sufficiently plead scienter on his part. To plead a claim under Section 10(b), the PSLRA requires Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "Th[e] 'required state of mind' is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007) (citation omitted). To plead a "strong inference" of scienter, Plaintiffs must allege facts sufficient for a "reasonable person [to] deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Notably, Plaintiffs "must create a strong inference of scienter ***with respect to each individual defendant***." *Pugh*, 521 F.3d at 693 (emphasis added). Plaintiffs, who elide the facts that distinguish Mr. McKnight from the ATI executives against whom the Section 10(b) claim is also brought, disregard this directive.

Despite being labeled an "ATI Individual Defendant," Mr. McKnight is not similarly situated to the other "ATI Individual Defendants," Defendants Diab and Jordan, who were executives and officers of ATI pre-Merger (and occupied such roles for several years prior) and executives and officers of ATIP post-Merger. (*See* AC ¶¶ 31-32.)[5] Mr. McKnight, in contrast, was a director and CEO of ***FVAC*** pre-Merger (and held no position with ATI) and post-Merger has been only an outside director of ATIP. (*See id.* ¶ 33.) This is not mere semantics. The supposed misrepresentations here (*see* AC ¶¶ 123-172) pertain to the operations of ATI and ATIP, ***not*** FVAC. Plaintiffs provide no basis from which it may be plausibly inferred that Mr. McKnight was aware of any retention issues at ATI pre-Merger, during which period he had ***no***

---

[5] This by no means suggests that Plaintiffs have adequately stated a claim against those defendants.

connection to that company, or post-Merger, when he was only an outside director. *See, e.g.*, *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 475 F. Supp. 3d 910, 933 (E.D. Wis. 2020) (claims against outside director defendants dismissed for failure to plead scienter).

Plaintiffs' attempt to remedy this issue by lumping Mr. McKnight in with Defendants Diab and Jordan as an "ATI Individual Defendant" is a tactic roundly rejected in this Circuit. *See, e.g.*, *City of New Orleans Emps. Ret. Sys. v. PrivateBancorp, Inc.*, 2011 2011 WL 5374095, at *8 (N.D. Ill. Nov. 3, 2011) ("[L]umping all defendants together constitutes group pleading, which fails to meet the heightened PSLRA pleading requirements." (quoting *Pugh*, 521 F.3d at 693-94)); *Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1127 (S.D. Ind. 2012) (no scienter where "Plaintiff generally groups the individual Defendants together"). So too here.

### B. Plaintiffs' Confused Confidential Witness Statements Do Not Demonstrate that Mr. McKnight Had Knowledge of Any ATI or ATIP Attrition Issues.

Plaintiffs' heavy reliance on confidential witness statements does not bridge the gap. The Amended Complaint features statements of former ATI employees to argue that the "ATI Individual Defendants" had "direct knowledge of the Company's severe attrition rates." (AC ¶ 99.) Specifically, they allege "the Company's officers and directors . . . had access to and/or received an internally distributed weekly report that detailed, among other things, the attrition rate;" that Defendants Diab, Jordan, and "other Company officers and directors" "frequently" attended a quarterly "all-hands meeting" during which attrition issues were discussed; that "ATI executives . . . had access to this information [on new hiring rates] and specifically requested it;" and that "monthly slide decks" describing attrition were prepared for "executive leadership, including Diab and Jordan" and "the Board of Directors, and other executives." (AC ¶¶ 99-104.)

These allegations are striking for their lack of specificity, exacerbated by Plaintiffs' confusing use of "ATI" and "the Company" to refer both to ATI and to ATIP. Not a single

9

allegation specifies timeframe or date, nor does it make sense for one of these confidential witness's reference to "directors" to have included Mr. McKnight, who was *never* a director or officer of ATI and only an outside director of ATIP.[6] Nor does any scienter allegation refer by name to Mr. McKnight (in contrast to specific references to Defendants Diab and Jordan, *id*.).

Plaintiffs also use undefined or catchall terms like "operational leadership," "executive leadership," or "other executives" (AC ¶¶ 100, 103, 104) in their scienter allegations, but do not specifically allege that Mr. McKnight was a part of that group. And other allegations undermine that inference. Plaintiffs cite a confidential witness, "FE-4," to suggest that the "ATI Individual Defendants" were provided monthly slide decks describing attrition rates, which FE-4 supposedly prepared. (AC ¶ 103-04.) Elsewhere, however, they allege that FE-4 left ATI in December 2020. (*See id.* ¶ 86.) Mr. McKnight did not become an ATIP director until six months after FE-4's departure, and as set forth above, FVAC did not even execute a confidentiality agreement with ATI until December 2020, when FE-4 was leaving. This confused and contradictory pleading falls far short of meeting the standards imposed by the PSLRA for alleging scienter.

### C. Plaintiffs' Other Scienter Allegations Are Deficient.

Even if group pleading were permitted, Plaintiffs' claims against Mr. McKnight still fail because none of the scienter allegations meets the *Tellabs* standard. Plaintiffs' confidential

---

[6] While Plaintiffs lace the confidential witness allegations with suggestions that the individuals with access to this information included the "FVAC Defendants" (*see, e.g.*, AC ¶¶ 99, 100, 101), this only highlights the slipshod nature of their pleading. Plaintiffs do not provide any basis to support their implicit suggestion that the directors of FVAC—a separate legal entity—would have had regular access to ATI's confidential internal information, which simply is not plausible. *See, e.g., Higginbotham*, 495 F.3d at 757-58 (parent/subsidiary relationship not grounds to infer that managers of parent had same knowledge as managers of subsidiary). And Plaintiffs of course offer no basis to believe that the FVAC Defendants would have had access to such information post-Merger, at which point they held no positions with ATIP. The more compelling inference is that, where the confidential witnesses mention providing information to "directors," they refer to the directors of ATI, not the FVAC Defendants. The further inference from this is that the confidential witness allegations are based on observations made pre-Merger, before Mr. McKnight took his ATIP board position.

witness allegations amount to claims that the "ATI Individual Defendants" had access to information regarding attrition. But "a complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information." *Cornielsen v. Infinium Cap. Mgmt.*, *LLC*, 916 F.3d 589, 602 (7th Cir. 2019) (quoting *Pugh*, 521 F.3d at 694)). Plaintiffs additionally cite Mr. McKnight's signature of the Proxy Statement and a Form 8-K announcing the Merger (AC ¶¶ 33, 54, 123), but "[a]ffixing one's signature to a document that contains misleading information does not, standing alone, create a strong inference of scienter." *Brasher v. Broadwind Energy, Inc*., 2012 WL 1357699, at *11 (N.D. Ill. Apr. 19, 2012).

Next, the Amended Complaint purports to allege scienter on the basis that the defendants "had an incentive to take liberties in touting the quality of ATI as an acquisition target because they stood to gain favorable employment by ensuring the SPAC successfully acquired a company that could employ them . . . ." (AC ¶ 184.) This allegation is facially deficient as it relates to Mr. McKnight. He is an outside director of ATIP, not "employed" by it. Accordingly, any suggestion that he was motivated to engage in misrepresentation to effectuate the Merger and ensure his post-Merger "employment" is speculative and belied by the actual events. *See Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1254 n.4 (N.D. Ill. 1997) ("[P]urely speculative argument cannot, without factual substantiation, support a finding of scienter."); *Sakhrani v. Brightpoint, Inc.*, 2001 U.S. Dist. LEXIS 5023, at *46 (S.D. Ind. Mar. 29, 2001) (scienter inadequately pled where plaintiffs offered only "bald speculation" that defendants were motivated to engage in fraud "loosely based upon information [regarding potential conflict of interest] disclosed in proxy statement"). Indeed, the contrast between the flimsy nature of Plaintiffs' conflict-of-interest speculation and other aspects of the Merger fatally undermines the

11

conclusion that Mr. McKnight held a motive to defraud. Namely, the so-called "sponsor shares" to which Mr. McKnight (like FVAC and other FVAC directors) were entitled from the Merger only vested (and, thus, had any value) based on ATIP performing well post-Merger. Moreover, Mr. McKnight was involved with the funds that invested $75 million in ATIP in the Merger. It is nonsensical to infer that Mr. McKnight would have proceeded with the Merger if he had been aware that the alleged issues at ATI would come to light just weeks after it was consummated. *See, e.g.*, *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) (scienter not pled where "[t]he complaint does not allege that E & W had anything to gain from any fraud").

Plaintiffs also cite Mr. McKnight's statement that FVAC "followed ATI for a long time . . . [and] watched and admired the company's growth . . . " (AC ¶ 54.) Nothing in this statement indicates that FVAC, Mr. McKnight, or any FVAC Defendant had access to any information regarding attrition issues. Indeed, the statement does not even suggest that FVAC had access to *any* internal information regarding ATI. It thus does not support any inference of scienter. *See, e.g.*, *In re Baxter Int'l Sec. Litig.*, 2021 U.S. Dist. LEXIS 5158, at *41 (N.D. Ill. Jan. 12, 2021) (allegations of access to information insufficient where plaintiffs had not specified what "non-public and proprietary" information defendants had access to).[7]

Finally, Plaintiffs' intimations that SPAC vehicles are more likely to be associated with fraud (*see, e.g.*, AC ¶¶ 5, 48-51) do not suffice to plead scienter. First, they are groundless. The SEC official's statement that they cite to support that SPACs are "magnets for fraud" (*see* AC ¶ 6 n.1; *id.* ¶ 48) does not remotely suggest that SPACs engage in fraud (or even that they are "naturally entice[d] to do so"). (*Id.*) Instead, the official states that the SPAC regulatory regime

---

[7] That FVAC followed ATI for a long time was no surprise, as the Proxy Statement discloses that "[v]arious investment funds managed by affiliates of [FVAC]" were lenders to ATI. (*See* Smith Decl. Ex. 1 at 4-5.)

12

is such that sponsors and targets may "feel comfortable presenting projection and other valuation material of a kind that is not commonly found in conventional IPO prospectuses." (*See id.*) Second, even if Plaintiffs had not misrepresented that statement, they offer no reason to suppose that a single statement by a single official accurately describes the entire SPAC industry. Third, accepting that the mere form of a SPAC transaction—a form blessed by regulators—contributes to an inference of scienter ignores that allegations of motive to commit fraud cannot be "general." *Rehm Eagle Fin. Corp.*, 954 F. Supp. at 1253-54. The Court should reject Plaintiffs' novel scienter theory and dismiss the Section 10(b) claims against Mr. McKnight.[8]

### III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MR. MCKNIGHT AND THE FVAC DEFENDANTS PURSUANT TO SECTION 20(A) BASED ON THE PROXY SOLICITATION MATERIALS[9]

Plaintiffs' second set of Section 20(a) claims, based on their Section 14(a) claims, should be dismissed on multiple separate grounds. First, because Section 20(a) claims are derivative of the Section 14(a) claims, they must be dismissed alongside those claims. *See, e.g.*, *In re Allscripts Sec. Litig.*, 2001 U.S. Dist. LEXIS 8897, at *34. Second, Plaintiffs' Section 20(a) claims should be dismissed because Plaintiffs do not allege: "[1] that each individual defendant exercised general control over the primary violator's operations; and [2] that each individual defendant possessed the power or ability to control the specific transaction or activity which the primary violation was predicated, whether or not that power was exercised." *Société Générale*, 2018 WL 4616356, at *8. The Section 20(a) claims are based on the following allegations:

> By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC

---

[8] As the first Section 20(a) claim against Mr. McKnight is derivative of the Section 10(b) claim, it should be dismissed. *See, e.g.*, *In re Allscripts Sec. Litig.*, 2001 U.S. Dist. LEXIS 8897, at *34 (N.D. Ill. June 28, 2001).

[9] As described above, Mr. McKnight and the FVAC Defendants also move for dismissal of Plaintiffs' Section 14(a) claims and respectfully incorporate and refer the Court to the arguments on those claims in the ATI Brief.

> and disseminated to the investing public, the ATI Individual Defendants and the FVAC Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The ATI Individual Defendants and the FVAC Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected . . . The ATI Individual Defendants and the FVAC Defendants also reviewed the Merger agreement and voted to approve the Merger, signed the Proxy Solicitations, and solicited approval of the Merger.

(AC ¶ 248-49). These generic allegations are not supported with specific details of general and specific control. For example, these allegations use "and/or" language, fail to specify whether materials were actually provided before issuance rather than "shortly thereafter," and do not specify what materials were provided to what defendant. And the allegations are additionally belied by the documents incorporated by reference in the Amended Complaint. Plaintiffs plead that the "FVAC Defendants . . . signed the Proxy Solicitations," for example, but the only documents bearing a signature—the Proxy Statement and the Form 8-K filed on February 22, 2021—were signed by Mr. McKnight, not any FVAC Defendant,[10] and none of the other so-called "Proxy Solicitations" are signed at all. (*See* Smith Decl. Exs. 2-10.) Plaintiffs in effect rest solely on Mr. McKnight's and the FVAC Defendants' corporate status, ignoring that "a plaintiff may not premise control person liability solely upon status within the company." *Starr v. !Hey, Inc.*, 2003 WL 21212596, at *4 (N.D. Ill. May 23, 2003).

Further, the allegations are generalized, rather than tailored to each individual defendant and each alleged misstatement, and thus do not offer any basis to suppose that Mr. McKnight and the FVAC Defendants exercised *any* level of control over *anything*. Indeed, Plaintiffs

---

[10] The FVAC Defendants' signatures do appear on two documents appended to the Proxy Statement, but neither is addressed to shareholders or contains statements Plaintiffs contend to be misleading.

14

essentially plead to the contrary at least with regard to the FVAC Defendants. They allege that "[i]n particular, the *ATI Individual Defendants* had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same." (AC ¶ 249 (emphasis added).) But with regard to Mr. McKnight, Plaintiffs offer no allegations to support their bare assertion that he actually exercised "direct and supervisory involvement in the day-to-day operations" like that of the other ATI Individual Defendants, the company's most senior executives. Accordingly, Plaintiffs' second set of Section 20(a) claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. McKnight and the FVAC Defendants respectfully request that the Amended Complaint be dismissed with prejudice.

Dated: April 11, 2022

Respectfully submitted,

/s/ Charles F. Smith (Illinois Bar 6195537)
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
Charles F. Smith
155 N. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 407-0700
Fax: (312) 407-0411
charles.smith@skadden.com

Scott D. Musoff
Michael M. Powell
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

15

scott.musoff@skadden.com
michael.powell@skadden.com

*Counsel for Defendants Andrew A. McKnight, Joshua A. Pack, Aaron F. Hood, Carmen A. Policy, Marc Furstein, Leslee Cowen, Rakefet Russak-Aminoach, and Sunil Gulati*

16