**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated, | |
| | Case No. 1:21-cv-04349 |
| Plaintiffs, | Honorable Edmond E. Chang |
| vs. | |
| ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE ATI DEFENDANTS' MOTION TO DISMISS THE
<u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

MUCH SHELIST P.C.
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel: (312) 521-2437
Fax: (312) 521-2100

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants ATI Physical
Therapy, Inc. f/k/a Fortress Value Acquisition
Corp. II, Labeed Diab, and Joseph Jordan*

Dated: July 25, 2022

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT.................................................................................................................................2

    I.      THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION ........................................................................................................2

          A.     Plaintiffs Fail To Plead An Actionable Misstatement ...............................2

               1.     The Challenged Statements Of Optimism And Puffery Are Not Actionable ................................................................................2

               2.     The Challenged Forward-Looking Statements Are Protected By The PSLRA Safe Harbor............................................4

               3.     The Challenged Statements Of Opinion Are Not Actionable..........7

               4.     The Challenged Statement Of Historical Fact Is Not Actionable ..................................................................................8

          B.     Plaintiffs Fail To Plead An Actionable Omission.....................................8

    II.     PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED FOR FAILURE TO PLEAD SCIENTER ........................................................................8

    III.    PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED, IN PART, FOR FAILURE TO PLEAD LOSS CAUSATION..................................14

    IV.    PLAINTIFFS' SECTION 14(a) CLAIM MUST BE DISMISSED FOR FAILURE TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b) AND THE PSLRA.......................................14

    V.     PLAINTIFFS' "CONTROL PERSON" CLAIMS FAIL ....................................15

CONCLUSION.............................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                           **Page(s)**

*Arazie v. Mullane*,
    2 F.3d 1456 (7th Cir. 1993) ........................................................................5

*In re Ascena Retail Grp., Inc. Sec. Litig.*,
    2022 WL 2314890 (D.N.J. June 28, 2022) .................................................7

*In re Bally Total Fitness Sec. Litig.*,
    2007 WL 551574 (N.D. Ill. Feb. 20, 2007) ..............................................13

*In re Baxter Int'l Inc. Sec. Litig.*,
    2021 WL 100457 (N.D. Ill. Jan. 12, 2021)...............................................13

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
    8 F.4th 592 (7th Cir. 2021) .......................................................................3

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
    2020 WL 6118571 (N.D. Ill. Oct. 16, 2020), *aff'd sub nom. City of Taylor*
    *Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021)..................4

*In re Fed.-Mogul Corp. Sec. Litig.*,
    166 F. Supp. 2d 559 (E.D. Mich. 2001)...................................................4, 6

*Fryman v. Atlas Fin. Holdings, Inc.*,
    2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) .............................................4

*Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third*
    *Bancorp*,
    2022 WL 1642221 (N.D. Ill. May 24, 2022) ...........................................12

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
    437 F.3d 588 (7th Cir. 2006), *rev'd on other grounds*, 551 U.S. 308 (2007)...............4

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ...................................................................12

*Marks v. CDW Comput. Ctrs., Inc.*,
    122 F.3d 363 (7th Cir. 1997) .....................................................................4

*In re Newell Rubbermaid Inc. Sec. Litig.*,
    2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) .............................................4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..................................................................................7

*Petri v. GeaCom, Inc.*,
   2018 WL 1695367 (N.D. Ill. Apr. 6, 2018) ...................................................3

*Pierrelouis v. Gogo, Inc.*,
   414 F. Supp. 3d 1164 (N.D. Ill. 2019) ....................................................5, 11

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ..................................................................12

*Searls v. Glasser*,
   64 F.3d 1061 (7th Cir. 1995), *reh'g and suggestion for reh'g en banc denied*
   (Nov. 29, 1995) .......................................................................................3

*In re Sears, Roebuck & Co. Sec. Litig.*,
   291 F. Supp. 2d 722 (N.D. Ill. 2003) .........................................................12

*Stamatio v. Hurco Cos.*,
   892 F. Supp. 214 (S.D. Ind. 1995) ..............................................................9

*Stavros v. Exelon Corp.*,
   266 F. Supp. 2d 833 (N.D. Ill. 2003) ...........................................................6

*In re U.S. Aggregates, Inc. Sec. Litig.*,
   235 F. Supp. 2d 1063 (N.D. Cal. 2002) ......................................................13

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ....................................................................6

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
   495 F. Supp. 3d 622 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus.
   Pension Fund v. Conagra Brands, Inc.*, 2022 WL 1449184 (7th Cir. May 9,
   2022) ....................................................................................................11

*Zebulon Enterprises, Inc. v. DuPage Cnty.*,
   438 F. Supp. 3d 881 (N.D. Ill. 2020) ...........................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009).........................13

## PRELIMINARY STATEMENT[1]

The ATI Defendants established in their opening brief that *all* of Plaintiffs' claims must be dismissed because, *inter alia*, Plaintiffs fail to plead with particularity that the ATI Defendants knew that ATI was suffering from "severe attrition" among its physical therapists during the purported Class Period and intentionally failed to disclose such information. Ultimately, Plaintiffs' lack of particularity is fatal. For at least the following reasons, the Complaint should be dismissed with prejudice.

*First*, as established in the ATI Defendants' opening brief, none of the alleged misstatements are actionable as a matter of law: they are statements of puffery and optimism; forward-looking statements (accompanied by adequate risk disclosures) protected by the PSLRA safe harbor; opinions; or demonstrably accurate statements of historical fact. There is also no actionable omission because Plaintiffs have not established that increased attrition was a trend "known" to any of the ATI Defendants. Nothing in Plaintiffs' opposition undermines the ATI Defendants' showing on these issues. *See* Point I, *infra*.

*Second*, Plaintiffs' claim under Section 10(b) is independently subject to dismissal because the Complaint is devoid of particularized factual allegations sufficient to plead scienter. The only motive Plaintiffs actually plead in the Complaint (*i.e.*, employment-related incentives) is insufficient as a matter of law. And, again, nowhere do Plaintiffs demonstrate that the ATI Defendants *knew* of the Company's purportedly high attrition rate during the Class Period.

---

[1] Capitalized terms have the same definitions as in the ATI Defendants' opening brief in support of their motion to dismiss. References to "Defs.' Br." are to the ATI Defendants' opening brief and references to "Pls.' Opp." are to Plaintiffs' opposition brief. "Ex. __" refers to exhibits attached to the Declaration of Stefania D. Venezia, dated April 11, 2022, and filed contemporaneously with the ATI Defendants' opening brief.

Moreover, Plaintiffs' reliance on confidential former employees ("FEs") does not salvage their claim. Plaintiffs do not dispute that three of the FEs were not even employed by ATI during any portion of the Class Period, one FE was employed by ATI for only a single month of that period, and, more importantly, *none* reported directly to either Mr. Diab or Mr. Jordan. Consequently, there is not a single non-conclusory allegation demonstrating that either Mr. Diab or Mr. Jordan *actually knew* that attrition allegedly was at a high of approximately 40% during the Class Period. *See* Point II, *infra*.

*Third*, Plaintiffs' Section 10(b) claim is also independently subject to dismissal with respect to the October 19, 2021 alleged corrective disclosure because Plaintiffs have failed to plead loss causation for that date and its associated stock drop. Plaintiffs' opposition concedes that lower visit volume -- *not* clinical staff attrition -- drove ATI's decision to further reduce guidance. *See* Point III, *infra*.

*Fourth*, Plaintiffs do not seriously contest that their Section 14(a) claim sounds in fraud and, thus, that it is subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. Plaintiffs' failure to plead with particularity dooms the claim. *See* Point IV, *infra*.

*Finally*, because Plaintiffs fail to allege a primary violation of the Exchange Act, their "control person" claims fail as well. *See* Point V, *infra.*

**ARGUMENT**

**I.** **THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION**

    **A.** **Plaintiffs Fail To Plead An Actionable Misstatement**

        **1.** **The Challenged Statements Of Optimism And Puffery Are Not Actionable**

As demonstrated in the ATI Defendants' opening brief, many of the challenged statements -- including that ATI boasts "very high retention" and "low turnover," and "[a]ttractive [r]ecruiting

2

and [r]etention [c]apabilities" -- are textbook puffery. Defs.' Br. at 10. In response, Plaintiffs attempt to characterize such alleged misstatements as "[c]omparative [s]tatements [a]bout [r]etention [r]ates," and assert that the inclusion of "comparative adjectives" makes these statements "objectively falsifiable." Pls.' Opp. at 15-16. According to Plaintiffs, "investors would have understood these statements to be comparing the retention rates of ATI to the average retention rate in the physical therapy industry." *Id.* at 15. But Plaintiffs cite *no* authority for the unfounded proposition that the inclusion of comparative adjectives such as "high" and "low" necessarily implies a comparison to the "industry average" and renders the statements objectively "falsifiable." Nor do Plaintiffs anywhere establish that such statements somehow could be *material* to investors. *See Searls v. Glasser,* 64 F.3d 1061, 1067 (7th Cir. 1995) ("Portraying disposition gains as 'high' is of no help to an investor. Does it mean high relative to the previous year or the previous few years? Or does it mean high relative to revenues as a whole? How far into the future does it extend?").[2]

Indeed, the ATI Defendants' opening brief cited a litany of similar statements containing "comparative adjectives" that courts deemed to be puffery and, thus, immaterial and non-actionable. *See* Defs.' Br. at 10-11; *see also Petri v. GeaCom, Inc.*, 2018 WL 1695367, at *6 (N.D. Ill. Apr. 6, 2018) ("[S]tatements that a company has a 'strong balance sheet,' 'proven record of growth,' is 'the fastest growing . . . company,' or is 'well-positioned to continue creating value' have been held immaterial as a matter of law."). And, Plaintiffs' own authorities dismissed as puffery a defendant's statement that "'demand for our core optical products . . . remains strong,'"

---

[2] The case Plaintiffs cite on this point does not alter the analysis. *See* Pls.' Opp. at 15 (citing *City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021)). The statement at issue in *Zebra Technologies* that the court held was non-actionable puffery -- that integration was "progressing as planned" (8 F.4th at 595) -- is no different than the statements at issue in this case.

even though it contained a comparative adjective ("strong"), because such "vague comments" were "unlikely to induce an investor to purchase [the defendant's] stock." *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597 (7th Cir. 2006), *rev'd on other grounds*, 551 U.S. 308 (2007).[3]

In short, the statements at issue make no comparison to the industry or the market as a whole, make no reference to any comparative metric, date range, or reference point, and are simply too vague to affect the total mix of information upon which a reasonable investor would typically rely. *See* Defs.' Br. at 10-11. For the reasons stated above and in the ATI Defendants' opening brief, *see id.*, all such statements (Compl. ¶¶ 124, 129, 138-39, 143, 152, 167) should be dismissed as non-actionable puffery.[4]

### 2. The Challenged Forward-Looking Statements Are Protected By The PSLRA Safe Harbor

The ATI Defendants' opening brief further established that the PSLRA safe harbor for forward-looking statements covers many of the remaining alleged misstatements (Compl. ¶¶ 125,

---

[3] The Seventh Circuit, in the same opinion, found a similar statement -- that "[a]lthough we introduced the product nearly 10 years ago, it's still going strong" -- not to be puffery only because its "place in the 'frequently asked questions' section of the Annual Report suggests that the answer was particularly important for investors." *Id.* Meanwhile, none of Plaintiffs' other cases address statements even remotely akin to those at issue here; one does not even address puffery at all. *See Fryman v. Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, at *20 (N.D. Ill. Apr. 18, 2022) (declining to dismiss as puffery the statement that "[o]ur team is confident that we have addressed the issues at the heart of this problem, have taken appropriate steps"); *Marks v. CDW Comput. Ctrs., Inc.*, 122 F.3d 363, 370 (7th Cir. 1997) (not a puffery case).

[4] Plaintiffs also argue that dismissal on puffery grounds is inappropriate on a motion to dismiss. *See* Pls.' Opp. at 16. Plaintiffs are wrong. *See, e.g.*, *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2020 WL 6118571, at *8 (N.D. Ill. Oct. 16, 2020) (dismissing complaint, including statements deemed to be puffery, "[b]ecause Plaintiff failed to plead material misrepresentations . . . as well as failed to meet the heightened pleading standards"), *aff'd sub nom. City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021); *see also In re Newell Rubbermaid Inc. Sec. Litig.*, 2000 WL 1705279, at *7 (N.D. Ill. Nov. 14, 2000) (dismissing complaint, including statements deemed to be puffery, because where "a reasonable investor could not have been swayed by an alleged misstatement, a court may determine as a matter of law that the misstatement was not material."); Defs.' Br. at 10-11 (citing cases).

4

131, 133, 141, 145, 147, 154, 156, 161, 163) and, thus, requires that Plaintiffs' claims be dismissed with respect to those statements. *See* Defs.' Br. at 12-14. As set forth below, Plaintiffs' attempts to establish otherwise fail. Pls.' Opp. at 12-14, 16-19.[5]

*Hypothetical Risk Statements.* Plaintiffs contend that ATI's cautionary language accompanying its forward-looking statements was insufficient because the risk factors were themselves misleading and, therefore, not sufficiently "meaningful." *Id.* at 11-14, 18, 19. Further, Plaintiffs allege that "Defendants repeatedly presented problems with ATI's therapist retention as hypothetical future possibilities," when the risk had already come to pass. *Id.* at 12. Plaintiffs, however, have not pled with particularity that ATI's supposedly high attrition rate had already materialized when the allegedly misleading risk disclosures were made. Plaintiffs repeatedly trumpet -- and, in fact, their claims depend on -- allegations by certain FEs that ATI's attrition rate had reached a high of approximately 40% during the Class Period (*see* Compl. ¶¶ 7, 66, 76, 77, 79, 81), which was supposedly reflected in "weekly reports" that were "distributed" within ATI. *Id.* ¶ 79. But *none* of the FEs identify *any* specific report by date or name containing the approximately 40% attrition rate, and the Complaint utterly fails to plead, among other information, who prepared such weekly reports and when, which is required in order to plead with sufficient particularity. *See Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1174 (N.D. Ill. 2019); *see also Arazie v. Mullane*, 2 F.3d 1456, 1467 (7th Cir. 1993) (references to internal documents that contradicted company's forward-looking statements were insufficiently particularized without allegations regarding "who prepared the projected figures, when they were prepared, how firm the numbers were, or which [] officers reviewed them"). Because Plaintiffs have not adequately pled

---

[5] Although Plaintiffs argue that certain of the alleged statements were not forward-looking, they concede that ATI's financial projections, including revenues and adjusted EBITDA, and projected new clinic opening numbers, were forward-looking. *Id.* at 17 n.3.

that the "hypothetical risks" had in fact already occurred at the time they were disclosed, they are protected statements and non-actionable, as well as sufficiently "meaningful" to protect ATI's forward-looking statements under the safe harbor's first prong.[6]

*Mixed Present/Future Statements.* Plaintiffs also attempt to recast several of the alleged misstatements as "mixed present/future" statements in which the "present" portion of the statement falls outside of the safe harbor's protection. Pls.' Opp. at 16-18. But the ATI Defendants specifically identified these statements as entirely "forward-looking" (Ex. 1 at 143-45; Ex. 4 at 18, 32, 33), and, more importantly, courts have found such statements to be protected as such. *See, e.g.*, *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 846 (N.D. Ill. 2003) (finding statement that company was "on track to meet or beat its EPS target" to be entirely forward-looking*); In re Fed.-Mogul Corp. Sec. Litig.*, 166 F. Supp. 2d 559, 565 (E.D. Mich. 2001) (finding company's statement that "the consolidation . . . continues as planned" to be entirely forward-looking); *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) (finding statement that company was "on track" to meet a production goal to be entirely forward-looking because "any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances" and "[t]he statutory safe harbor would cease to exist" if the court were to find otherwise) (emphasis in original). The Court should find the same here.[7]

---

[6] Plaintiffs claim that the ATI Defendants waived any argument that Plaintiffs failed to allege with sufficient particularity that ATI's risk factors were themselves materially false or misleading because they addressed that argument "only in a cursory footnote" and in a "conclusory fashion." Pls.' Opp. at 13 (citing Defs.' Br. at 13 n.7). Plaintiffs ignore that the ATI Defendants' opening brief contained no fewer than six pages reflecting myriad reasons why Plaintiffs failed to establish through particularized facts, as they must, that ATI's attrition rate was "materially greater than the average in the industry." Defs.' Br. at 13 n.7, 14, 20-25.

[7] Not only are these statements forward-looking, but, as established in the ATI Defendants' opening brief, Plaintiffs have also failed to establish (as they must in order to avoid the applicability of the safe harbor) that the ATI Defendants had *actual knowledge* of the statements'

6

In any event, even if the Court finds that certain portions of these statements are "present" statements and, therefore, outside of the safe harbor's protection, the Court should still dismiss them as non-actionable because Plaintiffs have not pled with particularity that they were false when made, as discussed *supra* at p. 8 and *infra* at pp. 12-14.

### 3.    The Challenged Statements Of Opinion Are Not Actionable

The ATI Defendants also established in their opening brief that numerous challenged statements (Compl. ¶¶ 125, 129, 133, 136, 141, 143, 147, 150, 152, 159, 165, 169, 171) are protected statements of opinion.  Defs.' Br. at 14-16.  Plaintiffs' opposition ignores the ATI Defendants' argument with respect to many of these statements -- effectively conceding that they are non-actionable -- and focuses only on those statements valuing ATI's "Goodwill" and "Trade name and other intangible assets, net."  Pls.' Opp. at 20.  Plaintiffs claim that such opinions are actionable because they "did not 'fairly align[] with the information' in Defendants' possession." *Id.* (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015)).  Plaintiffs, however, fail to establish that, at the time the opinions were issued, either (i) the ATI Defendants did not "honestly" hold their ultimate, stated opinions about the value of ATI's goodwill and trade name, or (ii) the ATI Defendants lacked a basis for such opinions.  *See* Defs.' Br. at 15-16; *see also In re Ascena Retail Grp., Inc. Sec. Litig.*, 2022 WL 2314890, at *8 (D.N.J. June 28, 2022) (finding intangible asset valuations non-actionable opinion statements where certain negative business trends "may indeed show that different corporate directors *could have* valued [the company's] intangible assets differently," but "[t]hey do not, however, establish that Defendants' statements about [the company's] performance or the basis for their opinions were untruthful") (emphasis added).

---

alleged falsity at the time the statements were made.  *See* Defs.' Br. at 14.

#### 4. The Challenged Statement Of Historical Fact Is Not Actionable

Finally, Defendants' opening brief demonstrated that ATI's statement that it was "certified as a Great Place to Work" (Compl. ¶ 123) was an accurate statement of historical fact, given that ATI was, in fact, certified as a "Great Place to Work" in August 2019. Defs.' Br. at 16. Plaintiffs' opposition brief does not address this statement. Thus, any claims based on it should be dismissed by concession, in addition to failing on the merits. *See Zebulon Enters., Inc. v. DuPage Cnty.*, 438 F. Supp. 3d 881, 891 (N.D. Ill. 2020) (dismissing claims where plaintiff offered "no argument to refute [defendant's] contention" in its opposition and, therefore, "waived its opposition argument").

#### B. Plaintiffs Fail To Plead An Actionable Omission

The ATI Defendants demonstrated in their opening brief that Plaintiffs fail to plead claims based on the omission of a "known trend" (Compl. ¶¶ 124, 128, 135, 140, 149, 158) because the alleged trend was not, in fact, "known" to the ATI Defendants. *See* Defs.' Br. at 17-18. In response, Plaintiffs do no more than *insist* that such trend was "known." Pls.' Opp. at 21-22. Because Plaintiffs have not so established, any claim premised on an omission in violation of Item 303(a)(3)(ii) of Regulation S-K must be dismissed.

### II. PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED FOR FAILURE TO PLEAD SCIENTER

As established in the ATI Defendants' opening brief, Plaintiffs' Section 10(b) claim is independently subject to dismissal for failure to plead scienter. Defs.' Br. at 18-27. Indeed, Plaintiffs' opposition all but abandons any attempt to establish scienter through allegations of motive. Plaintiffs bury their motive allegations in a single footnote and contend, without support, that "profitable new employment deals provided concrete and personal benefits to Diab and Jordan that are sufficient to establish motive." Pls.' Opp. at 27 n.6. But it is well-established that such

generalized motives shared by all corporate executives, who almost universally have an incentive-based component to their compensation plans, are insufficient for the purposes of pleading scienter. *See* Defs.' Br. at 19-20, 24 n.20.

Because Plaintiffs do not and cannot adequately allege motive on the part of any of the ATI Defendants, their allegations of conscious misbehavior and recklessness must be "correspondingly greater." *Stamatio v. Hurco Cos.*, 892 F. Supp. 214, 217 n.6 (S.D. Ind. 1995). In an attempt to meet that burden, Plaintiffs rely exclusively on the allegations of the FEs. As explained in the ATI Defendants' opening brief, however, these types of allegations are subject to a "heavy discount" and "healthy skepticism." Defs.' Br. at 21 (quoting sources).

More importantly, Plaintiffs' FE allegations fail to establish (as they must) that the ATI Defendants actually knew of ATI's allegedly high attrition rate at the time of the alleged misstatements and omissions. The gravamen of the Complaint is that ATI's attrition rate throughout the Class Period allegedly hovered around 40% and was in excess of the alleged industry average of 20%. *See* Compl. ¶¶ 7, 65, 66, 68, 76, 77, 79, 81, 94. Yet, Plaintiffs fail to identify a single FE who offers *particularized* allegations establishing that *any* of the ATI Defendants actually knew that. Tellingly, Plaintiffs do not dispute that three of the FEs were not even employed by ATI during any portion of the Class Period, one FE was employed by ATI for only a single month of that period, and, notably, *none* reported directly to either Mr. Diab or Mr. Jordan. Instead, Plaintiffs stack inference upon inference in the hope that their sleight of hand will go unnoticed.

For example, Plaintiffs' assertion that "the Complaint alleges that a specific document titled a 'Monthly Scorecard' was prepared each month by FE-4, presented monthly to executive leadership, including Diab and Jordan, and contained attrition rates among physical therapists,

9

which accordingly [sic] to multiple sources was approximately 40% during the relevant time period" (Pls.' Opp. at 28-29), is wholly misleading. Plaintiffs combine the allegations of FE-4 -- namely, that "FE-4 prepared monthly slide decks for executive leadership, including Diab and Jordan which featured a 'Monthly Scorecard' with a chart including a trend line that detailed the attrition rates among physical therapists" (*id.* at 28 (quoting Compl. ¶ 104)) -- with allegations by *other* FEs who generally claim that "ATI's attrition rate for clinical staff, including physical therapists, reached approximately 40% by late 2020 and remained at around 40% through mid-2021." *Id.* at 28 (citing Compl. ¶¶ 76, 79, 81). Nowhere do these allegations establish that any of the ATI Defendants actually *knew* that the attrition rate was 40% during the Class Period. Notwithstanding Plaintiffs' attempts to replead through their opposition brief, the Complaint does not actually contain *any* allegations establishing that any "Monthly Scorecard" (i) reflected an attrition rate of 40% and (ii) was actually presented to, and viewed by, either Mr. Diab or Mr. Jordan.

Indeed, FE-4 alleges only that ATI's attrition rate rose through *2020*, the year *before* the Class Period. *See* Compl. ¶ 104. Nor could FE-4 have any insight into what the alleged attrition rate actually was during the Class Period because FE-4 left the Company in December 2020. *See* Compl. ¶ 86. Accordingly, that FE-4 prepared "Monthly Scorecards" for "executive leadership" is entirely irrelevant to the question of what the ATI Defendants knew *in 2021*. In light of this, Plaintiffs are forced to seize upon general statements by *other* FEs that the alleged attrition rate was approximately 40% during the Class Period. None of these FEs, however, actually claim that the ATI Defendants themselves were made aware of the alleged 40% attrition rate as a result of any specific report or otherwise. *See* Compl. ¶¶ 76, 77, 79, 81, 94. Plaintiffs contend that "the Complaint clearly alleges that Defendants routinely *viewed* attrition data contradicting their public

statements when that data was directly presented to them in person and routinely *discussed* such attrition data at Company meetings." Pls.' Opp. at 27 (citing Compl. ¶¶ 100, 103-04) (emphasis in original). But the Complaint does *not* actually plead any of that information, let alone that a 40% attrition rate was presented *to the ATI Defendants* at any particular meeting. In fact, only FE-1 is alleged to have "attended quarterly meetings" at which Messrs. Diab and Jordan were even present. And, even with respect to these meetings, FE-1's contact with Messrs. Diab and Jordan appears limited to a quarterly meeting in 2020 (*i.e.*, prior to the Class Period) at which it was generally discussed that "certain markets, like the Washington, D.C. market, were 'really bad for attrition.'" Compl. ¶¶ 9, 99-100. These types of conclusory and unfounded allegations do nothing to advance Plaintiffs' claim that Messrs. Diab and Jordan possessed (i) knowledge that rendered any of ATI's public statements false or misleading or (ii) the requisite intent to deceive. *See* Defs.' Br. at 20-25. "Because plaintiffs have not alleged that . . . defendants were presented with any specific information that demonstrated the scope and magnitude of the [attrition] problem, the inference that defendants recklessly disregarded a serious problem in omitting to disclose it to investors is not 'cogent and compelling' in light of opposing, nonfraudulent inferences." *Gogo*, 414 F. Supp. 3d at 1176.[8]

Unable to muster the requisite particularized allegations of scienter through the FEs, Plaintiffs belatedly resort to the "core operations doctrine," which provides that "[o]fficers of a

---

[8] *See W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 660 (N.D. Ill. 2020) ("[E]ven if Plaintiffs had adequately pled *access* to information that would have put Defendants on notice, there are no allegations suggesting that individual defendants actually reviewed that information") (emphasis in original), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, 2022 WL 1449184 (7th Cir. May 9, 2022); *see also Gogo*, 414 F. Supp. 3d at 1175 ("This Court has previously explained that an inference of scienter based on the argument that the defendants 'had to be monitoring the data because the numbers were so important' is 'weak at best.'") (citations omitted).

company can be assumed to know facts critical to a business's core operations. . . ." Pls.' Opp. at 30 (quoting *In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003)) (internal quotation marks omitted). Plaintiffs' invocation of that doctrine does not salvage the Complaint. As the cases cited by Plaintiffs make clear, the core operations doctrine, when not accompanied by particularized pleading, is available only in "rare circumstances," *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008), and "[c]ourts in this district have declined to allow plaintiffs to use a must have known theory as an end-run around the requirement that plaintiffs set forth particularized facts to suggest that defendants acted knowingly or recklessly." *Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third Bancorp*, 2022 WL 1642221, at *22 (N.D. Ill. May 24, 2022) (citation omitted).

In Plaintiffs' only case from this Circuit in which the core operations doctrine applied, the defendants provided the market with granular information about the company's private label credit card portfolio and, thus, were presumed to have "knowledge of the facts regarding the credit card portfolio at the time they were making statements about the portfolio or signing off on SEC filings." *Sears*, 291 F. Supp. 2d at 727.[9] Here, Plaintiffs do not allege that the ATI Defendants provided the same type of granular, detailed attrition information to investors such that one would infer that the ATI Defendants must have reviewed the underlying metrics themselves. For this reason, the core operations doctrine should not be applied in this case.

---

[9] Plaintiffs' example from *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008), is dicta and provides an example of how *corporate scienter* may be pled without sufficiently pleading scienter with respect to an individual. Pls.' Opp. at 30 (citing *Tellabs*, 513 F.3d at 710). It is also inapplicable in this case. The ATI Defendants' opening brief established that Plaintiffs fail to allege scienter on the part of any ATI employee that could be attributed to ATI, nor have they alleged statements so "dramatically" false that the statements themselves raise a strong inference of corporate scienter. Defs.' Br. at 26-27. Plaintiffs' failure to respond concedes that corporate scienter is insufficiently pled, and the Court should dismiss Plaintiffs' Section 10(b) claim against ATI for this reason.

Plaintiffs also continue to insist that the "abrupt" departures of Messrs. Diab and Coco are somehow indicative of scienter. Pls.' Opp. at 31. But such departures are "neither remarkable nor surprising;" following an event such as "a restatement of earnings and a subsequent loan default, it is unremarkable that the Company would seek to change its management team." *In re Baxter Int'l Inc. Sec. Litig.,* 2021 WL 100457, at \*20 (N.D. Ill. Jan. 12, 2021) (citation omitted). Plaintiffs' authority proves this point: although a management shakeup "may in some circumstances be indicative of scienter," it is incumbent on the plaintiff to "plead facts refuting the reasonable assumption that the resignation occurred as a result of [a] restatement's issuance itself in order for a resignation to be strongly indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009), *as amended* (Feb. 10, 2009). Plaintiffs do not plead *any* facts refuting the reasonable assumption that Messrs. Diab and Coco left the Company because the ATI Board felt a change to the management team was warranted after the second quarter 2021 earnings report, and *not* because they knowingly misled investors (as would be required for their departures to be somehow indicative of scienter). *See, e.g.*, *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) ("Plaintiff can point to no particularized allegation refuting the reasonable assumption that [defendant's employee] was fired simply because the errors that [led] to the restatement occurred on his watch or because he failed adequately to supervise his department.").

Finally, ATI's receipt of a voluntary request from the SEC also fails to support scienter. *See* Pls.' Opp. at 32. The "fact that an investigation was opened does not support an inference of scienter on the part of anyone," especially here given that the SEC made its request based entirely on public information. *In re Bally Total Fitness Sec. Litig.*, 2007 WL 551574, at \*5 (N.D. Ill. Feb. 20, 2007).

13

### III. PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED, IN PART, FOR FAILURE TO PLEAD LOSS CAUSATION

The ATI Defendants' opening brief established that Plaintiffs' Section 10(b) claim must be dismissed with respect to the October 19, 2021 alleged "corrective" disclosure because that disclosure did not reveal anything about the alleged fraud -- namely, ATI's alleged failure to disclose that it was "suffering from severe attrition" that "prevented" it from meeting patient demands and increased labor costs. Defs.' Br. at 27-28. To the contrary, the disclosure explained that ATI had "implemented targeted measures that *reduced* clinical staff attrition and *improved* clinical full-time equivalent (FTE) growth during the last two months of the third quarter of 2021," and expressly and exclusively attributed ATI's revised guidance to "*lower than expected patient volume*." *Id.* at 28 (quoting Compl. ¶¶ 118-19) (emphasis added).

In response, Plaintiffs contend that the disclosure revealed "a severe attrition problem, the extent of that problem, and the extent to which that problem was devastating its business." Pls.' Opp. at 34. But ATI did *not* tie the revised guidance disclosed in October 2021 to increased attrition among physical therapists, and Plaintiffs' claims, at a minimum, should thus be dismissed with respect to the October 19, 2021 disclosure.

### IV. PLAINTIFFS' SECTION 14(a) CLAIM MUST BE DISMISSED FOR FAILURE TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b) AND THE PSLRA

Plaintiffs ignore well-settled law refusing to credit disclaimers of fraud where, as here, a Section 14(a) claim is based on the very same course of fraudulent conduct as a concurrently pled Section 10(b) claim, and simply assert that "Section 14(a) does not require any state of mind." Pls.' Opp. at 12. Plaintiffs are wrong. As made clear in the ATI Defendants' opening brief, the Section 14(a) claim here is in fact subject to the heightened pleading requirements of Rule 9(b)

14

and the PSLRA, *see* Defs.' Br. at 29, and because Plaintiffs have failed to meet their pleading burden, this claim also must be dismissed. *See supra* at pp. 5-11.

## V.   PLAINTIFFS' "CONTROL PERSON" CLAIMS FAIL

Because Plaintiffs fail to allege a primary violation of the Exchange Act, their "control person" claims under Section 20(a) also fail. *See* Defs.' Br. at 30.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the ATI Defendants' opening brief, the Complaint should be dismissed in its entirety and with prejudice.

Dated: July 25, 2022

Respectfully submitted,

*s/ Jason M. Rosenthal*
Jason M. Rosenthal
**MUCH SHELIST, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel: (312) 521-2437
Fax: (312) 521-2100
jrosenthal@muchlaw.com

-and-

John A. Neuwirth (*pro hac vice*)
Joshua S. Amsel (*pro hac vice*)
Stefania D. Venezia (*pro hac vice*)
Joshua M. Glasser (*pro hac vice forthcoming*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
john.neuwirth@weil.com
joshua.amsel@weil.com
stefania.venezia@weil.com
joshua.glasser@weil.com

*Counsel for Defendants ATI Physical Therapy, Inc.*
*f/k/a Fortress Value Acquisition Corp. II, Labeed Diab,*
*and Joseph Jordan*

15

## CERTIFICATE OF SERVICE

Jason M. Rosenthal, an attorney, certifies that he caused the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE ATI DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** to be electronically filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division by using the CM/ECF system, which will send notification of such filing to the following recipients on this 25th day of July.

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ, LLC
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
malmstrom@whafh.com

GLANCY PRONGAY & MURRAY, LLP
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, NY 10019
bsachsmichaels@glancylaw.com

GLANCY PRONGAY & MURRAY, LLP
Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
rprongay@glancylaw.com
prajesh@glancylaw.com

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Charles F. Smith
155 N. Wacker Drive
Chicago, Illinois 60606
charles.smith@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Scott D. Musoff
Michael M. Powell
One Manhattan West
New York, NY 10001
scott.musoff@skadden.com
michael.powell@skadden.com

*/s/ Jason M. Rosenthal*

16