**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-04349 |
| Plaintiffs, | Honorable Edmond E. Chang |
| vs. | |
| ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MR. MCKNIGHT'S AND THE**
**FVAC DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Charles F. Smith
155 North Wacker Drive
Chicago, Illinois 60606
Phone: (312) 407-0700
Facsimile: (312) 407-0411

Scott D. Musoff
Michael M. Powell
One Manhattan West
New York, New York 10014
Phone: (212) 735-5000
Facsimile: (212) 735-2000

*Attorneys for Mr. McKnight and the*
*FVAC Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................2

I.      PLAINTIFFS' OPPOSITION DOES NOT REMEDY THEIR FAILURE TO
PLEAD A STRONG INFERENCE OF SCIENTER AS TO MR. MCKNIGHT ...............2

          A.      Plaintiffs Do Not Address Their Conflation of the Pre- and Post-SPAC
Entities ..........................................................................................................2

          B.      Plaintiffs Tacitly Concede That Their Confidential Witnesses Do Not
Mention Mr. McKnight or His Receipt of Attrition-Related Information...............4

          C.      Plaintiffs Ignore the Complete Failure of Their Motive Allegations......................5

          D.      Plaintiffs' New Scienter Theories Do Not Bridge the Gap ......................................6

II.     PLAINTIFFS IGNORE THEIR FAILURE TO PLEAD CONTROL PERSON
LIABILITY AS TO MR. MCKNIGHT AND THE FVAC DEFENDANTS ....................8

CONCLUSION...........................................................................................................................8

# **TABLE OF AUTHORITIES**

## **CASES**

Page(s)

*Beaulieu v. Ashford University*,
    529 F. Supp. 3d 834 (N.D. Ill. 2021) ...................................................................7

*Bonte v. U.S. Bank, N.A.*,
    624 F.3d 461 (7th Cir. 2010) ........................................................................5, 8

*Cutsforth v. Renschler*,
    235 F. Supp. 2d 1216 (M.D. Fla. 2002) .............................................................6

*In re Forest Labs., Inc. Derivative Litigation*,
    450 F. Supp. 2d 379 (S.D.N.Y. 2006)................................................................6

*In re General Electric Co. Securities Litigation*,
    857 F. Supp. 2d 367 (S.D.N.Y. 2012).................................................................7

*In re Harley-Davidson, Inc. Securities Litigation*,
    660 F. Supp. 2d 969 (E.D. Wis. 2009)...............................................................4

*Pierrelouis v. Gogo, Inc.*,
    414 F. Supp. 3d 1164 (N.D. Ill. 2019) ...............................................................8

*Pugh v. Tribune Co.*,
    521 F.3d 686  (7th Cir. 2008) .........................................................................2, 4

*In re Sears, Roebuck & Co. Securities Litigation*,
    291 F. Supp. 2d 722 (N.D. Ill. 2003) .................................................................6

*Shreffler v. City of Kankakee*,
    No. 19-CV-2170, 2021 WL 6200764 (C.D. Ill. Sept. 28, 2021) ........................6

*Société Générale Securities Services, GbmH v. Caterpillar, Inc.*,
    No. 17 cv 1713, 2018 WL 4616356 (N.D. Ill. Sept. 26, 2018)..........................8

Defendant Andrew A. McKnight and the FVAC Defendants[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss the Consolidated Amended Class Action Complaint ("Complaint").

## PRELIMINARY STATEMENT

Plaintiffs dedicate approximately seven sentences out of their 35-page omnibus opposition brief (ECF No. 78, "Opposition" or "Opp.") to the dismissal arguments raised in the brief submitted by Mr. McKnight and the FVAC Defendants. This was not an oversight: Plaintiffs cannot defend their improper conflation of the different entities, time periods, and individuals at issue in this case. Rather than defend that conflation, Plaintiffs double down on their strategy, and, in so doing, ignore that neither Mr. McKnight nor the FVAC Defendants had any involvement in the operations of ATI and that only after the "de-SPAC" transaction did Mr. McKnight even serve on the ATIP board.

Plaintiffs' Opposition underscores that the Complaint is devoid of any particularized facts showing that Mr. McKnight had any knowledge of the supposed operational issues at ATI/ATIP—the former, an entity with which he never had any relationship, and the latter, an entity for which he served as an outside director for only a few weeks before the supposed fraud came to light. Unable to point to any allegations pled in the Complaint, Plaintiffs opt instead to mischaracterize them; for example, they cite allegations regarding information provided to the ATI board and expressly assert that Mr. McKnight received it—even though Mr. McKnight *never* served on the ATI board. Plaintiffs also have no response to and ignore the fact that, had Mr. McKnight learned of any of the alleged operational difficulties at ATI prior to the Merger, it

---

[1] All capitalized terms shall have the meanings ascribed to them in Mr. McKnight's and the FVAC Defendants' opening brief in support of their motion to dismiss (ECF No. 72, the "Brief" or "Br.").

would have made no sense to go through with the transaction at the cost of $75 million from the funds with which he is affiliated.

Plaintiffs' control person claim fares no better. The Opposition does not even mention Plaintiffs' control-person allegations, let alone show that the Complaint pleads that Mr. McKnight and the FVAC Defendants exercised control over any relevant entity's operations as the law requires.[2]

## ARGUMENT

### I. PLAINTIFFS' OPPOSITION DOES NOT REMEDY THEIR FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER AS TO MR. MCKNIGHT

#### A. Plaintiffs Do Not Address Their Conflation of the Pre- and Post-SPAC Entities

Plaintiffs' defense of their scienter allegations as to Mr. McKnight fails for several reasons, not least of which is their failure to rebut the arguments raised by Mr. McKnight regarding their impermissible group pleading.

Plaintiffs concede that binding authority obligates them to plead scienter "'with respect to each individual defendant.'" (Br. at 8 (quoting *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).) Plaintiffs also concede that FVAC, ATI, and ATIP (and their respective boards of directors) are legally and factually distinct, and the Opposition is completely silent on the Complaint's conflation of FVAC, ATI, and ATIP. (*See* Br. at 3-4.) These concessions are fatal, as there is therefore no legal or factual basis to attribute knowledge of the supposed fraud to Mr. McKnight simply because they have labeled him an "ATI Individual Defendant" alongside ATI/ATIP's CEO and CFO. (*See* Br. at 8-9.)

---

[2] As they did in their opening brief (*see* Br. at Section I), Mr. McKnight and the FVAC Defendants incorporate all arguments from the opening and reply briefs filed by Defendants ATIP, Diab, and Jordan rather than repeat them here.

Unable to point to allegations that Mr. McKnight had actual knowledge of ATI's/ATIP's supposed operational issues, Plaintiffs double down on their muddled pleading and misrepresent their existing allegations. For example, they cite to paragraphs 103 and 104 of the Complaint, which describe the observations of confidential witness "FE-4," to claim that "FE-4 confirmed that she personally prepared slide decks presented to the Company's Board of Directors, *which included McKnight*, that detailed ATI's attrition rate." (Opp. at 29 (citing Complaint ¶¶ 103-04) (emphasis added).) But that is not what the Complaint alleges, nor could it. Paragraphs 103 and 104 of the Complaint do not mention Mr. McKnight by name at all (only "the Company's" board of directors), and Plaintiffs allege that FE-4 left ATI six months before Mr. McKnight joined ATIP's board of directors. (*See* Br. at 10.)

Plaintiffs likewise attempt to rewrite their complaint by pointing to their allegations based on confidential witness "FE-1": "[A]ccording to FE-1, the Company's officers and directors, *which again included McKnight*, received an internally distributed weekly report that detailed ATI's attrition rate and even specifically discussed attrition at quarterly 'all-hands' meetings." (Opp. at 29 (citing Complaint ¶¶ 99-100 (emphasis added)).) But again, that is not what the Complaint alleges, as the Complaint does not mention Mr. McKnight in the referenced paragraphs. Instead, it only refers to "Company officers and directors." (Complaint ¶¶ 99, 100.) While the Complaint defines "Company" to conflate FVAC (the acquiror), ATI (the target company that FVAC acquired), *and* ATIP (the post-SPAC merged entity), these entities existed at different times and were legally distinct. Indeed, Mr. McKnight had no role at ATI and was an outside director for ATIP for only a short time before the so-called fraud was revealed. (*See* Br. at 3-4 (citing Complaint at 1).)

3

As such, there is no basis in the Complaint or otherwise for Plaintiffs to assert that Mr. McKnight received those weekly reports.  Indeed, the sole timing-related detail that FE-1 offers is that she confronted executives about attrition "at a quarterly meeting in 2020," Complaint ¶ 100—which preceded Mr. McKnight's joining of the ATIP board upon consummation of the Merger in 2021.  FVAC, the only entity with which Mr. McKnight had a sustained relationship, did not even begin to consider a transaction with ATI until November 2020.  (Br. at 6.)

Plaintiffs therefore cannot meet their burden of pleading scienter against Mr. McKnight by pointing to generic references in the Complaint to the "Company" "board" and "directors," and to their supposed receipt of attrition-related information.  *See, e.g.*, *Pugh*, 521 F.3d at 696 (affirming dismissal of securities fraud claims for failure to plead scienter on the part of individual defendants where "the section of the complaint entitled 'Scienter' contains no express allegation regarding any of the *Newsday-Hoy* individual defendants"); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 998-99 (E.D. Wis. 2009) (holding "vague references to reports being sent to 'corporate offices,'. . . [and allegations] that the individual defendants . . . were members of the [Leadership and Strategy Council]" insufficient to allege scienter, noting "the Complaint does not charge that each defendant actually received and reviewed the statistical information said to be in the reports prior to making their allegedly misleading public statements—their connection to the reports is based entirely on their positions within the company").

**B.** **Plaintiffs Tacitly Concede That Their Confidential Witnesses Do Not Mention Mr. McKnight or His Receipt of Attrition-Related Information**

Plaintiffs do not respond to the additional arguments that their confidential witness allegations regarding the "board" and "directors" cannot be construed as references to Mr. McKnight.  For example, Plaintiffs ignore that the timing of the alleged attrition issues is

4

inconsistent with an inference that Mr. McKnight was one of the individuals receiving information about them: The attrition rate is alleged to have "reached approximately 40% by late 2020 and remained at around 40% through mid-2021" (Opp. at 25), but Mr. McKnight did not join the ATIP board until June 2021, just a few weeks before the supposed corrective disclosure in July.

Plaintiffs also do not address the fact that the Complaint specifically mentions Defendants Diab and Jordan and other "Company" executives by name in the scienter allegations, but *not* Mr. McKnight. (*See* Br. at 10.) That the confidential witnesses identify these individuals and not Mr. McKnight underscores the impropriety of Plaintiffs' attempt to assert that Mr. McKnight was among the individuals that allegedly received attrition-related information. And Plaintiffs' failure to respond to these arguments should be construed as both waivers of any counter arguments and as concessions that they are correct. *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (noting that "failure to respond to an argument . . . results in waiver" and that "silence" implies "concession," affirming dismissal); *Shreffler v. City of Kankakee*, No. 19-CV-2170, 2021 WL 6200764, at *14 (C.D. Ill. Sept. 28, 2021) ("By failing to respond, the court finds Plaintiff has waived any arguments against Defendants' summary judgment arguments on these claims, and thus the court may infer Plaintiff has conceded those arguments.").

### C. Plaintiffs Ignore the Complete Failure of Their Motive Allegations

Plaintiffs also fail to demonstrate that Mr. McKnight had any motive to engage in fraud. Indeed, the Opposition contains no argument that Mr. McKnight (in contrast to others, *see* Opp. at 27 n.6) had any motive whatsoever. As was explained in the Brief, Mr. McKnight's affiliation with Fortress, which invested in ATIP, gave him a specific interest in ATIP's success, as did his

ownership of sponsor shares whose value depended on an increase in ATIP's share price. (*See* Br. at 5, 11-12.) These facts render nonsensical Plaintiffs' suggestion that Mr. McKnight knew about ATI's supposed attrition issues but allowed the transaction to proceed anyway. Plaintiffs do not rebut this argument because they cannot, and their abandonment of their motive theories weighs against any scienter inference. *See Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1250 (M.D. Fla. 2002) ("there should be a negative inference regarding scienter as a result of the plaintiffs' unsuccessful attempt to demonstrate motive" where plaintiff had failed to respond to argument that supposed motive was inconsistent with the facts).

### D.      Plaintiffs' New Scienter Theories Do Not Bridge the Gap

Rather than respond to the arguments raised in the Brief, Plaintiffs offer new legal theories of scienter, but each fails as applied to Mr. McKnight. For example, as their own cases recognize, the core operations doctrine that they cite (Opp. at 30) applies to "officers," not directors, and it certainly does not apply to directors, like Mr. McKnight, who were never affiliated with the entity whose "core operations" are supposedly implicated. *See In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 726-27 (N.D. Ill. 2003) (describing doctrine as applying to "officers of a company" and applying doctrine where "defendants were all executive officers of Sears during the class period"); *see also, e.g.*, *In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 391 (S.D.N.Y. 2006) (core operations doctrine does not "support the attribution of knowledge to Outside Directors who are not alleged to be directly involved in the day-to-day operations of the company"). Although Mr. McKnight was an officer of FVAC, Mr. McKnight was never an officer of ATI/ATIP, the operational entities that allegedly experienced attrition issues. To impute knowledge of ATI/ATIP's "core operations" to an officer of an unrelated company would turn the core operations doctrine on its head.

6

Plaintiffs also claim that Defendants' supposed discussion of ATI's attrition rate in public statements (*see* Opp. at 31) supports an inference of scienter, but do not identify any such statements made by Mr. McKnight. The (out-of-Circuit) authority on which they rely involved an individual CEO who "regularly made detailed reports" about the subject matter of the supposed fraud and "was able to give detailed accounts" about the various matters supposedly misrepresented. *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 395-96 (S.D.N.Y. 2012). It was the fact that he could "speak so knowledgeably" regarding the topic that supported the inference that he "must have educated himself regarding GE Capital's financial health, presumably both by reading GE Capital's financial reports and by performing his own due diligence." *Id.* Plaintiffs do not identify a single allegation in the Complaint to support that Mr. McKnight regularly reported on (or investigated) attrition issues. This caselaw is inapt.

Plaintiffs make one final attempt at rewriting their complaint via opposition brief in claiming that FVAC entered into a confidentiality agreement with ATI that "gave McKnight direct access to ATI's nonpublic information, including its severe attrition rates, which was set forth in multiple regularly prepared reports and contained in a centralized staffing database." (Opp. at 29. n.9.) But the Complaint does not even ***mention*** the confidentiality agreement, let alone allege that it gave Mr. McKnight access to that information. Plaintiffs make no allegations whatsoever about FVAC's or Mr. McKnight's receipt of information in connection with the Merger. "A [p]laintiff may not supplement or amend his complaint by presenting new facts or theories in his briefing in opposition to a motion to dismiss." *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 845 (N.D. Ill. 2021) (alteration in original) (citation omitted). Moreover, even if Plaintiffs had made this allegation in the Complaint, it would nonetheless be insufficient. Allegations of "mere access to information" do not satisfy the PSLRA's standard for pleading

7

scienter. *Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1175 (N.D. Ill. 2019). This theory thus fails several times over.

## II. PLAINTIFFS IGNORE THEIR FAILURE TO PLEAD CONTROL PERSON LIABILITY AS TO MR. MCKNIGHT AND THE FVAC DEFENDANTS

With regard to Plaintiffs' Section 20(a) claims, Plaintiffs do not respond to the argument that they are required, and have failed, to allege that Mr. McKnight and the FVAC Defendants exercised "general control over the primary violator's operations" and "possessed the power or ability to control the specific transaction or activity which the primary violation was predicated." (Br. at 13 (quoting *Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*, No. 17 cv 1713, 2018 WL 4616356, at \*8 (N.D. Ill. Sept. 26, 2018).) They have thus waived any argument that their Section 20(a) claims are not subject to dismissal on this basis. *See, e.g.*, *Bonte*, 624 F.3d at 466.

**CONCLUSION**

For the foregoing reasons and those set forth in the Brief, Mr. McKnight and the FVAC Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated: Jul 25, 2022

Respectfully submitted,

/s/ Charles F. Smith (Illinois Bar 6195537)
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
Charles F. Smith
155 N. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 407-0700
Fax: (312) 407-0411
charles.smith@skadden.com

Scott D. Musoff

8

Michael M. Powell
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000
scott.musoff@skadden.com
michael.powell@skadden.com

*Counsel for Defendants
Andrew A. McKnight, Joshua
A. Pack, Aaron F. Hood,
Carmen A. Policy, Marc
Furstein, Leslee Cowen,
Rakefet Russak-Aminoach,
and Sunil Gulati*

9