**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-04349 |
| Plaintiffs, | Honorable Edmond E. Chang |
| v. | Magistrate Judge Young B. Kim |
| ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, | |
| Defendants. | |

**FVAC DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR
<u>VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>**

Defendants Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron

F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati (collectively, "the

FVAC Defendants"), by and through their undersigned counsel, hereby answer Plaintiffs'

Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws

dated February 8, 2022 (the "Complaint") as follows.

The FVAC Defendants deny all of the Complaint's allegations unless expressly admitted

herein. No response to any allegation herein waives or otherwise controverts the Court's

September 6, 2023 Memorandum Opinion and Order (ECF No. 104) (the "Order") dismissing

the Complaint in part. The FVAC Defendants are not responding to the headings in the

1

Complaint; to the extent a response is required, any allegations contained in the headings are

denied. To the extent the footnotes in the Complaint do not contain allegations of fact, they are

omitted from this Answer. The Prayer for Relief and Jury Trial Demand in the Complaint do not

contain allegations of fact and are therefore omitted from this Answer. The FVAC Defendants

reserve the right to supplement or amend this Answer.

*******************

Lead Plaintiffs, The Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ATI Physical Therapy, Inc. and Fortress Value Acquisition Corp. II ("FVAC" and, together with ATI Physical Therapy, Inc., "ATI" or the "Company"), communications with former employees, analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**ANSWER**: To the extent this paragraph reflects Plaintiffs' characterization of their own

allegations, no response is required. To the extent a response is required, the FVAC Defendants

deny the allegations contained in the above paragraph, except admit that Plaintiffs purport to act

on behalf of the persons and entities identified.

## I.      INTRODUCTION

1.      This federal securities class action arises from Defendants' misstatements to investors regarding ATI, one of the nation's largest providers of outpatient physical therapy services, during the period from February 22, 2021 and October 19, 2021, inclusive (the "Class Period"). During the Class Period, Defendants repeatedly touted the Company's purportedly high rate of retention of physical therapists, which were essential to ATI's ability to serve its patients and critical to the Company's financial condition and growth. Unbeknownst to investors,

2

however, ATI was in fact suffering from severe attrition among its physical therapists—at a rate of more than *twice* the industry average—which crippled its ability to meet patient demand.

**ANSWER TO PARAGRAPH 1**: The FVAC Defendants deny the allegations contained in paragraph 1 of the Complaint, except admit that, at the time the Complaint was filed, ATI was one of the nation's largest providers of outpatient physical therapy services.

2.     Investors learned the truth through two corrective disclosures that each shocked the market and caused ATI's stock price to decline significantly. *First*, in July 2021, less than two months after ATI went public, the Company finally publicly admitted that it was suffering from severe attrition among its physical therapists, which "prevented" it from meeting patient demand, significantly increased its labor costs and caused ATI to have to materially reduce its revenue, EBITDA and new clinic opening expectations. This revelation caused a massive sell-off in ATI's stock, which erased hundreds of millions of dollars in shareholder value. At the same time, further underscoring the extent of its attrition problems, ATI announced the sudden termination of its Chief Human Resources Officer. *Second*, in October 2021, after its Chief Executive Officer (Defendant Diab) was also terminated, ATI revealed that it had to further revise its revenue and EBITDA expectations downward because its attrition problems had materially impacted its patient visit volumes. Again, ATI's stock price fell precipitously. Investors suffered enormous losses.

**ANSWER TO PARAGRAPH 2**: The FVAC Defendants deny the allegations contained in paragraph 2 of the Complaint, except admit that (i) in July 2021 ATI announced adjustments to its 2021 earnings forecast, including as it related to revenue, EBITDA, and new clinic opening expectations; and (ii) in October 2021, ATI revised its 2021 earnings guidance, including as it related to revenue and EBITDA. The FVAC Defendants refer to ATI's public filings for a complete and accurate description of the announcement's contents.

3.     The action seeks to recover for the losses suffered by ATI investors. It is brought on behalf of a Class consisting of all persons and entities other than Defendants that (a) purchased or otherwise acquired ATI securities between February 22, 2021 and October 19, 2021, both dates inclusive, and/or (b) beneficially owned and/or held FVAC Class A common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting. Plaintiffs bring this action to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), *codified as amended*, 15 U.S.C. §§ 78j(b), 78n(a), 78t(a), and Rules 10b-5 and 14a-9 promulgated thereunder, 17 C.F.R. §§ 240.10b-5, 240.14a-9.

**ANSWER TO PARAGRAPH 3**: The FVAC Defendants deny the allegations contained

3

in paragraph 3 of the Complaint, except admit that Plaintiffs purport to: (i) act on behalf of the

persons and entities identified; and (ii) assert claims under the Securities Exchange Act of 1934

and Rules promulgated thereunder. The FVAC Defendants further answer that pursuant to the

Court's Order, only the Section 14(a) claims survive as against the FVAC Defendants.

4.      Headquartered in Bolingbrook, Illinois, ATI provides outpatient rehabilitation services and operates nearly 900 physical therapy clinics across 24 states. As such, the Company's ability to attract and retain enough physical therapists to service patient demand is critically important to the success of its business.

**ANSWER TO PARAGRAPH 4**: The FVAC Defendants admit the allegations contained

in the first sentence of paragraph 4 of the Complaint. The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in the second

sentence of paragraph 4.

5.      On June 17, 2021, ATI became a publicly traded company upon the completion of a merger with FVAC (the "Merger"), a special purpose acquisition company ("SPAC"). A SPAC is a shell, or "blank check," company formed for the sole purpose of raising money through a public offering to eventually acquire one or more companies. In recent years, SPACs have become magnets for fraud, which has caused great concern among U.S. regulators and investors.

**ANSWER TO PARAGRAPH 5**: The FVAC Defendants deny the allegations contained

in paragraph 5 of the Complaint, except admit the allegations in the first and second sentence of

paragraph 5.

6.      Throughout the Class Period, ATI touted as a competitive advantage its high rate of retention of its clinical staff. For example, Defendant Diab (former CEO) boasted that ATI had "a very high retention and a low turnover." As another example, in soliciting votes in support of the Merger, Defendants also cited ATI's "high retention rates," "favorable clinician retention rates" and "competitive compensation model." At the same time, Defendants acknowledged that ATI's "clinicians are a driving force for favorable patient outcomes and are key to our success."

**ANSWER TO PARAGRAPH 6**: The FVAC Defendants deny the allegations contained

in paragraph 6 of the Complaint, except admit that paragraph 6 contains partial quotations of

4

public statements made by certain Defendants[1] throughout the Class Period. The FVAC

Defendants further answer that, per the Court's Order, certain public statements referenced in

paragraph 6 of the Complaint do not remain at issue in this action.

7.      In reality, throughout the Class Period, ATI was experiencing severe attrition among its clinical staff, as confirmed by multiple former ATI employees from across the United States. For example, two former talent acquisition coordinators (FE-1 and FE-2), who each worked at ATI's Bolingbrook, Illinois corporate headquarters, stated that ATI had an attrition rate of about 41% during their tenures at the Company during the Class Period, which FE-1 elaborated was confirmed by data recorded in ATI's systems as well as in weekly reports. As another example, a former ATI revenue cycle analyst (FE-3), who also worked at ATI in Bolingbrook, confirmed that attrition at ATI was a "big problem," noting that ATI's attrition rate was significantly higher than the industry average of around 20%. Moreover, a former senior financial analyst (FE-4), who also worked at ATI's Bolingbrook headquarters, stated that the attrition was "ridiculous" and had reached 41% by the end of 2020—even prior to the Class Period.

**ANSWER TO PARAGRAPH 7**: The FVAC Defendants lack knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the

Complaint and deny them on that basis.

8.      Given the severe attrition that it was suffering during the Class Period, ATI could not retain enough physical therapists to serve patient demand and incurred increased labor costs, which negatively impacted its business and limited its ability to open new clinics. This reality, which was hidden from and/or misrepresented to investors, contradicted Defendants' public statements touting, for example, ATI's "high retention rates" and also rendered materially misleading Defendants' statements regarding inter alia ATI's projected revenues, EBITDA, and clinic openings, as well as its reported goodwill and trade name and other intangible assets figures. As a result of Defendants' misrepresentations, ATI securities traded at artificially inflated prices throughout the Class Period.

**ANSWER TO PARAGRAPH 8**: The FVAC Defendants deny the allegations contained

in paragraph 8 of the Complaint. The FVAC Defendants further answer that, per the Court's

Order, certain public statements referenced in paragraph 8 of the Complaint do not remain at

---

[1]   Terms used in the Answer shall have the meaning ascribed to them in the Complaint unless otherwise defined herein.

issue in this action.

9.      Multiple former ATI employees also supplied facts demonstrating that Defendants were aware of the Company's crippling attrition rates throughout the Class Period—or at minimum recklessly disregarded information contradicting their public statements. For example, FE-1 stated that ATI executives received reports distributed on a weekly basis that internally reported the Company's high attrition rate. Moreover, FE-1 attended quarterly meetings where Defendants Diab (then CEO) and Jordan (CFO) would discuss, among other things, attrition at ATI. According to FE-1, when asked about attrition at the quarterly meetings, these ATI executives would respond that they had someone working on it. FE-1 also reported that ATI executives had access to the Company's attrition rate through their access to ATI's databases and systems, which tracked attrition at the Company. Other former ATI employees, including FE-4, likewise confirmed that Defendants had access to the Company's attrition rates. Indeed, FE-4 reported working on various reports, including a monthly slide deck, a board of directors deck and a CFO deck, which included a monthly scorecard of 2-3 pages with a graph containing a trend line showing the attrition rate by months. FE-4 stated that the monthly scorecard was intended for the executive leadership team. According to FE-4, throughout the whole of 2020 leading up to the Class Period the number of employees was lower, month over month.

**ANSWER TO PARAGRAPH 9**: To the extent the allegations in paragraph 9 are directed at the FVAC Defendants, the FVAC Defendants deny the allegations contained in paragraph 9 of the Complaint. The FVAC Defendants further answer that they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint regarding information allegedly provided by former ATI employees and therefore also deny them on that basis. To the extent the allegations in paragraph 9 are not directed at the FVAC Defendants, no response is required.

10.      The truth began to emerge before the market opened on July 26, 2021, less than two months after the Merger closed, when ATI drastically reduced its full-year earnings guidance from $731 million to a range of $640 to $670 million, reduced its adjusted EBITDA guidance from $119 million to a range of $60 to $70 million and revealed that it could only open between 55 and 65 new clinics in 2021—far short of the 90 clinics it had told investors it would open. The Company attributed its guidance cut to significant attrition among its physical therapists, which prevented it from meeting patient demand, and a competitive hiring market, which significantly increased its labor costs. ATI also announced that its Chief Human Resources Officer, Cedric Coco, was leaving the Company. A former ATI employee (FE-2) confirmed that this termination was sudden, explaining that, internally, employees received an email one morning essentially saying that Coco was being let go.

**ANSWER TO PARAGRAPH 10**: The FVAC Defendants deny the allegations contained in paragraph 10 of the Complaint, except admit that (i) on July 26, 2021, ATI reduced its full-year earnings guidance from $731 million to a range of $640 to $670 million, reduced its adjusted EBITDA guidance from $119 million to a range of $60 to $70 million, and disclosed that it would open between 55 and 65 new clinics in 2021; and (ii) ATI announced that its Chief Human Resources Officer, Cedric Coco, was leaving the Company. The FVAC Defendants refer to ATI's July 26, 2021 public filings for a complete and accurate description of their contents. The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of paragraph 10 and therefore also deny them on that basis.

11. As a result of these disclosures on July 26, 2021, the price of ATI stock declined 43.41%, from $8.34 per share to $4.72 per share, on unusually heavy trading volume. The next day, on July 27, 2021, the price of ATI's share price declined by 19.07%, and closed at $3.82 per share. Over these two trading days, the Company's share price fell by a staggering 62.48%, or $4.52 per share. Collectively, in less than two trading days, these disclosures wiped out hundreds of millions of dollars' worth of shareholder value.

**ANSWER TO PARAGRAPH 11**: The FVAC Defendants deny the allegations contained in paragraph 11 of the Complaint, except admit that (i) the price of ATI stock declined from $8.34 per share to $4.72 per share on July 26, 2021; (ii) ATI's price per share decreased by approximately 43% on July 26, 2021; (iii) the price of ATI stock closed at $3.82 per share on July 27, 2021; (iv) ATI's price per share decreased by approximately 19% on July 27, 2021; and (v) ATI's share price fell by $4.52 per share between July 26, 2021, and July 27, 2021.

12. Analysts were shocked. For example, Barrington Research analysts stated openly that they were "[s]hocked by what has unfolded at ATI," explaining that ATI needed to "regain[] the trust of investors" and "build back its credibility through operational execution and better and more transparent communication with investors." They also stated that ATI lacked a "good defense for why the company's original guidance (which was officially maintained up until yesterday ever made sense." A Jefferies analyst report dated July 27, 2021 stated: "We've lost

confidence in business controls and recognize that management credibility has been damaged."

**ANSWER TO PARAGRAPH 12**: The FVAC Defendants deny the allegations contained in paragraph 12 of the Complaint, except admit that paragraph 12 contains partial quotations from the referenced reports. The FVAC Defendants refer to the referenced reports for a complete and accurate description of their contents.

13. Shortly thereafter, Defendants announced that Defendant Diab had been terminated as CEO and as a member of the Board of Directors. ATI confirmed in a press release that Defendant Diab's termination was a decision of the Board, stating "the Board has determined that it is the right time for a leadership change." Defendant Diab's termination was so sudden that ATI did not even have time to select a replacement CEO—acting or otherwise—as it announced that it "intend[ed] to conduct a national search for a new CEO."

**ANSWER TO PARAGRAPH 13**: The FVAC Defendants deny the allegations contained in paragraph 13 of the Complaint, except admit that (i) Mr. Diab stepped down as CEO and as a member of the Board of Directors of ATI; and (ii) paragraph 13 contains partial quotations from an ATI press release. The FVAC Defendants refer to the referenced press release for a complete and accurate description of its contents.

14. Within days of Diab's termination, on August 16, 2021, ATI announced that, "during the period ended June 30, 2021," it had to recognize (1) a "$33.7 million non-cash impairment charge" because "fair value of [ATI's] trade name indefinite-lived intangible asset was below its carrying value"; and (2) a "$433.2 million non-cash impairment charge" because the "fair value of [ATI's] single reporting unit was below its carrying value." Both impairment charges impacted ATI's goodwill and intangible asset impairment charge line item in the Company's condensed consolidated statements of operations.

**ANSWER TO PARAGRAPH 14**: The FVAC Defendants deny the allegations contained in paragraph 14 of the Complaint, except admit that (i) on August 16, 2021, ATI announced that it recognized two impairment charges; and (ii) paragraph 14 of the Complaint contains partial quotations from that announcement. The FVAC Defendants refer to the referenced announcement for a complete and accurate description of its contents.

15. Then, on October 19, 2021, after the close of trading, the Company announced

8

that it had to further reduce its revenue guidance to a range of $620 to $630 million (from $640 to $670 million) and reduce its adjusted EBITDA guidance to a range of $40 to $44 million (from $60 to $70 million) due to "lower visit volume," which ATI expressly linked to the need to "invest[] in our field sales force" to "driv[e] visit growth."

**ANSWER TO PARAGRAPH 15**: The FVAC Defendants deny the allegations contained in paragraph 15 of the Complaint, except admit that (i) ATI announced on October 19, 2021, that it reduced its revenue guidance to a range of $620 to $630 million (from $640 to $670 million) and reduced its adjusted EBITDA guidance to a range of $40 to $44 million (from $60 to $70 million); and (ii) paragraph 15 contains partial quotations from that announcement. The FVAC Defendants refer to the referenced announcement for a complete and accurate description of its contents.

16.     As a result of these post-market day disclosures on October 19, 2021, the price of ATI stock declined by 21.64% on the next trading day, October 20, 2021, from $3.65 per share to $2.86 per share, on unusually heavy trading volume.

**ANSWER TO PARAGRAPH 16**: The FVAC Defendants deny the allegations contained in paragraph 16 of the Complaint, except admit that between October 19, 2021, and October 20, 2021, (i) ATI's stock price declined from $3.65 per share to $2.86 per share; and (ii) ATI's stock price declined by approximately 21.64%.

17.     Subsequently, ATI disclosed that, on November 5, 2021, the Company had received from the U.S. Securities and Exchange Commission a request for "the production of documents relating to the earnings forecast and financial information referenced in the Company's July 26, 2021 Form 8-K and related matters." ATI also disclosed that it was "cooperating with the SEC in connection with this request."

**ANSWER TO PARAGRAPH 17**: The FVAC Defendants deny the allegations contained in paragraph 17 of the Complaint, except admit that (i) on November 4, 2021, ATI received a request for documents from the U.S. Securities and Exchange Commission; (ii) paragraph 17 of the complaint contains partial quotations from ATI's disclosure of that request. The FVAC Defendants refer to the referenced announcement for a complete and

9

accurate description of its contents.

18.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**ANSWER TO PARAGRAPH 18**: The FVAC Defendants deny the allegations

contained in paragraph 18 of the Complaint.

## II.     THE CLAIMS ASSERTED IN THIS COMPLAINT

19.     As further set forth below, Plaintiffs assert two separate sets of claims in this Complaint. Counts One and Two, as set forth in Part XIII of the Complaint, assert securities fraud claims under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"). These claims are asserted against ATI, the ATI Individual Defendants and the FVAC Defendants. These claims specifically incorporate all allegations and inferences from the facts alleged that these Defendants made the materially false, misleading, and incomplete statements and omissions alleged herein with scienter (i.e., knowingly or recklessly) in violation of Section 10(b) and Rule 10b-5 promulgated thereunder, and are liable as control persons under Section 20(a).

**ANSWER TO PARAGRAPH 19**: The FVAC Defendants deny the allegations

contained in paragraph 19 of the Complaint, except admit that Plaintiffs purport to assert claims

under Sections 10(b) and 20(a) of the Securities and Exchange Act and Rule 10b-5 promulgated

thereunder. The FVAC Defendants further answer that pursuant to the Court's Order, none of the

claims in paragraph 19 persist against the FVAC Defendants.

20.     Counts Three and Four, as set forth in Part XIV of the Complaint, assert negligence claims under Sections 14(a), including Rule 14a-9 promulgated thereunder, and 20(a) of the Exchange Act. These non-fraud claims are asserted against ATI, the ATI Individual Defendants and the FVAC Defendants for materially false and misleading statements and omissions in the Proxy Solicitations (defined below in Part XIV) and against the ATI Individual Defendants and the FVAC Defendants for liability as control persons of ATI.

**ANSWER TO PARAGRAPH 20**: The FVAC Defendants deny the allegations

contained in paragraph 20 of the Complaint, except admit that Plaintiffs purport to assert claims

under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

The FVAC Defendants further answer that pursuant to the Court's Order, only the Section 14(a) claims survive as against the FVAC Defendants.

21. Plaintiffs specifically disclaim any allegations of fraud or fraudulent intent in the separately pleaded non-fraud, negligence claims asserted in Counts Three and Four, with the proviso that any challenged statements of opinion or belief made in connection with the Proxy Solicitations are alleged to have been materially misstated statements of opinion or belief as of the date they were made.

**ANSWER TO PARAGRAPH 21**: The FVAC Defendants deny the allegations

contained in paragraph 21 of the Complaint.

## III. JURISDICTION AND VENUE

22. The claims asserted herein arise under and pursuant to Sections 10(b), 14(a), and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78n(a), 78t(a)) and Rules 10b-5, and 14a-9 promulgated thereunder by the SEC (17 C.F.R. §§ 240.10b-5, 240.14a-9).

**ANSWER TO PARAGRAPH 22**: The FVAC Defendants deny the allegations

contained in paragraph 22 of the Complaint, except admit that Plaintiffs purport to assert claims

under Sections 10(b), 14(a) and 20(a) of the Exchange Act and Rules 10b-5, and 14a-9

promulgated thereunder. The FVAC Defendants further answer that pursuant to the Court's

Order, only the Section 14(a) claims survive as against the FVAC Defendants.

23. This Court has exclusive subject-matter jurisdiction of all claims asserted herein pursuant to Section 27 of the Exchange Act, *codified as amended*, 15 U.S.C. § 78aa (for violations of the Exchange Act), and original subject-matter jurisdiction of all claims asserted herein pursuant to 28 U.S.C. § 1331 (for all claims arising under federal law).

**ANSWER TO PARAGRAPH 23**: The FVAC Defendants admit the allegations

contained in paragraph 23 of the Complaint.

24. Venue is proper in this District pursuant to Section 27(c) of the Exchange Act (15 U.S.C. § 78aa(c)) and 28 U.S.C. § 1391(b). Substantial acts in furtherance of the violations or the effects of the violations have occurred in this District. Many of the acts complained of herein, including but not limited to the dissemination of materially false and/or misleading information, occurred in substantial part in this District. Additionally, the Company's principal executive officers are, and at all relevant times were, located in this District.

**ANSWER TO PARAGRAPH 24**: The FVAC Defendants admit the allegations

contained in paragraph 24 of the Complaint.

25.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

**ANSWER TO PARAGRAPH 25**: The FVAC Defendants deny the allegations

contained in paragraph 25 of the Complaint. The FVAC Defendant lack knowledge or

information sufficient to form a belief as to the truth of the allegations of paragraph 25 involving

defendants other than the FVAC Defendants and therefore also deny them on that basis.

## IV.     PARTIES

### A.     Plaintiffs

### 1.     Lead Plaintiff The Phoenix Insurance Company Ltd.

26.     The Phoenix Insurance Company Ltd., as set forth in its previously filed Certification, acquired ATI securities at artificially inflated prices during the Class Period and suffered damages when corrective disclosures revealed Defendants' violations of the federal securities laws, as alleged herein.

**ANSWER TO PARAGRAPH 26**: The FVAC Defendants deny the allegations

contained in paragraph 26 of the Complaint, except the FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations that Plaintiff acquired ATI

securities during the Class Period and therefore also deny them on that basis. The FVAC

Defendants refer to the referenced certification for a complete and accurate description of its

contents.

### 2.     Lead Plaintiff The Phoenix Pension & Provident Funds

27.     Lead Plaintiff The Phoenix Pension & Provident Funds, as set forth in its previously filed Certification, acquired ATI securities at artificially inflated prices during the Class Period and suffered damages when corrective disclosures revealed Defendants' violations

of the federal securities laws, as alleged herein.

**ANSWER TO PARAGRAPH 27**: The FVAC Defendants deny the allegations

contained in paragraph 27 of the Complaint, except the FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations that Plaintiff acquired ATI

securities during the Class Period and therefore also deny them on that basis. The FVAC

Defendants refer to the referenced certification for a complete and accurate description of its

contents.

### 3. Consolidated Plaintiff City of Melbourne Firefighters' Retirement System

28. Consolidated Plaintiff City of Melbourne Firefighters' Retirement System ("CMFRS") is a pension fund based in Melbourne, Florida that provides retirement benefits to retired firefighters. As of October 1, 2020, CMFRS managed assets in excess of $74 million on behalf of hundreds of active members, retirees, and beneficiaries. As indicated in its attached Certification (Exhibit A), CMFRS acquired ATI securities at artificially inflated prices during the Class Period, beneficially owned and/or held shares of FVAC Class A common stock as of May 24, 2021, the Record Date for shareholders to be eligible to vote on the Merger, and suffered damages when corrective disclosures revealed Defendants' violations of the federal securities laws, as alleged herein. CMFRS's action captioned *City of Melbourne Firefighters' Ret. Sys. v. ATI Phys. Therapy, Inc.*, No. 1:21-CV-05345 (N.D. Ill. Filed Oct. 7, 2021) was consolidated herein by the Court's Order dated October 20, 2021 (ECF No. 32 herein).

**ANSWER TO PARAGRAPH 28**: The FVAC Defendants deny the allegations

contained in paragraph 28 of the Complaint, except admit that the action captioned *City of*

*Melbourne Firefighters' Ret. Sys. v. ATI Phys. Therapy, Inc.*, No. 1:21-CV-05345 (N.D. Ill. Filed

Oct. 7, 2021) was consolidated by the Court's Order dated November 18, 2021 (ECF No. 40).

The FVAC Defendants further answer that they lack knowledge or information sufficient to form

a belief as to the truth of the allegations that (i) Plaintiff is a pension fund based in Melbourne,

Florida that provides retirement benefits to retired firefighters; (ii) as of October 1, 2020,

Plaintiff managed assets in excess of $74 million on behalf of hundreds of active members,

retirees, and beneficiaries; and (iii) Plaintiff acquired ATI securities during the Class Period; and

therefore also deny them on that basis. The FVAC Defendants refer to the referenced

certification for a complete and accurate description of its contents.

### 4. The Plaintiff Class (the "Class")

29. The proposed Class includes the above-named Plaintiffs, including Lead Plaintiffs and the Consolidated Plaintiff, and all persons and entities other than Defendants that (a) purchased or otherwise acquired ATI securities between February 22, 2021 and October 19, 2021, both dates inclusive (the "Class Period"), and/or (b) beneficially owned and/or held FVAC Class A common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting.

**ANSWER TO PARAGRAPH 29**: The FVAC Defendants deny the allegations

contained in paragraph 29 of the Complaint, except admit that Plaintiffs purport to bring this

action as a class action on behalf of the putative class alleged in paragraph 29.

### B. Defendants

#### 1. ATI Physical Therapy, Inc. f/k/a Fortress Value Acquisition Corp. II ("ATI" or "FVAC" or the "Company")

30. Defendant ATI is organized under the laws of Delaware, with principal executive offices located at 90 Remington Boulevard, Bolingbrook, Illinois. Shares of the Company's Class A common stock trade in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "ATIP". Its redeemable warrants trade on the NYSE under the symbol "ATIP WS." Each whole redeemable warrant is exercisable for one share of Class A common stock at an exercise price of $11.50 per share.

**ANSWER TO PARAGRAPH 30**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in the second

sentence of paragraph 30 of the Complaint regarding whether ATI's shares trade in an efficient

market and deny them on that basis. The FVAC Defendants admit the remaining allegations

contained in paragraph 30 of the Complaint as of the time the Complaint was filed.

#### 2. The ATI Individual Defendants

31. Defendant Labeed Diab was the Company's Chief Executive Officer ("CEO") at all relevant times. Diab is a registered pharmacist. Diab was named CEO and a member of the Board of Directors in 2019. In August 2021, ATI announced that Defendant Diab had been

14

terminated as CEO and as a Board member because "the Board ha[d] determined that it is the right time for a leadership change."

**ANSWER TO PARAGRAPH 31**: The FVAC Defendants deny the allegations contained in paragraph 31 of the Complaint, except admit that (i) Mr. Diab is a registered pharmacist; (ii) Mr. Diab was named CEO and a member of the Board of Directors of Wilco Holdco, Inc. ("Wilco") in 2019; and (iii) in August 2021, Mr. Diab stepped down as CEO and a member of the Board of Directors of ATI.

32. Defendant Joseph Jordan was the Company's Chief Financial Officer at all relevant times. Jordan was named CFO of the Company in 2019. Prior to 2019, Jordan was the Company's Senior Vice President and Chief Accounting Officer beginning in 2018.

**ANSWER TO PARAGRAPH 32**: The FVAC Defendants deny the allegations contained in paragraph 32 of the Complaint, except admit that (i) Mr. Jordan was named Chief Financial Officer ("CFO") of Wilco in 2019; (ii) Mr. Jordan is presently the CFO of ATI; and (iii) Mr. Jordan previously served as Wilco's Senior Vice President and Chief Accounting Officer.

33. Defendant Andrew A. McKnight was the CEO of FVAC before it completed the Merger with ATI. He has also served as a director of ATI since the Merger. He solicited and/or permitted the use of her [sic] name to solicit consent or authorization for the Merger by issuing the definitive proxy statement dated May 14, 2021 (the "Proxy Statement").

**ANSWER TO PARAGRAPH 33**: The FVAC Defendants deny the allegations contained in paragraph 33 of the Complaint, except admit that (i) Mr. McKnight was the CEO of FVAC before it completed the Merger with ATI; (ii) Mr. McKnight served as a director of ATI after the Merger; and (iii) Mr. McKnight signed the Proxy Statement dated May 14, 2021.

34. All references to the "ATI Individual Defendants" in this Amended Complaint refer to ATI, Diab, Jordan, and McKnight.

**ANSWER TO PARAGRAPH 34**: The FVAC Defendants admit the allegations in paragraph 34 of the Complaint. The FVAC Defendants further answer that, pursuant to the

15

Court's Order, "McKnight is more properly grouped with the former FVAC directors, namely Joshua Pack, Marc Furstein, Leslee Cowen, Aaron Hood, Carmen Policy, Rakefet Russak-Aminoach, and Sunil Gulati." (*See* Order at fn.4.)

### 3. The FVAC Defendants

35. Defendant Joshua A. Pack was the Chairman of the Board of Directors of FVAC. He solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

**ANSWER TO PARAGRAPH 35**: The FVAC Defendants deny the allegations contained in paragraph 35 of the Complaint, except admit that (i) Mr. Pack was the Chairman of the Board of Directors of FVAC; and (ii) the Proxy Statement was issued on behalf of the FVAC Board of Directors.

36. Defendant Marc Furstein was a director of FVAC at all relevant times. He solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

**ANSWER TO PARAGRAPH 36**: The FVAC Defendants deny the allegations contained in paragraph 36 of the Complaint, except admit that (i) Mr. Furstein was a director of FVAC; and (ii) the Proxy Statement was issued on behalf of the FVAC Board of Directors.

37. Defendant Leslee Cowen was a director of FVAC at all relevant times. She solicited and/or permitted the use of her name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

**ANSWER TO PARAGRAPH 37**: The FVAC Defendants deny the allegations contained in paragraph 37 of the Complaint, except admit that (i) Ms. Cowen was a director of FVAC; and (ii) the Proxy Statement was issued on behalf of the FVAC Board of Directors.

38. Defendant Aaron F. Hood was a director of FVAC at all relevant times. He solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

**ANSWER TO PARAGRAPH 38**: The FVAC Defendants deny the allegations

contained in paragraph 38 of the Complaint, except admit that (i) Mr. Hood was a director of

FVAC; and (ii) the Proxy Statement was issued on behalf of the FVAC Board of Directors.

39.     Defendant Carmen A. Policy was a director of FVAC at all relevant times. She solicited and/or permitted the use of her name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

**ANSWER TO PARAGRAPH 39**: The FVAC Defendants deny the allegations

contained in paragraph 39 of the Complaint, except admit that (i) Ms. Policy was a director of

FVAC; and (ii) the Proxy Statement was issued on behalf of the FVAC Board of Directors.

40.     Defendant Rakefet Russak-Aminoach was a director of FVAC at all relevant times. She solicited and/or permitted the use of her name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

**ANSWER TO PARAGRAPH 40**: The FVAC Defendants deny the allegations

contained in paragraph 40 of the Complaint, except admit that (i) Ms. Russak-Aminoach was a

director of FVAC; and (ii) the Proxy Statement was issued on behalf of the FVAC Board of

Directors.

41.     Defendant Sunil Gulati was a director of FVAC at all relevant times. He solicited and/or permitted the use of his name to solicit consent or authorization for the Merger by issuing the Proxy Statement.

**ANSWER TO PARAGRAPH 41**: The FVAC Defendants deny the allegations

contained in paragraph 41 of the Complaint, except admit that (i) Mr. Gulati was a director of

FVAC; and (ii) the Proxy Statement was issued on behalf of the FVAC Board of Directors.

42.     Defendants Pack, Furstein, Cowen, Hood, Policy, Russak-Aminoach, and Gulati are collectively referred to herein as "FVAC Defendants."

**ANSWER TO PARAGRAPH 42**: The FVAC Defendants admit the allegations

contained in paragraph 42 of the Complaint. The FVAC Defendants further answer that the term

"FVAC Defendants" as used throughout this Answer to respond to the allegations in the

Complaint refers to Defendants McKnight, Pack, Furstein, Cowen, Hood, Policy, Russak-

17

Aminoach, and Gulati as consistent with the Court's Order.

43. The Court has personal jurisdiction over the ATI Individual Defendants and the FVAC Defendants because the ATI Individual Defendants and the FVAC Defendants conducted substantial business in this District, and the events giving rise to Plaintiffs' claims arise out of and relate to the Individual ATI Individual Defendants' and the FVAC Defendants' contacts with this District. The ATI Individual Defendants' and FVAC Defendants' actions are controlled by the Company. The ATI Individual Defendants' and FVAC Defendants' affiliations with this District are so continuous and systematic as to render them essentially at home in Illinois. Further, the ATI Individual Defendants and FVAC Defendants have transacted business, maintained substantial contacts, purposefully targeted investors, and committed other overt acts in furtherance of the unlawful acts alleged herein in this District, as well as throughout the United States. The unlawful acts of the ATI Individual Defendants and FVAC Defendants have been directed at, have targeted, and have had the effect of causing injury to investors who are citizens or nationals of the United States, and to investors who reside in, are located in, or are doing business in this District, as well as throughout the United States.

**ANSWER TO PARAGRAPH 43**: The FVAC Defendants deny the allegations contained in paragraph 43 of the Complaint, except to admit this Court has personal jurisdiction over the FVAC Defendants as to the surviving claims in this action. The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 involving defendants other than the FVAC Defendants and therefore also deny those allegations on that basis.

44. The ATI Individual Defendants and FVAC Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The ATI Individual Defendants and FVAC Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the ATI Individual Defendants and FVAC Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The ATI Individual Defendants and FVAC Defendants are liable for the false statements and omissions pleaded herein.

**ANSWER TO PARAGRAPH 44**: The FVAC Defendants deny the allegations contained in paragraph 44 of the Complaint, except admit that (i) Mr. McKnight signed the definitive Proxy Statement filed with the SEC on May 14, 2021; and (ii) certain of the FVAC

18

proxy materials issued during the alleged Class Period were issued on behalf of the FVAC board.

The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 44 involving defendants other than the FVAC Defendants and

therefore also deny those allegations on that basis.

45.     The Company, the ATI Individual Defendants, and the FVAC Defendants are collectively referred to herein as "Defendants."

**ANSWER TO PARAGRAPH 45**: The FVAC Defendants admit the allegations

contained in paragraph 45 of the Complaint.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     FVAC Incorporated as a SPAC in 2019 and Merged with ATI in 2021

#### 1.     Formation and Purpose of FVAC, the SPAC

46.     ATI is a physical therapy provider, with principal offices in Bolingbrook, Illinois, specializing in outpatient rehabilitation and adjacent healthcare services, with nearly 900 physical therapy clinics across 24 states. ATI was initially founded as Assessment Technologies, Inc., in Willowbrook, Illinois and has been providing physical therapy services since 1996.

**ANSWER TO PARAGRAPH 46**: The FVAC Defendants admit the allegations

contained in paragraph 46 of the Complaint.

47.     FVAC was incorporated in Delaware in June 2020. It was a special purpose acquisition company ("SPAC") formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar Merger with one or more businesses.

**ANSWER TO PARAGRAPH 47**: The FVAC Defendants admit the allegations

contained in paragraph 47 of the Complaint.

48.     As noted above, in recent years, SPACs have become magnets for fraud, which has caused great concern among U.S. regulators and investors. The SEC has criticized SPACs because of their apparent tendency to encourage fraud. As John Coates, Acting Director, Division of Corporate Finance at the SEC has stated,

19

Some . . . practitioners and commentators have claimed that an advantage of SPACs over traditional IPOs is lesser securities law liability exposure for targets and the public company itself. They sometimes specifically point to the Private Securities Litigation Reform Act (PSLRA) safe harbor for forward-looking statements, and suggest or assert that the safe harbor applies in the context of de-SPAC transactions but not in conventional IPOs. This, such observers assert, is the reason that sponsors, targets, and others involved in a []SPAC feel comfortable presenting projections and other valuation material of a kind that is not commonly found in conventional IPO prospectuses.

**ANSWER TO PARAGRAPH 48**: The FVAC Defendants deny the allegations

contained in paragraph 48 of the Complaint, except admit that paragraph 48 contains a partial

quotation from a statement by John Coates. The FVAC Defendants refer to the referenced

statement for a complete and accurate description of its contents.

49.     The possibility of lower risk for securities law liability for company misstatements naturally entices such SPACs to take liberties that other publicly traded companies would not in their disclosures, and so encourages SPACs to mislead the investing public.

**ANSWER TO PARAGRAPH 49**: The FVAC Defendants deny the allegations

contained in paragraph 49 of the Complaint.

50.     In the view of the SEC, any claim that the securities laws do not adequately cover SPACs "is overstated at best, and potentially seriously misleading at worst."

**ANSWER TO PARAGRAPH 50**: The FVAC Defendants deny the allegations

contained in paragraph 50 of the Complaint, except admit that paragraph 50 contains a partial

quotation from a statement by John Coates. The FVAC Defendants refer to the referenced

statement for a complete and accurate description of its contents.

51.     SPACs also create perverse incentives for their key employees. Key employees of SPACs will lose their employment at the end of the life of the SPAC, they have an incentive to find a suitable target for acquisition without fail in order to obtain employment at the acquired company. They also have incentives to choose one target over another based on the differing compensation they may receive through becoming an employee at different targets. These incentives may cause key employees to overlook problems at a target company they favor, or to present a target company in misleadingly favorable light to ensure the company is acquired. Indeed, the Company acknowledges these aspects of SPACs. For example, in FVAC's S-1 dated July 24, 2020, the Company stated:

20

Our key personnel may negotiate employment or consulting agreements with a target business in connection with a particular business combination. These agreements may provide for them to receive compensation following our initial business combination and as a result, may cause them to have conflicts of interest in determining whether a particular business combination is the most advantageous.

**ANSWER TO PARAGRAPH 51**: The FVAC Defendants deny the allegations contained in paragraph 51 of the Complaint, except admit that paragraph 51 contains a partial quotation from FVAC's S-1 dated July 24, 2020. The FVAC Defendants refer to that public filing for a complete and accurate description of its contents.

52.     FVAC completed its initial public offering (the "IPO") on August 14, 2020, selling 34.5 million units at $10.00 per unit, generating gross proceeds to FVAC of $345 million. Each unit consisted of one share of FVAC Class A common stock and one-fifth of one redeemable public warrant of FVAC. Each public warrant entitled the holder to purchase one share of FVAC Class A common stock at an exercise price of $11.50 per share. On October 2, 2020, shares of FVAC's Class A common stock and its public warrants began trading separately on the NYSE under the ticker symbols "FAII" and "FAII WS," respectively.

**ANSWER TO PARAGRAPH 52**: The FVAC Defendants admit the allegations contained in paragraph 52 of the Complaint.

53.     On July 24, 2020, in its registration statement filed with the SEC on Form S-1, FVAC represented that it "currently [did] not have any specific business combination under consideration."

**ANSWER TO PARAGRAPH 53**: The FVAC Defendants admit the allegations contained in paragraph 53 of the complaint. The FVAC Defendants further admit that paragraph 53 contains a partial quotation from FVAC's Form S-1 filed July 24, 2020. The FVAC Defendants refer to that public filing for a complete and accurate description of its contents.

54.     Nevertheless, as McKnight later revealed on February 22, 2021, FVAC "followed ATI for a long time, having been an investor in the credit for over ten years. Since Advent bought the business in 2016, [FVAC] watched and admired the company's growth, in particular [ATI's] approximately 300 new clinics through their de novo growth effort."

**ANSWER TO PARAGRAPH 54**: The FVAC Defendants deny the allegations contained in paragraph 54 of the Complaint, except admit that paragraph 54 contains a partial

21

quotation from a statement by Mr. McKnight contained in a press release dated February 22, 2021. The FVAC Defendants refer to the referenced press release for a complete and accurate description of its contents.

55. ATI incorporated in Delaware on June 10, 2020, less than one month before FVAC filed its registration materials with the SEC on July 24, 2020 (and fourteen days before FVAC filed its draft registration statement with the SEC on June 24, 2020).

**ANSWER TO PARAGRAPH 55**: The FVAC Defendants admit the allegations contained in paragraph 55 of the Complaint, except the FVAC Defendants further answer to clarify that FVAC, which later merged with ATI, was the entity that incorporated in Delaware on June 10, 2020.

### 2. Merger of FVAC and ATI

56. On or about February 6, 2019, as part of the planned Merger, Defendant Diab entered into an employment agreement with the Company and became the Company's CEO, replacing McKnight, the Company's former CEO. Jordan was named CFO in 2019, replacing the Company's former CFO.

**ANSWER TO PARAGRAPH 56**: The FVAC Defendants deny the allegations contained in paragraph 56 of the Complaint, except admit that (i) Mr. Diab entered into an employment agreement with Wilco on or about February 6, 2019; and (ii) Mr. Jordan was named CFO of Wilco in 2019.

57. On or about April 8, 2019, Cedric Coco was named Chief Human Resources Officer, replacing the Company's former Human Resources officer. Before joining the Company, Coco was the Chief People Officer of Brookdale. Coco's tenure at Brookdale overlapped with Diab's tenure at Brookdale. Prior to his tenure at Brookdale, Coco held various human resources positions for Lowe's Companies Inc. between 2008 and 2016, including the role of Senior Vice President of Human Resources.

**ANSWER TO PARAGRAPH 57**: The FVAC Defendants deny the allegations contained in paragraph 57 of the Complaint, except admit (i) that on April 8, 2019, Mr. Coco was named Wilco's Chief Human Resources Officer; and (ii) the allegations contained in the

22

second and fourth sentence of paragraph 57 of the Complaint. The FVAC Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

the third sentence of paragraph 57 and therefore also deny them on that basis.

58.     On February 22, 2021, ATI and FVAC announced a proposed merger that would take ATI public.

**ANSWER TO PARAGRAPH 58**: The FVAC Defendants admit the allegations

contained in paragraph 58 of the Complaint.

59.     According to multiple former ATI employees, the Company rushed to go public through the merger. For example, FE-5, a former sales director for ATI from March 2016 to March 2021 who was responsible for a region spanning Illinois, Missouri, Texas and New Mexico, stated that ATI going public was "100% rushed." And FE-2, a former talent acquisition coordinator who worked at ATI's Bolingbrook, Illinois corporate headquarters confirmed that ATI's going public "happened very quick." Likewise, FE-6, who worked at ATI from January 2005 through July 2021 and, most recently, managed both ATI's Shorewood and Joliet, Illinois clinics, stated that it seemed that the merger got pushed through "very, very quickly."

**ANSWER TO PARAGRAPH 59**: The FVAC Defendants deny the allegations

contained in paragraph 59 of the Complaint. The FVAC Defendants further answer that they lack

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 59 regarding former ATI employees and therefore also deny them on that basis.

60.     On May 14, 2021, FVAC filed its definitive proxy statement with the SEC, soliciting votes in favor of the Merger. Beneficial owners and/or holders of record of FVAC common stock at the close of business on May 24, 2021 (the "Record Date") were entitled to vote on the Merger at the FVAC special meeting of stockholders on June 15, 2021. In connection with the Merger, FVAC shareholders had the option either to retain their shares, which would be converted to shares of ATI Class A Class A common stock upon completion of the Merger, or to redeem their shares for $10.00 per share in cash, whether they voted for or against the Merger or abstained from voting.

**ANSWER TO PARAGRAPH 60**: The FVAC Defendants admit the allegations

contained in paragraph 60 of the Complaint. The FVAC Defendants refer to the May 14, 2021

Definitive Proxy Statement for a complete and accurate description of its contents.

61.     Also on May 14, 2021, FVAC disclosed that on February 21, 2021, in

contemplation of the Merger, Diab and Jordan entered into new employment agreements with the Company, and that on May 14, 2021, Coco entered into a new employment agreement with the Company. Pursuant to these new employment agreements, in the event of a termination with or without cause: (1) Diab would receive 1.5 times his annual salary, a pro-rated annual bonus, and immediate vesting of any then-unvested equity awards, among other benefits; and (2) Jordan and Coco would receive 1.25 times each of their respective annual salaries, pro-rated annual bonuses, and immediate vesting of any then-unvested equity awards, among other benefits.

**ANSWER TO PARAGRAPH 61**: The FVAC Defendants deny the allegations

contained in paragraph 61 of the Complaint, except admit the allegations in the first sentence

paragraph 61.

62. On June 17, 2021, ATI completed the Merger with FVAC, and shares of the combined Company's common stock began trading on the NYSE under the ticker symbol "ATIP."

**ANSWER TO PARAGRAPH 62**: The FVAC Defendants admit the allegations

contained in paragraph 62 of the Complaint.

63. On June 17, 2021, ATI issued a press release, and filed a copy of the press release with the SEC on SEC Form 8-K, announcing that it had completed the Merger.

**ANSWER TO PARAGRAPH 63**: The FVAC Defendants admit the allegations

contained in paragraph 63 of the Complaint.

**B. Unbeknownst to Investors, ATI Experienced a Massive Increase in Attrition During Late 2020 and 2021**

64. As a provider of rehabilitation services, the Company's recruitment and retention of enough physical therapists to meet patient demand is vital to the success and growth of its business.

**ANSWER TO PARAGRAPH 64**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained paragraph 64 of

the Complaint and deny them on that basis.

65. Beginning in or around November 2020 and into early 2021, the Company's attrition rate among physical therapists roughly doubled to 41%, as confirmed by multiple former employees (*infra*). These increased rates of attrition among clinical staff were known to Defendants but not disclosed to investors.

24

**ANSWER TO PARAGRAPH 65**: The FVAC Defendants deny the allegations contained in paragraph 65 of the Complaint. The FVAC Defendants further answer that they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 involving defendants other than the FVAC Defendants and therefore also deny them on that basis.

### 1. Prior to the Class Period, the Company's Attrition Rate Was in Line with Industry Average of 20% but Became a "Big Problem" in Late 2020

66. Prior to late 2020, the Company's physical therapist attrition rate hovered at or around 20%, and the average attrition rate for clinical staff and physical therapists in ATI's industry is around 20%. According to the National Healthcare Retention & RN Staffing Report, the annual average turnover rate for physical therapists is 10.7%. Similarly, according to an academic study of the industry-wide turnover rates for physical therapists, 16% of physical therapists changed jobs each year and 2% left their jobs and were not working or were retired.

**ANSWER TO PARAGRAPH 66**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the paragraph 66 of the Complaint and therefore deny them on that basis, except admit that the last sentence of paragraph 66 partially paraphrases a cited academic study. The FVAC Defendants refer to the referenced study for a complete and accurate description of its contents.

67. Former ATI Employee 3 ("FE-3") worked as a Revenue Cycle Analyst at the Company's Bolingbrook, Illinois headquarters from April 2018 until April 2020. In March 2020, the Company informed FE-3 that her employment would terminate in April 2020 because the Company eliminated her position. As a Revenue Cycle Analyst, FE-3 reported directly to ATI's current Director of Revenue Cycle Optimization, Jermaine Paul. FE-3 analyzed contracts, revenue and growth prospects for the Company.

**ANSWER TO PARAGRAPH 67**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the Complaint and deny them on that basis, except admit that Jermaine Paul was Director of Revenue Cycle Optimization at ATI when the Complaint was filed.

25

68.     According to FE-3, prior to late 2020 and the COVID-19 pandemic, the attrition rate among physical therapy clinicians hovered just above 20%, which FE-3 understood to be the "industry average."

**ANSWER TO PARAGRAPH 68**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 68

of the Complaint and deny them on that basis.

69.     According to FE-3, the Company had a reputation for being a bad workplace. "In the corporate office, there was a frat boy environment with lots of bullying and stuff," according to FE-3.

**ANSWER TO PARAGRAPH 69**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 69

of the Complaint and deny them on that basis.

### 2.     The Company's Furloughed Most of Its Physical Therapists in 2020, and Faced Increased Problems Retaining Therapists

70.     The Company furloughed most of its physical therapists in response to the COVID-19 pandemic in early 2020, according to Former ATI Employee 5 ("FE-5"). FE-5 is a former ATI employee who worked as a Sales Director for certain of ATI's clinics throughout Illinois (the "Illinois Region"), Missouri, Texas, and New Mexico (the "South Region") from March 2016 through March 2021. As the sales lead for 230 ATI clinics throughout the Illinois and South Regions, FE-5 oversaw a team of 20 sales representatives "across multiple budgetary decisions" across several states and was responsible for 105,000 patients. FE-5 directed sales training, including quarterly regional installs and an annual sales retreat. FE-5 prepared sales and market analysis reports and recommended analytic solutions. In her role, FE-5 worked with executive leadership to identify business requirements, forecast budget, and develop go-to-market plans.

**ANSWER TO PARAGRAPH 70**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 70

of the Complaint and deny them on that basis.

71.     According to FE-5, in 2020, at the apex of the COVID-19 pandemic, the Company furloughed many of its physical therapists.

**ANSWER TO PARAGRAPH 71**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 71

of the Complaint and deny them on that basis.

72.     Additionally, in 2020, the Company faced significantly increased hurdles in acquiring and retaining talent, according to Former ATI Employee 1 ("FE-1"). FE-1 is a former ATI employee who served as a Talent Acquisition Specialist from May 2019 to September 2021. Additionally, from March 2020 to July 2020, FE-1 was a Human Resources Professional at the Company. At all times during her tenure with the Company, FE-1 worked from the Company's Bolingbrook, Illinois headquarters, reporting directly to Keri Novelli-Ammons, ATI's Director of Talent Acquisition. Novelli-Ammons reported directly to Brian Emerson, ATI's Vice President of Talent Management, who reported to senior human resources management and to Diab. Cedric Coco assumed the role of Chief Human Resources officer in April 2019. At all times, the Chief Human Resources Officer reported directly to the CEO. Jane Cobbler, the Vice President of Human Resources, reported directly to the Chief Human Resources Officer.

**ANSWER TO PARAGRAPH 72**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 72

of the Complaint and therefore deny them on that basis, except admit that (i) Keri Novelli-

Ammons was Director of Talent Acquisition at ATI during the relevant time period; (ii) Brian

Emerson was Vice President of Talent Management at ATI during the relevant time period; (iii)

Cedric Coco assumed the role of Chief Human Resources officer at ATI in April 2019; and (iv)

Jane Cobbler was Vice President of Human Resources at ATI during the relevant time period.

73.     In her role as Talent Acquisition Specialist, FE-1 recruited clinic directors and clinicians, including physical therapists, to fill roles in ATI's clinics across the United States. FE-1 sourced, prescreened, interviewed, and referred applications to district directors, Human Resources business partners, and Vice Presents at the Company. Additionally, FE-1 negotiated compensation with candidates and petitioned Company leadership for attractive salary offerings. Additionally, FE-1 worked directly with senior leadership to develop recruitment strategies with respect to physical therapists. During her tenure, FE-1 helped to revamp the Company's human resources tools and resources for sourcing, job postings, pre-screening, interviewing, and slating.

**ANSWER TO PARAGRAPH 73**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 73

of the Complaint and deny them on that basis.

74.     According to FE-1, beginning in 2020, the Company began to "retitle" the

27

physical therapist positions and to lower physical therapists' compensation. "To add to that, the culture was tainted," according to FE-1. According to FE-1, by early 2020, the rate at which candidates rejected employment offers at ATI was 50%, according to FE-1. "It started getting really bad at the top of 2020. We were batting 50/50. For the average ten candidates, half were declining." FE-1 was instructed to inquire of potential new-hires "upfront about salary expectations." Where a candidate's salary expectations exceeded what the Company was willing to pay, FE-1 was instructed "not to move forward with that candidate, because [the Company] wanted to minimize having so many declines based on compensation."

**ANSWER TO PARAGRAPH 74**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 74

of the Complaint and deny them on that basis.

75.     FE-1 also explained that each Talent Acquisition Specialist had a shared folder on a centralized hard drive.

**ANSWER TO PARAGRAPH 75**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained paragraph 75 of

the Complaint and deny them on that basis.

> **3.     Multiple Former ATI Employees Confirmed that the Company Was Plagued by Severe Attrition During the Class Period, Including by an Attrition Rate Reaching as High as 41% in Late 2020 and Early 2021 After Hundreds of Physical Therapists Declined to Return to Work**

76.     Multiple Former ATI Employees have confirmed that the Company was suffering from severe attrition among the ranks of its physical therapists during the Class Period. Indeed, several former employees stated that ATI's attrition rate for clinical staff, including physical therapists, reached approximately 40% by late 2020 and remained at around 40% through mid-2021.

**ANSWER TO PARAGRAPH 76**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 76

of the Complaint and deny them on that basis.

77.     For example, according to FE-5, the Company's attrition rate for physical therapists reached around 40% in 2020 and remained around 40% through at least March 2021 when FE-5 left the Company. FE-5 attributed this attrition primarily to the Company's overworking and underpaying its clinical staff[.]

**ANSWER TO PARAGRAPH 77**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77 of the Complaint and deny them on that basis.

78. Physical therapists complained to FE-5 that they were overworked: "I had one p[hysical] t[herapist] in a location that should have had three," as FE-5 recounted from a discussion she had with a physical therapist in March 2021. According to FE-5, physical therapy is a niche specialty field, and so "[a] lot of p[hysical] t[herapists] know one another—they went to the same grad school." According to FE-5, "[a] lot of people seek out different forums to look at the company, and you can see that the starting salary [for ATI physical therapists] is lower [than that of competitors]."

**ANSWER TO PARAGRAPH 78**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78 of the Complaint and deny them on that basis.

79. FE-1 likewise has confirmed that the Company experienced an attrition rate of approximately 40% in late-2020 and early-2021. According to FE-1, the attrition rate among physical therapists was consistently around 41% from 2020 through at least September 2021. FE-1 knew this information from weekly reports distributed to her and others by Brian Emerson, ATI's Director of Talent Acquisition, throughout 2020 and 2021. The weekly reports contained detailed information on hires, promotions, furloughs and departures and terminations. During this time, FE-1's workload was heavy, and she was under pressure to recruit quality clinicians to replace those who were leaving in droves.

**ANSWER TO PARAGRAPH 79**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Complaint and deny them on that basis.

80. In late 2020 and early 2021, the Company's longstanding physical therapists began to leave in droves, according to FE-1. "The turnover was high because they felt like the workload was too much; the workload was overwhelming." In particular, former ATI physical therapists told FE-1 that the Company's decision to increase the number of patients clinicians were assigned to treat, to cut the time per patient, and to eliminate critical clinic support staff, all contributed to the attrition. "They wanted to spend an hour with their patients. They said that was the best way to give adequate care to someone needing physical therapy, but ATI's model changed so that it was more or less 30 minutes with the patient, then 30 minutes doing paperwork and follow-up and that piece." According to FE-1, longstanding physical therapists bristled at their new administrative workload, which previously had been assigned to administrative support staff at the clinics. With the change in leadership and reorganization in

29

2019, the clinicians no longer had the necessary administrative support to give competent care to patients. Former ATI physical therapists told FE-1 that they left the Company because their jobs became demanding, more dangerous, and undercompensated.

**ANSWER TO PARAGRAPH 80**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 80

of the Complaint and deny them on that basis.

81.     Former ATI Employee 2 ("FE-2") also confirmed that the Company's attrition rate for clinical staff and physical therapists was 41% in late-2020 and 2021. FE-2 was employed by the Company as a Talent Acquisition Coordinator from October 2020 to August 2021, in the Company's Human Resources department at the Company's Bolingbrook headquarters. FE-2 reported directly to Amanda Lobas, Talent Acquisition-Operations and Systems Manager, who reported directly to Brian Emerson, Vice President Talent Management, who in turn reported directly to Coco. In her role as a Talent Acquisition Specialist, FE-2 oversaw the onboarding process for new-hires, including physical therapists. FE-2 conducted background checks, completed forms, and logged detailed information on each hire into the system that the Company used to track applicant information. Additionally, FE-2 managed the training and onboarding e-mail inbox, which received messages from new hires, current employees, and district directors. According to FE-2, the Company's attrition levels reached 41%, and CHRO Cedric Coco acknowledged ATI's retention troubles at an HR department lunch event in either November/December 2020 or January/February 2021.

**ANSWER TO PARAGRAPH 81**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 81

of the Complaint and deny them on that basis, except admit that (i) Amanda Lobas was Talent

Acquisition–Operations and Systems Manager at ATI during the relevant time period; and

(ii) Brian Emerson was Vice President of Talent Management at ATI during the relevant time

period.

82.     FE-2 attributed blame for the attrition rates among physical therapists to undesirable hours and below-market pay—in fact, many new-hires never even showed up to work on their first day because they had accepted offers elsewhere. "People were pretty underpaid" at ATI compared to its competitors. "I know, working in HR and seeing offer letters," that physical therapists "were paid extremely low," according to FE-2. Physical therapy candidates commonly declined the Company's employment offers, while many new-hires often accepted positions but did not show up to work on their scheduled first day. "It was not uncommon for people to not show up for the first day of work," according to FE-2, because "they found something that was better pay, or they found something with better hours." Indeed,

employee schedules at the Company's clinics fell outside industry norms. Most physical therapists "had to work on weekends or late nights," which "wasn't ideal for them, and if they didn't start for two or three weeks, then they kept interviewing with other companies."

**ANSWER TO PARAGRAPH 82**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Complaint and deny them on that basis.

83. Former Employee 6 ("FE-6") worked at ATI from January 2005 through July 2021. FE-6 worked for years in a clinic director position and, most recently, was managing both ATI's Shorewood and Joliet, Illinois clinics at the same time. In this role, FE-6 was responsible for the day-to-day operations of the clinic and reported to Donnette Brass, a district manager at ATI. FE-6 reported that attrition was high at ATI, confirming that at the end of 2020/first half of 2021 was when the high attrition was really bad at the Company. FE-6 reported having monthly calls with ATI's Chief Operating Officer, Ray Wahl, around the end of 2020 or beginning of 2021 where Wahl started saying that they needed to do everything in their power to hold onto people because employees were leaving at an alarming rate. FE-6 also reported that the attrition was starting to impact the service that ATI was able to provide to patients. In that regard, FE-6 stated that the backfill after someone quit was not quick in most cases, so directors were trying to cover with someone else from another clinic or cover the work themselves. FE-6 explained that "you do what you can when that many people are walking out your door." FE-6 further stated that patients were seeing a lot of experienced clinicians and physical therapists go, which would raise customer satisfaction issues, including because people were resigning at an alarming rate to patients. FE-6 also confirmed that ATI clinics were understaffed for periods of time.

**ANSWER TO PARAGRAPH 83**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Complaint and deny them on that basis, except admit that (i) Donnette Brass was a district manager at ATI; and (ii) Ray Wahl was Chief Operating Officer at ATI.

84. Former Employee 7 ("FE-7") worked at ATI from June 2015 through August 2020 as a Talent Acquisition Manager. FE-7 worked remotely at ATI from home in Greenville, South Carolina and most recently reported to Brian Emerson, ATI's Director of Talent Acquisition. FE-7 was responsible for hiring and recruiting physical therapists for clinics in South Carolina, North Carolina, Georgia, Tennessee and Alabama. FE-7 confirmed that, even prior to COVID, ATI was experiencing issues with attrition. According to FE-7, the C-suite executives at ATI had attrition numbers, which could be looked up by management on calls that FE-7 attended to discuss different avenues to recruit clinicians. FE-7 further reported that ATI was trying to come up with creative initiatives to get people in to fill undesirable locations and that when Cedric Coco, ATI's former Chief Human Resources Officer, came onboard, he addressed the Human Resources department by saying that hiring is a critical priority. FE-7 said

that a lot of times they felt pressure knowing that the Company was not doing well because it did not have enough people to treat patients, which FE-7 characterized as a "very clear message."

**ANSWER TO PARAGRAPH 84**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 84

of the Complaint and deny them on that basis, except admit that Cedric Coco was ATI's former

Chief Human Resources Officer.

### 4. Former ATI Employees Also Confirmed the Company's Toxic Culture Made the Company Ineffective at Attracting and Retaining Talent

85.     Former employees with direct knowledge of the Company's recruitment procedures explained why the Company was ineffective at attracting and retaining qualified physical therapists throughout the Class Period. According to FE-1, ATI had a poor reputation among tight-knit physical therapist communities. FE-1 explained that ATI's recruitment structure "prefers inexperienced p[hysical] t[herapists]," and often hired new graduates with little to no practical experience. According to FE-1, ATI had developed a poor reputation among practicing physical therapists and among students training to be physical therapists. When the Company announced the cuts to clinic staffing levels in 2019, FE-1 recalls that many clinicians left ATI for other practices with more support. For example, between May 2019 and September 2021, the Northwest Region lost seven of its eight district directors to attrition.

**ANSWER TO PARAGRAPH 85**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 85

of the Complaint and deny them on that basis.

86.     Former ATI Employee 4 ("FE-4") is a former ATI employee who served as a Senior Financial Analyst for the Company from October 2017 until December 2020, working from the Company's Bolingbrook headquarters. From October 2017 to March 2020, FE-4 was a Senior Financial Analyst in the Financial Planning & Analysis ("FP&A") department, reporting directly to Mike Yates, Director of FP&A until July 2019, and then to Trang Fransen, Director Corporate Finance. From March 2020 to December 2020, FE-4 was a Senior Financial Analyst of Financial Operations, reporting directly to Fransen. From October 2017 through November 2019, FE-4's direct supervisors reported directly to Senior Vice President of Finance/Analytics, David Pallaschke until his departure. From November 2019 through December 2020, Fransen reported directly to Senior Vice President of Finance Jamie Lewis. Pallaschke and Lewis reported directly to Defendant Jordan

**ANSWER TO PARAGRAPH 86**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 86

of the Complaint and deny them on that basis, except admit that (i) Mike Yates was Director of

FP&A of ATI until July 2019; (ii) Trang Fransen was Director Corporate Finance with ATI; (iii)

David Pallaschke was Senior Vice President of Finance/Analytics at ATI; and (iv) Jamie Lewis

was the Senior Vice President of Finance at ATI.

87.     FE-4 attributed the Company's high attrition rate to poor workplace environment. Upon Diab's appointment as CEO, the corporate culture deteriorated quickly and bullying soon became commonplace. "When [FE-4] joined ATI, they were very welcoming, and the whole office would gather in the Apex area," but this environment changed when the Company's leadership structure changed in 2019. According to FE-4, the push to cut costs everywhere possible accelerated under Diab's new leadership, in advance of the Company's public listing. When Yates left in July 2019 and FE-4 began to report to Fransen, FE-4 struggled to work under Fransen's direction. According to FE-4, Fransen was highly critical and frequently demanded that FE-4 make particular changes to her reports, and then routinely gaslit FE-4 after FE-4 made the requested changes. For example, Fransen frequently asked FE-4 to analyze why a particular change identified in FE-4's analyses had occurred at the end of presentations. When FE-4 complied with Fransen's requests, Fransen told FE-4 that Fransen did not want to hear about why a change in numbers had occurred, and only wanted the numbers. "On the corporate side, there were a lot of people who couldn't understand, my friend in accounting left, everyone was miserable," according to FE-4.

**ANSWER TO PARAGRAPH 87**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 87

of the Complaint and deny them on that basis.

88.     The toxic work culture under Diab's leadership fueled a wave of attrition. For her part, FE-4 resigned from her position because she no longer wanted to put up with "the daily misery and abuse" she experienced while working at the Company. After Diab and Coco joined ATI, in February 2019 and April 2019 respectively, "the culture went literally down to where it was a terrible culture." According to FE-4, ATI employees "were leaving left and right, and I ended up with the last manager that I had before I transitioned to Financial Operations" in July 2019. FE-4 explained that attrition among ATI's physical therapists grew in 2020, and ATI was not accredited as a "Great Place to Work" in 2020, despite the Company's public representations to the contrary. Consistent with FE-4's report, based on a search for "ATI" on the "Great Place To Work" website, the last time ATI's "Great Place To Work" certification was updated was in August 2019 for the period from August 2019 through August 2020.

**ANSWER TO PARAGRAPH 88**: The FVAC Defendants lack knowledge or

33

information sufficient to form a belief as to the truth of the allegations contained in paragraph 88

of the Complaint and deny them on that basis, except admit that (i) Mr. Diab joined ATI in

February 2019, (ii) Mr. Coco joined ATI in April 2019; and (iii) according to the "Great Place

To Work" website, the last time ATI's "Great Place To Work" certification was updated was in

August 2019 for the period from August 2019 through August 2020. The FVAC Defendants

refer to the referenced website for a complete and accurate description of its contents. The FVAC

Defendants further answer that, per the Court's Order, the public statements referenced in

paragraph 88 of the Complaint do not remain at issue in this action.

### C.  The Company Knowingly Misled Investors about ATI's Attrition Rate in 2021

#### 1.  In Statements to Investors, the Company Made Misleading Statements about Attrition Rates and the Company's Finances

89.     Despite having severe attrition rates—for example, as much as over twice the industry average—Defendants repeatedly represented to investors that its staff retention was one of its competitive strengths. For example, beginning on February 22, 2021, the start of the Class Period, during a presentation to investors discussing the proposed Merger (a transcript of which FVAC filed with the SEC as proxy solicitation material), ATI's then-CEO, Defendant Diab, stated the Company had "very high retention" and "low turnover" of its physical therapists. Given that these statements were made to investors as reasons why the Company held a competitive advantage over competitors, the statements blatantly misled investors regarding ATI's attrition rate and business.

**ANSWER TO PARAGRAPH 89**: The FVAC Defendants deny the allegations

contained in paragraph 89 of the Complaint, except admit that (i) FVAC filed the transcript of a

February 22, 2021 investor presentation with the SEC as proxy solicitation material; and

(ii) paragraph 89 contains partial quotations from that transcript. The FVAC Defendants refer to

the referenced transcript for a complete and accurate description of its contents.

90.     Similarly, on April 1, 2021, Defendants filed with the SEC an "Analyst Day Presentation" on an SEC Schedule 14A proxy statement. In this document, the Company again represented that it had "high retention" and "strong retention" of employees. The Company likewise represented that it had a superior ability to recruit and retain physical therapists,

34

claiming that the Company was the "Employer of Choice for P[hysical] T[herapy] Clinicians" and highlighted its purported "Best-in-class infrastructure" for "retain[ing]" physical therapists.

**ANSWER TO PARAGRAPH 90**: The FVAC Defendants deny the allegations

contained in paragraph 90 of the Complaint, except admit that paragraph 90 contains partial

quotations from the referenced public filing. The FVAC Defendants refer to the referenced

document for a complete and accurate description of its contents. The FVAC Defendants further

answer that, per the Court's Order, certain public statements referenced in paragraph 90 of the

Complaint do not remain at issue in this action.

91.     Likewise, on May 14, 2021, in the Company's "Definitive Proxy Statement" on SEC Schedule 14A, the Company misrepresented that it had a "competitive compensation model" and stated that ATI had "historically been able to realize high retention rates across [its] organization." Additionally, the Definitive Proxy Statement stated that, among the material factors that the FVAC Defendants considered as supporting approval of the Merger, were ATI's purportedly "Attractive Recruiting and Retention Capabilities" as compared to those of other companies in the industry, "which allows the Company to recruit and retain talent."

**ANSWER TO PARAGRAPH 91**: The FVAC Defendants deny the allegations

contained in paragraph 91 of the Complaint, except admit that paragraph 91 contains partial

quotations of the referenced public filing. The FVAC Defendants refer to the referenced public

filing for a complete and accurate description of its contents. The FVAC Defendants further

answer that, per the Court's Order, the public statements referenced in paragraph 91 of the

Complaint do not remain at issue in this action.

92.     The Definitive Proxy Statement also represented that competition for physical therapists and other clinical providers "may increase labor costs and reduce profitability," and that "[i]f the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, . . . its business may decrease and its revenues may decline." These statements were misleading because the "risks" of increased labor costs and increased turnover were not merely possibilities, but rather had already transpired.

**ANSWER TO PARAGRAPH 92**: The FVAC Defendants deny the allegations

contained in paragraph 92 of the Complaint, except admit that paragraph 92 contains partial

quotations of the referenced public filing. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents.

93.     On May 20, 2021, the Defendants filed "Definitive Additional Materials" in support of the Company's Definitive Proxy Statement, in which they stated, among other things, that beginning in the first quarter of 2021, visit volumes increased, and that "the Company continues to match its clinical staffing levels accordingly." In fact, the Company was unable to retain sufficient clinical staff to meet its customers' needs or to attract enough staff to open additional clinics.

**ANSWER TO PARAGRAPH 93**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93 of the Complaint and deny them on that basis, except admit that (i) on May 20, 2021, FVAC filed "Definitive Additional Materials" in support of its Definitive Proxy Statement; and (ii) paragraph 93 contains a partial quotation from the referenced public filing. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents.

94.     In addition to misrepresenting its attrition rates, the Company misrepresented the financial impact of these attrition rates on its finances. Beginning in February 2021 and continuing through July 2021, the Company projected the revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021. The Company knew that due to the massive increase in the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future. Indeed, the Company continued to tell investors that it projected revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021 in late May 2021, when only two months later, the Company revised these figures downward massively: revenue guidance from $731 million to a range of $640 million to $670 million, and its adjusted EBITDA guidance from $119 million to a range of $60 million to $70 million. As the Company explained, it revised these figures downward due to increased attrition, but the Company's attrition rate had already reached 40% by February 2021 when the Company continued to give investors these projections.

**ANSWER TO PARAGRAPH 94**: The FVAC Defendants deny the allegations contained in paragraph 94 of the Complaint, except admit (i) the allegations contained in the second sentence of paragraph 94; (ii) that in July 2021, ATI revised its revenue guidance from $731 million for 2021 to a range of $640 million to $670 million, and its adjusted EBITDA

36

guidance from $119 million for 2021 to a range of $60 million to $70 million; and (iii) that ATI

revised these figures due to, among other factors, increased attrition. The FVAC Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

the third and fifth sentences of paragraph 94 and therefore also deny them on that basis. The

FVAC Defendants further answer that, per the Court's Order, certain public statements

referenced in paragraph 94 of the Complaint do not remain at issue in this action.

95.     The Company also overvalued its goodwill by over $433 million during the Class
Period, even well after the Company had information that its goodwill was seriously impaired
due to attrition.

**ANSWER TO PARAGRAPH 95**: To the extent the allegations in paragraph 95 are

directed at the FVAC Defendants, the FVAC Defendants deny the allegations contained in

paragraph 95 of the Complaint. To the extent the allegations in paragraph 95 are not directed at

the FVAC Defendants, no response is required. To the extent a response is required, the FVAC

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 95.

96.     In these and numerous additional statements during the Class period, all detailed
in Part IV below, the Company misled investors about its massive attrition rates and the
problems that attrition was causing the Company.

**ANSWER TO PARAGRAPH 96**: The FVAC Defendants deny the allegations

contained in paragraph 96 of the Complaint.

### 2.     Defendants Knew that the Company Was Experiencing Record Rates of Attrition in 2021

97.     The allegations in this subsection relate solely to Plaintiffs' claims under
Section 10(b) and 20(a) of the Exchange Act.

**ANSWER TO PARAGRAPH 97**: The FVAC Defendants deny the allegations

contained in paragraph 97 of the Complaint, except admit that Plaintiffs purport to limit the

allegations in this subsection to their claims under Section 10(b) and 20(a) of the Exchange Act.

The FVAC Defendants further answer that, to the extent the allegations in this subsection are

limited to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act, those allegations

and claims do not implicate the FVAC Defendants as they are not among the surviving claims

against the FVAC Defendants pursuant to the Court's Order and therefore the FVAC Defendants

also deny them on that basis. Out of an abundance of caution, the FVAC Defendants

nevertheless answer the allegations contained in this subsection to the extent a response is

required.

98.     Former employees have confirmed that the ATI and FVAC Individual Defendants
had access to and/or direct knowledge of the Company's severe attrition rates.

**ANSWER TO PARAGRAPH 98**: The FVAC Defendants deny the allegations

contained in paragraph 98 of the Complaint.

99.     According to FE-1, the Company's officers and directors, including the ATI and
FVAC Individual Defendants, had access to and/or received an internally distributed weekly
report that detailed, among other things, the attrition rate among physical therapists. Each week,
Novelli-Ammons met with FE-1 and the other Talent Acquisition Specialists to review these
monthly reports, as part of FE-1's job duties included recruiting physical therapists to replace
those who were leaving. Novelli-Ammons received the report each week. Each of these reports
was highly detailed and listed each ATI clinic location, "the number of term[inations],
resignations, what that portion was, how long they had been there, then for a new requisition, it
will tell you who they are replacing."

**ANSWER TO PARAGRAPH 99**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained paragraph 99 of

the Complaint and deny them on that basis.

100.     At quarterly meetings, the ATI Individual Defendants and the FVAC Defendants
addressed the sky-high attrition rate among clinicians. Each quarter, FE-1 and the other Talent
Acquisition Specialists attended an "all-hands" meeting at the Bolingbrook, Illinois headquarters,
at which Diab, Jordan, and other Company officers and directors were frequently present. At
these quarterly meetings, Defendant Diab "gave a spiel" about the Company's attrition numbers
and the need to recruit and retain clinicians to support the Company's growth. FE-1 explains that
"all the leaders talked about attrition" at these quarterly, all-hands meetings. Indeed, at a

38

quarterly meeting in 2020, FE-1 confronted executives directly about FE-1's increased workload. Specifically, FE-1 explained to Diab and Jordan that certain markets, like the Washington, D.C. market, were "really bad for attrition" in part because it was "so difficult to attract and retain clinicians." At other quarterly all-hands meetings, FE-1 recounted several clinicians, sales representatives, and managers addressing attrition with executives, including Diab and Jordan. According to FE-1, the Company's executives usually responded: "that's one of the things we have someone working on," while insisting that the Talent Acquisition Specialists strive to improve their recruitment numbers each quarter.

**ANSWER TO PARAGRAPH 100**: The FVAC Defendants deny the allegations contained in the first sentence of paragraph 100 of the Complaint. The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the rest of the allegations contained in paragraph 100 and deny them on that basis.

101. Defendants also tracked attrition and data on potential new-hire candidates in a centralized applicant tracking database. For example, FE-1 recounted being responsible for closing out new hire requisitions in the database. As part of the close-out process, FE-1 was required to input a reason for closing the requisition—most commonly, the reason was that a candidate rejected an offer. Where a candidate rejected an offer, FE-1 was required to enter an additional reason. The principal reason that potential new-hires declined offers from the Company was because the Company was "just not paying enough." According to FE-1, ATI executives (including the ATI Individual Defendants and the FVAC Defendants) had access to this information, and specifically requested it.

**ANSWER TO PARAGRAPH 101**: The FVAC Defendants deny the allegations contained in the last sentence of paragraph 101 of the Complaint. To the extent the remaining allegations in paragraph 101 are directed at the FVAC Defendants, the FVAC Defendants deny the allegations contained in paragraph 101 of the Complaint. To the extent the allegations in paragraph 101 are not directed at the FVAC Defendants, no response is required. To the extent a response is required, the FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first through fifth sentences of paragraph 101 and deny them on that basis.

102. Indeed, consistent with FE-1's recounting of a centralized database that tracked clinician staffing, Defendants touted in SEC filings ATI's "[r]obust, national systems to manage, track and optimize clinician staffing" and its "Proprietary Systems to Optimize Clinic

39

Performance" with "Clinician-level productivity tracking."

**ANSWER TO PARAGRAPH 102**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

paragraph 102 of the Complaint and deny them on that basis, except admit that paragraph 102

contains partial quotations from a publicly available Schedule 14A Proxy Statement dated

April 1, 2021. The FVAC Defendants refer to that public filing for a complete and accurate

description of its contents.

103.    FE-4 likewise has confirmed that the ATI Individual Defendants had access to the Company's attrition rates. In her role as Senior Financial Analyst, FE-4 provided business segment analysis and recommendations to operational leadership. Additionally, FE-4 assisted with developing business strategies and maintaining the Company's business operations forecast. Internally, FE-4 was also the systems administrator responsible for data consolidation. During FE-4's her tenure, FE-4 collaborated with corporate department leaders to develop the Company's annual budget. Each month, FE-4 developed a "regional flash and macro-generated district analysis presentation," in the form of a "Monthly Business Results" slide deck. FE-4 also provided monthly reports, guidance, and assistance to FP&A and Financial Operations department leaders to assist with their efforts to maintain ATI's budget. FE-4 had primary responsibility for the Monthly Business Results and Board of Directors' slide decks, as well as the Monthly Finance and Operations KPIs Executive Scorecard. In these capacities, FE-4 built and managed capital expenditure reports and dashboards for multiple departments. Additionally, FE-4 helped to build and maintain a rolling forecast and trend analysis and was responsible for "tracking and providing corporate vendor detail for actuals, budget, and forecast."

**ANSWER TO PARAGRAPH 103**: To the extent the allegations in paragraph 103 are

directed at the FVAC Defendants, the FVAC Defendants deny the allegations contained in

paragraph 103 of the Complaint. To the extent the allegations in paragraph 103 are not directed

at the FVAC Defendants, no response is required. To the extent a response is required, the

FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 103 and therefore deny them on that basis.

104.    The monthly slide decks that FE-4 prepared for executive leadership, including Diab and Jordan, featured a "Monthly Scorecard" with a chart including a trend line that detailed the attrition rates among physical therapists. According to FE-4, attrition climbed "throughout the whole year in 2020" and "[t]he number of employees was lower, month over month"

40

throughout the year. The attrition rate among physical therapists was presented to Jordan, the Board of Directors, and other executives. FE-4 personally prepared the slide deck that contained the attrition rate.

**ANSWER TO PARAGRAPH 104**: To the extent the allegations in paragraph 104 are directed at the FVAC Defendants, the FVAC Defendants deny the allegations contained in paragraph 104 of the Complaint. To the extent the allegations in paragraph 104 are not directed at the FVAC Defendants, no response is required. To the extent a response is required, the FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104 and therefore deny them on that basis.

**D.    Severe Attrition Levels Among Physical Therapists in 2021 Meant that the Company Could Not Staff New Clinics with Providers**

105.    In its Statements to Investors, the Company stated that it expected to open over ninety new clinics in 2021. In the Company's proxy and solicitation materials in the lead-up to the Merger, Defendants routinely told investors that ATI's decision-making process for opening new clinics involved, among other inputs, an in-depth analysis of whether the Company had sufficient clinical staff to support an expanded footprint sufficient to justify opening brand new clinic locations from the ground-up (in its statements, the Company referred to such new clinics as "de novo" clinics).

**ANSWER TO PARAGRAPH 105**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105 of the Complaint because the relevant statements and materials are not identified and deny them on that basis.

106.    On each of February 22, April 1, and May 24, 2021, in SEC filings designated by Defendants as soliciting or proxy materials, the Company stated that it had a "Clear Path to $200+ million of [Adjusted] EBITDA and Beyond," which included the Company's "Deep pipeline to support 90+ de novos in 2021."

**ANSWER TO PARAGRAPH 106**: The FVAC Defendants deny the allegations contained in paragraph 106 of the Complaint, except admit that paragraph 106 contains partial quotations from FVAC public filings. The FVAC Defendants refer to the referenced public

41

filings for a complete and accurate description of their contents.

107.    On February 22, 2021, in materials filed with the SEC appended to an SEC Form 8-K and designated by Defendants as "[s]oliciting material pursuant to Rule 14a-12 under the Exchange Act," the Company represented that its "De Novo Economics Are Highly Accretive & Predictable," and that the prototypical de novo clinic was "located in urban, well-trafficked areas," that the "[a]verage clinic" is "staffed with four clinicians."



**ANSWER TO PARAGRAPH 107**: The FVAC Defendants deny the allegations contained in paragraph 107 of the Complaint, except admit that paragraph 107 contains partial quotations from the referenced public filing. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents.

108. Also on February 22, 2021, during a presentation to investors, Jordan stated that "De Novos have been an important pillar of growth throughout ATI's history. It is certainly something that has separated us from our peers and I believe provides us with a competitive advantage as we move forward." Jordan stated further, "De Novos have been such an important part of our growth, historically," and that "De Novos will continue to be an important part of our growth in the future." Jordan stated that the Company involved "HR, from a human capital

perspective" as part of the de novo identification process, which Jordan described as one that is "deeply rooted in analytics and involves a cross functional connection" and "extremely granular and analytically driven."

**ANSWER TO PARAGRAPH 108**: The FVAC Defendants deny the allegations contained in paragraph 108 of the Complaint, except admit that (i) Mr. Jordan participated in a presentation to investors on February 22, 2021; and (ii) paragraph 108 contains a partial quotation of statements made by Mr. Jordan during that presentation. The FVAC Defendants refer to that presentation for a complete and accurate description of its contents.

109.    On May 20, 2021, Defendants filed "Definitive Additional Materials" in support of the Company's Definitive Proxy Statement. In this document, Defendant Diab touted the Company's opening of 14 new clinics during the first quarter of 2021 and represented that ATI was "on track to achieve our de novo development targets for [2021]." Defendant Diab also stated that the Company was continuing its "growth with a fast pace of new clinic openings." Additionally, Defendant Jordan stated that, during the first quarter of 2021, "[a]s visits increased each month, [the Company was] able to better leverage fixed costs and improve labor productivity" and "[a]s volume continues to recover, we are excited to fully utilize our platform and deliver margin improvements."

**ANSWER TO PARAGRAPH 109**: The FVAC Defendants deny the allegations contained in paragraph 109 of the Complaint, except admit that paragraph 109 contains partial quotations from the referenced public filing. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents.

110.    In fact, the Company lacked the clinical staff even to support the clinics it had already opened. As of April and May 2021, the Company lacked the staff to open "90+ clinics" in 2021.

**ANSWER TO PARAGRAPH 110**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110 of the Complaint and deny them on that basis.

**E.    When Investors Learned the Truth about the Company's Attrition and Clinic Opening Figures, ATI's Stock Price Dropped Precipitously**

**1.    July 26, 2021**

43

111.    Less than two months after becoming a public company, on July 26, 2021, before the market opened, ATI reported its financial results for second quarter of 2021—the same quarter in which the Merger was completed—on SEC Form 8-K, signed by Jordan on behalf of the Company, which attached a press release (the "July 26, 2021 Press Release"). Among other things, ATI revealed that "the acceleration of attrition among [its] therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our labor costs." As a result, ATI significantly reduced its full-year 2021 revenue guidance from $731 million to a range of $640 million to $670 million, and its adjusted EBITDA guidance from $119 million to a range of $60 million to $70 million. Further, ATI lowered its estimate for new clinic openings in 2021, from 90 clinics to between 55 and 65 clinics, which was also driven by the severe attrition of the Company's physical therapists. In addition, ATI disclosed that the revision to its 2021 earnings guidance constituted an interim triggering event that required further analysis regarding potential impairment to its goodwill and trade name intangible assets, and that ATI would perform interim impairment testing during the third quarter of 2021, the results of which could lead to a material impairment charge for the Company. In context, the press release stated, in relevant part:

> "I would like to thank our nationwide team for their dedication, service and tireless effort providing the highest quality clinical care to our patients that makes ATI a leader in the large and growing physical therapy industry," said Labeed Diab, Chief Executive Officer. "***We are seeing growing demand for ATI's services, and visit volume increased during the second quarter. However, the acceleration of attrition among our therapists in the second quarter and continuing into the third quarter, combined with the intensifying competition for clinicians in the labor market, prevented us from being able to meet the demand we have and increased our expectations for labor costs.*** We are implementing a range of actions related to compensation, staffing levels and other items to retain and attract therapists across our platform to meet our currently underserved patient demand. ***We expect therapist headcount to be below previously anticipated levels for 2021 which, combined with elevated costs for therapists and an unfavorable revenue mix, has caused us to reduce our forecast for 2021.*** We continue to have confidence in the underlying fundamentals driving our business and our ability to leverage our strong position in the market to drive growth and value over time."

> \*       \*       \*

> **2021 Earnings Forecast**

> For full year 2021, ATI is now projecting revenue to be in the range of $640 million to $670 million and Adjusted EBITDA to be in the range of $60 million to $70 million, down from $731 million and $119 million, respectively. ATI does not intend to provide revenue guidance as a future guidance metric. The revised expectations reflect the impact of the following developments which are partially offset by continued strong demand for ATI's services:

44

- The acceleration of attrition in the second quarter and continuing into the third quarter caused, in part, by changes made during the COVID-19 pandemic related to compensation, staffing levels and support for clinicians. ATI has taken swift actions to offset those changes, but the company expects the impact of attrition in the second and third quarters will impact overall profitability for the year.

- Labor market dynamics that increased competition for the available physical therapy providers in the workforce, creating wage inflation and elevated employee attrition at ATI, negatively affecting our ability to capitalize on continued customer demand.

- Decrease in rate per visit primarily driven by continuing less favorable payor and state mix when compared to pre-pandemic profile, with general shift from workers compensation and auto personal injury to commercial and government, and further impacted by mix-shift out of higher reimbursement states.

***Largely in response to the accelerated attrition, ATI is lowering its estimate for new clinic openings, (i.e., de novo and acqui-novo clinics), to be in the range of 55 to 65 clinics from 90 clinics.*** Our ability to achieve our revised forecast for the remainder of 2021 depends upon a number of factors, including the success of a number of steps being taken to significantly reduce attrition of physical therapists and significant hiring of physical therapists [sic]

The Company has determined that the revision to its 2021 forecast constitutes an interim triggering event that requires further analysis with respect to potential impairment to goodwill and trade name intangible assets. ***Accordingly, the Company is currently performing interim quantitative impairment testing during the third quarter of 2021.*** If it is determined that the fair value amounts are below the respective carrying amounts, the Company will record an impairment charge which could be material.

**ANSWER TO PARAGRAPH 111**: The FVAC Defendants deny the allegations contained in paragraph 111 of the Complaint, except admit (i) the allegations contained in the first sentence of paragraph 111; (ii) that ATI reduced its 2021 revenue guidance from $731 million to a range of $640 million to $670 million, and its 2021 adjusted EBITDA guidance from $119 million to a range of $60 million to $70 million; (iii) that ATI lowered its estimate for new clinic openings in 2021, from 90 clinics to between 55 and 65 clinics; (iv) the allegations contained in the fifth sentence of paragraph 111; and (v) that paragraph 111 contains partial quotations from the referenced public filing. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, certain public statements referenced in paragraph 111

of the Complaint do not remain at issue in this action.

112. In the same SEC filing, also on July 26, 2021, the Company announced that Coco, the Company's hand-picked Chief Human Resources Officer, "resigned from the Company" effective July 23, 2021.

**ANSWER TO PARAGRAPH 112**: The FVAC Defendants deny the allegations

contained in paragraph 112 of the Complaint, except admit that (i) on July 26, 2021, ATI

announced that Cedric Coco resigned from ATI effective July 23, 2021; and (ii) paragraph 112

contains a partial quotation from the referenced public filing. The FVAC Defendants refer to the

referenced public filing for a complete and accurate description of its contents.

113. As a result of the Company's disclosures in the July 26, 2021 Press Release, the price of ATI stock declined 43.41%, from $8.34 per share to $4.72 per share, on unusually heavy trading volume. The next day, on July 27, 2021, the price of ATI's share price declined by 19.07%, and closed at $3.82 per share. Over these two trading days, the Company's share price fell by a staggering 62.48%, or $4.52 per share.

**ANSWER TO PARAGRAPH 113**: The FVAC Defendants deny the allegations

contained in paragraph 113 of the Complaint, except admit that (i) ATI issued a July 26, 2021

Press Release; (ii) the price of ATI stock declined from $8.34 per share to $4.72 per share, or

approximately 43%, on July 26, 2021; (iii) the price of ATI stock closed at $3.82 per share on

July 27, 2021; (iv) the closing price of ATI stock declined by approximately 19% between

July 26, 2021, and July 27, 2021; and (v) ATI's share price fell by $4.52 per share between

July 26, 2021, and July 27, 2021.

114. Analysts were taken by complete surprise. For example, analysts at Barrington Research lowered their recommendation on ATI, stating that they were "[s]hocked by what has unfolded at ATI," explaining that ATI needed to "regain[] the trust of investors" and "build back its credibility through operational execution and better and more transparent communication with investors." They also exclaimed that ATI lacked a "good defense for why the company's original guidance (which was officially maintained up until yesterday ever made sense." Barrington

Research analysts also noted that "the company chose to release its results before it had been able to calculate income tax expense" and "[a]s a result, [ATI's] earnings release did not include an EPS figure" and "lacked a share count, a balance sheet, [and] a cash flow statement."

**ANSWER TO PARAGRAPH 114**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 114 of the Complaint and deny them on that basis, except admit that paragraph 114 contains partial quotations from the referenced Barrington Research report. The FVAC Defendants refer to the referenced report for a complete and accurate description of its contents.

115. A Jefferies analyst report dated July 27, 2021 stated: "We've lost confidence in business controls and recognize that management credibility has been damaged."

**ANSWER TO PARAGRAPH 115**: The FVAC Defendants deny the allegations contained in paragraph 115 of the Complaint, except admit that paragraph 115 contains partial quotations from the referenced Jeffries report. The FVAC Defendants refer to the referenced report for a complete and accurate description of its contents.

116. On August 9, 2021, Defendants announced that Defendant Diab had been terminated as CEO and as a member of the Board of Directors. ATI confirmed in a press release that Defendant Diab's termination was a decision of the Board, stating "the Board has determined that it is the right time for a leadership change." Defendant Diab's termination was so sudden that ATI did not even have time to select a replacement CEO—acting or otherwise—as it announced that it "intend[ed] to conduct a national search for a new CEO."

**ANSWER TO PARAGRAPH 116**: The FVAC Defendants deny the allegations contained in paragraph 116 of the Complaint, except admit that (i) on August 9, 2021, ATI announced that Mr. Diab stepped down as CEO and member of the Board of Directors; and (ii) paragraph 116 contains partial quotations from the referenced press release. The FVAC Defendants refer to the referenced press release for a complete and accurate description of its contents.

117. Within days of Diab's termination, on August 16, 2021, ATI announced that the earnings forecast revision on July 16, 2021 had triggered the need to analyze potential

47

impairment to ATI's goodwill, trade name indefinite-lived tangible asset. And, after analysis, the Company determined that, "during the period ended June 30, 2021," it had to recognize (1) a "$33.7 million non-cash impairment charge" because "fair value of [ATI's] trade name indefinite-lived intangible asset was below its carrying value"; and (2) a "$433.2 million non-cash impairment charge" because the "fair value of [ATI's] single reporting unit was below its carrying value." Both impairment charges impacted ATI's goodwill and intangible asset impairment charge line item in the Company's condensed consolidated statements of operations.

**ANSWER TO PARAGRAPH 117**: The FVAC Defendants deny the allegations contained in paragraph 117 of the Complaint, except admit that (i) on August 16, 2021, ATI announced it recognized two impairment charges; and (ii) paragraph 117 of the Complaint contains partial quotations from that announcement. The FVAC Defendants refer to ATI's August 16, 2021 Form 10-Q for a complete and accurate description of the announcement's contents.

### 2. October 19, 2021

118. Then, on October 19, 2021, after the close of trading, the Company announced "selected preliminary third quarter 2021 results" in which it revised its 2021 earnings guidance. The press release was filed with the SEC on Form 8-K and signed by Jordan on behalf of the Company. In the press release, the Company stated, in relevant part, that:

> Management has implemented targeted measures that reduced clinical staff attrition and improved clinical full-time equivalent (FTE) growth during the last two months of the third quarter of 2021. The Company made progress towards restoring FTEs with ATI hiring roughly 2 clinicians for every 1 departure in August and September 2021 compared to our second quarter 2021 ratio of approximately 1-to-1.

> Additionally, as cited below in our revised 2021 earnings guidance, visit volume softened resulting in 20,674 average visits per day during the third quarter of 2021 compared to 21,569 during the second quarter of 2021, or approximately 1 less Visit per Day per Clinic. Previous guidance anticipated continued visit volume growth in both the third and fourth quarters of 2021 compared to the second quarter. While ATI continues to focus on the labor market dynamics, we are also working to improve visit volume growth by enhancing filed relationships and referral networks to strategically position ATI to capitalize on long-term growth opportunities.

[ . . . ]

**Revised 2021 Earnings Guidance**

> For full year 2021, ATI is now projecting revenue to be in a range of $620 million to $630 million from the prior range of $640 million to $670 million and Adjusted EBITDA to be in a range of $40 million to $44 million from $60 million to $70 million. The further reduced guidance is due to lower than expected patient volume. . . .

**ANSWER TO PARAGRAPH 118**: The FVAC Defendants deny the allegations contained in paragraph 118 of the Complaint, except admit that (i) on October 19, 2021, ATI reported financial results through a press release on SEC Form 8-K, which was signed by Mr. Jordan on behalf of ATI; and (ii) paragraph 118 of the Complaint contains partial quotations from that press release. The FVAC Defendants refer to the referenced press release for a complete and accurate description of its contents.

119. As a result of the Company's disclosures on October 19, 2021, the price of ATI stock declined by 21.64% on the next trading day, October 20, 2021, from $3.65 per share to $2.86 per share.

**ANSWER TO PARAGRAPH 119**: The FVAC Defendants deny the allegations contained in paragraph 119 of the Complaint, except admit that between October 19, 2021, and October 20, 2021, ATI's stock price declined from $3.65 per share to $2.86 per share, or approximately 21.6%.

120. Again, securities analysts were taken by surprise with ATI's disappointing results. For example, on October 20, 2021, a Barrington Research analyst wrote:

> [w]e had certainly assumed that ATI had hit its low water mark at the time of its Q2 release in late July when it reported disappointing results, materially reduced financial guidance for FY/21, provided incomplete numbers and then demonstrated a significant lack of transparency throughout the company's Q2 conference call. We were wrong.

> [. . .]

> With last night's news release that includes more disappointing results and another material guide down for 2021, along with managements' decision not to engage with analysts or investors until the company releases full Q3 results on November 9, we would suggest that ATI has somehow managed to find a new low

in its still very brief (albeit quite painful) four-month history as an independent publicly-traded entity.

[. . .]

We know that the path back to credibility can only be traveled though operational execution and better and more transparent communication with investors. To date, ATI has failed spectacularly in both areas.

**ANSWER TO PARAGRAPH 120**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120 of the Complaint and deny them on that basis, except admit that paragraph 120 contains partial quotations from the referenced Barrington Research report. The FVAC Defendants refer to the referenced report for a complete and accurate description of its contents.

121.    A Jefferies analyst report dated October 21, 2021 reiterated its prior statement (from July 2021) that: "We've lost confidence in business controls and recognize that management credibility has been damaged."

**ANSWER TO PARAGRAPH 121**: The FVAC Defendants deny the allegations contained in paragraph 121 of the Complaint, except admit that paragraph 121 contains partial quotations from the referenced Jeffries report. The FVAC Defendants refer to the referenced report for a complete and accurate description of its contents.

122.    Then, after the Class Period, on November 16, 2021, ATI disclosed that the Company had received from the U.S. Securities and Exchange Commission on November 5, 2021 a request for "the production of documents relating to the earnings forecast and financial information referenced in the Company's July 26, 2021 Form 8-K and related matters." ATI also disclosed that it was "cooperating with the SEC in connection with this request."

**ANSWER TO PARAGRAPH 122**: The FVAC Defendants deny the allegations contained in paragraph 122 of the Complaint, except admit that (i) ATI issued a Form 10-Q report on November 17, 2021; and (ii) paragraph 122 contains partial quotations from that public filing. The FVAC Defendants refer to that public filing for a complete and accurate description of its contents.

## VI.     DEFENDANTS' FALSE AND MISLEADING STATEMENTS

### A.     February 22, 2021

123.     The Class Period begins on February 22, 2021, when ATI and FVAC announced, in Form 8-K filed by FVAC with the SEC and signed by McKnight on the Company's behalf, that ATI and FVAC had entered into a definitive merger agreement pursuant to which ATI would become a public company. In connection with that announcement, FVAC filed proxy solicitation materials with the SEC, which included slides prepared by ATI and used during a presentation to investors. The same day, during a presentation to investors discussing the proposed Merger (a transcript of which FVAC filed with the SEC as proxy solicitation material), ATI's then-CEO, Defendant Diab, stated the Company was "certified as a Great Places to Work" and had a "very high retention" and "low turnover" of its physical therapists.

**ANSWER TO PARAGRAPH 123**: The FVAC Defendants deny the allegations

contained in paragraph 123 of the Complaint, except admit that (i) on February 22, 2021, FVAC

filed a Form 8-K with the SEC; (ii) the February 22, 2021 Form 8-K was signed by

Mr. McKnight on behalf of FVAC; (iii) the February 22, 2021 Form 8-K announced that ATI

and FVAC had entered into a definitive merger agreement pursuant to which ATI would become

a public company; (iv) on February 22, 2021, FVAC filed proxy solicitation materials with the

SEC, which included ATI presentation slides; (v) on February 22, 2021, Mr. Diab discussed the

proposed merger during a merger presentation; (vi) the last sentence of paragraph 123 contains

partial quotations from Mr. Diab's remarks during that presentation; and (vii) FVAC filed a

transcript of that presentation as proxy solicitation materials with the SEC. The FVAC

Defendants refer to referenced transcript for a complete and accurate description of its contents.

The FVAC Defendants further answer that, per the Court's Order, certain of the public

statements referenced in paragraph 123 of the Complaint do not remain at issue in this action.

124.     The statements in paragraph 123 were materially false and misleading because at the time the Company was experiencing severe attrition among its physical therapists, including attrition rates materially greater than the industry average, so the Company objectively did not have "very high retention" or "low turnover." Moreover, in these filings, the Company was required to disclose, but omitted to disclose, the known trend that it was suffering attrition rates among its clinical staff that were materially greater than the industry average, which was likely

51

to have, and did have, a material impact on the Company's financial performance.

**ANSWER TO PARAGRAPH 124**: The FVAC Defendants deny the allegations

contained in paragraph 124 of the Complaint.

125.    Also, in the February 22, 2021 Form 8-K, the Company projected the revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021.

**ANSWER TO PARAGRAPH 125**: The FVAC Defendants admit the allegations

contained in paragraph 125 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 125 of

the Complaint do not remain at issue in this action.

126.    The statements in paragraph 125 were materially false and misleading because the Company knew that, due to the massive increase in the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future.

**ANSWER TO PARAGRAPH 126**: The FVAC Defendants deny the allegations

contained in paragraph 126 of the Complaint.

### B.    March 9, 2021

127.    On March 9, 2021, the Company filed its annual report on SEC form 10-K for 2020.

**ANSWER TO PARAGRAPH 127**: The FVAC Defendants admit the allegations

contained in paragraph 127 of the Complaint.

128.    In this filing, the Company was required to disclose, but omitted to disclose, the known trend that it was suffering attrition rates among its clinical staff that were materially greater than the industry average, which was likely to have, and did have, a material impact on the Company's financial performance.

**ANSWER TO PARAGRAPH 128**: The FVAC Defendants deny the allegations

contained in paragraph 128 of the Complaint.

C.    **March 12, 2021**

129.    On March 12, 2021, FVAC filed a Proxy Statement with the SEC on Schedule 14A, soliciting votes in favor of the Merger. The Proxy Statement touted the Company's "competitive compensation model" and stated that ATI has "historically been able to realize high retention rates across [the] organization." It also touted ATI's purported "favorable clinician retention rates and engagement scores." In addition, among the material factors that FVAC's Board of Directors considered as supporting approval of the Merger, the Proxy Statement listed ATI's "Attractive Recruiting and Retention Capabilities" as compared to other companies in the industry, "which allows the Company to recruit and retain talent."

**ANSWER TO PARAGRAPH 129**: The FVAC Defendants deny the allegations contained in paragraph 129 of the Complaint, except admit (i) the allegations contained in the first sentence of paragraph 129 of the Complaint; and (ii) that paragraph 129 contains partial quotations form the referenced Proxy Statement filed by FVAC with the SEC on March 12, 2021, on a Schedule 14A. The FVAC Defendants refer to that public filing for a complete and accurate description of its contents. The FVAC Defendants further answer that, per the Court's Order, the public statements referenced in paragraph 129 of the Complaint do not remain at issue in this action.

130.    The statements in paragraph 129 were materially false and misleading because the Company's attrition rate for its staff was materially greater than the industry average, so the Company objectively had not "been able to realize high retention rates across [the] organization," and the Company did not have "attractive . . . retention capabilities" compared to industry. The Company did not have a "competitive compensation model" because the Company paid its clinical staff less than its competitors.

**ANSWER TO PARAGRAPH 130**: The FVAC Defendants deny the allegations contained in paragraph 130 of the Complaint. The FVAC Defendants further answer that, per the Court's Order, the public statements referenced in paragraph 130 of the Complaint do not remain at issue in this action.

131.    Also in the Proxy Statement, Defendants represented that the Company faced purportedly hypothetical risks regarding competition for clinicians in the labor market as well as its ability to recruit and retain physical therapists. In particular, Defendants represented that:

*The Company's facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability.*

The Company's ability to attract and retain clinical talent is critical to its ability to provide high quality care to patients and successfully cultivate and maintain strong relationships in the communities it serves. *If the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers*, management and support personnel, *its business may decrease and its revenues may decline*. The Company competes with other healthcare providers in recruiting and retaining qualified management, physical therapists and other clinical staff and support personnel responsible for the daily operations of its business, financial condition and results of operations.

*The Company may also experience increases in its labor costs, primarily due to higher wages and greater benefits required to attract and retain qualified healthcare personnel, and such increases may adversely affect the Company's profitability*. Furthermore, while the Company attempts to manage overall labor costs in the most efficient way, its efforts to manage them *may have limited effectiveness and may lead to increased turnover and other challenges*.

**ANSWER TO PARAGRAPH 131**: The FVAC Defendants deny the allegations contained in paragraph 131 of the Complaint, except admit that paragraph 131 contains a partial quotation from the referenced public filing. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents.

132. The statements in paragraph 131 were materially false and misleading because the Company already suffered an attrition rate materially greater than the average in the industry and already suffered negative effects, including increased labor costs, from that attrition rate. Accordingly, the Company's characterizing as a mere possibility these events that had already occurred was false and misleading.

**ANSWER TO PARAGRAPH 132**: The FVAC Defendants deny the allegations contained in paragraph 132 of the Complaint.

133. Also in the Proxy Statement, the Company projected the revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021.

**ANSWER TO PARAGRAPH 133**: The FVAC Defendants admit the allegations contained in paragraph 133 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 133 of

the Complaint do not remain at issue in this action.

134. The statements in paragraph 133 were materially false and misleading because the Company knew that, due to the massive increase in the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future.

**ANSWER TO PARAGRAPH 134**: The FVAC Defendants deny the allegations

contained in paragraph 134 of the Complaint.

135. Moreover, in this filing, the Company was required to disclose, but omitted to disclose, the known trend that it was suffering attrition rates among its clinical staff that were materially greater than the industry average, which was likely to have, and did have, a material impact on the Company's financial performance.

**ANSWER TO PARAGRAPH 135**: The FVAC Defendants deny the allegations

contained in paragraph 135 of the Complaint.

136. Also in the March 12, 2021 Schedule 14A Proxy Statement, the Company stated, that as of December 31, 2020, the "Goodwill" of the Company was $1,330,085,000 and that the "Trade name and other intangible assets, net" of the Company was $644,339,000.

**ANSWER TO PARAGRAPH 136**: The FVAC Defendants admit the allegations

contained in paragraph 136 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 136 of

the Complaint do not remain at issue in this action.

137. The statements in paragraph 136 were materially false and misleading because the value of the Company's goodwill was materially less (approximately $433 million less) and value of the Company's trade name and other intangible assets was also materially less (approximately $34 million less).

**ANSWER TO PARAGRAPH 137**: The FVAC Defendants deny the allegations

contained in paragraph 137 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 137 of the Complaint do not remain

at issue in this action.

### D.     April 1, 2021

138.     On April 1, 2021, FVAC filed additional proxy solicitation materials with the SEC on a Schedule 14A Proxy Statement designated by FVAC as "Soliciting Material under Rule 14a-12." This document included slides prepared by ATI for a presentation during the Company's Analyst Day presentation. ATI stated that the Company was "the Employer of Choice for P[hysical] T[herapy] Clinicians," which resulted in "strong retention" of physical therapy clinicians. The Company emphasized its purported "Best-in-class infrastructure built to attract, develop, and retain future leaders in p[hysical] t[herapy]," which included multiple statements touting, for example, ATI's "Strong Retention" and "Attractive compensation package with market competitive base pay" as set forth below:



**ANSWER TO PARAGRAPH 138**: The FVAC Defendants deny the allegations

contained in paragraph 138 of the Complaint, except admit that (i) on April 1, 2021, FVAC filed

additional proxy solicitation materials with the SEC on a Schedule 14A Proxy Statement

designated by FVAC as "Soliciting Material under Rule 14a-12"; (ii) this filing included slides

prepared by ATI for a presentation during the Company's Analyst Day presentation; and

(iii) paragraph 138 contains partial quotations from that presentation. The FVAC Defendants

refer to that public filing for a complete and accurate description of its contents. The FVAC

Defendants further answer that, per the Court's Order, certain public statements referenced in

paragraph 138 of the Complaint do not remain at issue in this action.

139.    In the same filing, the Company stated that among the "Key Elements that Drive our Success" was "high retention." ATI also stated that it had "Significant labor savings through [a] more productive staffing model."

**ANSWER TO PARAGRAPH 139**: The FVAC Defendants deny the allegations

contained in paragraph 139 of the Complaint, except admit that paragraph 139 contains partial

quotations from the referenced public filing. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, certain public statements referenced in paragraph 139

of the Complaint do not remain at issue in this action.

140.    The statements in paragraphs 138-39 were materially false and misleading because the Company's attrition rate for its staff was materially greater than the industry average, so the Company objectively was not the "Employer of Choice for PT Clinicians" and did not have "strong retention." Moreover, "high retention" was objectively not a key element that drove the Company's success, as the Company's retention was materially worse than that of its competitors. The Company was required to disclose, but omitted to state, that any "significant labor savings" through its staffing model would be offset by massive attrition that was increasing the Company's labor costs. Moreover, in these filings, the Company was required to disclose, but omitted, that the known trend that it was suffering attrition rates among its clinical staff that were materially greater than the industry average, which was likely to have, and did have, a material impact on the Company's financial performance.

**ANSWER TO PARAGRAPH 140**: The FVAC Defendants deny the allegations

contained in paragraph 140 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, certain public statements referenced in paragraph 140 of the Complaint do not remain at issue in this action.

141.    Also, in the April 1, 2021 Soliciting Material, the Company projected the revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021.

**ANSWER TO PARAGRAPH 141**: The FVAC Defendants admit the allegations contained in paragraph 141 of the Complaint. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents. The FVAC Defendants further answer that, per the Court's Order, the public statements referenced in paragraph 141 of the Complaint do not remain at issue in this action.

142.    The statements in paragraph 141 were materially false and misleading because the Company knew that, due to the massive increase in the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future.

**ANSWER TO PARAGRAPH 142**: The FVAC Defendants deny the allegations contained in paragraph 142 of the Complaint.

**E.      May 5, 2021**

143.    On May 5, 2021, FVAC filed its Schedule 14A Amendment No. 1 to Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, soliciting votes in favor of the Merger. The Proxy Statement touted the Company's "competitive compensation model" and stated that ATI has "historically been able to realize high retention rates across [the] organization." It also touted ATI's purported "favorable clinician retention rates and engagement scores." In addition, among the material factors that FVAC's Board of Directors considered as supporting approval of the Merger, the Proxy Statement listed ATI's "Attractive Recruiting and Retention Capabilities" as compared to other companies in the industry, "which allows the Company to recruit and retain talent."

**ANSWER TO PARAGRAPH 143**: The FVAC Defendants deny the allegations contained in paragraph 143 of the Complaint, except admit that (i) on May 5, 2021, FVAC filed a Schedule 14A Amendment No. 1 to Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, soliciting votes in favor of the Merger; and (ii) paragraph 143

contains partial quotations from that public filing. The FVAC Defendants refer to that public

filing for a complete and accurate description of its contents. The FVAC Defendants further

answer that, per the Court's Order, the public statements referenced in paragraph 143 of the

Complaint do not remain at issue in this action.

144. The statements in paragraph 143 were materially false and misleading because the Company's attrition rate for its staff was materially greater than the industry average, so the Company objectively had not "been able to realize high retention rates across [the] organization," and the Company did not have "attractive . . . retention capabilities" compared to industry. The Company did not have a "competitive compensation model" because the Company paid its clinical staff less than its competitors.

**ANSWER TO PARAGRAPH 144**: The FVAC Defendants deny the allegations

contained in paragraph 144 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 144 of the Complaint do not remain

at issue in this action.

145. Also in the May 5, 2021 Schedule 14A filing, Defendants represented that the Company faced ostensible risks regarding competition for clinicians in the labor market as well as its ability to recruit and retain physical therapists. In particular, Defendants represented that:

> ***The Company's facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability.***
>
> The Company's ability to attract and retain clinical talent is critical to its ability to provide high quality care to patients and successfully cultivate and maintain strong relationships in the communities it serves. ***If the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, management and support personnel, its business may decrease and its revenues may decline***. The Company competes with other healthcare providers in recruiting and retaining qualified management, physical therapists and other clinical staff and support personnel responsible for the daily operations of its business, financial condition and results of operations.
>
> ***The Company may also experience increases in its labor costs, primarily due to higher wages and greater benefits required to attract and retain qualified healthcare personnel, and such increases may adversely affect the Company's profitability.*** Furthermore, while the Company attempts to manage overall labor

costs in the most efficient way, its efforts to manage them *may have limited effectiveness and may lead to increased turnover and other challenges*.

**ANSWER TO PARAGRAPH 145**: The FVAC Defendants deny the allegations contained in paragraph 145 of the Complaint, except admit that (i) on May 5, 2021, FVAC filed a Schedule 14A Amendment No. 1 to Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, soliciting votes in favor of the Merger; and (ii) paragraph 145 contains partial quotations from the referenced public filing. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents.

146.    The statements in paragraph 145 were materially false and misleading because the Company already suffered an attrition rate materially greater than the average in the industry and already suffered negative effects, including increased labor costs, from that attrition rate. Accordingly, the Company's characterizing as a mere possibility these events that had already occurred was false and misleading.

**ANSWER TO PARAGRAPH 146**: The FVAC Defendants deny the allegations contained in paragraph 146 of the Complaint.

147.    Also in the May 5, 2021 Schedule 14A filing, the Company projected the revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021.

**ANSWER TO PARAGRAPH 147**: The FVAC Defendants admit the allegations contained in paragraph 147 of the Complaint. The FVAC Defendants refer to the referenced public filing for a complete and accurate description of its contents. The FVAC Defendants further answer that, per the Court's Order, the public statements referenced in paragraph 147 of the Complaint do not remain at issue in this action.

148.    The statements in paragraph 147 were materially false and misleading because the Company knew that, due to the massive increase in the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future.

**ANSWER TO PARAGRAPH 148**: The FVAC Defendants deny the allegations contained in paragraph 148 of the Complaint.

149.    Moreover, in this filing, the Company was required to disclose, but omitted to disclose, the known trend that it was suffering attrition rates among its clinical staff that were materially greater than the industry average, which was likely to have, and did have, a material impact on the Company's financial performance.

**ANSWER TO PARAGRAPH 149**: The FVAC Defendants deny the allegations

contained in paragraph 149 of the Complaint.

150.    Also in the May 5, 2021 Schedule 14A filing, the Company stated, that as of December 31, 2020, the "Goodwill" of the Company was $1,330,085,000 and that the "Trade name and other intangible assets, net" of the Company was $644,339,000.

**ANSWER TO PARAGRAPH 150**: The FVAC Defendants admit the allegations

contained in paragraph 150 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 150 of

the Complaint do not remain at issue in this action.

151.    The statements in paragraph 150 were materially false and misleading because the value of the Company's goodwill was materially less (approximately $433 million less) and value of the Company's trade name and other intangible assets was also materially less (approximately $34 million less).

**ANSWER TO PARAGRAPH 151**: The FVAC Defendants deny the allegations

contained in paragraph 151 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 151 of the Complaint do not remain

at issue in this action.

### F.    May 14, 2021

152.    On May 14, 2021, FVAC filed its definitive Proxy Statement with the SEC on Schedule 14A, soliciting votes in favor of the Merger. The May 14, 2021 Schedule 14A Proxy Statement touted the Company's "competitive compensation model" and stated that ATI has "historically been able to realize high retention rates across [the] organization." It also touted ATI's purported "favorable clinician retention rates and engagement scores." In addition, among the material factors that FVAC's Board of Directors considered as supporting approval of the Merger, the Proxy Statement listed ATI's "Attractive Recruiting and Retention Capabilities" as compared to other companies in the industry, "which allows the Company to recruit and retain

talent."

**ANSWER TO PARAGRAPH 152**: The FVAC Defendants deny the allegations

contained in paragraph 152 of the Complaint, except admit that (i) on May 14, 2021, FVAC filed

a definitive Proxy Statement with the SEC on Schedule 14A, soliciting votes in favor of the

Merger; and (ii) paragraph 152 contains partial quotations from that filing. The FVAC

Defendants refer to the referenced public filing for a complete and accurate description of its

contents. The FVAC Defendants further answer that, per the Court's Order, the public statements

referenced in paragraph 152 of the Complaint do not remain at issue in this action.

153.    The statements in paragraph 152 were materially false and misleading because the Company's attrition rate for its staff was materially greater than the industry average, so the Company objectively had not "been able to realize high retention rates across [the] organization," and the Company did not have "attractive . . . retention capabilities" compared to industry. The Company did not have a "competitive compensation model" because the Company paid its clinical staff less than its competitors.

**ANSWER TO PARAGRAPH 153**: The FVAC Defendants deny the allegations

contained in paragraph 153 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 153 of the Complaint do not remain

at issue in this action.

154.    Also in the May 14, 2021 Schedule 14A filing, Defendants represented that the Company faced ostensible risks regarding competition for clinicians in the labor market as well as its ability to recruit and retain physical therapists. In particular, Defendants represented that:

> ***The Company's facilities face competition for experienced physical therapists and other clinical providers that may increase labor costs and reduce profitability.***
>
> The Company's ability to attract and retain clinical talent is critical to its ability to provide high quality care to patients and successfully cultivate and maintain strong relationships in the communities it serves. ***If the Company cannot recruit and retain its base of experienced and clinically skilled therapists and other clinical providers, management and support personnel, its business may decrease and its revenues may decline***. The Company competes with other healthcare providers in recruiting and retaining qualified management, physical therapists and other

clinical staff and support personnel responsible for the daily operations of its business, financial condition and results of operations.

*The Company may also experience increases in its labor costs, primarily due to higher wages and greater benefits required to attract and retain qualified healthcare personnel, and such increases may adversely affect the Company's profitability.* Furthermore, while the Company attempts to manage overall labor costs in the most efficient way, its efforts to manage them *may have limited effectiveness and may lead to increased turnover and other challenges*.

**ANSWER TO PARAGRAPH 154**: The FVAC Defendants deny the allegations

contained in paragraph 154 of the Complaint, except admit that paragraph 154 contains partial

quotations from the referenced public filing. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents.

155.   The statements in paragraph 154 were materially false and misleading because the Company already suffered an attrition rate materially greater than the average in the industry and already suffered negative effects, including increased labor costs, from that attrition rate. Accordingly, the Company's characterizing as a mere possibility these events that had already occurred was false and misleading.

**ANSWER TO PARAGRAPH 155**: The FVAC Defendants deny the allegations

contained in paragraph 155 of the Complaint.

156.   Also in the May 14, 2021 Schedule 14A filing, the Company projected the revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021.

**ANSWER TO PARAGRAPH 156**: The FVAC Defendants admit the allegations

contained in paragraph 156 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 156 of

the Complaint do not remain at issue in this action.

157.   The statements in paragraph 156 were materially false and misleading because the Company knew that, due to the massive increase in the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future.

**ANSWER TO PARAGRAPH 157**: The FVAC Defendants deny the allegations

contained in paragraph 157 of the Complaint.

158.     Moreover, in this filing, the Company was required to disclose, but omitted to disclose, the known trend that it was suffering attrition rates among its clinical staff that were materially greater than the industry average, which was likely to have, and did have, a material impact on the Company's financial performance.

**ANSWER TO PARAGRAPH 158**: The FVAC Defendants deny the allegations

contained in paragraph 158 of the Complaint.

159.     Also in the May 14, 2021 Schedule 14A Proxy Statement, the Company stated, that as of December 31, 2020, the "Goodwill" of the Company was $1,330,085,000 and that the "Trade name and other intangible assets, net" of the Company was $644,339,000.

**ANSWER TO PARAGRAPH 159**: The FVAC Defendants admit the allegations

contained in paragraph 159 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 159 of

the Complaint do not remain at issue in this action.

160.     The statements in paragraph 159 were materially false and misleading because the value of the Company's goodwill was materially less (approximately $433 million less) and value of the Company's trade name and other intangible assets was also materially less (approximately $34 million less).

**ANSWER TO PARAGRAPH 160**: The FVAC Defendants deny the allegations

contained in paragraph 160 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 160 of the Complaint do not remain

at issue in this action.

**G.     May 20, 2021**

161.     On May 20, 2021, ATI issued a press release announcing the Company's financial results for the first quarter of 2021. FVAC filed a copy of the press release with the SEC on Schedule 14A and designated the document as "Definitive Additional Materials." In the press release, Defendant Diab touted the Company's opening of 14 new clinics during the quarter and

represented that ATI was "on track to achieve our de novo development targets for [2021]."

**ANSWER TO PARAGRAPH 161**: The FVAC Defendants deny the allegations

contained in paragraph 161 of the Complaint, except admit (i) the allegations contained in the

first and second sentences of paragraph 161; and (ii) that paragraph 161 contains partial

quotations from the referenced press release. The FVAC Defendants refer to that press release

for a complete and accurate description of its contents.

162.    The statements in paragraph 161 were materially false and misleading because, due to the Company's attrition rate, the Company was unable to staff its clinics adequately and lacked sufficient human resources to open the number of de novo clinics it had forecasted it would be able to open in 2021.

**ANSWER TO PARAGRAPH 162**: The FVAC Defendants deny the allegations

contained in paragraph 162 of the Complaint.

163.    Also on May 20, 2021, FVAC separately filed with the SEC a document on Schedule 14A Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, designated by the Company as "Definitive Additional Materials," announcing the Company's financial results for the first quarter of 2021. The additional proxy materials represented that, beginning in the first quarter of 2021, visit volumes rebounded from COVID-related declines, and that "the Company continues to match its clinical staffing levels accordingly."

**ANSWER TO PARAGRAPH 163**: The FVAC Defendants deny the allegations

contained in paragraph 163 of the Complaint, except admit that (i) FVAC filed with the SEC a

Schedule 14A Proxy Statement pursuant to Section 14(a) of the Securities Exchange Act of

1934, designated by the Company as "Definitive Additional Materials," announcing the

Company's financial results for the first quarter of 2021; and (ii) that paragraph 163 contains

partial quotations from the referenced public filing. The FVAC Defendants refer to that public

filing for a complete and accurate description of its contents.

164.    The statements in paragraph 163 were materially false and misleading because the Company's attrition rate for its staff was materially greater than the industry average, and the Company was unable to staff its clinics adequately, so the Company was not "matching its

clinical staffing levels" in line with the Company's needs.

**ANSWER TO PARAGRAPH 164**: The FVAC Defendants deny the allegations

contained in paragraph 164 of the Complaint.

165. Also in the May 20, 2021 Schedule 14A Proxy Statement, the Company stated, in the chart titled, "Wilco Holdco, Inc. Consolidated Condensed Balance Sheets," that as of March 31, 2021, the "Goodwill" of "Wilco Holdco, Inc." (ATI), was $1,330,085,000 and that the "Trade name and other intangible assets, net" of "Wilco Holdco, Inc." (ATI) was $644,934,000.

**ANSWER TO PARAGRAPH 165**: The FVAC Defendants admit the allegations

contained in paragraph 165 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 165 of

the Complaint do not remain at issue in this action.

166. The statements in paragraph 165 were materially false and misleading because the value of the Company's goodwill was materially less (approximately $433 million less) and value of the Company's trade name and other intangible assets was also materially less (approximately $34 million less).

**ANSWER TO PARAGRAPH 166**: The FVAC Defendants deny the allegations

contained in paragraph 166 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 166 of the Complaint do not remain

at issue in this action.

**H.     May 24, 2021**

167. On May 24, 2021, FVAC filed with the SEC a document on Schedule 14A designated by the Company as "Additional Proxy Materials," which included slides prepared by ATI and presented to investors at a healthcare conference during that month. ATI stated that it had "Significant labor savings through [a] more productive staffing model."

**ANSWER TO PARAGRAPH 167**: The FVAC Defendants deny the allegations

contained in paragraph 167 of the Complaint, except admit that (i) on May 24, 2021, FVAC filed

with the SEC a document on Schedule 14A which included slides prepared by ATI; and

66

(ii) paragraph 167 contains a partial quotation from those slides. The FVAC Defendants refer to

that public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 167 of

the Complaint do not remain at issue in this action.

168.    The statements in paragraph 167 were materially false and misleading because the Company omitted to state that any "significant labor savings" through its staffing model would be offset by massive attrition that was increasing the Company's labor costs.

**ANSWER TO PARAGRAPH 168**: The FVAC Defendants deny the allegations

contained in paragraph 168 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 168 of the Complaint do not remain

at issue in this action.

169.    Also in the May 24, 2021 Additional Proxy Materials, the Company projected the revenues of $731 million for 2021 and Adjusted EBITDA of $119 million for 2021.

**ANSWER TO PARAGRAPH 169**: The FVAC Defendants admit the allegations

contained in paragraph 169 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 169 of

the Complaint do not remain at issue in this action.

170.    The statements in paragraph 169 were materially false and misleading because the Company knew that, due to the massive increase in the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future.

**ANSWER TO PARAGRAPH 170**: The FVAC Defendants deny the allegations

contained in paragraph 170 of the Complaint.

**I.      July 9, 2021**

171. On July 9, 2021, the Company filed with the SEC its registration statement on SEC Form S-1 (the "Registration Statement"). In the Registration Statement, the Company stated, in

the chart titled, "UNAUDITED PRO FORMA CONDENSED COMBINED BALANCE SHEET AS OF MARCH 31, 2021," that the "Goodwill" of "Wilco Holdco, Inc." (ATI), was $1,330,085,000 and that the "Trade name and other intangible assets, net" of "Wilco Holdco, Inc." (ATI) was $644,934,000. In the same chart, the Registration Statement stated that the "Pro Forma Combined" "Goodwill" was $1,330,085,000 and that the "Pro Forma Combined" "Trade name and other intangible assets, net" was $644,934,000.

**ANSWER TO PARAGRAPH 171**: The FVAC Defendants admit the allegations

contained in paragraph 171 of the Complaint. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents. The FVAC Defendants

further answer that, per the Court's Order, the public statements referenced in paragraph 171 of

the Complaint do not remain at issue in this action.

172.    The statements in paragraph 171 were materially false and misleading because the value of the Company's goodwill was materially less (approximately $433 million less) and value of the Company's trade name and other intangible assets was also materially less (approximately $34 million less).

**ANSWER TO PARAGRAPH 172**: The FVAC Defendants deny the allegations

contained in paragraph 172 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 172 of the Complaint do not remain

at issue in this action.

## VII.    UNDISCLOSED ADVERSE FACTS

173.    The market for ATI's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, ATI's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired ATI's securities relying upon the integrity of the market price of the Company's securities and market information relating to ATI and have been damaged thereby.

**ANSWER TO PARAGRAPH 173**: The FVAC Defendants deny the allegations

contained in paragraph 173 of the Complaint, except the FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in the first and

last sentences of paragraph 173 and therefore also deny them on that basis.

174.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ATI's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about ATI's business, operations, and prospects as alleged herein.

**ANSWER TO PARAGRAPH 174**: The FVAC Defendants deny the allegations

contained in paragraph 174 of the Complaint.

175.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ATI's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed through the partial corrective disclosures alleged herein.

**ANSWER TO PARAGRAPH 175**: The FVAC Defendants deny the allegations

contained in paragraph 175 of the Complaint.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

176.    During the Class Period, as detailed above, Defendants made false and misleading statements and engaged in a scheme to deceive the market and set a course of conduct that artificially inflated the prices of ATI's securities, and operated as a fraud or deceit on Class Period purchasers of ATI securities by omitting information regarding the attrition of the Company's personnel. Later, when Defendants' prior misrepresentations and fraudulent conduct became known to the market, the price of ATI's securities declined as the prior artificial inflation came out of the price over time. As a result of their purchases of ATI securities during the Class Period, Plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**ANSWER TO PARAGRAPH 176**: The FVAC Defendants deny the allegations

contained in paragraph 176 of the Complaint.

177.    At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiffs and other members of the Class.

**ANSWER TO PARAGRAPH 177**: The FVAC Defendants deny the allegations

contained in paragraph 177 of the Complaint.

178.    During the Class Period, Plaintiffs and the Class purchased ATI's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**ANSWER TO PARAGRAPH 178**: The FVAC Defendants deny the allegations

contained in paragraph 178 of the Complaint.

179.    In addition to the decline in ATI securities caused by the above-mentioned corrective disclosures, FVAC shareholders who were eligible to vote on the Merger and/or exercise their conversion rights have also been damaged as a result of the materially false and/or misleading statements about ATI's operations and financial results. Had the true financial condition and operations of ATI been known, members of the Class eligible to vote on the Merger would have voted against the Merger and/or exercised their conversion rights and received $10.00 in cash per share of FVAC stock.

**ANSWER TO PARAGRAPH 179**: The FVAC Defendants deny the allegations

contained in paragraph 179 of the Complaint.

180.    It was foreseeable to ATI, the ATI Individual Defendants, and the FVAC Defendants that the false and/or misleading statements about, among others, ATI's financial results, condition and value: (i) would cause those members of the Class that would have received $10.00 in cash per share of FVAC stock upon exercising conversion rights and/or upon liquidation to keep their stock in lieu of receiving $10.00 in cash per share; and (ii) eventually the disclosure of the information about ATI's financial condition and operations resulted in those members of the Class owning shares worth substantially less than $10.00 per share.

**ANSWER TO PARAGRAPH 180**: The FVAC Defendants deny the allegations

contained in paragraph 180 of the Complaint.

181.    Accordingly, ATI, the ATI Individual Defendants, and the FVAC Defendants' conduct, as alleged herein, directly and proximately caused foreseeable losses to Plaintiffs and members of the Class.

**ANSWER TO PARAGRAPH 181**: The FVAC Defendants deny the allegations

contained in paragraph 181 of the Complaint.

## IX.    ADDITIONAL SCIENTER ALLEGATIONS

182.    The allegations in this subsection relate solely to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act.

**ANSWER TO PARAGRAPH 182**: The FVAC Defendants deny the allegations

contained in paragraph 182 of the Complaint, except admit that Plaintiffs purport to limit the

allegations in this subsection to their claims under Section 10(b) and 20(a) of the Exchange Act.

The FVAC Defendants further answer that, to the extent the allegations in this subsection are

limited to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act, those allegations

and claims do not implicate the FVAC Defendants as they are not among the surviving claims

against the FVAC Defendants pursuant to the Court's Order and therefore the FVAC Defendants

also deny them on that basis. Out of an abundance of caution, the FVAC Defendants

nevertheless answer the allegations contained in this subsection to the extent a response is

required.

**A.    Defendants Had Access to Weekly and Monthly Reports Showing Attrition Rates Among Physical Therapists Throughout the Class Period 183.**

183.    As detailed above, *supra* Part V, former employees confirm that Defendants had access to weekly and monthly reports showing attrition rates among physical therapists throughout the Class Period, and that the Individual Defendants discussed these reports at meetings with other executive leaders and Company officers. Accordingly, throughout the Class Period, Defendants knew or were severely reckless in disregarding the risk that their public statements about attrition rates were misleading to a reasonable investor.

**ANSWER TO PARAGRAPH 183**: To the extent the allegations in paragraph 183 are

directed at the FVAC Defendants, the FVAC Defendants deny the allegations contained in

71

paragraph 183 of the Complaint. To the extent the allegations in paragraph 183 are not directed

at the FVAC Defendants, no response is required. To the extent a response is required, the

FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 183 and therefore deny them on that basis.

## B. The Nature of SPACs Motivated Defendants To Take Liberties in Promoting the Company

184. As explained above, *supra* V(A)(1), Defendants had an incentive to take liberties in touting the quality of ATI as an acquisition target because they stood to gain favorable employment by ensuring the SPAC successfully acquired a company that could employ them rather than returning the acquisition funds to investors.

**ANSWER TO PARAGRAPH 184**: The FVAC Defendants deny the allegations

contained in paragraph 184 of the Complaint.

## C. Shortly After the Merger, Coco and Diab Were Terminated Without Notice to Employees

185. After the Merger, Coco and Diab were terminated. On July 23, 2021—just over one month after the Merger—the Company terminated Coco after "enter[ing] into a mutual release." Then, on August 7, 2021, "Diab stepped down from his positions as Chief Executive Officer" and "as a member of the board of directors." The Company did not advise its employees of these terminations in advance. According to FE-2, "We just got an email that morning," *i.e.*, on July 23, 2021, "essentially saying we're letting Cedric [Coco] go, talk to Brian or Jane Cobler to get any issues that you need to get escalated because Cedric [Coco] won't be here anymore." As of July 26, 2021, FE-2 had already given her two weeks' notice after accepting a more lucrative offer at another company.

**ANSWER TO PARAGRAPH 185**: The FVAC Defendants deny the allegations

contained in paragraph 185 of the Complaint, except admit that (i) as of August 7,

2021, Mr. Diab stepped down from his position as Chief Executive Officer of ATI and as a

member of the board of directors; (ii) as of July 23, 2021, Mr. Coco left his position at ATI; and

(iii) paragraph 185 contains a partial quotation from an ATI public filing. The FVAC Defendants

refer to the referenced public filing for a complete and accurate description of its contents. The

FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in the third, fourth, and fifth sentences of paragraph 185 and therefore also

deny them on that basis.

### D. The Company Received a Document Request from the SEC on November 5, 2021 Relating to the Company's' earnings Forecast and Financial Information Referenced in its July 26, 2021 Form 8-K.

186.    On November 17, 2021, the Company filed a Form 10-Q with the SEC reporting the Company's quarterly earnings results for the third quarter of 2021. In this document, the Company disclosed that "[o]n November 5, 2021, the Company received from the SEC a voluntary request for the production of documents relating to the earnings forecast and financial information referenced in the Company's July 26, 2021 Form 8-K and related matters. The Company is cooperating with the SEC in connection with this request."

**ANSWER TO PARAGRAPH 186**: The FVAC Defendants deny the allegations

contained in paragraph 186 of the Complaint, except admit (i) the allegations contained in the

first sentence of paragraph 186 of the Complaint; and (ii) that paragraph 186 contains partial

quotations from the referenced public filing. The FVAC Defendants refer to the referenced

public filing for a complete and accurate description of its contents.

187.    Accordingly, as alleged herein, Defendants acted with scienter because Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the ATI Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding ATI, their control over, and/or receipt and/or modification of ATI's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ATI, participated in the fraudulent scheme alleged herein.

**ANSWER TO PARAGRAPH 187**: To the extent the allegations in paragraph 187 are

directed at the FVAC Defendants, the FVAC Defendants deny the allegations contained in

paragraph 187 of the Complaint. To the extent the allegations in paragraph 187 are not directed

at the FVAC Defendants, no response is required. To the extent a response is required, the

FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 187 and therefore deny them on that basis.

## X.    ADDITIONAL RELIANCE ALLEGATIONS

188.    The market for ATI's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, ATI's securities traded at artificially inflated prices during the Class Period. On June 16, 2021, the Company's share price closed at a Class Period high of $10.28 per share. Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of ATI's securities and market information relating to ATI, and have been damaged thereby.

**ANSWER TO PARAGRAPH 188**: The FVAC Defendants deny the allegations

contained in paragraph 188 of the Complaint, except (i) the FVAC Defendants lack knowledge

or information sufficient to form a belief as to the truth of the allegations contained in the first

sentence of paragraph 188 and therefore also deny them on that basis; and (ii) admit that ATI's

share price closed at $10.28 per share on June 16, 2021.

189.    During the Class Period, the artificial inflation of ATI's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ATI's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of ATI and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

**ANSWER TO PARAGRAPH 189**: The FVAC Defendants deny the allegations

contained in paragraph 189 of the Complaint.

190.    At all relevant times, the market for ATI's securities was an efficient market for the following reasons, among others:

(a)    ATI shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

74

(b)      As a regulated issuer, ATI filed periodic public reports with the SEC and/or the NYSE;

(c)      ATI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)      ATI was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

**ANSWER TO PARAGRAPH 190**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 190 of the Complaint and deny them on that basis, except admit that (i) ATI stock traded on the NYSE since June 17, 2021; (ii) ATI filed periodic reports with the SEC and/or the NYSE; (iii) ATI issued communications to public investors; and (iv) external securities analysts published publicly available reports about ATI.

191.    As a result of the foregoing, the market for ATI's securities promptly digested current information regarding ATI from all publicly available sources and reflected such information in ATI's share price. Under these circumstances, all purchasers of ATI's securities during the Class Period suffered similar injury through their purchase of ATI's securities at artificially inflated prices and a presumption of reliance applies.

**ANSWER TO PARAGRAPH 191**: The FVAC Defendants deny the allegations contained in paragraph 191 of the Complaint.

192.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

75

**ANSWER TO PARAGRAPH 192**: The FVAC Defendants deny the allegations

contained in paragraph 192 of the Complaint.

## XI. PLAINTIFFS' CLASS ACTION ALLEGATIONS

193. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons and entities that (a) purchased or otherwise acquired ATI securities between February 22, 2021 and October 19, 2021, both dates inclusive, and/or (b) beneficially owned and/or held FVAC Class A common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

**ANSWER TO PARAGRAPH 193**: The FVAC Defendants deny the allegations

contained in paragraph 193 of the Complaint, except admit that Plaintiffs purport to bring this

action as a class action on behalf of the putative class alleged in paragraph 193.

194. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ATI's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by ATI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

**ANSWER TO PARAGRAPH 194**: The FVAC Defendants deny the allegations

contained in paragraph 194 of the Complaint.

195. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

**ANSWER TO PARAGRAPH 195**: The FVAC Defendants deny the allegations

contained in paragraph 195 of the Complaint.

196. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

**ANSWER TO PARAGRAPH 196**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

paragraph 196 of the Complaint and deny them on that basis.

197.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of the Company;

- whether the ATI Individual Defendants and FVAC Defendants caused the Company to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of ATI's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

**ANSWER TO PARAGRAPH 197**: The FVAC Defendants deny the allegations

contained in paragraph 197 of the Complaint.

198.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER TO PARAGRAPH 198**: The FVAC Defendants deny the allegations

contained in paragraph 198 of the Complaint.

199.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- ATI securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold ATI securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

**ANSWER TO PARAGRAPH 199**: The FVAC Defendants deny the allegations

contained in paragraph 199 of the Complaint, except admit that (i) ATI stock was listed and

traded on the NYSE; and (ii) external securities analysts published publicly available reports

about ATI. The FVAC Defendants further answer that they lack knowledge or information

sufficient to form a belief as to the truth of the allegations contained in the third and last bulleted

subparagraphs of paragraph 199 of the Complaint and therefore also deny them on that basis.

200.   Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

**ANSWER TO PARAGRAPH 200**: The FVAC Defendants deny the allegations

contained in paragraph 200 of the Complaint.

201.   Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**ANSWER TO PARAGRAPH 201**: The FVAC Defendants deny the allegations

contained in paragraph 201 of the Complaint.

## XII.   STATUTORY SAFE HARBOR INAPPLICABLE

202.    The statutory safe harbor providing for forward-looking statements under certain circumstances does not apply to any of the false or misleading statements pleaded herein. The statements alleged to be false or misleading herein all relate to then-existing facts and conditions. Additionally, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified specifically as "forward-looking statements" when made, and the statements were unaccompanied by specific or meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**ANSWER TO PARAGRAPH 202**: The FVAC Defendants deny the allegations

contained in paragraph 202 of the Complaint.

203.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those forward-looking statements because at the time each such statement was made, the speaker had actual knowledge, or recklessly disregarded the risk, that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of the Company who knew, or recklessly disregarded the risk, that the statement was false when it was made.

**ANSWER TO PARAGRAPH 203**: The FVAC Defendants deny the allegations

contained in paragraph 203 of the Complaint.

## XIII.   CLAIMS UNDER SECTIONS 10(B) AND 20(A) OF THE EXCHANGE ACT

### A.   COUNT ONE

**For Violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5
(Against ATI and the ATI Individual Defendants)**

204.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

**ANSWER TO PARAGRAPH 204**: The FVAC Defendants repeat and reallege their

answers to each and every allegation contained above as if fully set forth herein.

205.    This Count is asserted against ATI and the ATI Individual Defendants, and is

based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

**ANSWER TO PARAGRAPH 205**: The FVAC Defendants deny the allegations contained in paragraph 205 of the Complaint, except admit that Plaintiffs purport to assert claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. The FVAC Defendants further answer that, to the extent the allegations in this subsection are limited to Plaintiffs' claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, those allegations and claims do not implicate the FVAC Defendants as they are not among the surviving claims against the FVAC Defendants pursuant to the Court's Order and therefore the FVAC Defendants also deny them on that basis. Out of an abundance of caution, the FVAC Defendants nevertheless answer the allegations contained in this subsection to the extent a response is required.

206.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase ATI's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each Defendant, took the actions set forth herein.

**ANSWER TO PARAGRAPH 206**: The FVAC Defendants deny the allegations contained in paragraph 206 of the Complaint.

207.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for ATI's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

**ANSWER TO PARAGRAPH 207**: The FVAC Defendants deny the allegations contained in paragraph 207 of the Complaint.

80

208.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about ATI's financial well-being and prospects, as specified herein.

**ANSWER TO PARAGRAPH 208**: The FVAC Defendants deny the allegations

contained in paragraph 208 of the Complaint.

209.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ATI's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about ATI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

**ANSWER TO PARAGRAPH 209**: The FVAC Defendants deny the allegations

contained in paragraph 209 of the Complaint.

210.    Each of the ATI Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the ATI Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

**ANSWER TO PARAGRAPH 210**: The FVAC Defendants deny the allegations

contained in paragraph 210 of the Complaint.

211.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly

81

and for the purpose and effect of concealing ATI's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

**ANSWER TO PARAGRAPH 211**: The FVAC Defendants deny the allegations

contained in paragraph 211 of the Complaint.

212.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of ATI's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired ATI's securities during the Class Period at artificially high prices and were damaged thereby.

**ANSWER TO PARAGRAPH 212**: The FVAC Defendants deny the allegations

contained in paragraph 212 of the Complaint.

213.    At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that ATI was experiencing, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their ATI securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

**ANSWER TO PARAGRAPH 213**: The FVAC Defendants deny the allegations

contained in paragraph 213 of the Complaint.

214.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**ANSWER TO PARAGRAPH 214**: The FVAC Defendants deny the allegations

contained in paragraph 214 of the Complaint.

215.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and

82

the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**ANSWER TO PARAGRAPH 215**: The FVAC Defendants deny the allegations

contained in paragraph 215 of the Complaint.

### B.     COUNT TWO

**For Violations of Section 20(a) of the Securities Exchange Act of 1934
(Against the ATI Individual Defendants)**

216.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

**ANSWER TO PARAGRAPH 216**: The FVAC Defendants repeat and reallege their

answers to each and every allegation contained above as if fully set forth herein.

217.     This Count is asserted against the ATI Individual Defendants and is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**ANSWER TO PARAGRAPH 217**: The FVAC Defendants deny the allegations

contained in paragraph 217 of the Complaint, except admit that Plaintiffs purport to assert claims

under Section 20(a) of the Exchange Act. The FVAC Defendants further answer that, to the

extent the allegations in this subsection are limited to Plaintiffs' claims under Section 20(a) of

the Exchange Act, those allegations and claims do not implicate the FVAC Defendants as they

are not among the surviving claims against the FVAC Defendants pursuant to the Court's Order

and therefore the FVAC Defendants also deny them on that basis. Out of an abundance of

caution, the FVAC Defendants nevertheless answer the allegations contained in this subsection

to the extent a response is required.

218.     The ATI Individual Defendants acted as controlling persons of ATI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the ATI Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the

83

decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The ATI Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

**ANSWER TO PARAGRAPH 218**: The FVAC Defendants deny the allegations

contained in paragraph 218 of the Complaint.

219.    In particular, the ATI Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

**ANSWER TO PARAGRAPH 219**: The FVAC Defendants deny the allegations

contained in paragraph 219 of the Complaint.

220.    As set forth above, ATI and the ATI Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the ATI Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the ATI Individual Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**ANSWER TO PARAGRAPH 220**: The FVAC Defendants deny the allegations

contained in paragraph 220 of the Complaint.


## XIV.  CLAIMS UNDER SECTIONS 14(A) AND 20(A) OF THE EXCHANGE ACT

221.    The claims in Counts Three and Four below are brought under Sections 14(a) and 20(a) of the Exchange Act (the "Proxy Claims"). The Proxy Claims are brought on behalf of investors who beneficially owned and/or held FVAC Class A common stock as of the Record Date of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting. The Proxy Claims are based solely on negligence. They are not based on any knowing or reckless conduct by or on behalf of Defendants, and Plaintiffs specifically disclaim any allegations of fraud, scienter or recklessness in these non-fraud claims.

**ANSWER TO PARAGRAPH 221**: The FVAC Defendants deny the allegations

contained in paragraph 221 of the Complaint, except admit that Plaintiffs purport to assert claims

84

under Sections 14(a) and 20(a) of the Exchange Act. The FVAC Defendants further answer that,

to the extent the allegations in this subsection are related to Plaintiffs' claims under Section 20(a)

of the Exchange Act, those allegations and claims do not implicate the FVAC Defendants as they

are not among the surviving claims against the FVAC Defendants pursuant to the Court's Order

and therefore the FVAC Defendants also deny them on that basis. Out of an abundance of

caution, the FVAC Defendants nevertheless answer the allegations contained in this subsection

to the extent a response is required.

222.    The basis of the Proxy Claims is that Defendants' statements issued to solicit shareholder approval of the Merger, including the Proxy, the documents incorporated into the Proxy, and the later-filed Proxy Supplements, contained misstatements and/or omissions of material facts. Further, Defendants' later-filed Proxy Supplements did not, as required by law, update and correct their previously made misstatements, and themselves contained material misstatements and/or omissions.

**ANSWER TO PARAGRAPH 222**: The FVAC Defendants deny the allegations

contained in paragraph 222 of the Complaint.

223.    Defendants' proxy solicitations included all statements which served to color the market's view of the deal and encourage FVAC Class A common stockholders to vote in favor of the Merger. These statements included the following (collectively referred to as the "Proxy Solicitations"):

(a)    The Form 8-K filed on February 22, 2021, as set forth above at ¶¶ 123, 125;

(b)    the Schedule 14A Proxy Statement filed on March 12, 2021, as set forth above in ¶¶ 129, 131, 133, 136;

(c)    the Schedule 14A Proxy Statement filed on April 1, 2021, as set forth above in ¶¶ 138-39, 141;

(d)    the Schedule 14A Proxy Statement filed on May 5, 2021, as set forth above in ¶¶ 143, 145, 147, 150;

(e)    the definitive Schedule 14A Proxy Statement filed on May 14, 2021, as set forth above in ¶¶ 152, 154, 156, 159;

(f)     the Schedule 14A Proxy Statement filed on May 20, 2021, as set forth above in ¶¶ 161, 163, 165;

(g)     the Schedule 14A Proxy Statement filed on May 24, 2021, as set forth above in ¶¶ 167, 169;

(h)     the Schedule 14A Proxy Statement filed on June 2, 2021;

(i)     the Schedule 14A Proxy Statement filed on June 3, 2021; and

(j)     the Schedule 14A Proxy Statement filed on June 4, 2021.

**ANSWER TO PARAGRAPH 223**: The FVAC Defendants deny the allegations

contained in paragraph 223 of the Complaint, except admit that subparagraphs (a) through (j) of

paragraph 223 list public filings by FVAC.

224.    All of the Proxy Solicitations were materially false and misleading.

**ANSWER TO PARAGRAPH 224**: The FVAC Defendants deny the allegations

contained in paragraph 224 of the Complaint.

225.    Among other things, the Proxy Solicitations included statements touting, for example, ATI's "high retention" or "strong retention" of physical therapists which were materially false and misleading because they failed to disclose and/or misrepresented the material fact that the Company was suffering from severe attrition among the ranks of its physical therapists prior to the shareholder vote on June 15, 2021.

**ANSWER TO PARAGRAPH 225**: The FVAC Defendants deny the allegations

contained in paragraph 225 of the Complaint.

226.    Further, the Proxy Solicitations contained materially false and misleading risk disclosures because the Company already suffered an attrition rate materially greater than the average in the industry and already suffered negative effects, including increased labor costs, from that attrition rate. Accordingly, the Company's characterizing as a mere possibility these events that had already occurred was false and misleading.

**ANSWER TO PARAGRAPH 226**: The FVAC Defendants deny the allegations

contained in paragraph 226 of the Complaint.

227.    The Proxy Solicitations also reported projected revenue and Adjusted EBITDA figures for ATI that were materially false and misleading because, due to the massive increase in

the attrition rate of its clinical staff by early 2021, the Company would be unable to meet its projections and would have to revise them downward in the near future.

**ANSWER TO PARAGRAPH 227**: The FVAC Defendants deny the allegations

contained in paragraph 227 of the Complaint.

228.    The Proxy Solicitations also reported "Goodwill" and "Trade name and other intangible assets, net" figures for ATI that were materially false and misleading because the value of the Company's goodwill was materially less (approximately $433 million less) and value of the Company's trade name and other intangible assets was also materially less (approximately $34 million less).

**ANSWER TO PARAGRAPH 228**: The FVAC Defendants deny the allegations

contained in paragraph 228 of the Complaint. The FVAC Defendants further answer that, per the

Court's Order, the public statements referenced in paragraph 228 of the Complaint do not remain

at issue in this action.

229.    Moreover, Defendants were under a continuing duty to update and/or correct these material misrepresentations and omissions by disclosing the relevant facts, as well as update and/or correct any false or misleading statements regarding ATI. In violation of these duties, Defendants never disclosed any of the omitted facts or corrected the misleading statements before the shareholder vote. Significantly, Defendants updated and/or supplemented the Proxy six times, including on May 20 and 24, 2021 and on June 2, 3 and 4, 2021, without correcting their misrepresentations or disclosing any of the material facts originally omitted.

**ANSWER TO PARAGRAPH 229**: The FVAC Defendants deny the allegations

contained in paragraph 229 of the Complaint.

230.    The materially false and misleading statements and omissions set forth above proximately caused foreseeable losses to Plaintiffs and members of the Class, as the risks concealed by the false and misleading statements and omissions materialized through the corrective disclosures on July 26, 2021 and October 19, 2021, as set forth above at ¶¶ 111-22, 176-81.

**ANSWER TO PARAGRAPH 230**: The FVAC Defendants deny the allegations

contained in paragraph 230 of the Complaint.

A.      COUNT THREE

**For Violations of Section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a–9**
**(Against All Defendants)**

231.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein, except the allegations in those subsections specified to relate solely to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act.

**ANSWER TO PARAGRAPH 231**: The FVAC Defendants repeat and reallege their

answers to each and every allegation contained above as if fully set forth herein.

232.    This claim does not sound in fraud. For the purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct. This claim is based solely on negligence.

**ANSWER TO PARAGRAPH 232**: The FVAC Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

paragraph 232 of the Complaint and deny them on that basis.

233.    This claim is brought against all Defendants pursuant to Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)) and Rule 14a-9 promulgated thereunder (17 C.F.R. § 240.14a-9), on behalf of all former shareholders of FVAC who held shares of FVAC Class A common stock as of the Record Date and were entitled to vote at the FVAC special meeting on June 15, 2021 with respect to the Merger.

**ANSWER TO PARAGRAPH 233**: The FVAC Defendants deny the allegations

contained in paragraph 233 of the Complaint, except admit that Plaintiffs purport to assert claims

under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

234.    Defendants' statements issued to solicit shareholder approval of the Merger, including the Proxy Statement, and the documents incorporated therein, and other proxy solicitation materials, contained statements that, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, and omitted to state material facts necessary in order to make the statements therein not false or misleading.

**ANSWER TO PARAGRAPH 234**: The FVAC Defendants deny the allegations

contained in paragraph 234 of the Complaint.

235. Defendants named in this Count were required to but did not accurately update these statements between dissemination of these documents and the shareholder vote on June 15, 2021.

**ANSWER TO PARAGRAPH 235**: The FVAC Defendants deny the allegations

contained in paragraph 235 of the Complaint.

236. Defendants named in this Count, jointly and severally, solicited and/or permitted use of their names in solicitations contained in the Proxy Statement and other proxy solicitation materials.

**ANSWER TO PARAGRAPH 236**: The FVAC Defendants deny the allegations

contained in paragraph 236 of the Complaint.

237. By means of the Proxy Statement and documents attached thereto or incorporated by reference therein and other proxy solicitation materials, Defendants sought to secure Plaintiffs' and other Class members' approval of the Merger and solicited proxies from Plaintiffs and other members of the Class.

**ANSWER TO PARAGRAPH 237**: The FVAC Defendants deny the allegations

contained in paragraph 237 of the Complaint.

238. Each Defendant named in this Count acted negligently in making inaccurate statements of material facts, and/or omitting material facts required to be stated in order to make those statements not misleading. Defendants were required to ensure that the Proxy Statement and all other proxy solicitation materials fully and fairly disclosed all material facts to allow an investor to make an informed investment decision. These Defendants also acted negligently in failing to update the Proxy Statement.

**ANSWER TO PARAGRAPH 238**: The FVAC Defendants deny the allegations

contained in paragraph 238 of the Complaint.

239. The solicitations described herein were essential links in the accomplishment of the Merger.

**ANSWER TO PARAGRAPH 239**: The FVAC Defendants deny the allegations

contained in paragraph 239 of the Complaint.

240. Plaintiffs and other members of the Class eligible to vote on the Merger were misled by Defendants' false and misleading statements and omissions, were denied the opportunity to make a fully informed decision in voting on the Merger, and were damaged as a

direct and proximate result of the untrue statements and omissions set forth herein.

**ANSWER TO PARAGRAPH 240**: The FVAC Defendants deny the allegations

contained in paragraph 240 of the Complaint.

241. The false and misleading statements and omissions in the Proxy Statement and other proxy solicitation materials are material in that a reasonable stockholder would consider them important in deciding how to vote on the Merger and/or whether to exercise their conversion right to receive $10.00 in cash per share of FVAC stock. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement, additional proxy solicitation materials, and in other information reasonably available to stockholders.

**ANSWER TO PARAGRAPH 241**: The FVAC Defendants deny the allegations

contained in paragraph 241 of the Complaint.

242. The untrue statements and omissions as set forth above proximately caused foreseeable losses to Plaintiffs and other members of the Class.

**ANSWER TO PARAGRAPH 242**: The FVAC Defendants deny the allegations

contained in paragraph 242 of the Complaint.

243. This claim is brought within the applicable statute of limitations.

**ANSWER TO PARAGRAPH 243**: The FVAC Defendants deny the allegations

contained in paragraph 243 of the Complaint.

244. By reason of the foregoing, the Defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

**ANSWER TO PARAGRAPH 244**: The FVAC Defendants deny the allegations

contained in paragraph 244 of the Complaint.

**B.      COUNT FOUR**

**For Violations of Section 20(a) of the Exchange Act**
**in Connection with the Proxy Claims**
**(Against the ATI Individual Defendants and the FVAC Defendants)**

245. Plaintiffs repeat and re-allege each and every allegation contained in the

foregoing paragraphs as if fully set forth herein, except the allegations in those subsections specified to relate solely to Plaintiffs' claims under Section 10(b) and 20(a) of the Exchange Act.

**ANSWER TO PARAGRAPH 245**: The FVAC Defendants repeat and reallege their answers to each and every allegation contained above as if fully set forth herein.

246. This claim does not sound in fraud. For the purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct. This claim is based solely on negligence.

**ANSWER TO PARAGRAPH 246**: The FVAC Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 246 of the Complaint and deny them on that basis.

247. This Count is asserted against the ATI Individual Defendants and the FVAC Defendants and is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**ANSWER TO PARAGRAPH 247**: The FVAC Defendants deny the allegations contained in paragraph 247 of the Complaint, except admit that Plaintiffs purport to assert claims under 20(a) of the Exchange Act. The FVAC Defendants further answer that, to the extent the allegations in this subsection are related to Plaintiffs' claims under Section 20(a) of the Exchange Act, those allegations and claims do not implicate the FVAC Defendants as they are not among the surviving claims against the FVAC Defendants pursuant to the Court's Order and therefore the FVAC Defendants also deny them on that basis. Out of an abundance of caution, the FVAC Defendants nevertheless answer the allegations contained in this subsection to the extent a response is required.

248. The ATI Individual Defendants and the FVAC Defendants acted as controlling persons of ATI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the ATI Individual Defendants and the FVAC Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and

91

misleading. The ATI Individual Defendants and the FVAC Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

**ANSWER TO PARAGRAPH 248**: The FVAC Defendants deny the allegations

contained in paragraph 248 of the Complaint.

249. In particular, the ATI Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The ATI Individual Defendants and the FVAC Defendants also reviewed the Merger agreement and voted to approve the Merger, signed the Proxy Solicitations, and solicited approval of the Merger.

**ANSWER TO PARAGRAPH 249**: The FVAC Defendants deny the allegations

contained in paragraph 249 of the Complaint.

250. As set forth above, ATI, the ATI Individual Defendants and the FVAC Defendants each violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the ATI Individual Defendants and the FVAC Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**ANSWER TO PARAGRAPH 250**: The FVAC Defendants deny the allegations

contained in paragraph 250 of the Complaint.

251. The solicitations described herein were essential links in the accomplishment of the Merger.

**ANSWER TO PARAGRAPH 251**: The FVAC Defendants deny the allegations

contained in paragraph 251 of the Complaint.

252. Plaintiffs and other members of the Class eligible to vote on the Merger were misled by Defendants' false and misleading statements and omissions, were denied the opportunity to make a fully informed decision in voting on the Merger, and were damaged as a direct and proximate result of the untrue statements and omissions set forth herein.

92

**ANSWER TO PARAGRAPH 252**: The FVAC Defendants deny the allegations

contained in paragraph 252 of the Complaint.

253.     The false and misleading statements and omissions in the Proxy Statement and other proxy solicitation materials are material in that a reasonable stockholder would consider them important in deciding how to vote on the Merger and/or whether to exercise their conversion right to receive $10.00 in cash per share of FVAC stock. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement, additional proxy solicitation materials, and in other information reasonably available to stockholders.

**ANSWER TO PARAGRAPH 253**: The FVAC Defendants deny the allegations

contained in paragraph 253 of the Complaint.

254.     The untrue statements and omissions as set forth above proximately caused foreseeable losses to Plaintiffs and other members of the Class.

**ANSWER TO PARAGRAPH 254**: The FVAC Defendants deny the allegations

contained in paragraph 254 of the Complaint.

255.     This claim is brought within the applicable statute of limitations.

**ANSWER TO PARAGRAPH 255**: The FVAC Defendants deny the allegations

contained in paragraph 255 of the Complaint.

256.     By reason of the foregoing, the ATI Individual Defendants and the FVAC Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**ANSWER TO PARAGRAPH 256**: The FVAC Defendants deny the allegations

contained in paragraph 256 of the Complaint.

**AFFIRMATIVE DEFENSES**

Without relieving Plaintiffs of its burden of proof or assuming any burden that the law

would not otherwise impose, the FVAC Defendants assert the following affirmative defenses to

Plaintiffs' Complaint:

93

## FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the PSLRA's safe harbor for forward-looking statements because Defendants' forward-looking statements: (i) were identified as forward-looking statements and were accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements; or (ii) were immaterial.

## SECOND DEFENSE

The FVAC Defendants have insufficient knowledge or information upon which to form a belief as to whether there may be additional affirmative defenses available to them and therefore reserve the right to assert such additional defenses. The FVAC Defendants hereby give notice that they intend to rely on other affirmative defenses that may become available or apparent during this litigation, including the affirmative defense contained herein. The FVAC Defendants reserve the right to amend, supplement, alter, augment, or change this Answer and to rely upon any other additional defenses at law or equity that may be, or become, available to them as discovery in this case progresses.

Dated: October 19, 2023

Respectfully submitted,

/s/ Charles F. Smith (Illinois Bar 6195537)
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
Charles F. Smith
Laura Bernescu
155 North Wacker Drive
Chicago, Illinois 60606
Tel: (312) 407-0700
Fax: (312) 407-0411
charles.smith@skadden.com
laura.bernescu@skadden.com

94

95

Scott D. Musoff
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
Fax: (212) 735-2000
scott.musoff@skadden.com


*Counsel for the FVAC Defendants*

95