1

**\*\*TRANSCRIPTION OF DIGITAL RECORDING\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, individually and on behalf of all others similarly situated, | ) ) ) ) |
| | ) Case No. 21-CV-4349 |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, | ) STATUS CONFERENCE ) ) ) ) ) ) ) Chicago, Illinois ) Date: October 6, 2023 ) Time: 1:00 p.m. |
| Defendants. | ) |

---

AUDIO TRANSCRIPTION OF RECORDED STATUS CONFERENCE
HELD BEFORE
THE HONORABLE MAGISTRATE JUDGE YOUNG B. KIM
UNITED STATES MAGISTRATE JUDGE

---

A P P E A R A N C E S

| | |
|---|---|
| For Plaintiff Melbourne Firefighters' Retirement System: | Jeremy P. Robinson, Esq. Bernstein Litowitz Berger & Grossmann LLP 1251 Avenue of the Americas New York, New York 10020 212-554-1492 |

(Appearances continued on the next page.)

| | |
|---|---|
| TRANSCRIBER: | Annette M. Montalvo Office: 312-818-6683 |

APPEARANCES:   (Cont'd)


For Plaintiffs         Austin P. Van, Esq.
Phoenix Insurance      Pomerantz LLP
Company Ltd. and       600 Third Avenue, 20th Floor
The Phoenix            New York, New York  10016
Pension and            212-661-1100
Provident Funds:


For Defendant          Stefania Venezia, Esq.
ATI Physical           Weil, Gotshal & Manges LLP
Therapy, Inc.,         767 Fifth Avenue
f/k/a Fortress         New York, New York  10153
Value Acquisition      212-310-8000
Corp. II:                      -and-
                       Jason M. Rosenthal, Esq.
                       Much Shelist, PC
                       191 North Wacker Drive, Suite 1800
                       Chicago, Illinois  60606
                       312-521-2437


For the Individual     Charles F. Smith, Jr., Esq.
Fortress Related       Skadden Arps Slate Meagher & Flom, LLP
Defendants:            155 North Wacker Drive, Suite 2700
                       Chicago, Illinois  60606-1720
                       312-407-0700


Proceedings recorded by Liberty digital-recording system;
transcript produced by audio transcription.

Transcriber:           Annette M. Montalvo, CSR, RDR, CRR
                       Official Court Reporter
                       United States Courthouse, Room 1902
                       219 South Dearborn Street
                       Chicago, Illinois  60604
                       312-818-6683

(Proceedings commenced at 1:00 p.m., in open court, and are transcribed from a Liberty audio recording, to wit:)

THE COURT:  Go ahead and call the case.

THE COURTROOM DEPUTY:  21-CV-4349, *Burbige, et al., v. ATI Physical Therapy, Inc., formerly known as Fortress Value Acquisitions Corporation II, et al*.

THE COURT:  Good afternoon.

Who is here on behalf of the plaintiffs?

MR. VAN:  Good afternoon, Your Honor.  Austin Van from Pomerantz LLP.

THE COURT:  Anyone else?

MR. ROBINSON:  Yes.  Good afternoon, Your Honor.  Jeremy Robinson from Bernstein Litowitz Berger & Grossmann LLP.

THE COURT:  And is that it for the plaintiffs?

MR. VAN:  Yes.

MR. ROBINSON:  Yes.

THE COURT:  And for the defendants?

MS. VENEZIA:  Stefania Venezia from Weil, Gotshal & Manges on behalf of the ATI defendants.

MR. ROSENTHAL:  Good afternoon, Your Honor.  Jason Rosenthal also on behalf of the ATI defendants.

MR. SMITH:  Good afternoon, Your Honor.  Chuck Smith from Skadden Chicago on behalf of the individual Fortress related entities.

THE COURT: Would it be fair to say, Mr. Smith, you represent the, whatchamacallit --

MR. SMITH: Sponsor related individuals, yes. Beginning with Mr. McKnight.

THE COURT: Fortress?

MR. SMITH: Yes. Fortress.

THE COURT: Okay. So let me ask this question of Mr. Van: As the lead -- please have a seat. Just make sure the microphone is close to you.

As the lead plaintiff -- no, actually, there are two lead plaintiffs, right? They are both Phoenix Insurance Company and Phoenix Pension & Provident Funds?

MR. VAN: Yeah. And that's together with the Melbourne Firefighters. Melbourne, Florida.

THE COURT: So the three of them are the lead plaintiffs?

MR. VAN: Correct.

THE COURT: And Mr. Robinson represents Melbourne?

MR. ROBINSON: Yes, Your Honor. And --

THE COURT: Have a seat.

MR. ROBINSON: And Melbourne Firefighters is a named plaintiff, which is a slightly different capacity than the lead plaintiffs.

THE COURT: All right. So let me know, how will discovery work when we have multiple plaintiffs, but some are

categorized or described as lead plaintiffs? In other words -- I'll give you an example.

You are serving a set of interrogatories, and under Rule 33 you are limited to -- I'm sorry, 25 interrogatories.

So how will that work, Mr. Van?

MR. VAN: Yes, Your Honor.

It shouldn't be problematic. This is fairly typical in securities class actions, where you have multiple lead plaintiffs, and they act as a unit. That's one of the reasons I think that the Court appointed multiple representatives for the class, multiple individuals to serve as lead plaintiff.

As far as interrogatories go, I think 25 will probably be sufficient for our needs. If we need more collectively as a group, we'll come to Your Honor and ask for more.

THE COURT: But when you are serving, are you going to be treating the defendants as two classes of defendants? You have the ATI defendants and the Fortress defendants?

MR. VAN: For the purposes of document requests, we have not treated them separately. To the extent that interrogatories differ between the defendants, if there are certain interrogatories that are particularly important for fact defendants, we would pose those interrogatories specifically to that fact defendant.

THE COURT: But what's the expectation here? Let's

6

just talk a little bit about this. ATI defendants, there are only three named defendants. But for the Fortress defendants, we have multiple defendants. And, you know, is it the expectation of the parties that we have two groups of defendants as opposed to, I don't know, 13, 14 defendants?

MR. SMITH: Yes, Your Honor. I think that's right.

THE COURT: I need you to state your name before you say anything because of the recording system.

MR. SMITH: Certainly. Chuck Smith on behalf of the Fortress defendants.

And certainly from our perspective there are two groups of defendants with separate counsel, but, obviously, we will coordinate on the defense side, to the extent possible, to minimize burden in the case and out to date.

THE COURT: I mean, I like the fact that you are being optimistic. You know, people say that, that there's going to be a lot of coordination, but I don't find that to be the case when discovery actually goes forward.

MS. VENEZIA: Your Honor?

THE COURT: Yes. Go ahead.

MS. VENEZIA: Yes. Sorry to interrupt. It's Stefania Venezia from Weil.

In practice context, will be helpful, which is the only reason I am raising it. So, you know, we've all done a number of these cases before where we have had separate

defense groups involved, you know, in the matter, and there have been multiple lead plaintiffs. And we have been, and we expect to be able to do it in this case, avoid duplication. For instance, with respect to the document requests, while the document requests have been directed to all of the defendants, it is fairly easy to avoid duplication because with respect to the ATI defendants, all of those documents, for instance, necessarily are going to come from ATI and the company. We're not going to need to go to Fortress, we're not going to need to go to FVAC and those individuals. There will be arguments back and forth as between us. So it's very clear-cut. You know, they will collect their documents in a similar fashion. So I just think it sounds like it may be complex, but I think we've had experience in working through these situations, and I think we can find a way to make it nonduplicative and efficient.

MR. SMITH: Yes, Your Honor. To be clear -- Chuck Smith from Skadden.

Bernstein Litowitz, Pomerantz, Weil Gotshal, and Skadden, are in positions that we have been in many times over the years against each other, and on this side cooperating with each other and in securities litigation. All of us around this room are experienced securities litigators, and we coordinate on discovery all the time, across many cases. And so I think -- well, I was not trying to be glib when I said

that Stefania and I would cooperate with each other. We do that regularly with Weil Gotshal in cases --

THE COURT: Well, that's good to hear.

MR. SMITH: -- (inaudible) defendants.

THE COURT: Good to hear.

Let me ask this: Fortress, does it exist still?

MR. SMITH: The fund doesn't exist, right, the fund has become the company, I believe, right. And Stefania can explain that better than I can.

Fortress, a parent -- there is a parent entity that exists that's not a party to this action.

MS. VENEZIA: Right. But the company -- and, again, the company that is the named defendant, ATI Physical Therapy, Inc., is what was formerly Fortress Value Acquisition Corp. II prior to the transaction at issue. So this was a transaction in which Fortress Value Acquisition Corp. II was a publicly traded company and had shares. It was a company known as a SPAC, a Special Purpose Acquisition Company, vehicle. That company took what was formerly the private ATI company public, and that company now trades under the ATI Physical Therapy, Inc., name. So ATI and Fortress, you know, as the two defendants in the caption, are effectively the same entity as we sit here today.

MR. SMITH: Which is why I only represent individuals, Your Honor, and not --

THE COURT: What about communications between Fortress and ATI? Weren't there two separate systems in play?

MS. VENEZIA: They will -- I believe there were two separate systems because they were two separate companies, but upon integration, I think we will be able to capture whatever communications are on the now ATI system. We will be able to capture those to the extent relevant.

THE COURT: Do you know whether it was migration? So let me ask you this: You said you all are experienced in this area. What usually happens in these situations? Are the systems merged? Is there a migration of data? What happens?

MS. VENEZIA: As we sit here right now, I don't expect there to be any issue in pulling the e-mails that we need to pull. We're going to have discussions with the plaintiffs on -- the way this -- just to take a step back, Your Honor. Just, again, apologies if I am telling you things you already know.

The way this would work is we are going to in the very near future engage with Austin and Jeremy on compiling an agreed upon universe of custodians, document custodians, right. And those will be a list of individuals that plaintiffs and we agree have relevant and potentially responsive documents.

We will pull those e-mails and pull those documents, and then those documents will obviously need to be reviewed

and produced, and I am sure will be very voluminous. But that's a process that we're going to work on and undertake, and we will again pull the custodian information that's relevant from the ATI servers. And to the extent there's Fortress information that Chuck and his clients will need to pull, they will pull that from their systems, basically.

THE COURT: Have you had discussions with all of the party defendants to see whether any personal devices were used?

MR. SMITH: We have had discussions regarding preservation of relevant information, including on personal --

THE COURT: So a litigation hold has been issued to everyone?

MS. VENEZIA: Absolutely.

MR. SMITH: Absolutely, Your Honor.

THE COURT: And are you going to be needing documents from the plaintiffs, other than damage documents?

MS. VENEZIA: We typically do ask that plaintiffs produce documents relating to subject areas, like trading history, their knowledge of the company, due diligence of the company, you know, other similar areas in our experience that the volume of documents from the plaintiffs is not typically that large. The volume is usually on the defense side. But, yes, Your Honor, we do plan to issue some reasonable document requests to --

MR. SMITH: Related to class certification, primarily.

MS. VENEZIA: Yes.

THE COURT: So in these types of situations, and I did read Judge Chang's motion to dismiss ruling, I don't know that he ever mentions reliance as an element. Is that right? It is not an element that plaintiffs have to prove?

MS. VENEZIA: Well, I think they will have to prove it, I don't think Judge Chang -- I don't think his motion to dismiss ruling was dependent on reliance. I think his ruling was issued based on other factors.

THE COURT: In one of the schedules -- actually, both status reports, as well as the one that was filed on October 2, it says here, and I am looking at page 2 of Document No. 111, there's a reference to in response to all document requests issued on or before September 29, 2023.

So you have issued document requests?

MR. VAN: We have, Your Honor.

THE COURT: How many sets?

MR. VAN: One set, and it consists of 16 separate requests.

THE COURT: One set to who?

MR. VAN: To defendants, to all defendants.

THE COURT: All defendants?

MR. VAN: All defendants.

THE COURT: And how about on the defendants' side? Did you serve a set of requests?

MS. VENEZIA: We have not served a set of document requests yet on the plaintiffs. Which is not unusual in this type of case. Usually we would circulate document requests a bit later, only because, again, the volume that we would expect from plaintiffs is not that large and so it really wouldn't impact any of the scheduling.

THE COURT: Okay. Understandable, but what would be the need to wait to serve? Is there a particular need?

MS. VENEZIA: No, there's no need other than there are some other imminent deadlines on the current schedule on the defense side that we are currently working on. So we have initial disclosures due on October 12, we have answers to the complaint due October 19, and then we have responses and objections to the current document request and interrogatories that were served due October 20.

So just from a, you know, case schedule and just overall management perspective, that's what we were focused on first.

THE COURT: When was the set issued?

MR. VAN: On September 20.

THE COURT: And when do you plan on having the protocol discussion? And I am assuming that the protocol discussion is based on the set of document requests served?

MR. VAN: Yes, Your Honor. I think we'll try to --

THE COURT: Mr. Van?

MR. VAN: Oh. Sure.

I'm sorry, were you directing your question --

THE COURT: No, no, no. Mr. Van, I just want the record to be clear as to who's talking.

MS. VENEZIA: Introduce yourself.

MR. VAN: Thank you, Your Honor. This is Austin Van.

THE COURT: Go ahead.

MR. VAN: So I think that once we get the responses and objections from defendants to our document requests and interrogatories, then we'll have a discussion about the scope of documents that they feel they are willing to produce in response to our request. And we will also have a discussion about custodians. And I think that that's the most important first step. Because we need defendants to be able to go and collect all the volumes, as Stefania was mentioning, from all the custodians that we agree upon. And in order to agree upon the custodians, we will need to get org charts and our responses to our interrogatories. That information will tell us who knows what, you know, who is most likely at the organizations to have the relevant documents.

And then once we have the custodians, and once their volumes have been collected, then we can apply search terms to see what sort of volume we are looking at in terms of the

application of our proposed search terms.  And assuming that it's not unduly burdensome, then I think defendants can get to work reviewing.

THE COURT:  And in terms of collecting the universe of documents -- let me go back to something you said, Ms. Venezia.

You mentioned e-mails.  Are you plan -- are you consider -- are you thinking that you will have other types of ESI other than e-mails?

MS. VENEZIA:  So I am sure that we will be asked to produce multiple -- you know, whatever sources of electronic data exist beyond e-mails, which in today's age includes, you know, cell phone data, text messages.  Companies often use share file type document systems so that documents could exist in those types of files and folders.  And so, yes.  The short answer to your question is, yes, I think we will both be requested to and have to produce beyond just e-mails.

THE COURT:  And it sounds like you all work with each other quite often.  Do you also deal with -- discuss search terms together?

MR. VAN:  Your Honor, this is Austin Van.

We'll probably propose the first set of search terms, if that's okay with defendants, and then I'm sure that they'll have suggestions for changes.

THE COURT:  And do you also have discussion about

collection methodology?

MS. VENEZIA: Well, yes. I mean, generally, we have discussions with the plaintiffs about the sources from which we are going to collect --

THE COURT: Not sources, but the methodology of actually collecting ESI.

MS. VENEZIA: Typically, I mean, we used -- we on the defense side, and I'm sure plaintiffs as well, use very experienced electronic discovery vendors who specialize in litigation collection. And so, you know, as long as we are using, which we intend to use, one of those experienced and certified vendors who does this work with us all of the time, then typically we don't have to, you know, have a back and forth about the collection methodology as long as we are on the same page about the source from which we're pulling data, the metadata that we are agreeing to provide to the plaintiffs, which will be a discussion that we have amongst ourselves and usually agree on fairly easily. There's lots of standard metadata these days that we all sort of know on both sides.

So I think the short answer is no because we don't really need to, given the people that we're using to collect the data.

THE COURT: So given your extensive experience working with each other, tell me the steps you plan on taking

in terms of discovery. I mean, I have a way of doing discovery, but I certainly don't want to rock the boat if I don't have to.

MS. VENEZIA: Sure. And, I mean, I guess I'm happy to start and --

THE COURT: Well, yes. Let's start with you, Ms. Venezia.

MS. VENEZIA: And when you say discovery, I am interpreting that to mean how we are going to respond to the discovery that plaintiffs are --

THE COURT: No, no, no. Let me fill the entire scenario. We have written discovery, we have oral discovery, and probably expert discovery, right?

MS. VENEZIA: Correct. So we will -- so we will start by, as Mr. Van said, responding -- serving our written responses and objections to the document request and interrogatories that plaintiff served.

Once those responses and objections have been served, we will have conversations with the plaintiffs, as Mr. Van said, to isolate the universe of agreed upon custodians, run search terms, hit reports, the search terms that plaintiffs proposed to see what the volumes are. It is our experience that a lot of times the initial set of search terms captures a number of documents and is fairly broad and there have to be a number of iterations back and forth before both sides can sort

of agree on the total universe. And we're talking, given the sources of data, the typical number of custodians in these cases, you know, potentially hundreds of thousands of documents that come up initially on these types of hit reports, and so that's what we work to narrow down to a more reasonable universe.

Once the scope of electronic discovery is agreed upon, meaning custodians, search terms, and any disputes over, you know, the way we are interpreting their request and their responsiveness sort of criteria, we would then turn to actually the processing of the documents collected and then reviewing those documents, producing those documents.

Once the --

THE COURT: Let me stop you.

MS. VENEZIA: Yes.

THE COURT: Do you also have conversations about the review process?

MS. VENEZIA: No, unless -- the only conversations that we would have, we would try to have at the outset so that we know we're on the same page in terms of how we are defining responsiveness based on our responses to the document request that plaintiffs have served. And so we try to iron that out very early on so that by the time we get into the review portion of the discovery, we are all on the same page, we know what they expect us to produce by way of responsiveness, our

team knows what is responsive and needs to be produced, and we just get through the review and produce the documents.

THE COURT: So you intend on doing a manual review for responsiveness?

MS. VENEZIA: Yes. And just if we -- if by manual you mean attorneys actually reviewing the documents --

THE COURT: Correct.

MS. VENEZIA: -- as opposed to relying on some kind of AI methodology, yes, that is typically how we approach document review. And that is in part, Your Honor, because in order to prepare for the next phase of the case, which once the documents are completed and produced to the plaintiffs, there will be a period in which, obviously, there will be fact depositions even before we get to expert discovery.

And so, you know, as we are reviewing the documents, we are obviously in part not just reviewing to get them out the door, but also reviewing and beginning to prepare, you know, and isolate documents and highlight documents internally for upcoming fact depositions and preparation for those fact depositions.

Shall I continue beyond that?

THE COURT: And do you have an agreement on the format of production, or you will discuss that as well?

MS. VENEZIA: We are going to discuss that as part of our upcoming discussions.

THE COURT: Okay. So then you move on to fact discovery, right -- I'm sorry, fact depositions.

MS. VENEZIA: Right. So fact depositions. Again, you know, we don't know yet what plaintiffs are going to request by way of depositions, but it will be more than a handful, for sure.

So fact depositions, you know, will take some time. Once fact deposition are done, obviously, there's an expert phase of the case. There are typically experts on both sides, you know, relating to things like not just damages, but potentially market efficiency, potentially reliance, just, again, depends on the specific facts of the case.

I don't know yet because it's a little bit early to say. Sometimes in addition to these types of damage experts you would have subject matter experts if you think, for instance, there's a particular need for someone with knowledge of the physical therapy industry in this case, and, you know, what was impacting a jury in this particular time period.

Again, that I don't know. I am just raising it as there's a possibility that multiple experts beyond just damages related experts could be needed. And that's why we build out time for the expert reports, and then subsequent to that, expert depositions.

MR. SMITH: Your Honor, Chuck Smith.

A couple of additional layers of complication. One

that's more unique to this case and this moment and the other that's general. Class certification, obviously, the Seventh Circuit says, shall be decided as early as practicable. Here, there are intertwined factual and legal issues related to class certification and merits. The parties have not discussed how to address that, but Judge Chang focused on it, we are all aware of it. The second piece is that there are three other pending cases arising out of the same transaction. Judge Chang has a federal derivative action, shareholder derivative action that's pending before him, and there are two shareholder derivative actions pending in Delaware.

Correct?

MS. VENEZIA: Delaware Chancery Court.

And it's Ms. Venezia speaking.

Just to piggyback on what was just said, you know, part of it -- and plaintiffs and defendants both, as you saw, Your Honor, submitted a schedule jointly. And, you know, we spent a bit of time between us coming up with the overall case schedule. And I think part of -- one of the reasons we thought on the defense side, at least, that it was reasonable is that it was a schedule that potentially gave us the opportunity to not get too far ahead of the derivative case pending before Judge Chang and a couple of the other cases that were mentioned that are in Delaware, because, obviously, we would really like to avoid a situation where we're

duplicating discovery and having deponents who are very likely going to be witnesses in all of these litigations having to be deposed multiple times.

And so, you know, again, this was, we thought, a reasonable schedule just from purely this case and how much time it is going to take us given the expected document volumes and depositions, but, also, sort of an overlay to that was the thought that maybe it will also help avoid duplication in some of the other cases.

THE COURT: Have you had discussions with the attorneys in the other cases?

MS. VENEZIA: We have not. It is not -- none of those cases are yet at a point where they are even fully briefed on a motion -- well, one is fully briefed on a motion to dismiss, but is pending in Delaware and is not going to be heard until December. So they are not yet at the point where we would be talking about discovery with any of those plaintiffs.

THE COURT: You say that the other cases have derivative actions filed by the shareholders. How is this different? Aren't the plaintiffs also shareholders? Or were at some point?

MS. VENEZIA: Yes. So the difference is the current case -- and, again, this schedule was created with this case in mind. That was the driving factor and the primary factor.

I only mention the other cases as just sort of an overlay.

But the difference is that this securities case and all securities cases, (inaudible) cases like this, are brought directly, meaning they are brought directly on behalf of the shareholders as the injured party and any recoveries would go to those stockholders, should there be a decision that there was -- or a judgment or a finding that had damages that would be recovered by the stockholders. In a derivative case, which is the case that -- the other case pending before Judge Chang and the two cases in Delaware, one of which is purely derivative, the other one which is a little bit of a combination, but I will save the Court from some of that complexity, but the derivative cases, just generally, Your Honor, they are brought by a stockholder, but they are not brought on the stockholder's behalf. It is a stockholder that is bringing an action on behalf of the company. And so they are basically saying, you know, the company isn't going to bring an action against its own board or against its officers, and so we think that we need to step in and bring this action on behalf of the company. And in that case, in a derivative case, the recovery would not go to the stockholder class. Any recoveries would go to the corporation.

UNIDENTIFIED SPEAKER: And just for legal theories, the theory here, obviously, is either securities fraud or proxy violations. In the case of my clients, it's only the

proxy violations. And in the derivative cases, shareholder derivative cases, it's typically breaches of fiduciary duty. Sometimes they're securities claims layered in, but the primary allegation is typically a violation of people's duties owed to the company, which is why the shareholders are suing on behalf of the company.

THE COURT: So then how much overlap will there be among the four cases?

MS. VENEZIA: So it's --

THE COURT: Because this particular case deals with a very specific period of time.

MS. VENEZIA: Yes.

THE COURT: And specific statements or absence of statements?

MS. VENEZIA: Correct.

And the other cases, Your Honor, I will start -- the short answer is there's a significant amount of overlap. They are all focused on the same time period, they are all focused on the same statements, and in large part have a number of overlapping defendants. So there is significant overlap.

THE COURT: And are the same attorneys involved in some capacity in the other three lawsuits?

MR. VAN: No, Your Honor.

THE COURT: I'm sorry, Mr. Van?

MR. VAN: No, Your Honor. This is Austin Van.

And we don't really agree, at least initially, on the overlap. At a minimum, we don't feel that this case should be held up. Discovery in this case shouldn't be held up due to these other pending matters.

The cause of action here, I do not believe, or cause of action at issue in the other matters. And, yeah, our --

THE COURT: I'm sorry.

MS. VENEZIA: Yeah.

THE COURT: Go ahead.

MR. VAN: Our preference is that the discovery continue (inaudible) in this action.

THE COURT: Okay.

MS. VENEZIA: Yes. And just again, I wasn't trying to suggest, Your Honor, that we should be delaying the schedule we put forward in front of Your Honor. We are 100 percent comfortable with the schedule, we agree with plaintiffs on it. As I said, that was the primary driving factor for the schedule is we were focused on this case and how we would accomplish moving this case forward in a manner that all parties thought was reasonable so that we didn't have to come back and ask for more time. Obviously, there's no guaranties in all of this, but the idea was in a securities case, what schedule can we come up with that plaintiffs can agree with, defendants can get behind, and we are all comfortable that we have the ability to sort of meet those

deadlines. So the primary -- the factor and the primary sort of force behind the schedule was the focus on this case.

THE COURT: And there is a plan, and I am asking Mr. Van and Mr. Robinson, you will be issuing a 30(b)(6) notice at some point? After written discovery?

MR. VAN: Deposition notice for the company? Yes. Absolutely.

THE COURT: Help me understand. There are four counts in this amended complaint, class complaint. If I'm reading Judge Chang's ruling correctly, the only account that is pending against all defendants, meaning both groups of defendants, is Count 3?

MR. VAN: That's correct, Your Honor.

THE COURT: Count 1 is again all ATI defendants?

MR. VAN: Correct.

THE COURT: But Counts 2 and 4 are only against two individual defendants, right? Mr. Leeb -- I'm sorry, Mr. Diab --

MS. VENEZIA: Diab.

THE COURT: And Mr. Jordan?

MR. VAN: That's correct, Your Honor.

And I should clarify that the Court dismissed claims -- section 10(b) claims against defendant McKnight. I think we might have included him as an ATI defendant in the complaint, but just for clarification, he's no longer -- he's

been dismissed with respect to that claim.

THE COURT: Okay. Thank you.

All right. I will take a look at the proposed schedule. I think this is the same schedule you include in your status report to Judge Chang. I am going to tweak it a little bit. I am going to require defendants to serve whatever discovery you need to serve at the same time so that, you know, we can be moving with discovery -- moving forward with discovery on the same track.

Any questions from the plaintiffs' side, while you're here?

MR. VAN: No, Your Honor.

THE COURT: On the defendants' side?

MS. VENEZIA: No, Your Honor.

THE COURT: All right.

MR. SMITH: No, Your Honor.

THE COURT: Thanks for your time.

Oh. Let me pick another status hearing date.

(Short pause.)

THE COURT: Can you take a look at your schedule for November 17, 10:00 a.m. Central Standard Time, by phone.

MR. VAN: That's fine for plaintiffs, Your Honor.

MS. VENEZIA: That's also fine. You said telephonically, Your Honor?

THE COURT: I'm sorry?

MS. VENEZIA: Did you say telephonically?

THE COURT: Yes.

MS. VENEZIA: Yes.

MR. VAN: And that's fine with us as well, Your Honor.

THE COURT: Okay, then. I will talk to you on November 17 at 10:00 a.m., and I will include the call-in information in today's order.

Thank you.

MR. VAN: Thank you, Your Honor.

MS. VENEZIA: Thank you, Your Honor.

(Proceedings concluded at 1:30 p.m.)

* * * * *

**REPORTER'S CERTIFICATE**

I, ANNETTE M. MONTALVO, certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitations of using a digital-recording system.

Dated this 20th day of October, 2023.

/s/Annette M. Montalvo
Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter