<u>**TRANSCRIBED FROM DIGITAL RECORDING**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated, ) ) ) ) | |
| Plaintiffs, ) | Case No. 21 CV 4349 |
| ) | Chicago, Illinois |
| -vs- ) | December 19, 2023 |
| ) | 12:31 p.m. |
| ATI PHYSICAL THERAPY, INC., f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

TRANSCRIPT OF PROCEEDINGS - Status Hearing
BEFORE THE HONORABLE YOUNG B. KIM, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:     BERNSTEIN LITOWITZ BERGER & GROSSMANN
                       LLP
                       BY:  MR. JEREMY P. ROBINSON
                       1251 Avenue of the Americas
                       New York, NY 10020

                       POMERANTZ LLP
                       BY:  MR. AUSTIN P. VAN
                       600 Third Avenue
                       20th Floor
                       New York, NY 10016

Transcriber:

                 SANDRA M. TENNIS, CSR, RPR, RMR, FCRR
                      Official Court Reporter
                   United States District Court
                 219 South Dearborn Street, Room 2260
                      Chicago, Illinois  60604
                    Telephone:  (312) 554-8244
                   Sandra_Tennis@ilnd.uscourts.gov

APPEARANCES:   (Continued)

For ATI Defendants:    WEIL, GOTSHAL & MANGES, LLP
                       BY:  MR. JOSHUA S. AMSEL
                            MR. TANNER S. STANLEY
                       767 Fifth Avenue
                       New York, NY 10153


For Individual
Defendants:            SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                       BY:  MR. CHARLES F. SMITH, JR.
                            MS. LAURA BERNESCU
                       155 North Wacker Drive
                       Chicago, IL 60606

(Proceedings heard in open court:)

THE CLERK: 21 CV 4349, Burbige, *et al* versus ATI Physical Therapy, Incorporated, formerly known as Fortress Value Acquisition Corporation II, *et al.*

THE COURT: Good afternoon, Judge Kim here. Who's on the line for the plaintiffs?

MR. VAN: Good afternoon, your Honor. It's Austin Van from Pomerantz.

MR. ROBINSON: And also is Jeremy Robinson from Bernstein, Litowitz, Berger & Grossman on behalf of plaintiffs.

THE COURT: Anyone else for the plaintiffs?

Okay. How about for ATI defendants?

MR. AMSEL: Good afternoon, your Honor. Josh Amsel and Tanner Stanley from Weil Gotshal.

THE COURT: Did you say Tanner Stanley?

MR. AMSEL: Yes.

THE COURT: That's a new name. Is there an appearance on file for Mr. Stanley?

MR. AMSEL: We will -- we will get one on file ASAP.

THE COURT: Sure, thank you. T-a-n-n-e-r?

MR. AMSEL: Yes. Last name, S-t-a-n-l-e-y.

THE COURT: Okay. Thank you. How about for Fortress defendants?

MS. BERNESCU: Good afternoon, your Honor. Laura

Bernescu is on from Skadden.

THE COURT: Thank you. Anyone else?

Okay. So the last time we spoke, the parties updated the Court that defendants served their discovery responses by October 20th. Defendant then produced 80,000 more documents thereafter. Plaintiffs said that they needed time to schedule the reviewers and actually conduct the review.

I'd like to check with the plaintiffs whether plaintiffs produced their discovery responses to defendants by November 17th.

MR. VAN: Yes, your Honor. This is Austin Van. We have produced our responses and objections. After that, we have had a meet-and-confer with defendants, and our plan in general I think to respond to their request is to run a set of fairly broad search terms, like ATI, and the ATI ticker, against relevant sets of documents, and then look and see what among those documents are responsive to their request that, you know, we had fewer objections to -- or the request for which we intend to produce documents.

So we intend to get those search terms to defendant this week. And I suspect we'll have another meet-and-confer soon after that, although probably not the week of the 25th, just because that's a holiday week. So probably the first week of the new year I think we'll have a meet-and-confer and see whether defendants are on board with our plan to search

and produce documents in responses to their request.

THE COURT: So if I'm understanding you correctly, while there was a timely response to the discovery requests, defendants sound like -- voiced some concerns about the completeness as a -- based on that particular meet-and-confer. Plaintiffs have volunteered to run raw search terms to see whether any additional responsive documents have not been produced. Do I have that right?

MR. VAN: No, your Honor. I'm sorry. We have not yet produced documents in response to their request. We just had a meet-and-confer about the scope of our production and about our responses and objections. So the result of that meet-and-confer was a general plan for us to come up with search terms and also to give additional specificity about which of the requests we don't intend to produce documents in response to. For some of the requests, we just don't think that we'll have any documents. And so I think that for some of the requests our -- our response will be, you know, we don't intend to produce anything. So we intend to give defendants those requests and our search terms this week and then have a meet-and-confer again to see whether we're on the same page about our plan to respond to their requests. Probably the first week of the new year.

THE COURT: Ms. Venezia, or -- no, wait a second. No. Hold on. Mr. Amsel, anything you want to say in

response?

MR. AMSEL: No, your Honor. It's Josh Amsel. I think Mr. Van's description of where we stand and the procedure is accurate from our perspective.

THE COURT: Ms. Bernescu?

MS. BERNESCU: No, your Honor.

MR. ROBINSON: Your Honor, this is Jeremy Robinson from Bernstein, Litowitz. May I just be briefly heard on behalf of plaintiffs for just one wrinkle that I wanted to alert the Court to?

THE COURT: Yes.

MR. ROBINSON: Okay. That is -- it is -- and this is consistent with our discussions with the defendants. The plaintiffs, the City of Melbourne Firefighters' Retirement System, has an external investment manager that makes discretionary investment decisions. That external manager is asset -- is last -- Lazard Asset Management, LLC. So we discussed this, and we disclosed that to defendants. And so the Melbourne Firefighters is in a bit of a unique situation as it wouldn't have documents responsive. But we discussed with defendants that we would, you know, interview the client to see if there is any documents at all, such as SEC filings. We're in the process of doing that. And so I just wanted to alert the Court to that slight, you know, wrinkle there.

THE COURT: Okay. So what I'm hearing is this:

Plaintiffs actually didn't complete the discovery responses by November 17th. And -- and I understand, that's fine. What the parties are doing is essentially engaged in discussions about ESI protocol, which is part of the effort to respond to discovery request. My only objection is that I'm not kept in the loop. So if you are unable to meet a deadline of November 17th to make the production and the responses, then I should be told so that an extension can be granted and so that I'm also in the loop as to exactly what is going on in discovery. Does that make sense?

MR. VAN: We appreciate that, your Honor. And we are happy going forward to keep you in the loop when we serve responses and objections to any discovery requests about the nature of our response and objections, particularly if we intend not to produce documents on that day.

THE COURT: I'm not sure that you appreciate what I just said. November 17th, '23 is a court-ordered deadline. You blew right through it. It's December 19th. It has been more than a month since the deadline for responding to discovery.

You know, the first time we had an in-court status hearing about discovery, you all said that you all knew each other, you've done this work before, many times before. And so I'm thinking, hey, there are not going to be that many issues regarding written discovery. But that's not what I'm

hearing. And I'm a little disappointed that you couldn't care less about a court-ordered deadline.

MR. VAN: Oh, your Honor, I'm so sorry I gave that impression. We certainly care about those deadlines. Just to be clear, it is our usual practice to conduct discovery in exactly this way. Usually what we'll --

THE COURT: Whoa, whoa. Hold on a second. Your usual practice? What do you mean by that? You and I have had cases together before in my courtroom?

MR. VAN: No, your Honor.

THE COURT: So why would you consider that your usual practice would apply here?

MR. VAN: I should clarify what I mean by that. And I'm sorry if I've misled the Court. I certainly had no intention of doing that. What I mean to say is that in other litigations of this sort, certainly that I've been involved in, usually what is meant by a deadline to responses and objections is that on that day you have to serve objections. And usually those objections will be, you know, fairly broad. And then after that, the parties will have, you know, a series of weeks in which they meet-and-confer about the scope of those objections and whether they're legitimate and the scope of the -- of the production. And then after that, the parties will go collect the documents and actually serve the documents in some, you know, timely -- timely fashion.

I will say, I've never seen it done before that parties actually produce all the documents on the court-ordered deadline for responses and objections. If that was what the Court intended, then we misunderstood the Court's intentions, and I apologize.

THE COURT: I don't believe I need to express my intentions because we are all required to follow the civil procedure rules. The rules do not call for simply objecting to discovery responses within 30 days. In fact here, I think I believe you got more than 30 days. These deadlines are not guidances. And they certainly don't specify that only objections are to be served. I don't get the sense the defendants did the same here because they said that they served discovery responses and they also served additional documents thereafter.

This notion that you can go ahead and follow your usual practice no matter which court you're in is a pretty poor one. And, you know, perhaps it is the way things are done in the east coast, but certainly in the Northern District of Illinois, all litigants are obligated to meet discovery deadlines, unless they show good cause and ask for extension. That is what the rules say.

So it doesn't matter what my intentions are because I follow the rules, and so should you.

MR. ROBINSON: Your Honor, this is Jeremy Robinson

from Bernstein. May I -- I don't mean to interrupt so, but I wanted to just briefly be heard. Please. I thought you were done.

THE COURT: Go ahead.

MR. ROBINSON: Just to clarify, we followed the exact same procedure that we did with defendants. On the date for their responses, defendants served objections -- responses and objections, we then met-and-conferred, and they said hey, we have a production that we've already made to the SEC, which we're happy to give you. And then after the deadline for serving their objections and responses, you know, a week or two later because they had already made production, they produced that and said let us -- you know, take a look at this and let us know if, you know, this satisfies your document requests or if it doesn't.

That's effectively the same thing we did with plaintiffs. We served our responses and objections on the deadline. Just to be clear, so there's no ambiguity, we served those on the deadline. We then met-and-conferred. Plaintiffs, unlike defendants, don't have a ready-made production to make, so we are in the process of discussing what to be produced and working that out.

So if there was any misimpression given to the Court, I just wanted to clarify that it's the same exact procedure, and it's just slightly different because different parties are

in different procedural postures. Thank you for hearing me, your Honor.

THE COURT: So what you're saying is defendants also failed to respond properly to discovery requests in a timely manner, and, therefore, you should be excused? Is that what you're saying?

MR. ROBINSON: No, your Honor. That's not what I'm saying, respectfully. I'm just saying that every party were served its responses and objections according to the -- the court-ordered deadline and then has promptly begun the process of producing documents, consistent with the parties' discussions.

THE COURT: Do you subscribe to the notion that Rule 34 requires only objections to be served within 30 days?

MR. ROBINSON: Appreciating your Honor's comments, that --

THE COURT: Just answer the question.

MR. ROBINSON: That is how -- yes, that is how the -- that is how these cases proceed, typically.

THE COURT: No, no, no. Rule 34. That's what you -- that's what you believe Rule 34 to be saying? Do you have an answer?

MR. ROBINSON: Yes. The answer is yes, that's -- that's typically how we interpret Rule 34.

THE COURT: Why do you even say typically how you

interpret?  Either the rule says so or it doesn't, right?

MR. ROBINSON:  Yes, your Honor.

THE COURT:  From the beginning I got the sense that all of the attorneys are pretty cavalier about discovery obligations.  You know, I got the sense from just sort of letting the Court know, oh, you know, Judge, you don't know what you're talking about, we've done these cases many times before, we know how to do discovery, and therefore you should butt out.  Well, that's not going to happen here.  And if it turns out that defendants also violated the rule and the order, then I should know.  Mr. Amsel?

MR. AMSEL:  Yes, your Honor.  The only thing I would add is we -- we made an offer to produce documents, a really voluminous universe of documents.  And part of the reason why it took a little bit of time before those documents went out the door, and just so your Honor understands the scope, it was somewhere in excess of 400,000 pages, was because we needed to iron out the details around confidentiality.  There is -- there is incredibly sensitive, you know, material information about the company that was included within those documents, and we needed to iron out a confidentiality order, protective order, with the plaintiffs.  And so that contributed to the little bit of time after, you know, service of our written responses before those documents could go out the door.

But look, I think, from our perspective, I don't

think that we were ever -- and I unfortunately was not at the conference in person with your Honor, but I don't think the intent was to ever suggest that, you know, that you don't play a role in discovery. Quite the contrary. I think what -- what was trying to be conveyed was in federal securities litigation, discovery tends to be incredibly voluminous. And as we've said, we've already produced in excess of 400,000 pages. To the extent plaintiffs are looking for additional documents, that, too, I would expect to be reasonably voluminous, requiring intricate searches of multiple custodians over a somewhat lengthy period of time. And often -- although we're happy to abide by whatever strictures your Honor would like to impose, often that's just -- it's just something that you're unable to do within 30 days. Right? Because just that collection of the documents sometimes takes more than 30 days in and of itself before you're able to gather that information, upload it, de-duplicate it, and then produce it, weeding out any privileged information that, you know, is obviously immune from discovery.

So all of that is a long way of saying that it takes -- it takes a little bit of time to do that. But there was no intent on our part, and I'm sure on the part of the other parties as well, to suggest that, you know, we did this without, you know, your involvement and oversight.

THE COURT: So let me ask you, Mr. Amsel, when something can't be done within 30 days, what do you think you should do when you have an active case going on before a Court?

MR. AMSEL: I'll answer the question this way, your Honor. I'll say from this point forward, we understand exactly where you're coming from. And to the extent that there is a deadline such as a deadline for responses and objections to discovery and we're not able to produce the documents along with the written responses within that timeframe, we will most certainly be in touch with the Court immediately upon learning that we may need a little bit more time and to request your Honor's leave for a little bit more time, if it becomes necessary.

THE COURT: So are you saying that my practice is very, very unique and no other judges require motions for extension of time if a deadline cannot be met?

MR. AMSEL: I will say that -- and I can only speak for my own experience, but in cases in which we are representing defendants in federal securities litigation where we are often found to produce millions of pages of documents, the process that the plaintiffs have described where we serve written responses and then there is a period of discussion with the plaintiffs over the scope of those -- scope of that discovery, including a negotiation of search terms and

custodians and date ranges, that that is the process that we typically see employed as well.

THE COURT: I'm not sure that you're answering my question. So other judges don't require motions for extension if you blew -- blow through a deadline.

MR. AMSEL: Not in the context of inability to produce an actual document on the date that that responses and objections are due. I have not seen that before.

THE COURT: Well, that's a first for me, that courts don't care about deadlines and the parties can do what they want simply because it's a certain type of case. This isn't any different -- this case isn't any different than other complex litigation cases where there's very wide range of ESI.

I'm not quite sure exactly why the attorneys feel that they can do whatever they want because they are so used to doing, you know, your own thing in these type of cases, especially when you have a judge that you never practiced in front of. I mean, this really boggles my mind, you know? You have a professional responsibility to follow the rules. The rule -- I'm not asking you to do anything that's not in the rules, you know. And if something can't be done in 30 days, I certainly understand that. I've litigated myself. But you have to ask the Court for permission to extend that deadline, and you have to show good cause so that we can be on track to get things done. Otherwise --

MR. SMITH: Your Honor?

THE COURT: -- discovery will go on for -- stop. Otherwise, discovery will go on for years.

Who wanted to say something on the record?

MR. SMITH: Your Honor, it's Charles Smith for the FVAC defendants. I'm sorry, I missed the beginning of the hearing, and I apologize for that. I'm a Chicago lawyer, so I practice a lot in the Northern District. And so to the extent we have all misconstrued the Court's preference, we apologize for that.

THE COURT: Oh, my God, Mr. Smith.

MR. SMITH: No, no, your Honor.

THE COURT: It's not a preference. It is not a preference.

MR. SMITH: I wanted to flag the language of Rule 34(b) which says in the last sentence that the rule is structured that the response and objections are due in 30 days and that the production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response. And that I think is how parties in large cases in this district have been doing it. And that's certainly been my practice. And so I -- I apologize, your Honor, because that is our reading of the express language of the rule, and that's why I have always done it this way. And, again, we are all -- we want to do

what the Court wants us to do in this case. And we want to comply with the rules, absolutely. None of us here are trying to play fast and loose with the rules of civil procedure, your Honor. We are --

THE COURT: You're not understanding. The rules require you to produce documents. If there are issues, then you certainly note those issues. But what you are doing at this moment is to simply, say, oh, we object to these things, let's talk about them, and we'll deal with them later. That's not how it's done. The rule's pretty clear, exactly what you just said. But that's not what you did, is it? You know, you just serve objections and just sort of -- sort of describing the parameters for discussion. That's what it comes down to. And I'm really surprised. I am. And if you want to perceive what I am saying is my own preference, so be it. But that's not the way we practice in Chicago. And I haven't run across many litigants who view the deadlines that way. And even if, you know, your interpretation should be followed, Mr. Smith, it doesn't excuse the parties from blowing the deadlines and not notifying the Court.

MR. SMITH: And, your Honor, we --

THE COURT: I'm going to go ahead and suspend today's hearing and I will issue an order setting additional deadlines. Hopefully we can move on. Bye-bye.

(Which were all the proceedings heard.)

18

CERTIFICATE

   I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitations of using a digital-recording system.


*/s/Sandra M. Tennis*                    January 2, 2024

_____        _____
Sandra M. Tennis               Date
Official Court Reporter