**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Austin P. Van (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                                Plaintiffs<br>         v.<br><br>ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI,<br><br>                                Defendants. | Case No.: 1:21-CV-04349<br><br>**CLASS ACTION**<br><br>Hearing Date:<br>Time: _____ A.M.<br>Judge: Honorable Edmond E. Chang<br>Courtroom: 2341 |

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that on _____, 2024 at \_\_\_\_\_.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edmond E. Chang, United States District Judge for the Northern District of Illinois, located at Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, Courtroom 2341 (a) Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds ("Lead Plaintiffs") and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System (together with Lead Plaintiffs, "Plaintiffs") will, and do, move this Court, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(g), for an Order: (1) preliminarily approving the proposed settlement set forth in the Stipulation of Settlement dated May 13, 2024 (the "Stipulation"); (2) certifying a settlement class as provided for in the Stipulation and Agreement of Settlement dated May 13, 2024; (3) appointing Strategic Claims Services ("SCS") as Claims Administrator; (4) approving the proposed form and manner of disseminating notice to the Settlement Class; (5) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for attorneys' fees and expenses; and (6) setting a date for the final approval hearing.

This Motion is based on the following memorandum of points and authorities; the Stipulation and exhibits thereto (filed herewith); the accompanying Proposed Preliminary Approval Order (filed herewith); the Court's file in this action, and any additional evidence or argument that the Court may request.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Dated: May 13, 2024

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................... 6

II.    FACTUAL BACKGROUND ............................................................ 9

III.   PROCEDURAL HISTORY ............................................................. 11

IV.    THE SETTLEMENT ....................................................................... 18

V.     SETTLEMENT WARRANTS PRELIMINARY APPROVAL ....................................... 19

      A.     Plaintiffs And Plaintiffs' Counsel Adequately Represented The Settlement Class ................................................................................... 21

      B.     The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel .............................................................. 22

      C.     The Relief Provided For The Settlement Class Is Adequate ............................... 22

            1.    The Settlement Amount ...................................................... 23

            2.    The Cost, Risk, And Delay Of Trial And Appeal ................................. 26

            3.    Other Rule 23(e)(2)(C) Factors Support Preliminary Approval .............. 28

      D.     All Settlement Class Members Are Treated Equitably ...................................... 29

      E.     The Remaining Factors Are Satisfied .................................................. 31

            1.    The Extent of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved ........................................ 31

            2.    Recommendations Of Experienced Counsel ................................... 31

VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................. 32

VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS .................................................. 34

VIII.  PROPOSED SETTLEMENT SCHEDULE ........................................... 35

IX.    CONCLUSION ................................................................................. 36

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................................32, 34

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v.
    Andreas*, 134 F.3d 873 (7th Cir. 1998) ...................................................................19

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .........................................................34

*City of Melbourne Firefighters' Ret. Sys. v. ATI Phys. Therapy, Inc.*,
    No. 1:21-CV-05345 (N.D. Ill. Filed Oct. 7, 2021) .................................................11

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ..................................................................................31

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ..................................................................................27

*Goldstein v. Fortress Acquisition Sponsor II, LLC*,
    C.A. No. 2023-0582-NAC (Del. Ch.)...............................................................6, 16, 17, 18

*Goldstein v. Fortress Acquisition Sponsor II, LLC*,
    No. 2023-0582-NAC (Del. Ch.) ........................................................................16, 17

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*,
    L.L.P., 212 F.R.D. 400 (E.D. Wis. 2002) .........................................................26, 30

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    2018 WL 6606079 (S.D. Ill. Dec. 16, 2018).........................................................29

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ......................................................................31

*In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*,
    Case No. 1-21-cv-06415 (N.D. Ill) ........................................................................11

*In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*,
    No. 1-21-cv-06415 (N.D. Ill).....................................................................................6

- ii -

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ....................................................................29

*In re Groupon, Inc. Sec. Litig.*,
   2016 WL 3896839 (N.D. Ill. July 13, 2016)......................................................................30

*In re Jefferies Group, Inc. Shareholders Litigation*,
   2015 WL 3540662 (Del. Ch. June 5, 2015) ......................................................................23

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................................26

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998).......................................................................................22

*In re Northfield Labs., Inc. Sec. Litig.*,
   2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ..................................................................21, 35

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................27

*In re PLX Tech. Inc. S'holders Litig.*,
   2022 WL 1133118 (Del. Ch. Apr. 18, 2022) ....................................................................31

*In re Priceline.com, Inc. Sec. Litig.*,
   2007 WL 2115592 (D. Conn. July 20, 2007) ....................................................................34

*In re Warner Communications Sec. Litigation*,
   798 F.2d 35 (2d Cir. 1986).................................................................................................32

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ......................................................................................27

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .............................................................................................19

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) .............................................................................................32

*Knapp v. Art.*
   *com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................26

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   256 F.R.D. 586 (N.D. Ill. 2009).........................................................................................33

*McCue v. MB Fin., Inc.*,
   2015 WL 1020348 (N.D. Ill. Mar. 6, 2015).......................................................................22

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ...................................................................28

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)............................................................................33

*Robinson v. Fortress Acquisition Sponsor II, LLC*,
    C.A. No. 2023-0142-NAC (Del. Ch.).......................................................... *passim*

*Robinson v. Fortress Acquisition Sponsor II, LLC*,
    No. 2023-0142-NAC (Del. Ch.) ..................................................................15, 16

*Roth v. Aon Corp.*,
    238 F.R.D. 603 (N.D. Ill. 2006)....................................................................32, 34

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................................26, 29

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ..........................................................33

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 2570050 (N.D. Ind. May 21, 2020) ...........................................26, 32, 33, 35

*Swinton v. SquareTrade, Inc.*,
    2019 WL 617791 (S.D. Iowa Feb. 14, 2019)...........................................................20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006).........................................................................21

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
    2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ........................................................32

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) .................................................................27

*Weinstein v. RMG Networks Hldgs. Corp.*,
    C.A. No. 2018-0210-AGB (Del. Ch. July 10, 2020) ............................................23

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .....................................................................30, 31

*Zhou v. Faraday Future Intelligent Electric, Inc.*,
    2024 WL 1245341 (C.D. Cal. Mar. 18, 2024)......................................................24

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

**Statutes**

Delaware Code Title 8. Corporations § 220 ...................................................................................8

15 U.S.C. §78 ..............................................................................................................12, 29

Private Securities Litigation Reform Act of 1995 ................................................29, 35

Securities Exchange Act of 1934 ...........................................................................9, 12, 32

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**Other Authorities**

Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904 (Apr. 26, 2018) ............................................................................................................................20

2, Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) ..............................................................................................................................7

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) ...................................................23

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

## I. INTRODUCTION

Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds ("Lead Plaintiffs") [1] and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System (together with Lead Plaintiffs, ("Plaintiffs"), individually and on behalf of all others similarly situated, are pleased to present, for the Court's preliminary approval, a $24.9 million cash settlement resolving all claims in the above-captioned actions (the "Settlement"), as set forth in the Stipulation of Settlement dated May 13, 2024 (the "Stipulation"). For the sake of efficiency and judicial economy, Plaintiffs present this motion together with the plaintiffs in three similar actions ("Multiplan Plaintiffs" in the "Multiplan Actions") that raised claims relating to similar subject matter as part of a global settlement of all four actions. [2] Plaintiffs respectfully request that the Court initiate the approval process by entering an order, substantially in the form filed herewith (the "Preliminary Approval Order"): (1) preliminarily approving the proposed Settlement as set forth in the Stipulation; (2) appointing Strategic Claims Services ("SCS") as Claims Administrator;

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Austin P. Van ("Van Decl."), filed concurrently herewith.

[2] On December 1, 2021, May 10, 2022, and September 22, 2022, respectively, Plaintiffs Hamza Ghaith, Vinay Kumar, and Brendan Reginbald filed stockholder derivative complaints on behalf of ATI, which were subsequently consolidated and styled *In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*, No. 1-21-cv-06415 (N.D. Ill) (the "*Ghaith* Action"). The *Ghaith* Action was subsequently amended to add direct class action claims based on Delaware state law claims, in addition to the derivative claims. On February 7, 2023, Wendell Robinson filed a putative class action complaint, styled *Robinson v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0142-NAC (Del. Ch.) (the "*Robinson* Action"), in the Delaware Court of Chancery. On June 1, 2023, Phillip Goldstein filed a dual putative class action and stockholder derivative complaint, styled *Goldstein v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0582-NAC (Del. Ch.) (the "*Goldstein* Action," and together with the *Ghaith* Action and the *Robinson* Action, the "Multiplan Actions"). The direct class claims asserted in the Multiplan Actions are being resolved together with the claims in the Settlement. The derivative claims in the *Ghaith* and *Goldstein* Actions are subject to a separate settlement, which will be presented to the Court in the *Ghaith* Action. This action and the Multiplan Actions are collectively referenced herein and in the Stipulation of Settlement as the "Actions".

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

(3) approving the proposed form and manner of disseminating notice to the Settlement Class[3]; (4) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for attorneys' fees and expenses; and (5) setting a date for the final approval hearing.

The proposed $24.9 million Settlement is not only fair, reasonable, and adequate, but is also a favorable result for the class. The Securities Subclass total recovery is $18.9 million, which exceeds 6.4% of the theoretically maximum estimated damages and is well above the median recovery of 1.8% in securities class actions settled in 2022, as well as the median recovery of 2.4% in securities class actions with damages of a similar magnitude.[4] The Multiplan Subclass will recover $6 million for claims in the Multiplan Actions. Notably, Class members may be a member of one subclass or the other, or both.

The total recovery of $24.9 million is especially favorable given the precarious financial condition of the Company and the fact that the Settlement amount represents virtually all of the only available source of recovery for investors—namely, the liability insurance policies that covered the conduct at issue in this Action.

---

[3] Subject to certain exclusions, the "Settlement Class" is defined as all persons and entities who (a) purchased or otherwise acquired ATI Securities between February 22, 2021 and October 19, 2021, both dates inclusive, and/or beneficially owned and/or held FVAC common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting to vote on the Business Combination (the "Securities Subclass"); and/or (b) beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date who were entitled to, but did not elect to, redeem their shares (the "Multiplan Subclass"). *See* Stipulation ¶1(jjj).

[4] See Van Decl., Exhibit 2, Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) at 18 (Fig. 19) (median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages); id. at 17 (Fig. 18) (median recovery in securities class actions that settled between December 2011-December 2022 was 2.4% where estimated damages were between $200-399 million).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

The Settlement represents a global resolution of this matter and the Multiplan Actions, and was reached after more than two years of litigation, during which Plaintiffs, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator who, along with counsel, interviewed multiple former ATI employees, and consultation with accounting and finance experts; (ii) drafted and filed complaints in this Court, including the 78-page Consolidated Amended Class Action Complaint for Violation of the Federal Securities laws; (iii) engaged in voluminous briefing related to Defendants' motions to dismiss; (iv) pursued considerable fact discovery, which included serving and responding to party discovery requests; (v) conducted a targeted review of approximately 400,000 pages of documents produced by Defendants, which included the Company's voluminous discovery produced in a related SEC-investigation; (vi) conducted extensive consultations with experts to evaluate potential damages; (vii) drafted detailed mediation statements which included relevant exhibits and addressed both liability and damages; (viii) participated in two formal in-person mediation sessions before former federal judge the Honorable Layn Phillips of PADRE, one of the nation's preeminent securities class action mediators; (ix) engaged in extensive negotiations regarding the terms of the proposed Settlement; and (x) worked with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class members fairly. The Multiplan Plaintiffs undertook similar actions in prosecuting the Multiplan Actions, and additionally analyzed and assessed the Company's books and records after conducting books and records investigations under Delaware Code Title 8. Corporations § 220. The Settlement is, therefore, the result of arm's-length negotiations, conducted by well-informed and experienced counsel, and does not favor Plaintiffs over other Settlement Class Members.

In sum, the proposed Settlement is an excellent result and is in the best interests of the Settlement Class in light of the risks and costs of litigating the Actions through trial and post-trial proceedings. Accordingly, Plaintiffs request preliminary approval so that notice of the proposed Settlement may be disseminated to the Settlement Class.

## II.  FACTUAL BACKGROUND

This is a federal securities class action against ATI Physical Therapy, Inc. ("ATI" or the "Company") f/k/a Fortress Value Acquisition Corp. II ("FVAC"), and the following Individual Defendants: Labeed Diab, Joseph Jordan, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati (the "Defendants," and collectively with Plaintiffs, the "Parties"). ATI is one of the nation's largest providers of outpatient physical therapy services, providing outpatient rehabilitation services and operating nearly 900 physical therapy clinics across 24 states.

In the action, Plaintiffs alleged that ATI and certain of its officers and directors violated Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Delaware law by, among other things, making misstatements and omissions related to ATI's physical-therapist attrition rates. Specifically, Plaintiffs alleged that Defendants made false and misleading statements during the period from February 22, 2021 and October 19, 2021, inclusive (the "Settlement Class Period") repeatedly touting the Company's purportedly high rate of retention of physical therapists, which were essential to ATI's ability to serve its patients and critical to the Company's financial condition and growth. Unbeknownst to investors, however, ATI was in fact suffering from severe attrition among its physical therapists—at a rate of more than twice the industry average—which crippled its ability to meet patient demand.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Additionally, the Multiplan Actions alleged, *inter alia*, that the defendants in their actions breached their fiduciary duties to stockholders by misrepresenting and concealing critical facts necessary for stockholders to make an informed decision as to whether or not to redeem their shares for approximately $10.00 per share on June 11, 2021, and that defendants' actions were subject to entire fairness review under Delaware law.

Investors learned the truth through two corrective disclosures that each shocked the market and caused ATI's stock price to decline significantly. The truth began to emerge before the market opened on July 26, 2021, when ATI reported its second quarter results in the July 26, 2021 Press Release and the July 26, 2021 Form 8-K. Less than two months after ATI went public, the Company finally publicly admitted that it was suffering from severe attrition among its physical therapists, which "prevented" it from meeting patient demand, significantly increased its labor costs and caused ATI to have to materially reduce its revenue, EBITDA and new clinic opening expectations. At the same time, further underscoring the extent of its attrition problems, ATI announced the sudden termination of its Chief Human Resources Officer.

As a result of these disclosures on July 26, 2021, the price of ATI stock declined 43.41%, from $8.34 per share to $4.72 per share, on unusually heavy trading volume. The next day, on July 27, 2021, the price of ATI's share price declined by 19.07%, and closed at $3.82 per share. Over these two trading days, the Company's share price fell by a staggering 62.48%, or $4.52 per share. Collectively, in less than two trading days, these disclosures wiped out hundreds of millions of dollars' worth of shareholder value.

Then, on October 19, 2021, after its Chief Executive Officer (Defendant Diab) was also terminated, ATI released in a press release its preliminary third quarter results and revealed that it had to further revise its revenue and EBITDA expectations downward because its attrition

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

problems had materially impacted its patient visit volumes. Again, ATI's stock price fell precipitously.

As a result of these post-market day disclosures on October 19, 2021, the price of ATI stock declined by 21.64% on the next trading day, October 20, 2021, from $3.65 per share to $2.86 per share, on unusually heavy trading volume.

## III.     PROCEDURAL HISTORY

### (a) <u>The Securities Action</u>

On August 16, 2021, Kevin Burbige and Ziyang Nie commenced an action in the U.S. District Court for the Northern District of Illinois. ECF No. 1. A related action captioned *City of Melbourne Firefighters' Ret. Sys. v. ATI Phys. Therapy, Inc.*, No. 1:21-CV-05345 (N.D. Ill. Filed Oct. 7, 2021) filed by named plaintiff, City of Melbourne Firefighters' Retirement System ("Melbourne Firefighters") was consolidated by the Court's Order dated October 20, 2021. ECF No. 32. On November 18, 2021, the Court appointed Phoenix Insurance Company Ltd. and the Phoenix Pension & Provident Funds as Lead Plaintiffs for the putative class, and Pomerantz LLP as Lead Counsel for the putative class. ECF No. 40.

On December 1, 2021, May 10, 2022, and September 22, 2022, respectively, Plaintiffs Hamza Ghaith, Vinay Kumar, and Brendan Reginbald filed stockholder derivative complaints on behalf of ATI, which were subsequently consolidated and styled *In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*, Case No. 1-21-cv-06415 (N.D. Ill) (the "*Ghaith* Action"). Stipulation ¶ (G). On November 21, 2022, Plaintiffs Kumar, Nie, Chang, and Reginbald (collectively, the "*Ghaith* Plaintiffs") filed a consolidated amended stockholder derivative complaint against Nominal Defendant ATI and Defendants Fortress Investment Group LLC, Fortress Acquisition Sponsor II LLC, Labeed Diab, Joseph Jordan, John L. Larsen, John Maldonado, Carmine Petrone,

Joanne M. Burns, Christopher Krubert, James E. Parisi, Andrew A.Policy, Rakefet Russak-Aminoach, and Sunil Gulati (collectively, the "*Ghaith* Defendants") in this Court, asserting claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, contribution, indemnification, and violations of Section 14(a) of the Exchange Act. *Id*.

On February 8, 2022, Lead Plaintiffs, together with Consolidated Plaintiff Melbourne Firefighters, filed the operative complaint (the "Complaint") in this Court. ECF No. 58. The Complaint asserted claims against Defendants under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rules 10b-5 and 14a-9 promulgated thereunder. The Complaint alleged, among other things, that during the Settlement Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about ATI, one of the nation's largest providers of outpatient physical therapy services, and the Company's business, operations, and prospects. Specifically, the Complaint alleged that Defendants failed to disclose to investors: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; (4) that, as a result of the labor shortage, the Company would open fewer new clinics; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. The Complaint further alleged that, as a result of Defendants' misrepresentations, Plaintiffs acquired ATI Securities at artificially inflated prices during the Settlement Class Period, beneficially owned and/or held shares of FVAC Class A common stock as of May 24, 2021, the Record Date for

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

shareholders to be eligible to vote on the Business Combination, and suffered damages when the truth regarding the alleged misrepresentations was revealed.

On April 11, 2022, the Defendants filed two motions to dismiss the Complaint in its entirety. One motion was filed by ATI as well as Labeed Diab, the former CEO of ATI, and Joseph Jordan, the former CFO of ATI, (together, the "ATI Defendants"). ECF No. 68. The other motion was filed by Andrew McKnight, the former CEO of FVAC, and seven former directors of FVAC (together, the "FVAC Defendants"). ECF No. 71. By Order dated September 6, 2023, the Court denied almost all of Defendants' motions to dismiss; permitting all of Plaintiffs' claims to proceed and not dismissing any Defendant but granting dismissal only with respect to certain statements or claims as pleaded against certain Individual Defendants.

The Securities Plaintiffs actively pursued fact discovery from Defendants. The Parties negotiated an agreed confidentiality order and a protocol to govern the production of electronically stored information and other documents. Discovery commenced, and the Parties exchanged document requests and interrogatories and began producing documents on a rolling basis. Thereafter, the Parties engaged in meet and confer conferences over the span of several months. Lead Counsel obtained more than 83,000 documents (approximately 400,000 pages) from Defendants, which were reviewed using searches and analyzed. Plaintiffs also responded to document requests and interrogatories served by Defendants.

During discovery, the parties to the Securities Action agreed to engage in an in-person mediation session on December 18, 2023 under the supervision of former district judge Layn Phillips, one of the nation's preeminent securities neutrals. In advance of the mediation, the parties exchanged detailed mediation statements. During the in-person mediation session, the parties engaged in vigorous negotiations, but did not reach a resolution at that time. Following additional

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

arm's length negotiations, Judge Phillips issued a mediator's recommendation to resolve the Securities Action for a total of $18.9 million, which the parties accepted on a double-blind basis. On January 19, 2024, the Securities Parties reached a tentative agreement in principle to settle the Securities Action. *Id.*

On January 22, 2024, the Securities Parties informed the Court that they had reached an agreement in principle to settle the Securities Action and requested a stay of all deadlines and proceedings, including all discovery deadlines, for fifty (50) days to allow the Parties to formalize the settlement agreement and to seek preliminary and final approval of the settlement. ECF No. 141. That same day, the Honorable Young B. Kim, who had been appointed by the Court to supervise discovery, granted the motion to stay discovery and ordered the Securities Parties to "file a joint status report by February 9, 2024, updating the court on the settlement documents." ECF No. 142.

Following the January 19, 2024 settlement agreement in principle, Defendants engaged in settlement discussions, including during additional mediation sessions supervised by the Mediator, with the plaintiffs in the Multiplan Actions. Stipulation ¶ (N).

On February 9, 2024, the Securities Parties submitted a joint status report updating the Court of their continued efforts to file with the Court a written settlement agreement, along with a motion for preliminary approval of the settlement, by March 12, 2024. ECF No. 144. On February 10, 2024, Judge Kim issued a docket entry requiring the Securities Parties to submit another status report by February 19, 2024, "with more specificity on the status of the settlement documents." ECF No. 145.

On February 19, 2024, the Securities Parties submitted a status report in accordance with the Court's February 10 Order, informing the Court that "[t]he negotiation of certain terms and

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

conditions of the settlement in principle are ongoing" and that the Securities Parties are actively engaged to finalize the settlement documentation to submit for the Court's consideration by March 12, 2024. ECF No. 146.

In light of the Parties' active negotiations, on February 20, 2024, the Court entered a docket entry that the discovery stay will be lifted "unless the parties file their motion for preliminary approval of class settlement by March 19, 2024." ECF No. 147.

**(b) The Multiplan Actions**

On January 20, 2023, the Ghaith Defendants moved to dismiss the consolidated amended stockholder derivative complaint. Stipulation ¶ (G). Instead of opposing the *Ghaith* Defendants' motions, on March 3, 2023, the Ghaith Plaintiffs filed a motion for leave to file a consolidated second amended stockholder direct and derivative complaint, which the Court granted on March 31, 2024. *Id.* On April 2, 2024, the *Ghaith* Plaintiffs filed their consolidated second amended stockholder direct and derivative complaint, which, in addition to the derivative claims described above, asserted direct claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment. *Id.*

On February 7, 2023, Wendell Robinson filed a putative class action complaint, styled *Robinson v. Fortress Acquisition Sponsor II, LLC*, No. 2023-0142-NAC (Del. Ch.) (the "*Robinson* Action"), in the Delaware Court of Chancery, against Defendants Fortress Acquisition Sponsor II, LLC, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Daniel N. Bass, Micah B. Kaplan, and Labeed Diab (collectively, the "*Robinson* Defendants"). Stipulation ¶ (H). The complaint in the Robinson Action asserts direct claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, on behalf of similarly situated record and beneficial FVAC Class A

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

common stockholders who were entitled to, but did not, redeem their FVAC shares prior to the Business Combination. *Id.*

On April 28, 2023, the *Robinson* Defendants filed motions to dismiss the *Robinson* Action, which remain pending. Stipulation ¶ (I). On June 1, 2023, Phillip Goldstein filed a dual putative class action and stockholder derivative complaint, styled *Goldstein v. Fortress Acquisition Sponsor II, LLC*, No. 2023-0582-NAC (Del. Ch.) (the "*Goldstein* Action," and together with the Ghaith Action and the Robinson Action, the "Multiplan Actions"), in the Delaware Court of Chancery, against Defendants Labeed Diab, Joseph Jordan, Cedric Coco, Ray Wahl, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher Krubert, James E. Parisi, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati (collectively, with Fortress Acquisition Sponsor II, LLC, Daniel Bass, and Micah Kaplan, the "Goldstein Defendants"). Stipulation ¶ (K).

On August 8, 2023, Plaintiff Goldstein filed an amended complaint, adding Fortress Acquisition Sponsor II, LLC, Daniel Bass, and Micah Kaplan as defendants, and asserting direct claims for tortious interference, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on behalf of stockholders who were entitled to, but did not, redeem their shares of FVAC Class A common stock prior to the Business Combination, as well as derivative claims for fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on behalf of ATI. Stipulation ¶ (K). As indicated above, on October 6, 2023, the court granted a motion to stay the Goldstein Action pending resolution of the Robinson motions to dismiss. *Id.*

On August 16, 2023, Robinson and Goldstein filed a motion for consolidation of the *Robinson* Action and the *Goldstein* Action, and for the appointment of lead plaintiff and counsel. On October 6, 2023, the Delaware Chancery Court (i) denied the motion for consolidation (without

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

prejudice to renewing the motion post-decision on the motions to dismiss in the Robinson Action), and (ii) granted the motion to stay the *Goldstein* Action (pending the same decision). *Id*.

On December 1, 2023, the Chancery Court heard argument on the motions to dismiss the *Robinson* complaint. *Id*. On April 25, 2024, the parties in the *Robinson* Action advised the court that the parties had reached a tentative settlement of the Actions. *Id*. No decision on the *Robinson* Defendants' motions to dismiss had been rendered at the time that the parties advised the court of the tentative settlement. *Id*. The Chancery Court subsequently advised the parties that it was holding the *Robinson* Defendants' motions to dismiss in abeyance pending this Court's consideration of the Settlement.

On March 7, 2024, the Parties, including the Securities Action plaintiffs, participated in a second in-person mediation session with Judge Phillips. Stipulation ¶ (R). Defendants continued to negotiate a "global" resolution of the Securities Action and the Multiplan Actions. *Id*. On March 19, 2024, the Securities Parties requested an additional three weeks, through and including April 9, 2024, for the submission of formal settlement documentation. ECF No. 149. The Court granted that request. ECF No. 150. On April 9, 2024, the Securities Defendants moved for an extension of time through and including April 19, 2024 to file a motion for preliminary approval of the Settlement (ECF No. 152), which the Court granted the next day. ECF No. 154. The parties to the Multiplan Actions were not able to conclude negotiations by April 19, 2024, and the Securities Parties were not able to finalize the settlement documentation by April 19. On April 20, 2024, Magistrate Judge Kim reinstated the discovery deadlines in the Securities Action. *Id*.

On April 22, 2024, the Parties reached settlement agreements in principle to resolve all Actions, including an agreement in principle to resolve the putative class (direct) claims asserted

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

in the Multiplan Actions, as well as an agreement in principle to resolve the derivative claims asserted in the *Ghaith* Action and the *Goldstein* Action. Stipulation ¶ (S).

On April 25, 2024, the parties filed a letter advising the Chancery Court that the parties had reached an agreement in principle to settle the *Robinson* and *Goldstein* Actions and related matters.

The memorandum of Understanding was formalized in the Stipulation that was executed on May 13, 2024.

## IV. THE SETTLEMENT

Under the terms of the Settlement, Defendants will cause $24.9 million (the "Settlement Amount") to be paid into an escrow account maintained by Huntington National Bank. Of the total Settlement Amount, $18.9 million of the Settlement was negotiated by Lead Counsel in the Securities Action and is allocated to the Securities Subclass, and $6 million was negotiated by plaintiffs' counsel in the Multiplan Actions and is allocated to the Multiplan Subclass. Plaintiffs' Counsel believe that this immediate cash recovery provides a substantial benefit to the Settlement Class.[5] Further, to save costs, Plaintiffs propose to disseminate a single notice to both subclasses, as they overlap. The proposed Notice of Proposed Class Action Settlement (the "Notice") informs Settlement Class Members of the Settlement terms and affords an opportunity to request exclusion from the Settlement Class or to object to the Settlement, Plan of Allocation, and/or request for attorneys' fees and expenses. The Notice will be mailed to the address of each Settlement Class Member (as identified in ATI's transfer records), as well as to institutional investors and banks and brokerage firms that usually maintain custodial accounts. The Summary Notice of Proposed

---

[5] In exchange for the Settlement Amount, Settlement Class Members will release the "Released Plaintiffs' Claims." *See* Stipulation at ¶¶ 4-7 (release) and 1(yy) (defining "Released Plaintiffs' Claims").

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Class Action Settlement (the "Summary Notice") will be published on a national business newswire. A copy of the Notice, Summary Notice, Claim Form and Release Form ("Claim Form"), and Stipulation will also be posted on a website maintained by the Settlement Administrator.

## V.     SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires court approval for any settlement of a class action, and courts within this Circuit recognize that public policy strongly favors settlements, especially in complex class actions. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "District court review of a class action settlement proposal is a two-step process." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *Id*. "If the district court finds a settlement proposal within the range of possible approval, it then proceeds to the second step in the review process, the fairness hearing." *Id*. "Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard." *Id*.

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." With respect to Rule 23(e)(2)— which governs final approval—courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)     have the class representatives and class counsel adequately represented the class;

(B)     was the proposal negotiated at arm's-length;

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

(C)      is the relief provided for the class adequate, taking into account:

      (i)      the costs, risks, and delay of trial and appeal;

      (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)      the terms of any proposed award of attorneys' fees, including timing of payment; and

      (iv)      any agreement required to be identified under Rule 23(e)(3); and

(D)      does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904 at 919).

These factors are not exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918; *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional factors that are utilized by courts in the Seventh Circuit to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> In order to evaluate the fairness of a settlement, a district court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the

- 20 -
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918). As discussed below, the proposed Settlement meets the aforementioned requirements and warrants preliminary approval.

### A. Plaintiffs And Plaintiffs' Counsel Adequately Represented The Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, there can be no dispute that Plaintiffs and Plaintiffs' Counsel adequately represented the Settlement Class.

First, Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class. Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the interests of other Settlement Class Members. *See In re Northfield Labs., Inc. Sec. Litig.*, 2012 WL 366852, at *3 (N.D. Ill. Jan. 31, 2012) (finding adequacy where lead plaintiffs and class members shared the same interest—obtaining the maximum amount of recovery). In addition, Plaintiffs directly contributed to the Action by overseeing the litigation, communicating regularly with counsel, responding to discovery propounded by Defendants, and participating in settlement discussions.

Second, Plaintiffs in the Securities Action and in the Multiplan Actions respectively retained counsel that are highly experienced in securities litigation, and who have a long successful track record of representing investors in such cases. *See* ECF No. 25 (Pomerantz firm resume); ECF No. 30 (BLBG firm resume); Van Decl. Exhibit 4 (Levi & Korsinsky, LLP firm resume);.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs' Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Section III, *supra*) (detailing counsel's extensive investigation into the Company, books and records investigation, briefing on motion to dismiss, discovery efforts, and hard-fought mediation efforts). Accordingly, this factor supports preliminary approval. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### B. The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length." The Settlement was negotiated by counsel with extensive experience in litigation, who were well versed in the strengths and weaknesses of their respective positions, under the auspices of an experienced mediator who ultimately made a mediator's recommendation that the Parties accepted. *See McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1, *2 (N.D. Ill. Mar. 6, 2015) (preliminarily approving settlement and finding that settlement was the "result of extensive, arms'-length negotiations by [well-versed] counsel[,]" with the assistance of an experienced mediator, "reinforc[ing] the non-collusive nature of the settlement").

### C. The Relief Provided For The Settlement Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### 1.    The Settlement Amount

The $24,900,000 all cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.  Securities Lead Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed at both summary judgment and after a jury trial, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation—*i.e.*, Plaintiffs' ***best-case scenario*** for the Securities Subclass—the total ***maximum*** theoretical damages that could conceivably be achieved would be approximately $293 million for purchasers of ATI Securities and holders of FVAC Common Stock.  Thus, the $18.9 million Settlement Amount represents approximately 6.4% of the total ***maximum*** damages ***potentially*** available to the Securities Subclass.  A recovery exceeding 5% is well above the median recovery in securities class action settlements.[6]

The Multiplan Subclass will recover $6 million in settlement of the direct claims in the Multiplan Actions. *Cf. Weinstein v. RMG Networks Hldgs. Corp*., C.A. No. 2018-0210-AGB (Del. Ch. July 10, 2020) (Delaware Court of Chancery approved $1.5 million settlement that would be divided among two subclasses). Absent the Settlement, the Multiplan Subclass faced possible dismissal pursuant to the *Robinson* Defendants' motions to dismiss. Notably "if the business judgment rule had applied in the case, Plaintiffs presumably would have received no recovery had they gone to trial, in which case the benefit here would be remarkable." *In re Jefferies Group, Inc. Shareholders Litigation*, 2015 WL 3540662, at *3 (Del. Ch. June 5, 2015). The Multiplan Subclass

---

[6] *See* Van Decl., Exhibit 3 (excerpt from Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at p. 24 (Fig. 22)) (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages); *see also id.* at 23 (Fig. 21) (median recovery was 2.8% for securities class actions with estimated damages between $100-$199 million that settled between December 2012-December 2021).

also risked having its claims released without any monetary recovery allocated to it specifically. *See Zhou v. Faraday Future Intelligent Electric, Inc.,* 2024 WL 1245341 (C.D. Cal. Mar. 18, 2024).

Moreover, Defendants raised a number of credible arguments concerning, among other things, falsity, scienter, loss causation and damages that—if accepted—would have substantially reduced, or completely eliminated, recoverable damages. For example, Defendants argued that Plaintiffs failed to plead any actionable misrepresentations because Plaintiffs would be unable to prove that ATI was required to disclose that it was experiencing actual problems with attrition and retention of physical therapists prior to the Business Combination. Defendants also argued that their statements concerning attrition were not materially misleading since any minor physical therapist attrition in random markets was not then viewed as anything more than short term, resulting from the lingering effects of the COVID-19 pandemic and the ensuing challenges faced by a patient services (and largely in-person) industry and the labor market generally. Relatedly, Defendants claimed that ATI was confident that the targeted action plans the Company deployed to address the attrition problem would prevent the development of more widespread attrition that might affect the Company's bottom line, including the ability to meet forward-looking guidance for fiscal year 2021. Thus, Defendants argued, ATI did not believe that any localized attrition or staffing challenges rendered the retention statements or state-of-clinic statements that ATI "continues to match its clinical staffing levels accordingly" and was "on track" to meet its 2021 target for new clinics materially false or misleading, nor was there any known attrition trend that ATI should (or could) have disclosed.

Defendants also challenged scienter, arguing that the "trends" and conditions that they allegedly omitted did not exist until after the Complaint's alleged misrepresentations were made.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Lastly, Defendants challenged whether the October 19, 2021 Press Release was in fact a corrective disclosure since Defendants claimed it said nothing about attrition and, thus, provided no causal connection between that disclosure and the alleged loss. If Defendants had prevailed on any or all of these issues, damages would have been significantly reduced, if not eliminated. Likewise, this Action asserts a class period between February 22, 2021 and October 19, 2021. If Defendants' renewed challenges to the October 19, 2021 statements were successful, total damages would fall significantly.

Finally, even if Plaintiffs were to succeed on the merits of their claims, the reality is that they would have had little hope of financial recovery given ATI's precarious financial condition. Indeed, as recently as November 6, 2023, ATI disclosed that its limited liquidity, including less than $20 million in available cash and equivalents, poses a threat to its ability to remain a going concern. Accordingly, ATI has repeatedly warned investors of the very real risk of bankruptcy should it fail to secure additional financing or successfully pursue other liquidity pathways. Only compounding the problem is that ATI has indemnification obligations to the FVAC Defendants arising out of the Business Combination that apply to this (and all related) litigation. Nor is there significant insurance coverage here, as Defendants assert that the available coverage is very limited. .Facing the Actions in two different courts and at least three different cases, continued litigation would thus serve only to deplete the limited insurance proceeds potentially available— what ultimately may be the only potential source for recovery. While Plaintiffs were confident that they would be able to overcome Defendants' arguments, success was not guaranteed and a loss would have had significant negative consequences, including the potential for obtaining zero recovery for investors.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

In light of the aforementioned risks, the Settlement Amount is well within the range of reasonableness, weighing in favor of preliminary approval. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 2570050, at *4 (N.D. Ind. May 21, 2020) ("Any hiccup or win for Defendants along the way would have reduced that total possible amount of recovery.").

### 2. The Cost, Risk, And Delay Of Trial And Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "balance[s] the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 585-86 (N.D. Ill. 2011).

Here, continued litigation would have been costly, risky, and protracted. Indeed, even though Plaintiffs in the Securities Action had surmounted the PSLRA's heightened pleading standard and automatic stay of discovery, major hurdles—such as class certification, summary judgment, trial, and the inevitable appeals remained. Success was not, of course, a forgone conclusion. For example, although Plaintiffs believed a motion for class certification would have been meritorious, Defendants would have most likely opposed the motion. Failure to obtain class certification would have eliminated any potential benefit to the Settlement Class. Even assuming class certification was achieved, the Court could have revisited certification at any time— presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval

of the Settlement"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Moreover, Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are by their very nature, expensive, risky, and uncertain. *See, e.g., In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims").

In addition, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation).

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that Plaintiffs would have obtained a judgment greater than the $24.9 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery— or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.").

Moreover, the significant risks posed by ATI's precarious financial position discussed above would have been exacerbated by the substantial delays resulting from continued litigation, as there was a real risk that the Company's ability to pay a substantial judgment would continue

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

to steeply decline.  By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### 3.    Other Rule 23(e)(2)(C) Factors Support Preliminary Approval

Under Rule 23(e)(2)(C), courts also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  These factors generally support—and certainly do not weigh against—approval of the Settlement.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for accomplishing both tasks. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their pro rata share of the Net Settlement Fund (per the plan of allocation), after Court approval.  Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7]  *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co*., 315 F.R.D. 226, 233-34 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

---

[7] This is not a claims-made settlement.  *See* Stipulation ¶ 14.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Second*, as disclosed in the Notice, Plaintiffs' Counsel, will be applying for a percentage of the common fund fee award in an amount not to exceed 25% to compensate them for the services rendered on behalf of the Settlement Class. Attorneys' fees of up to 25% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) are reasonable in light of the work performed and the results obtained.[8]  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶ 17.

*Third*, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement pursuant to which ATI may terminate the Settlement if Settlement Class Members having a certain number of shares that calculate to a Recognized Loss Amount under the Plan of Allocation exclude themselves from the Settlement Class. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.[9]

### D. All Settlement Class Members Are Treated Equitably

The Settlement does not provide preferential treatment to Plaintiffs or any other segment of the Settlement Class.[10] Instead, it provides for two sources of class recoveries for the two sets of claims that were being prosecuted in the Actions.

The proposed Plan of Allocation for the Securities Subclass, which was developed by Lead Plaintiffs' damages expert in consultation with Lead Counsel, is set forth in the Notice and

---

[8] *See, e.g.*, *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation.").

[9] *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

[10] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. § 78u-4(a).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

provides a fair and reasonable method to allocate the Net Securities Settlement Fund among Securities Subclass Members who submit valid Claim Forms. *See* Ex. 1 at A-1 (Notice) at ¶¶ 58-85. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss Amount for each Authorized Claimant's purchases and/or sales of ATI Securities and/or FVAC Common Stock during the Settlement Class Period for which adequate documentation is provided. *Id*. The calculation of each Settlement Class Member's Recognized Loss Amount under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the ATI Securities and/or FVAC Common Stock was purchased and sold, the purchase and sale price, and the estimated artificial inflation in the price of the common stock at the time of purchase and sale. A "Recognized Claim" under the Plan of Allocation shall be the sum of an Authorized Claimant's Recognized Loss Amounts for all shares of his, her or its ATI Securities and/or FVAC Common Stock, and the Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims. Similar plans have repeatedly been approved by courts in this District.[11]

As to the Multiplan Subclass, the Plan of Allocation provides that the Multiplan Subclass Fund will be allocated on a *pro rata* per share basis among Authorized Claimants who beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date who were entitled to but did not redeem such shares. Each share of FVAC Class A Common Stock that was held by an Authorized Claimant as of June 11, 2021 will be a Multiplan Eligible Share. Each Authorized Claimant will be eligible to receive a *pro rata* payment from the Multiplan Subclass

---

[11] *See e.g.*, *Great Neck*, 212 F.R.D. at 410 ("The plan is similar to those utilized in other securities class action cases and provides an equitable basis for distributing the fund to eligible class members."); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 865 (7th Cir. 2014) (similar); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3 (N.D. Ill. July 13, 2016) (similar).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Fund equal to the product of (i) the number of Multiplan Eligible Shares held by the Authorized Claimant; and (ii) the "Per-Share Recovery" for the Multiplan Subclass Fund, which will be determined by dividing the total amount of the Multiplan Subclass Fund by the total number of Multiplan Eligible Shares held by all Authorized Claimants. This is a standard method of allocation, which is routinely applied and approved in the Delaware Chancery Court for settlement of similar claims. *See, e.g.*, *In re PLX Tech. Inc. S'holders Litig.*, 2022 WL 1133118, at \*5-6 (Del. Ch. Apr. 18, 2022).

### E. The Remaining Factors Are Satisfied

#### 1. The Extent of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved

The relevant inquiry here is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). As detailed in Section III, *supra*, the Parties were well aware of the strengths and weaknesses of the case at the time they negotiated the Settlement.

#### 2. Recommendations Of Experienced Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *see also Accretive*, 773 F.3d at 864 (counsel accepting mediator's proposal were highly experienced and weighed in favor of affirming district court's approval of securities settlement). Consequently, Plaintiffs' Counsel's belief in the fairness and reasonableness of the Settlement supports preliminary approval.

- 31 -

## VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Class actions may be certified for the purpose of settlement as long as the class meets the certification requirements under Rule 23. Rule 23(a) establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy of representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Such is the case here. *See, e.g., In re Warner Communications Sec. Litigation*, 798 F.2d 35 (2d Cir. 1986) (upholding class action settlement involving Delaware fiduciary duty action and federal securities action).

**Numerosity** "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004); *see also Zimmer Biomet*, 2020 WL 2570050, at *3 (N.D. Ind. May 21, 2020) ("[N]umerosity is practically a foregone conclusion in a large securities class action like this."). Here, ATI Securities and/or FVAC Common Stock was actively traded on NYSE and millions of shares were traded during the Settlement Class Period. Thus, the Settlement Class is likely so large that joinder of all class members is impractical.

**Common Questions:** Securities cases like this one easily meet the commonality requirement. This element of the inquiry is satisfied by showing "a common nucleus of operative fact," which is found where "the defendants have engaged in standardized conduct towards members of the proposed class[.]" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quotations and citation omitted). Here, common questions of law and fact relating to Plaintiffs' Exchange Act claims, include, *inter alia*, whether: (1) Defendants' representations to the investing public during the Settlement Class Period were "materially misleading"; (2) Defendants acted with scienter; and (3) the price of ATI Securities and/or FVAC Common Stock was artificially inflated by Defendants' conduct. *Roth v. Aon Corp.*, 238 F.R.D. 603, 608 (N.D. Ill. 2006).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

**Typicality:**  Typicality is established where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Makor Issues & Rights, Ltd. v. Tellabs, Inc*., 256 F.R.D. 586, 598 (N.D. Ill. 2009) (quotations and citation omitted).  Plaintiffs' claims are typical of the Settlement Class because their claims are based on the same alleged misrepresentations and omissions.  Thus, any Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events.

**Adequacy:**  As explained in Section V.A., supra, Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class.  Indeed, there are no conflicts between Plaintiffs and the Settlement Class Members, and Plaintiffs have demonstrated their willingness to "vigorously pursue the litigation" through qualified counsel during the more than two years that they prosecuted this case until settlement. *Zimmer Biomet*, 2020 WL 2570050, at *3.[12]

**Common Questions Predominate:**  Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015).  Here, the existence of common questions predominates over individual issues

---

[12] Attached to the Van Decl. as Exhibit 5 is a true and correct copy of an order issued in April 2021 in an unrelated action where BLB&G served as lead counsel for a different lead plaintiff and as class counsel for a certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021). As reflected in the order, counsel for another lead plaintiff movant (that was not appointed) raised questions about BLB&G's hiring of a former employee of the lead plaintiff in that case. Following discovery and extensive briefing, the court found that the evidence did not establish any *quid pro quo*, and allowed BLB&G to continue as class counsel. *See id.* at *1-2. The *Symantec* action was subsequently resolved with a $70 million settlement for the benefit of the class, and the settlement was approved by the court. The court nevertheless ordered BLB&G to bring the order to the attention of any court in which BLB&G seeks appointment as class counsel. *See id.* at *2. Accordingly, because BLB&G seeks appointment here as counsel for Class Representative City of Melbourne Firefighters' Retirement System, BLB&G is bringing the Order to the Court's attention.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

because if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. *See Amchem*, 521 U.S. at 625 (predominance is "readily met" in securities fraud cases).

**Class Action Is Superior:** "[A] class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). "[C]lass actions are often the most fair and practical vehicle for plaintiffs' claims in securities fraud suits because those who have been injured are in a poor position to seek legal redress . . . . [B]ecause individual claims might be small in monetary value, they might not be prosecuted on an individual basis due to the costs of litigation." *Roth*, 238 F.R.D. at 608. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VII. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Stipulation, together the "Notice Packet") to all Settlement Class Members who can be identified with reasonable effort, including through records maintained by ATI, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities.[13] The Notice advises Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Plaintiffs'

---

[13] Plaintiffs request that the Court approve SCS as Claims Administrator. SCS has successfully administered numerous complex securities class action settlements. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (SCS served as claims administrator in $250 million securities class action settlement); *In re Priceline.com, Inc. Sec. Litig.*, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (SCS served as claims administrator for $80 million settlement).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Counsel's application for attorneys' fees and Litigation Expenses.  The Notice also provides specifics on the date, time and place of the Settlement Hearing, and sets forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and Litigation Expenses, and the procedure for requesting exclusion from the Settlement Class.  In addition to the mailing of the Notice Packet, the Summary Notice will be published in Investor's Business Daily and transmitted over the PR Newswire.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.  *See, e.g., In re Northfield Labs*., 2012 WL 366852; *Zimmer Biomet*, 2020 WL 2570050, at *5 (approving virtually identical notice program).  Accordingly, the notice plan should be approved.

## VIII.    PROPOSED SETTLEMENT SCHEDULE

Plaintiffs propose the following procedural schedule.  The schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement.

| | |
|---|---|
| Deadline for mailing Notice, publication of Summary Notice, and posting of Notice and Stipulation on Settlement website ("Notice Date") | Twenty (20) calendar days after entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of final Settlement approval and Fee and Expense Award | Thirty-five (35) calendar days before the Settlement Hearing |
| Objection Deadline | Twenty-one (21) calendar days before the Settlement Hearing |
| Opt-Out Deadline | Twenty-one (21) calendar days before the Settlement Hearing |
| Deadline for Plaintiffs to file reply papers in support of Settlement and Fee and Expense Award and in response to any objections | Seven (7) calendar days before the Settlement Hearing |
| Deadline to submit Proofs of Claim | 120 days after the Notice Date |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

| Settlement Hearing | _____, 2024 |

## IX. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and enter a Preliminary Approval Order substantially in the form submitted with this motion.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

Dated:  May 13, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Austin P. Van*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
Jeremy P. Robinson
Jasmine Cooper-Little
1251 Avenue of the Americas
New York, New York   10020
Telephone:  (212) 554 1400
Facsimile:  (212) 554 1444
jeremy@blbglaw.com
jasmine.cooper-little@blbglaw.com

*Counsel for Consolidated Plaintiff City of
Melbourne Firefighters' Retirement System*

**KLAUSNER, KAUFMAN, JENSEN &
LEVINSON**
Robert D. Klausner
Bonni S. Jensen
7080 Northwest Fourth Street
Plantation, Florida   33315
Telephone: (954) 916-1202
Facsimile:  (954) 916 1232
bob@robertdklausner.com
bonni@robertdklausner.com

*Additional Counsel for Consolidated
Plaintiff City of Melbourne Firefighters'
Retirement System*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT