**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Austin P. Van (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-CV-04349 |
| Plaintiffs, | |
| v. | |
| ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, | |
| Defendants. | |

STIPULATION AND AGREEMENT OF SETTLEMENT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| *In re ATI Physical Therapy, Inc.*<br>*Shareholder Derivative Litigation* | Case No. 1:21-CV-06415 |

STIPULATION AND AGREEMENT OF SETTLEMENT

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| WENDELL ROBINSON,<br><br>                    Plaintiff,<br><br>    v.<br><br>FORTRESS ACQUISITION SPONSOR II, LLC, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, SUNIL GULATI, DANIEL N. BASS, MICAH B. KAPLAN, and LABEED DIAB,<br><br>                    Defendants. | Case No. 2023-0142-NAC |

STIPULATION AND AGREEMENT OF SETTLEMENT

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| PHILLIP GOLDSTEIN, | Case No. 2023-0582-NAC |
| Plaintiff, | |
| v. | |
| FORTRESS ACQUISITION SPONSOR II, LLC, LABEED DIAB, JOSEPH JORDAN, CEDRIC COCO, RAY WAHL, JOHN L. LARSEN, JOHN MALDONADO, CARMINE PETRONE, JOANNE M. BURNS, CHRISTOPHER KRUBERT, JAMES E. PARISI, JOSHUA A. PACK, ANDREW A. MCKNIGHT, MARC FURSTEIN, AARON F. HOOD, CARMEN A. POLICY, SUNIL GULATI, LESLEE COWEN, RAKEFET RUSSAK-AMINOACH, DANIEL BASS, and MICAH KAPLAN, | |
| Defendants, | |
| and | |
| ATI PHYSICAL THERAPY, INC., | |
| Nominal Defendant. | |

STIPULATION AND AGREEMENT OF SETTLEMENT

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of May 13, 2024 (the "Stipulation"), which embodies the terms and conditions of the settlement of the putative class (direct) claims in the above-captioned actions (collectively, the "Actions"), is entered into between (a) Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds ("Lead Plaintiffs"), and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System (together with Lead Plaintiffs, the "Securities Plaintiffs"); (b) Plaintiffs Vinay Kumar, Ziyang Nie, Julia Chang, and Brendan Reginbald (collectively, the "*Ghaith* Plaintiffs"); (c) Plaintiff Wendell Robinson; (d) Plaintiff Phillip Goldstein (together with the Securities Plaintiffs, the *Ghaith* Plaintiffs, and Plaintiff Wendell Robinson, "Plaintiffs"), on behalf of themselves and the Settlement Class (defined below); and (e) Defendants ATI Physical Therapy, Inc. ("ATI" or the "Company")[1] f/k/a Fortress Value Acquisition Corp. II ("FVAC"), Labeed Diab, Joseph Jordan, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher Krubert, James E. Parisi, Micah B. Kaplan, Cedric Coco, Ray Wahl, Daniel N. Bass, Fortress Acquisition Sponsor II LLC, and Fortress Investment Group LLC (collectively, "Defendants," and together with Plaintiffs, the "Parties").[2] Subject to the approval of the Court and the terms and conditions expressly provided herein, without any admission or concessions as to the merits of any of the Parties' claims or defenses, this Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice the Actions and all putative class (direct) claims asserted therein or that could have been asserted therein.

---

[1] "ATI" or the "Company" also refers to Wilco Holdco, Inc., the private company predecessor to the current, publicly-traded ATI business following the consummation of a "de-SPAC" business combination between Wilco Holdco, Inc. and Fortress Value Acquisition Corp. II, consummated on June 17, 2021 (the "Business Combination").

[2] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein.

Whereas:

**Overview Of The Securities Action**

A.      On August 16, 2021, Kevin Burbige and Ziyang Nie commenced an action in the U.S. District Court for the Northern District of Illinois, styled *Burbige, et al. v. ATI Physical Therapy, Inc. f/k/a Fortress Value Acquisition Corp. II, et al.*, No. 1:21-cv-04349, against Defendants ATI, Labeed Diab, Joseph Jordan, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati (collectively, the "Securities Defendants," and together with the Securities Plaintiffs, the "Securities Parties"). ECF No. 1. The case was assigned to the Honorable Edmond E. Chang.

B.      A related action captioned *City of Melbourne Firefighters' Ret. Sys. v. ATI Phys. Therapy, Inc.*, No. 1:21-CV-05345 (N.D. Ill. Filed Oct. 7, 2021), was consolidated by the Court's Order dated October 20, 2021. ECF No. 32.

C.      On November 18, 2021, the Court appointed Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds as Lead Plaintiffs, and Pomerantz LLP as Lead Counsel. ECF No. 40.

D.      On February 8, 2022, the Securities Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Securities Complaint") on behalf of all persons and entities who: (i) purchased or otherwise acquired ATI securities between February 22, 2021 and October 19, 2021; and/or (ii) beneficially owned and/or held FVAC Class A common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting (the "Securities Subclass Settlement Class Period"). ECF No. 58. The Securities Complaint asserted claims against the Securities Defendants under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rules 10b-5 and 14a-9 promulgated thereunder. The Securities Complaint alleged, among other things, that during the Securities Subclass Settlement Class Period, the Securities Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about ATI, one of the nation's largest providers of outpatient physical therapy services, and the Company's

business, operations, and prospects. Specifically, the Securities Defendants allegedly failed to disclose to investors: (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; (4) that, as a result of the labor shortage, the Company would open fewer new clinics; and (5) that, as a result of the foregoing, the Securities Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. The Securities Complaint alleged that, as a result of the Securities Defendants' alleged misrepresentations, the Securities Plaintiffs acquired ATI Securities at artificially inflated prices during the Securities Subclass Settlement Class Period.

E.      On April 11, 2022, the Securities Defendants filed two motions to dismiss the Securities Complaint in its entirety. One motion was filed by ATI, Labeed Diab (the former CEO of ATI), and Joseph Jordan (the CFO of ATI). ECF No. 68. The other motion was filed by Andrew McKnight, the former CEO of FVAC, and Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati. ECF No. 71.

F.      On September 6, 2023, the Court granted in part and denied in part the Securities Defendants' motions to dismiss. ECF No. 104. The Securities Defendants answered the Securities Complaint on October 19, 2023. ECF Nos. 116-17. Thereafter, the Securities Parties engaged in fact discovery, including the production of more than 350,000 pages of documents in response to document requests, and responding to written discovery, including interrogatories.

**Overview Of The *Ghaith* Action**

G.      On December 1, 2021, May 10, 2022, and September 22, 2022, respectively, Plaintiffs Hamza Ghaith, Vinay Kumar, and Brendan Reginbald filed stockholder derivative complaints on behalf of ATI, which were subsequently consolidated and styled *In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*, No. 1-21-cv-06415 (N.D. Ill) (the "*Ghaith* Action"). On November 21, 2022, Plaintiffs Kumar, Nie, Chang, and Reginbald (collectively, the "*Ghaith* Plaintiffs") filed a consolidated amended stockholder derivative complaint against Nominal

Defendant ATI and Defendants Fortress Investment Group LLC, Fortress Acquisition Sponsor II LLC, Labeed Diab, Joseph Jordan, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher Krubert, James E. Parisi, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati (collectively, the "*Ghaith* Defendants") in the Court, asserting claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, contribution, indemnification, and violations of Section 14(a) of the Exchange Act. On January 20, 2023, the *Ghaith* Defendants moved to dismiss the consolidated amended stockholder derivative complaint. Instead of opposing the *Ghaith* Defendants' motions, on March 3, 2023, the *Ghaith* Plaintiffs filed a motion for leave to file a consolidated second amended stockholder direct and derivative complaint, which the Court granted on March 31, 2024. On April 2, 2024, the *Ghaith* Plaintiffs filed their consolidated second amended stockholder direct and derivative complaint, which, in addition to the derivative claims described above, asserted direct claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment.

**Overview Of The *Robinson* Action**

H.     On February 7, 2023, Wendell Robinson filed a putative class action complaint, styled *Robinson v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0142-NAC (Del. Ch.) (the "*Robinson* Action"), in the Delaware Court of Chancery, against Defendants Fortress Acquisition Sponsor II, LLC, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Daniel N. Bass, Micah B. Kaplan, and Labeed Diab (collectively, the "*Robinson* Defendants"). The complaint in the *Robinson* Action asserts direct claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, on behalf of similarly situated record and beneficial FVAC Class A common stock holders who were entitled to, but did not, redeem their FVAC shares prior to the Business Combination.

I.     On April 28, 2023, the *Robinson* Defendants filed motions to dismiss the complaint, which remain pending. On August 16, 2023, plaintiffs filed a motion for consolidation of the

*Robinson* Action and the *Goldstein* Action (defined below) and for the appointment of lead plaintiff and counsel. On October 6, 2023, the court (i) denied the motion for consolidation (without prejudice to renewing the motion post-decision on the motions to dismiss in the *Robinson* Action), and (ii) granted the motion to stay the *Goldstein* Action (pending the same decision). On December 1, 2023, the court heard argument on the motions to dismiss the *Robinson* complaint. On April 25, 2024, the parties in the *Robinson* Action advised the court that the parties had reached a tentative settlement of the Actions. No decision on the *Robinson* Defendants' motions to dismiss had been rendered at the time that the parties advised the court of the tentative settlement.

**Overview Of The *Goldstein* Action**

J.       On June 1, 2023, Phillip Goldstein filed a dual putative class action and stockholder derivative complaint, styled *Goldstein v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0582-NAC (Del. Ch.) (the "*Goldstein* Action," and together with the *Ghaith* Action and the *Robinson* Action, the "Multiplan Actions"), in the Delaware Court of Chancery, against Defendants Labeed Diab, Joseph Jordan, Cedric Coco, Ray Wahl, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher Krubert, James E. Parisi, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati (collectively, with Fortress Acquisition Sponsor II, LLC, Daniel Bass, and Micah Kaplan, the "*Goldstein* Defendants").

K.       On August 8, 2023, Plaintiff Goldstein filed an amended complaint, adding Fortress Acquisition Sponsor II, LLC, Daniel Bass, and Micah Kaplan as defendants, and asserting direct claims for tortious interference, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on behalf of stockholders who were entitled to, but did not, redeem their shares of FVAC Class A common stock prior to the Business Combination, as well as derivative claims for fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on behalf of ATI. As indicated above, on October 6, 2023, the court granted a motion to stay the *Goldstein* Action pending resolution of the *Robinson* motions to dismiss. On April 25, 2024, the parties filed a letter

advising the court that the parties had reached an agreement in principle to settle the *Goldstein* Action and related matters.

**<u>Overview Of Settlement Negotiations</u>**

L.     On December 18, 2023, the Securities Parties participated in an in-person private mediation with former District Court Judge Layn Phillips (the "Mediator") of Phillips ADR Enterprises ("PADRE").  In advance of the mediation, the Securities Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages.  The Securities Parties held productive discussions during that in-person mediation session, but were unable to reach a resolution at that time.  In the following weeks, the Securities Parties continued to engage in productive negotiations. On January 19, 2024, the Securities Parties reached an agreement in principle to settle the Securities Action.

M.     On January 22, 2024, the Securities Parties informed the Court that they had reached an agreement in principle to settle the Securities Action and requested a stay of all deadlines and proceedings, including all discovery deadlines, for fifty (50) days to allow the Securities Parties to formalize the settlement agreement and to seek preliminary and final approval of the settlement.  ECF No. 141.  That same day, the Honorable Young B. Kim, who had been appointed by the Court to supervise discovery, granted the motion to stay discovery and ordered the Securities Parties to "file a joint status report by February 9, 2024, updating the court on the settlement documents."  ECF No. 142.

N.     Following the January 19, 2024 settlement agreement in principle, Defendants engaged in settlement discussions, including during additional mediation sessions supervised by the Mediator, with the plaintiffs in the Multiplan Actions.

O.     On February 9, 2024, the Securities Parties submitted a joint status report updating the Court of their continued efforts to file with the Court a written settlement agreement, along with a motion for preliminary approval of the settlement, by March 12, 2024.  ECF No. 144.  On February 10, 2024, Judge Kim issued a docket entry requiring the Securities Parties to submit

- 10 -

another status report by February 19, 2024, "with more specificity on the status of the settlement documents." ECF No. 145.

      P.     On February 19, 2024, the Securities Parties submitted a status report in accordance with the Court's February 10 Order, informing the Court that "[t]he negotiation of certain terms and conditions of the settlement in principle are ongoing" and that the Securities Parties are actively engaged to finalize the settlement documentation to submit for the Court's consideration by March 12, 2024. ECF No. 146.

      Q.     In light of the Parties' active negotiations, on February 20, 2024, the Court entered a docket entry that the discovery stay will be lifted "unless the parties file their motion for preliminary approval of class settlement by March 19, 2024." ECF No. 147.

      R.     On March 7, 2024, the Parties participated in a second in-person mediation session with Judge Phillips. Defendants continued to negotiate a "global" resolution of the Securities Action and the Multiplan Actions. On March 19, 2024, the Securities Parties requested an additional three weeks, through and including April 9, 2024, for the submission of formal settlement documentation. ECF No. 149. The Court granted that request. ECF No. 150. On April 9, 2024, the Securities Defendants moved for an extension of time through and including April 19, 2024 to file a motion for preliminary approval of the Settlement (ECF No. 152), which the Court granted the next day. ECF No. 154. The parties to the Multiplan Actions were not able to conclude negotiations by April 19, 2024, and the Securities Parties were not able to finalize the settlement documentation by April 19. On April 20, 2024, Magistrate Judge Kim reinstated the discovery deadlines in the Securities Action.

      S.     On April 22, 2024, the Parties reached settlement agreements in principle to resolve all Actions, including an agreement in principle to resolve the putative class (direct) claims asserted in the Multiplan Actions, as well as an agreement in principle to resolve the derivative claims asserted in the *Ghaith* Action and the *Goldstein* Action.

      T.     This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties concerning all putative class (direct) claims in the Actions. A

separate stipulation (together with the exhibits thereto) will reflect the final and binding agreement concerning all derivative claims in the *Ghaith* and *Goldstein* Actions (the "Derivative Settlement").

U.    Based upon their investigation, prosecution, and the early neutral evaluation of the case, Plaintiffs and their counsel in the various Actions have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Plaintiffs and the other members of the Settlement Class, and in their best interests. Based on Plaintiffs' direct oversight of the prosecution of these matters and with the advice of their counsel, Plaintiffs have agreed to settle and release the direct claims that were asserted or could have been asserted in the Actions pursuant to the terms and provisions of this Stipulation, after considering, among other things: (a) the substantial financial benefit that Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

V.    This Stipulation constitutes a compromise of matters that are in dispute between the Parties. Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden, and expense of further litigation. Each of Defendants denies any wrongdoing, and the Parties' settlement agreements in principle and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of Defendants or any of Defendants' Releasees with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants expressly deny that Plaintiffs have asserted any valid claims as to any Defendant, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiffs of any infirmity in any of the direct claims asserted in the Actions, or an admission or concession that any of Defendants' defenses to liability had any merit. Each of the Parties recognizes and acknowledges, however, that the Actions have been initiated, filed, and prosecuted by Plaintiffs in good faith and defended by Defendants in good

faith, that the putative class (direct) claims in the Actions are being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate, and reasonable.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Plaintiffs (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, applicable provisions of the Exchange Act, and other conditions set forth herein, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against Defendants' Releasees and all Released Defendants' Claims as against Plaintiffs' Releasees shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, upon and subject to the terms and conditions set forth below.

## DEFINITIONS

1. As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings. In the event of any inconsistency between any definition set forth below and any definition set forth in any document attached as an exhibit to this Stipulation, the definition set forth below shall control.

a) "Actions" means, collectively, the Securities Action, the *Ghaith* Action, the *Robinson* Action, and the *Goldstein* Action.

b) "ATI" or the "Company" means ATI Physical Therapy, Inc. f/k/a Fortress Value Acquisition Corp. II. "ATI" or the "Company" also refers to Wilco Holdco, Inc., the private company predecessor to the current, publicly-traded ATI business following the consummation of the Business Combination.

c) "ATI Securities" means ATI Physical Therapy, Inc.'s common stock trading on the New York Stock Exchange ("NYSE") under the ticker symbol "ATIP" or FVAC common stock that traded on the NYSE under the ticker symbol FAII.

d)     "Authorized Claimant(s)" means a Settlement Class Member who timely submits a Proof of Claim Form to the Claims Administrator in accordance with the requirements established by the Court, and that is approved by the Claims Administrator for payment from the Net Settlement Fund.

e)     "Business Combination" means the business combination between Wilco Holdco, Inc., the private company predecessor to ATI, and FVAC, which closed on June 17, 2021.

f)     "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

g)     "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit A-2, that a Claimant must complete and submit should that Claimant seek to share in a distribution of the Net Settlement Fund.

h)     "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

i)     "Claims Administrator" means Strategic Claims Services ("SCS"), the firm retained by Plaintiffs, subject to approval of the Court, which shall provide all notices approved by the Court to potential Settlement Class Members and administer the Settlement.

j)     "Class Distribution Order" means an Order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

k)     "Court" means the U.S. District Court for the Northern District of Illinois.

l)     "Defendants" means, collectively, the Securities Defendants, the *Ghaith* Defendants, the *Robinson* Defendants, and the *Goldstein* Defendants (and each individually, a "Defendant").

m)     "Defendants' Counsel" means Weil, Gotshal & Manges LLP; Much Shelist, P.C.; and Skadden, Arps, Slate, Meagher & Flom LLP.

n)     "Defendants' Releasees" means each and all of the following: (a) each and every Defendant in the Actions; (b) such Defendants' respective present and former parents, affiliates, subsidiaries, divisions, general partners, limited partners, directors, officers, and any Person in which any such Defendant has or had a controlling interest; and (c) the present and former

members of the immediate family, heirs, principals, trustees, trusts, executors, administrators, predecessors, successors, assigns, members, agents, subsidiaries, employees, officers, managers, directors, general partners, limited partners, bankers, attorneys, accountants, auditors, representatives, estates, divisions, advisors, estate managers, indemnifiers, insurers, and reinsurers of each of the Persons listed in subparts (a) or (b) of this definition.

o) "Derivative Settlement" means the settlement of the derivative claims in the *Ghaith* Action and *Goldstein* Action, as set forth in a stipulation to be separately filed with the Court.

p) "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 33 of this Stipulation have been met and have occurred or have been waived. Plaintiffs' Counsel shall advise Defendants' Counsel and the Claims Administrator promptly after they have determined that the Effective Date has occurred.

q) "Escrow Account" means an account maintained at The Huntington National Bank wherein the Settlement Amount shall be deposited and held in escrow under the control of Plaintiffs' Counsel.

r) "Escrow Agent" means The Huntington National Bank or its appointed agents. The Escrow Agent shall perform the duties as set forth in this Stipulation and any order of the Court in connection with the Settlement.

s) "Escrow Agreement" means the agreement between Plaintiffs' Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

t) "*Ghaith* Action" means the putative class and derivative action styled *In re ATI Physical Therapy, Inc. S'holder Deriv. Litig.*, Case No. 1-21-cv-06415 (N.D. Ill.), including, without limitation, all cases consolidated under that caption.

u) "*Ghaith* Defendants" means, collectively, Nominal Defendant ATI and Defendants Fortress Investment Group LLC, Fortress Acquisition Sponsor II LLC, Labeed Diab, Joseph Jordan, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher

Krubert, James E. Parisi, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati.

v)    "*Ghaith* Plaintiffs" means, collectively, Vinay Kumar, Ziyang Nie, Julia Chang, and Brendan Reginbald.

w)    "Final," with respect to the Judgment or any other court order, means that such order represents a final and binding determination of all issues within its scope and is not subject to further reversal or modification on appeal or otherwise. Without limitation, an order becomes "Final" as of the following: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under any applicable rule; or (ii) if there is an appeal from the Judgment or other order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the Judgment or other order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance in all material respects following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, or expenses or (ii) the Plan of Allocation of Settlement proceeds (as submitted or subsequently modified) shall not in any way delay or preclude the Judgment or other order from becoming Final.

x)    "FVAC" means Fortress Value Acquisition Corp. II, along with all other affiliates and sponsors involved in effectuating the Business Combination, including, but not limited to, Fortress Investment Group LLC and Fortress Acquisition Sponsor II LLC.

y)    "*Goldstein* Action" means the putative class and derivative action styled *Goldstein v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0582-NAC (Del. Ch.).

z)    "*Goldstein* Defendants" means, collectively, Fortress Acquisition Sponsor II, LLC, Labeed Diab, Joseph Jordan, Cedric Coco, Ray Wahl, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher Krubert, James E. Parisi, Andrew A. McKnight,

Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Daniel Bass, and Micah Kaplan.

    aa)  "Immediate Family" means children, stepchildren, parents, stepparents, spouses, marital communities, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

    bb)  "Investment Vehicle" means any investment company, separately managed account, or pooled investment fund, including, but not limited to, mutual funds, exchange traded funds, funds of funds, hedge funds, and employee benefit plans, in which any Defendant has or may have a direct or indirect interest, or as to which that Defendant or its affiliates may act as an investment advisor or manager, but in which any Defendant alone or together with his, her, or its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

    cc)  "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

    dd)  "Lead Counsel" means Pomerantz LLP.

    ee)  "Litigation Expenses" means the reasonable costs and expenses incurred in connection with commencing, prosecuting, and settling the Actions (which may include the costs and expenses of Plaintiffs directly related to their representation of the Settlement Class), for which Plaintiffs' Counsel intend to apply or could have applied to the Court for reimbursement from the Settlement Fund.

    ff)  "Multiplan Actions" means, collectively, the *Ghaith* Action, the *Goldstein* Action, and the *Robinson* Action.

    gg)  "Multiplan Complaints" means, collectively, the Verified Consolidated Second Amended Stockholder Direct and Derivative Complaint filed in the *Ghaith* Action on April 2, 2024; the Verified Amended Class Action and Derivative Complaint filed in the *Goldstein* Action on August 15, 2023; and the Verified Stockholder Class Action Complaint filed in the *Robinson* Action on February 10, 2023.

STIPULATION AND AGREEMENT OF SETTLEMENT

hh)  "Multiplan Counsel" means Levi & Korsinsky, LLP, which is the firm representing the Multiplan Subclass for purposes of approval of the Settlement; Robbins LLP; Glancy Prongay & Murray LLP; Johnson Fistel LLP; and Morris Kandinov LLP.

ii)  "Multiplan Plaintiffs" means, collectively, the *Ghaith* Plaintiffs, Wendell Robinson, and Phillip Goldstein.

jj)  "Net Settlement Fund" means the Settlement Fund less:  (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court.

kk)  "Notice" means the Notice of (I) Pendency of Class Actions, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-1, which shall be made available online at a website maintained by the Claims Administrator and mailed or emailed to potential Settlement Class Members.

ll)  "Notice and Administration Costs" means the costs, fees, and expenses that are reasonably incurred by the Claims Administrator and/or Plaintiffs' Counsel in connection with: (i) providing notice to the Settlement Class; and (ii) administering the claims process, including, without limitation, the actual costs of publication, printing, and mailing of the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with identifying Settlement Class Members, providing notice, and processing the submitted Claims, and the reasonable fees, if any, of the Escrow Agent.  Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $500,000.00 in Notice and Administration Costs actually and reasonably incurred and associated with the administration of the Settlement.  Prior to the Effective Date, payment of any Notice and Administration Costs exceeding $500,000.00 shall require notice to, and agreement from, Defendants, through Defendants' Counsel.  Subsequent to the Effective Date, without further approval by Defendants or the Court, the Settlement Fund may be used by

the Claims Administrator to pay reasonable and necessary Notice and Administration Costs in excess of $500,000.00. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid.

   mm)  "Officer" means any officer as that term is defined in Securities and Exchange Act Rule 16a-1(f).

   nn)  "Parties" means, collectively, Defendants and Plaintiffs, on behalf of themselves and the Settlement Class.

   oo)  "Person" or "Persons" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity, as well as each of their spouses, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assignees.

   pp)  "Plaintiffs" means, collectively, the Securities Plaintiffs, the *Ghaith* Plaintiffs, Plaintiff Wendell Robinson, and Plaintiff Phillip Goldstein (and each individually, a "Plaintiff").

   qq)  "Plaintiffs' Counsel" means, collectively, Lead Counsel, Securities Plaintiffs' Counsel, *Ghaith* Plaintiffs' Counsel, *Goldstein* Plaintiffs' Counsel, and *Robinson* Plaintiffs' Counsel. "Securities Plaintiffs' Counsel" means Lead Counsel Pomerantz LLP; counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System, Bernstein Litowitz Berger & Grossmann LLP; and additional counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System, Klausner, Kaufman, Jensen & Levinson. "*Ghaith* Plaintiffs' Counsel" means counsel for the *Ghaith* Plaintiffs, Robbins LLP, Johnson Fistel LLP, and Glancy Prongay & Murray LLP, and any other legal counsel who appeared on behalf of Plaintiffs in the *Ghaith* Action and performed services on behalf of the Settlement Class. "*Robinson* Plaintiffs' Counsel" means counsel for Wendell Robinson, Levi & Korsinsky and Ashby & Geddes, and any other legal counsel who appeared on behalf of Plaintiffs in the *Robinson* Action and performed

services on behalf of the Settlement Class. "*Goldstein* Plaintiffs' Counsel" means counsel for Phillip Goldstein, Morris Kandinov LLP and Meluney Alleman & Spence, LLC, and any other legal counsel who appeared on behalf of Plaintiffs in the *Goldstein* Action and performed services on behalf of the Settlement Class.

rr)   "Plaintiffs' Releasees" means Plaintiffs, Plaintiffs' Counsel, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, partnerships, partners, trustees, trusts, employees, Immediate Family members, insurers, reinsurers, and attorneys, in their capacities as such.

ss)   "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

tt)   "Preliminary Approval Order" means the Order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

uu)   "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

vv)   "Redemption Date" means June 11, 2021, the deadline by which holders of FVAC's Class A common stock could redeem their shares for approximately $10.00 per share.

ww)   "Released Claims" means, collectively, all Released Defendants' Claims and all Released Plaintiffs' Claims.

xx)   "Released Defendants' Claims" means any and all claims, demands, rights, causes of action, sanctions, complaints, and liabilities whatsoever, whether based in law or equity, arising under federal, state, local, statutory, or common law, or any other law, rule, or regulation, including both known and Unknown Claims, that arise out of or relate in any way to the institution, prosecution, or settlement of the Actions. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement, any claims between or among Defendants and Defendants' Releasees, any claims between Defendants and Defendants' Releasees and their

respective insurers, or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

yy) "Released Plaintiffs' Claims" means any and all claims, rights, actions, issues, controversies, causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every kind, nature, and description, including both known and Unknown Claims, whether arising under federal, state, or foreign law, or statutory, common, or administrative law, or any other law, rule, or regulation, whether asserted as claims, cross-claims, counterclaims, or third-party claims, whether fixed or contingent, choate or inchoate, accrued or not accrued, matured or unmatured, liquidated or un-liquidated, perfected or unperfected, whether class, direct, or individual in nature, that previously existed, currently exist, exist as of the date of Court approval of the Settlement, or that may arise in the future, that Plaintiffs or any other member of the Settlement Class asserted in the complaints in the Actions or could have asserted as direct claims in the Actions or in any other action or in any forum (including, without limitation, any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum, in the U.S. or elsewhere) that in any way arise out of, are based upon, relate to, or concern the claims, allegations, transactions, facts, circumstances, events, acts, disclosures, statements, representations, omissions, or failures to act alleged, set forth, referred to, involved in, or which could have been raised in the Actions or the complaints in the Actions, and that in any way arise out of, are based upon, relate to, or concern the purchase, acquisition, disposition, sale, or holding of, or other transaction in, ATI Securities between February 22, 2021 and October 19, 2021, both dates inclusive, including, without limitation, claims that arise out of or relate to any disclosures (including in financial statements), SEC filings, press releases, investor calls, registration statements, offering memoranda, web postings, presentations, or any other statements by ATI and/or FVAC during the period February 22, 2021 through and including October 19, 2021. For the avoidance of doubt, Released Plaintiffs' Claims include any and all direct claims that are asserted in any of the Multiplan Actions. Released Plaintiffs' Claims do not include any claims relating to the enforcement of the Settlement, or any derivative claims

that are asserted or could have been asserted in any of the Multiplan Actions, which are being released separately as part of the Derivative Settlement.

zz) "Releasee(s)" means each and any of Defendants' Releasees and each and any of Plaintiffs' Releasees.

aaa) "Releases" means the releases set forth in ¶¶ 4–7 of this Stipulation.

bbb) "*Robinson* Action" means the putative class action styled *Robinson v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0142-NAC (Del. Ch.).

ccc) "*Robinson* Defendants" means, collectively, Fortress Acquisition Sponsor II, LLC, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Daniel N. Bass, Micah B. Kaplan, and Labeed Diab.

ddd) "Securities Action" means the putative securities class action currently pending in the U.S. District Court for the Northern District of Illinois styled as *Burbige, et al. v. ATI Physical Therapy, Inc., f/k/a Fortress Value Acquisition Corp. II*, *et al.*, No. 1:21-cv-04349, including, without limitation, all cases consolidated under that caption.

eee) "Securities Complaint" means the Amended Class Action Complaint filed by the Securities Plaintiffs on February 8, 2022.  ECF No. 58.

fff) "Securities Plaintiffs" means, collectively, Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds, and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System.

ggg) "Securities Defendants" means, collectively, ATI, Labeed Diab, Joseph Jordan, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati.

hhh) "Settlement" means the settlement between Plaintiffs and Defendants on the terms and conditions set forth in this Stipulation.

iii) "Settlement Amount" means Twenty Four Million Nine Hundred Thousand Dollars ($24,900,000.00) in cash as immediately available funds, which shall be allocated as

follows: Eighteen Million Nine Hundred Thousand Dollars ($18,900,000) to the Securities Subclass, and Six Million Dollars ($6,000,000) to the Multiplan Subclass.

jjj) "Settlement Class" means, for purposes of the Settlement only, and pursuant to Federal Rule of Civil Procedure 23(b)(3), all persons and entities who: (a) purchased or otherwise acquired ATI Securities between February 22, 2021 and October 19, 2021, both dates inclusive, and/or beneficially owned and/or held FVAC common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting to vote on the Business Combination (the "Securities Subclass"); and/or (b) beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date who were entitled to, but did not elect to, redeem their shares (the "Multiplan Subclass"). Excluded from the Settlement Class are (i) Defendants; (ii) current and former Officers and directors of the Company; (iii) members of the Immediate Family of each of Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and Officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, Officers, directors, and any other individual or entity in which any of Defendants has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of all such excluded parties; *provided, however*, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded from the Settlement Class are any persons or entities who timely and validly exclude themselves from the Class in accordance with the requirements set forth in the Notice and Rule 23 of the Federal Rules of Civil Procedure.

kkk) "Settlement Class Member" means each person and entity who or which is a member of the Settlement Class.

lll) "Settlement Class Period" means the Class Period that encompasses the Settlement Class, including both the Securities Subclass and the Multiplan Subclass.

mmm) "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

nnn)     "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider Final Approval of the Settlement and any requests for an award of attorneys' fees and Litigation Expenses.

ooo)     "Summary Notice" means the Summary Notice of (I) Pendency of Class Actions, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order.

ppp)     "Taxes" means:  (i) all federal, state, and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) any expenses and costs incurred in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

qqq)     "Unknown Claims" means any Released Plaintiffs' Claims which any Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected any of his, her, or its decision(s) with respect to the Settlement, including, without limitation, a Settlement Class Member's decision not to opt-out or object.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class Members and each of Defendants' Releasees and each of Plaintiffs' Releasees shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the U.S., or principle of

common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs, any other Settlement Class Member, Defendants, and their respective Releasees may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs and each of Defendants shall expressly waive, and each of the other Settlement Class Members and Releasees shall be deemed to have waived, and by operation of the Judgment shall have expressly waived any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and each of the other Settlement Class Members by law and operation of the Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

## CLASS CERTIFICATION

2.      Solely for purposes of the Settlement and for no other purpose, Defendants and Plaintiffs, on behalf of themselves and each of the Settlement Class Members, stipulate and agree to: (a) certification of the Settlement Class, including the Securities Subclass and the *Multiplan* Subclass, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (b) certification of Plaintiffs as representatives for the Settlement Class; and (c) appointment of Plaintiffs' Counsel as class counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. In the event that the Settlement, upon the terms and conditions set forth in this Stipulation, is not approved by the Court, is terminated, or the Effective Date does not occur for any reason, the certification of the Settlement Class automatically shall be revoked without

requiring any additional action by the Parties or the Court. In such event, Defendants reserve their right to object for any and all reasons to the certification of a class in any of the Actions or to the appointment of class representatives or to the appointment of class counsel, and this Stipulation shall not be used or considered in any way in connection with class certification or class representation, or otherwise in further proceedings in any of the Actions.

## PRELIMINARY APPROVAL OF SETTLEMENT

3.      Promptly upon execution of this Stipulation, Plaintiffs will move the U.S. District Court for the Northern District of Illinois for preliminary approval of the Settlement, certification of the Settlement Class for settlement purposes only, approval of the contents and method of distribution of the Notice and the Summary Notice, approval of the Proof of Claim Form, setting deadlines for filing objections, submitting requests for exclusions, submitting Proof of Claim Forms, and filings briefs in support of the Settlement and the fee and expense award, and the scheduling of a hearing for consideration of Final Approval of the Settlement. Concurrently with the motion for preliminary approval, Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A. All proceedings in the Actions shall be stayed pending completion of the Settlement process (including staying all outstanding discovery and withdrawing the referral of discovery supervision to Magistrate Judge Young B. Kim), other than proceedings necessary to carry out or enforce the terms and conditions of this Stipulation. Pending final determination of whether the Settlement should be approved, Defendants, Plaintiffs, and all members of the Settlement Class are barred and enjoined from commencing, instituting, intervening in, or participating in, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, or other forum of any kind or character (whether brought directly, in a representative capacity, or in any other capacity), that asserts any of the Released Claims against any of the Releasees. In the event that the Settlement, upon the terms and conditions set forth in this Stipulation, is not approved by the Court, is terminated, or the Effective

Date does not occur for any reason, the stay of the Actions shall be lifted thirty (30) days after such date without requiring any additional action by the Parties or the Court.

## **RELEASE OF CLAIMS**

4.      The obligations incurred pursuant to this Stipulation are in consideration of:  (i) payment of the Settlement Amount for the benefit of the Settlement Class; (ii) the full and final disposition of the direct claims in the Actions as against Defendants; and (iii) the Releases provided for herein.

5.      Pursuant to the Judgment, and without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs and each of the other Settlement Class Members, on behalf of themselves and their current and former subsidiaries, affiliates, parents, successors, predecessors, predecessors-in-interest, successors-in-interest, assigns, assignees, attorneys, heirs, executors, estates, or administrators, in their capacities as such, and any other person or entity who has the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Settlement Class Member any of the Released Plaintiffs' Claims (or to obtain the proceeds of any recovery therefrom), regardless of whether that Settlement Class Member actually submits a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to the Settlement, the Plan of Allocation, or Plaintiffs' Counsel's applications for attorneys' fees and Litigation Expenses, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, dismissed, and discharged any and all Released Plaintiffs' Claims against Defendants and Defendants' Releasees, and shall be:

(a)      permanently and forever barred and enjoined from instituting, commencing, participating in, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Plaintiffs' Claims (including, without limitation, Unknown Claims), as well as any

claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Actions, against any of Defendants' Releasees; and

(b)     deemed to permanently covenant to refrain from instituting, commencing, participating in, maintaining, or continuing to prosecute in any capacity any and all Released Plaintiffs' Claims against any of Defendants' Releasees.

This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

6.      Pursuant to the Judgment, and without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and each of their current and former subsidiaries, affiliates, parents, successors, predecessors, predecessors-in-interest, successors-in-interest, assigns, assignees, attorneys, heirs, executors, estates, or administrators, in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, dismissed, and discharged any and all Released Defendants' Claims against Plaintiffs and Plaintiffs' Releasees, and shall be:

(a)     permanently and forever barred and enjoined from instituting, commencing, participating in, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Defendants' Claim (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the direct claims in the Actions, against any of Plaintiffs' Releasees, and

(b)     deemed to permanently covenant to refrain from instituting, commencing, participating in, maintaining, or continuing to prosecute in any capacity any and all Released Defendants' Claims against any of Plaintiffs' Releasees.

7.      Notwithstanding ¶¶ 5–6 above, nothing in the Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment.

STIPULATION AND AGREEMENT OF SETTLEMENT

## THE SETTLEMENT CONSIDERATION

8.      In consideration of the settlement of the Released Plaintiffs' Claims against Defendants and Defendants' Releasees, ATI and/or its insurers shall deposit the Settlement Amount into the Escrow Account by wire transfer or delivery of a check within thirty (30) calendar days after the later of: (1) entry of an order preliminarily approving the Settlement; or (2) receipt by Defendants' Counsel from Plaintiffs' Counsel of all necessary payment details to accomplish payment of the Settlement Amount by wire transfer or check, including payee name, payee mailing address, bank account number, name of bank, and bank address, a Sort Code or ABA Routing Number, the currency of the account receiving the funds, wire transfer instructions, the Tax Identification Number, and an executed Form W-9. Except for the settlement amount provided for in the Derivative Settlement, the Settlement Amount shall constitute the full and sole monetary contribution made by or on behalf of Defendants and Defendants' Releasees in connection with the resolution of the Actions and the Settlement, and it specifically covers any claims for costs and attorneys' fees by Plaintiffs or any other member of the Settlement Class, as well as any costs or expenses associated with the Notice and the Claims Administration process.

## USE OF SETTLEMENT FUND

9.      The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court. In no event shall Defendants or Defendants' Releasees bear any responsibility for any fees, costs, or expenses in connection with the Settlement or the Judgment beyond payment of the Settlement Amount. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 20–31 below.

10.      Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of

this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC. In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. Defendants, Defendants' Releasees, and Defendants' Counsel shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent. The Settlement Fund and the Escrow Agent shall bear all risks and liabilities related to investment of the Settlement Amount.

11.     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation or as otherwise ordered by the Court.

12.     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) for the Settlement Fund. Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. Defendants or the Defendants' Releasees shall not have any liability or responsibility whatsoever for any such Taxes. Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). However, Defendants, Defendants' Releasees, and Defendants' Counsel shall have no liability or

responsibility for the filing of, or failure to file, any tax returns or other documents with the Internal Revenue Service or any state or local taxing authority. Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B 2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

13.     All Taxes shall be paid out of the Settlement Fund and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. Defendants or the Defendants' Releasees shall have no responsibility or liability whatsoever for the acts or omissions of the Claims Administrator, Lead Counsel, or their agents with respect to the payment of Taxes, as described herein.

14.     The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶¶ 20–31, and is of such an amount that, in the discretion of the Claims Administrator, it is not cost effective or efficient to redistribute to the Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a non-sectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3), to be designated by Plaintiffs' Counsel.

15.    Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $500,000.00 in Notice and Administration Costs actually and reasonably incurred and associated with the administration of the Settlement.  Prior to the Effective Date, payment of any Notice and Administration Costs exceeding $500,000.00 shall require notice to, and agreement from, Defendants, through Defendants' Counsel.  Subsequent to the Effective Date, without further approval by Defendants or the Court, the Settlement Fund may be used by the Claims Administrator to pay reasonable and necessary Notice and Administration Costs in excess of $500,000.00.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid.

16.    The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶10 hereof.  If the Settlement does not become Final and the Settlement is terminated for any reason, within twenty (20) days of termination, the Settlement Fund shall be returned pursuant to written instructions from Weil, Gotshal & Manges LLP, together with any interest earned on the Settlement Fund, less any Notice and Administration Costs actually incurred.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

17.    Securities Plaintiffs' Counsel, one the one hand, and Multiplan Counsel, on the other hand, will each separately apply to the Court for awards of attorneys' fees to be paid from the Settlement Fund, which will include interest accrued from the time of the creation of the Settlement Fund, with Securities Plaintiffs' Counsel applying for an award based on and paid out of the $18,900,000 portion of the Settlement Amount obtained for the Securities Subclass, and Multiplan Counsel applying for an award based on and paid out of the $6,000,000 portion of the Settlement Amount obtained for the Multiplan Subclass.  Securities Plaintiffs' Counsel and Multiplan Counsel also will each separately apply to the Court for reimbursement of Litigation Expenses with interest, from the portion of the Settlement Amount applicable to their relevant subclass, which may include a request for reimbursement of Plaintiffs' costs and expenses, including time and/or lost wages incurred in prosecuting the Actions, directly related to their

representation of the Settlement Class, to be paid from the Settlement Fund. Plaintiffs' Counsel's separate applications for awards of attorneys' fees and/or Litigation Expenses are not the subject of any agreement between Defendants and Plaintiffs other than what is set forth in this Stipulation. Defendants and Defendants' Releasees take no position on Plaintiffs' Counsel's requests for awards of attorneys' fees or reimbursement of Litigation Expenses, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the Court may award, which shall be paid in their entirety from the Settlement Fund.

18. Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Securities Plaintiffs' Counsel or Multiplan Counsel, as awarded, immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final. Securities Plaintiffs' Counsel or Multiplan Counsel, as appropriate, shall make the appropriate refund or repayment in full no later than twenty (20) calendar days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final. The procedure for and amount of any award of attorneys' fees and/or Litigation Expenses, and the allowance or disallowance by the Court thereof, shall not be a condition of the Settlement or a necessary term of this Stipulation. Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses. Any order or proceedings relating to Plaintiffs' Counsel's requests for attorneys' fees, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect the release of the Released Claims. The finality of the Settlement shall not be

conditioned on any ruling by the Court concerning Plaintiffs' Counsel's applications for awards of attorneys' fees and reimbursement of Litigation Expenses.

19.    Defendants and Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses. The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Escrow Account. Under no circumstances shall Defendants and Defendants' Releasees be responsible for paying any portion of Plaintiffs' Counsel's attorneys' fees and/or any Litigation Expenses. If the Court awards Attorneys' fees to Plaintiffs' Counsel in a lump sum, any disputes regarding the allocation of attorneys' fees among Plaintiffs' Counsel shall be mediated, and, if necessary, finally decided and resolved by the Mediator on the terms, conditions, and process set forth by the Mediator at the Mediator's sole discretion. Any fee allocation mediation or arbitration fees and costs shall be borne solely by Plaintiffs' Counsel and allocated by agreement or as finally determined by the Mediator.

## NOTICE AND SETTLEMENT ADMINISTRATION

20.    As part of the Preliminary Approval Order, Plaintiffs shall seek appointment of a Claims Administrator. The Claims Administrator shall administer the Settlement, including, but not limited to, the process of receiving, reviewing, and approving or denying Claims, under Plaintiffs' Counsel's supervision and subject to the jurisdiction of the Court. Other than ATI's obligation to provide its securities holders' records as provided in ¶ 21 below, none of Defendants, nor any other Defendants' Releasees, shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, the investment of the Settlement Fund, or disbursement of the Settlement Fund or Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, the Escrow Agent, the Claims Administrator, Plaintiffs, any other Settlement Class Members, or Plaintiffs' Counsel in connection with the foregoing. The Settlement Fund shall indemnify and hold all Defendants and Defendants' Releasees harmless for any Taxes and related expenses on the Settlement Fund of any

kind whatsoever (including, without limitation, Taxes payable by reason of any such indemnification), as well as for any claims related to the Plan of Allocation, the administration of the Settlement, the investment of the Settlement Fund, the processing of Claims, or the disbursement of the Settlement Fund or the Net Settlement Fund. Defendants shall notify the Escrow Agent promptly if they receive any notice of any claim so indemnified. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

21. In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Plaintiffs' Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort. Plaintiffs' Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court. For the purposes of identifying and providing notice to the Settlement Class, within ten (10) business days after entry of the Preliminary Approval Order, Defendants will use reasonable efforts to convey to Plaintiffs' Counsel and/or the Claims Administrator copies of the relevant transfer records of ATI or FVAC common stockholders in electronic format, such as an Excel spreadsheet (at no cost to the Settlement Fund, Plaintiffs' Counsel, or the Claims Administrator).

22. The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit A-1, or in such other plan of allocation as the Court approves). As set forth in the Plan of Allocation, an Authorized Claimant may receive a *pro rata* share of the Net Settlement Fund as a member of the Securities Subclass, the *Multiplan* Subclass, or both.

23. The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation

that any particular plan of allocation be approved by the Court. Plaintiffs and Plaintiffs' Counsel may not cancel or terminate the Settlement (or this Stipulation) based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in the Actions. Except for immediate payment of attorneys' fees upon award by the Court, there shall be no distribution of any of the Settlement Fund until the Plan of Allocation is finally approved and such order of approval is affirmed on appeal and/or is no longer subject to review by appeal or *certiorari*, and the time for any petition for rehearing, appeal, or review, by *certiorari* or otherwise, has expired. Defendants and Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in the Actions. No Defendant, nor any of Defendants' Releasees, shall have any involvement with the preparation of, nor shall they have any liability, obligation, or responsibility whatsoever for, the Court-approved plan of allocation.

24. Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment to be entered in the Actions and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against Defendants or Defendants' Releasees with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

25. Plaintiffs' Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. No Defendant, nor any of Defendants' Releasees, shall be permitted to review, contest, or object to any Claim Form or any decision of the Claims Administrator or Plaintiffs' Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member. Plaintiffs' Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

26. For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a)   Each Settlement Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit A-2, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Plaintiffs' Counsel, in their discretion, may deem acceptable;

b)   All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.  Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendants or the Defendants' Releasees with respect to any Released Plaintiffs' Claim.  Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

c)   Each Claim Form shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph e) below as necessary;

d)   Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be

rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph e) below; and

e)   If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above (or a shorter time period if the Claim was untimely), serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Plaintiffs' Counsel shall thereafter present the request for review to the Court.

27.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure; *provided*, *however*, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery whatsoever shall be allowed on the merits of the Actions or of the Settlement in connection with the processing of Claim Forms.

28.   Plaintiffs' Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order:  (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

29.   Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment, to be entered in the Actions and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any

action against any and all Defendants or the Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims.

30.     No person or entity shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, or the Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or any order of the Court.  Plaintiffs and Defendants, and their respective counsel, expert(s) and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any claim, or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.  Again, and for the avoidance of doubt, Defendants, Defendants' Releasees, and Defendants' Counsel shall have no responsibility for, and no liability with respect to, the investment or distribution of the Settlement Fund, nor for the Plan of Allocation.

31.     All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## TERMS OF THE JUDGMENT

32.     If the Settlement contemplated by this Stipulation is approved by the Court, Plaintiffs' Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.  The Settlement is expressly conditioned upon, among other things, the entry of a Judgment, substantially in the form attached hereto as Exhibit B and in all material respects consistent with this Stipulation.  Furthermore, within ten (10) calendar days of the Settlement and the Derivative Settlement becoming Final, the plaintiffs in the

*Robinson* Action and the *Goldstein* Action shall file notices and/or proposed orders to dismiss those actions with prejudice.

## CONDITIONS OF SETTLEMENT AND EFFECT OF<br>DISAPPROVAL, CANCELLATION, OR TERMINATION

33.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

a)     the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 3 above;

b)     the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

c)     Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation (including the Supplemental Agreement described in ¶ 37 below);

d)     Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

e)     the Court has approved the Derivative Settlement, following publication of notice and a hearing, and has entered a judgment or order approving the Derivative Settlement and that judgment or order has become Final; and

f)     the Court has approved the Settlement as described herein, following the period set forth for notice under the Class Action Fairness Act ("CAFA"), and following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final and none of the Parties seek to terminate the Settlement.

34.     Upon the occurrence of all of the events referenced in ¶ 33 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

35.     If (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Plaintiffs exercise their right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

a)     The Settlement and the relevant portions of this Stipulation shall be canceled and terminated;

b)     The Parties shall proceed in all respects as if the Settlement had not been entered into and without any prejudice in any way from the negotiation, fact, or terms of the Settlement. If the Settlement is terminated:  (i) the Securities Parties shall be restored to their respective positions in the Action as of January 22, 2024, the date the Court entered its order adjourning all discovery deadlines in the Action; and (ii) the parties to the Multiplan Actions shall be restored to their respective positions in those actions as of April 22, 2024, the date the parties to the Multiplan Actions reached agreements in principle to settle those actions.  The Parties will thereafter, in good faith, propose a new case schedule for the remainder of the Actions;

c)     The terms and provisions of this Stipulation, with the exception of this ¶ 35 and ¶¶ 10, 11, 12, 13, 15, 16, 18, 20, 38, 45, 46, 47, 48, 53, 54, 56, and 64, shall have no further force and effect with respect to the Parties and shall not be used in the Actions or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*; and

d)     Within twenty (20) calendar days of termination, the Settlement Fund (including accrued interest thereon and any funds received by Plaintiffs' Counsel consistent with ¶ 18 above), less any Notice and Administration Costs actually incurred, paid or payable and less any Taxes paid, due, or owing shall be returned by the Escrow Agent to the person(s) that made the respective deposits or as otherwise directed by such persons.  In the event that the funds received by Plaintiffs' Counsel consistent with ¶ 18 above have not been refunded to the Settlement Fund within the twenty (20) calendar days specified in this paragraph, those funds shall be refunded by the Escrow Agent to the person(s) that made the respective deposits or as otherwise

directed by such persons immediately upon their deposit into the Escrow Account consistent with ¶ 18 above. However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for an award of attorneys' fees or reimbursement of Litigation Expenses, or with respect to any Plan of Allocation, shall not be considered material to the Settlement, and shall not be grounds for termination of this Stipulation or the Settlement.

36.     It is further stipulated and agreed that Plaintiffs and Defendants shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to the other Parties to this Stipulation, within thirty (30) days of: (a) the Court declining to enter the Preliminary Approval Order in any material respect; (b) the Court refusing to approve the Settlement or the terms contained in this Stipulation or any material part thereof; (c) the Court declining to enter the Judgment in any material respect as to the Settlement; and (d) any appellate court refusing to approve the Judgment in such a way that the Court cannot, on remand from such an appeal, enter the Judgment. Furthermore, the plaintiffs and defendants to the Multiplan Actions shall additionally have the right to terminate the Settlement and this Stipulation, as it pertains to the settlement of the direct claims in the Multiplan Actions, by providing Termination Notice to the other Parties to this Stipulation, within thirty (30) days of: (a) the Court refusing to approve the Derivative Settlement or any material part thereof; (b) the Court enters a judgment that differs in any material respect from the judgment agreed upon by the parties to the Derivative Settlement; (c) any appellate court refusing to approve the judgment agreed upon by the parties to the Derivative Settlement in such a way that the Court cannot, on remand from such an appeal, enter the judgment the parties to the Derivative Settlement agreed to; or (d) the termination of the Derivative Settlement pursuant to the terms of the stipulation entered between the parties to that settlement. For the avoidance of doubt, the Parties stipulate and agree that any changes to the scope of the Releases provided in this Stipulation or the Judgment (including, without limitation, to the definition of the Settlement Class giving such releases) would constitute a material change that gives rise to Defendants' right to terminate this Stipulation and the Settlement. In addition, ATI may also terminate the Settlement in accordance with ¶ 37 hereof.

The foregoing list is not intended to limit or impair the Parties' rights under the law of contracts of the State of Illinois with respect to any breach of this Stipulation (except as provided in ¶ 50 herein). In addition, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for an award of attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment, and shall not be grounds for termination of the Settlement.

37. In addition to the grounds set forth in ¶ 36 above, ATI shall have the unilateral right to terminate the Settlement in the event that Settlement Class Members who collectively hold shares of ATI common stock that, in the aggregate, equal or exceed the threshold (the "Opt-Out Threshold") set forth in a separate, confidential supplemental agreement with Plaintiffs (the "Supplemental Agreement"), which is incorporated by reference into this Stipulation, timely and validly request exclusion from the Settlement Class in accordance with the Notice. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Plaintiffs and Defendants concerning its interpretation or application, in which event the Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment. For the avoidance of doubt, if ATI terminates the Settlement, such termination shall apply to all other Defendants.

## NO ADMISSION OF WRONGDOING

38. Whether or not the Settlement is approved by the Court, none of the settlement agreements in principle, the facts and terms of the Settlement and this Stipulation (whether or not consummated), including the exhibits hereto and drafts thereof, and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the settlement agreements in principle and this Stipulation, nor any act performed or proceedings taken pursuant to or in connection with the settlement and

agreements in principle, this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

a) shall be offered against any of Defendants or Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of Defendants or Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of Defendants or Defendants' Releasees or in any way referred to for any other reason as against any of Defendants or Defendants' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

b) shall be offered against (a) Defendants or Defendants' Releasees as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant or Defendants' Releasees or (b) Plaintiffs or any of the other Settlement Class Members as evidence of any infirmity in the claims of Plaintiffs and the other Settlement Class Members;

c) shall be construed against Defendants or Defendants' Releasees, Plaintiffs, or the other Settlement Class Members as an admission or concession that the consideration to be paid hereunder represents the amount that could be or would have been recovered after trial or that any damages potentially recoverable in the Actions would have exceeded or would have been less than the Settlement Amount; or

d) shall be offered against any of Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of Plaintiffs' Releasees that any of their claims are without merit, that any of Defendants or Defendants' Releasees had meritorious defenses, or that damages recoverable under the complaints in the Actions would not have exceeded the Settlement Amount, or with respect to any

liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of Plaintiffs' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

*provided, however*, that if the Settlement (as embodied by this Stipulation) is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement, including, without limitation, to support a defense or claim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or claim under U.S. federal or state law or foreign law.

39.     Defendants have denied, and continue to deny, each and every claim and contention alleged in the Actions and affirm that they have acted properly and lawfully at all times.  Further, Defendants have denied expressly, and continue to deny, all allegations of wrongdoing, fault, liability, and damage against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Actions, and deny that they ever engaged in or committed any fraud, wrongdoing, improper conduct, violation of law, or breach of duty whatsoever.  Defendants also have denied, and continue to deny, that there were any materially false or misleading statements or material omissions in any of Defendants' public statements, including their filings with the U.S. Securities and Exchange Commission, or that Plaintiffs or any Settlement Class Member has suffered damage or harm of any kind.  Had the terms of the Settlement not been reached, Defendants would have continued to contest vigorously Plaintiffs' allegations, and Defendants maintain that they had and have meritorious defenses to all claims alleged in the Actions.

40.     Plaintiffs maintain, and have maintained at all times, that their claims were meritorious and brought in good faith, and continue to believe and contend that their claims have

had substantial merit at all times. Had the terms of the Settlement not been reached, Plaintiffs would have continued to prosecute their claims vigorously.

## NOTICE AS REQUIRED BY CAFA

41.     No later than ten (10) calendar days following the filing of this Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, et seq. ("CAFA"). Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least fourteen (14) calendar days before the Settlement Hearing, Defendants shall cause to be served on Plaintiffs' Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with the notice requirements of CAFA.

## MISCELLANEOUS PROVISIONS

42.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

43.     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Plaintiffs, Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment entered in favor of Defendants and the other Releasees pursuant to this Stipulation, in which event the Releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 35 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid, or payable) shall be returned as provided in ¶ 35.

44.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes between Plaintiffs and any other Settlement Class Members, on the one

STIPULATION AND AGREEMENT OF SETTLEMENT

hand, and Defendants or the Defendants' Releasees, on the other hand, with respect to the Released Plaintiffs' Claims and the Released Defendants' Claims, including Unknown Claims. Accordingly, Plaintiffs and their counsel and Defendants and their counsel agree not to assert in any forum that the Actions were brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule, or regulation relating to the institution, prosecution, defense, or settlement of the Actions. The Judgment will contain a finding that, during the course of the Actions, the Parties and their counsel complied with the requirements of Federal Rule of Civil Procedure 11, or such other similar rules as may apply to the Multiplan Actions. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, and reflect a settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

45.    While retaining their right to deny that the claims asserted in the Actions were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution), will not assert that the Actions were commenced or prosecuted in bad faith, nor will they deny that the Actions were commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel. In all events, Plaintiffs and their counsel and Defendants and their counsel shall not disparage the other's business, conduct, or reputation or that of their counsel based on the subject matter of the Actions, make any accusations of wrongful or actionable conduct by any Party concerning the prosecution, defense, and resolution of the Actions, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

46.    The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of both Plaintiffs and Defendants (or their successors-in-interest). After prior notice to the Court, but

without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of this Stipulation.

47.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by the terms of this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days.  As used in the preceding sentence, "legal holiday" bears the meaning assigned to it in Federal Rule of Civil Procedure 6(a)(6).

48.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect, though the introduction, "Whereas" clauses, and every other part of this Stipulation, the attached exhibits, and the Supplemental Agreement are meant to have legal effect.

49.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

50.    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

51.    This Stipulation and its exhibits and the Supplemental Agreement, which are material parts thereof, constitute the entire agreement among Plaintiffs and the Defendants concerning the Settlement.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation, its exhibits, or the Supplemental Agreement other than those contained and memorialized in such documents.  It is understood by the Parties that, except for the matters expressly represented herein,

the facts or law with respect to which this Stipulation is entered into may turn out to be other than, or different from, the facts or law now known to each Party or believed by such Party to be true; each Party therefore expressly assumes the risk of the facts or law turning out to be different, and agrees that this Stipulation shall be in all respects effective and not subject to termination by reason of any such different facts or law.

52.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

53.     This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

54.     The construction, interpretation, operation, effect, and validity of this Stipulation, the Supplemental Agreement, and all documents necessary to effectuate it shall be governed by the internal laws of the State of Illinois without regard to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

55.     Any action arising under or to enforce this Stipulation, or any portion thereof, shall be commenced and maintained only in the Court.

56.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

57.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.  Plaintiffs and Plaintiffs' Counsel also represent and warrant that none of Plaintiffs' direct claims in the Actions, or that could have been

alleged in the Actions, have been assigned, encumbered, hypothecated, conveyed, transferred, or in any manner granted or given, in whole or in part, to any other person or entity.

58.     Plaintiffs' Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain Final Approval by the Court of the Settlement.

59.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile or email transmission, with confirmation of receipt. Notice shall be provided by overnight mail and e-mail as follows:

      If to Lead Counsel in the Securities Subclass:

> POMERANTZ LLP
> Attn:   Jeremy A. Lieberman
> 600 Third Avenue, 20th Floor
> New York, New York 10016-1917
> Telephone: (212) 661-1100
> Facsimile: (917) 463-1044
> Email:  jalieberman@pomlaw.com

      If to Plaintiffs' Counsel for the Multiplan Subclass:

> LEVI & KORSINSKY, LLP
> Attn:  Donald J. Enright
> 1101 Vermont Ave. NW, Suite 700
> Washington, DC 20005
> Telephone: 202-524-4290
> Email: denright@zlk.com

      If to Defendants:

> WEIL, GOTSHAL & MANGES LLP
> Attn:  John A. Neuwirth and Joshua S. Amsel
> 767 Fifth Avenue
> New York, New York 10153
> Tel: (212) 310-8000
> Fax: (212) 310-8007
> Email:  john.neuwirth@weil.com

joshua.amsel@weil.com

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Attn: Scott D. Musoff
One Manhattan West
New York, New York 10001
Tel: (212) 735-3000
Fax: (212) 735-2000
Email: scott.musoff@skadden.com

60.     Except as otherwise provided herein, each Party shall bear its own costs and legal fees, subject to any rights to indemnification or advancement of costs and legal fees among Defendants themselves, except as awarded by the Court to Plaintiffs' Counsel from the Settlement Fund.

61.     Whether or not the Stipulation is approved by the Court, and whether or not the Settlement is consummated or the Effective Date occurs, the Parties and their counsel shall use reasonable efforts to keep all negotiations, discussions, acts performed, the Supplemental Agreement, and drafts, in connection with the Stipulation confidential, except as candor requires in response to questioning by a court as to the circumstances of the Settlement.

62.     All agreements made and orders entered during the course of the Actions relating to the confidentiality of information shall survive the Settlement.

63.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

64.     Nothing in this Stipulation or the negotiations or proceedings relating to the Settlement is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the joint defense privilege, the accountants' privilege, or work product immunity; further, all information and documents

transmitted between Plaintiffs' Counsel and Defendants' Counsel in connection with the Settlement shall be kept confidential and shall be inadmissible in any proceeding in any U.S. federal or state court or other tribunal in accordance with Rule 408 of the Federal Rules of Evidence, as if such Rule applied in all respects in any such proceeding or forum.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of May 13, 2024.

SIGNED:

**POMERANTZ LLP**
Jeremy A. Lieberman (admitted *pro hac vice*)
Austin P. Van (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016-1917
Telephone: 212-661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: avan@pomlaw.com

*Lead Counsel for Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

Jeremy P. Robinson
Jasmine Cooper-Little
1251 Avenue of the Americas
New York, New York   10020
Telephone: (212) 554 1400
Facsimile: (212) 554 1444

**WEIL, GOTSHAL & MANGES LLP**
John A. Neuwirth
Joshua S. Amsel
Stefania D. Venezia
Nicole E. Prunetti
Tanner S. Stanley
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
john.neuwirth@weil.com
joshua.amsel@weil.com
stefania.venezia@weil.com
nicole.prunetti@weil.com
tanner.stanley@weil.com

-and-

MUCH SHELIST, P.C.
Jason M. Rosenthal
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel: (312) 521-2437
Fax: (312) 521-2100

*Counsel for Defendants ATI Physical Therapy, Inc. (f/k/a Fortress Value Acquisition Corp. II), Labeed Diab, Joseph Jordan, Cedric Coco, Ray Wahl, John L. Larsen, John Maldonado,*

transmitted between Plaintiffs' Counsel and Defendants' Counsel in connection with the Settlement shall be kept confidential and shall be inadmissible in any proceeding in any U.S. federal or state court or other tribunal in accordance with Rule 408 of the Federal Rules of Evidence, as if such Rule applied in all respects in any such proceeding or forum.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of May 13, 2024.

**SIGNED:**

| | |
|---|---|
| **POMERANTZ LLP** | **WEIL, GOTSHAL & MANGES LLP** |
| Jeremy A. Lieberman (admitted *pro hac vice*) | John A. Neuwirth |
| Austin P. Van (admitted *pro hac vice*) | Joshua S. Amsel |
| 600 Third Avenue, 20th Floor | Stefania D. Venezia |
| New York, New York 10016-1917 | Nicole E. Prunetti |
| Telephone: 212-661-1100 | Tanner S. Stanley |
| Facsimile: (917) 463-1044 | 767 Fifth Avenue |
| Email: jalieberman@pomlaw.com | New York, New York 10153 |
| Email: avan@pomlaw.com | Tel: (212) 310-8000 |
| | Fax: (212) 310-8007 |
| *Lead Counsel for Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds* | john.neuwirth@weil.com |
| | joshua.amsel@weil.com |
| | stefania.venezia@weil.com |
| | nicole.prunetti@weil.com |
| | tanner.stanley@weil.com |
| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | -and- |
| Avi Josefson | |
| 875 North Michigan Avenue, Suite 3100 | MUCH SHELIST, P.C. |
| Chicago, Illinois 60611 | Jason M. Rosenthal |
| Telephone: (312) 373-3880 | 191 North Wacker Drive, Suite 1800 |
| Facsimile: (312) 794-7801 | Chicago, IL 60606 |
| avi@blbglaw.com | Tel: (312) 521-2437 |
| | Fax: (312) 521-2100 |
| Jeremy P. Robinson | |
| Jasmine Cooper-Little | *Counsel for Defendants ATI Physical Therapy,* |
| 1251 Avenue of the Americas | *Inc. (f/k/a Fortress Value Acquisition Corp.* |
| New York, New York 10020 | *II), Labeed Diab, Joseph Jordan, Cedric Coco,* |
| Telephone: (212) 554 1400 | *Ray Wahl, John L. Larsen, John Maldonado,* |
| Facsimile: (212) 554 1444 | |

STIPULATION AND AGREEMENT OF SETTLEMENT

| | |
|---|---|
| jeremy@blbglaw.com<br>jasmine.cooper-little@blbglaw.com<br><br>*Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System*<br><br>**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**<br>Robert D. Klausner<br>Bonni S. Jensen<br>7080 Northwest Fourth Street<br>Plantation, Florida 33317<br>Telephone: (954) 916-1202<br>Facsimile: (954) 916 1232<br>bob@robertdklausner.com<br>bonni@robertdklausner.com<br><br>*Additional Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System* | *Carmine Petrone, Joanne M. Burns, Christopher Krubert, and James E. Parisi*<br><br>*/s/ Charles F. Smith*<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**<br>Charles F. Smith<br>Laura Bernescu<br>155 North Wacker Drive<br>Chicago, Illinois 60606<br>Tel: (312) 407-0700<br>Fax: (312) 407-0411<br>charles.smith@skadden.com<br>laura.bernescu@skadden.com<br><br>Scott D. Musoff<br>One Manhattan West<br>New York, New York 10001<br>Tel: (212) 735-3000<br>Fax: (212) 735-2000<br>scott.musoff@skadden.com<br><br>*Counsel for Defendants Fortress Acquisition Sponsor II, LLC, Fortress Investment Group LLC, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Daniel N. Bass, and Micah B. Kaplan* |

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 431-7473
aaron@moka.law
andrew@moka.law

*Counsel for Phillip Goldstein*

jeremy@blbglaw.com
jasmine.cooper-little@blbglaw.com

*Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Bonni S. Jensen
7080 Northwest Fourth Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916 1232
bob@robertdklausner.com
bonni@robertdklausner.com

*Additional Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System*

*Carmine Petrone, Joanne M. Burns, Christopher Krubert, and James E. Parisi*

_____

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Charles F. Smith
Laura Bernescu
155 North Wacker Drive
Chicago, Illinois 60606
Tel: (312) 407-0700
Fax: (312) 407-0411
charles.smith@skadden.com
laura.bernescu@skadden.com

Scott D. Musoff
One Manhattan West
New York, New York 10001
Tel: (212) 735-3000
Fax: (212) 735-2000
scott.musoff@skadden.com

*Counsel for Defendants Fortress Acquisition Sponsor II, LLC, Fortress Investment Group LLC, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, Daniel N. Bass, and Micah B. Kaplan*

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
305 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 431-7473
aaron@moka.law
andrew@moka.law

*Counsel for Phillip Goldstein*

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Noah R. Gemma
1101 Vermont Ave., Suite 700
Washington, DC 20005

*Counsel for Wendell Robinson*

**JOHNSON FISTEL LLP**
Michael I. Fistel, Jr.
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
MichaelF@johnsonfistel.com

Frank J. Johnson
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
FrankJ@johnsonfistel.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York Avenue, NY 10151
Telephone: (212) 935-7400
Facsimile: (212) 756-3630
bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
prajesh@glancylaw.com

STIPULATION AND AGREEMENT OF SETTLEMENT

Shane P. Sanders
5060 Shoreham Place. Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsllp.com
csmith@robbinsllp.com
gdelgaizo@robbinsllp.com
ssanders@robbinsllp.com

*Co-Lead Counsel for the Ghaith Plaintiffs*

STIPULATION AND AGREEMENT OF SETTLEMENT