**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Austin P. Van (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

[Additional Counsel on Signature Page]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                          Plaintiffs<br>         v.<br><br>ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI,<br><br>                       Defendants. | Case No.: 1:21-CV-04349<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS**<br><br><br>**<u>CLASS ACTION</u>**<br><br>Hearing Date: September 24, 2024<br>Time: 12:15 P.M.<br>Judge: Honorable Edmond E. Chang<br>Courtroom: 2341 |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................ 7

    A. FACTUAL BACKGROUND .................................................................. 10

    B. PROCEDURAL HISTORY .................................................................... 11

II. ARGUMENT ................................................................................................. 12

    A. The Standards For Final Approval Under Rule 23(e) and Other Factors ............. 12

    B. The Settlement Is Fair, Reasonable, and Adequate .............................................. 14

        1. Plaintiffs And Plaintiffs' Counsel Adequately Represented the Class ..... 14

        2. The Settlement Is Entitled to a Presumption of Fairness Because It Arose from Arm's-Length Negotiations Among Experienced Counsel ............. 15

        3. The Settlement is a Favorable Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ...... 16

            a. Complexity, Expense And Likely Duration Of The Litigation .... 17

            b. The Risks of Establishing Liability And Damages And The Company's Financial Condition ..................................................... 19

            c. Risks of Obtaining or Maintaining Class Action Status ............... 22

            d. Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation ................................................. 23

        4. The Remaining Rule 23(e)(2)(C) Factors Support Preliminary Approval 24

        5. All Settlement Class Members Are Treated Equitably ............................. 26

        6. The Remaining Factors Are Satisfied ....................................................... 28

- i -

a.     The Extent of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved.........................28

b.     Experienced Counsel and a Mediator's Opinions Favor Approval ......................................................................................29

c.     Settlement Class Members' Reactions Favor Approval ...............30

C.     The Plan of Allocation Is Fair and Reasonable and Should Be Approved...........31

D.     The Notice Program Satisfies Rule 23, the PSLRA, and Due Process.................31

E.     Final Certification of the Settlement Class Is Appropriate...................................33

III.     CONCLUSION.................................................................................................................33

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) ..................................................................................12

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)...................................................................................31

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................................................30

*Consolidated Edison, Inc. v. Northeast Utils.*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004)......................................................................31

*Doan v. Watson*,
No. 99-4-C-B/S, 2002 WL 31730917 (S.D. Ind. Dec. 4, 2002) .............................30

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ..................................................................................30

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................................18

*Goldstein v. Fortress Acquisition Sponsor II, LLC*,
C.A. No. 2023-0582-NAC (Del. Ch.)........................................................................8

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)...........................................................25

*Hang v. Old Dominion Freight Line, Inc.*,
2024 U.S. Dist. LEXIS 87809 (C.D. Ca. May 14, 2024) ........................................22

*In re Amgen, Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).......................................................18

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................28, 30

*In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*,
No. 1-21-cv-06415 (N.D. Ill).....................................................................................7

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012).....................................................................16

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ........................................................26

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)......................................................................16

*In re Gilat Satellite Networks, Ltd.*,
No. 02-cv-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)...............................18

*In re Groupon, Inc. Sec. Litig.*,
2016 WL 3896839 (N.D. Ill. July 13, 2016)............................................................27

*In re Harnischfeger Indus., Inc.*,
212 F.R.D. 400 (E.D. Wis. 2002) ...............................................................12, 18, 31

*In re Jefferies Grp., Inc. S'holders Litig.*,
2015 WL 3540662 (Del. Ch. June 5, 2015)........................................................21, 24

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...............22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................................29

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .....................................................................29

*In re MultiPlan Corp. S'holders Litig.*,
268 A.3d 784 (Del. Ch. 2022)......................................................................17, 20, 24

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................15

*In re Northfield Labs., Inc. Sec. Litig.*,
2012 WL 366852 (N.D. Ill. Jan. 31, 2012)........................................................14, 32

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................22

*In re PLX Tech. Inc. S'holders Litig.*,
2022 WL 1133118 (Del. Ch. Apr. 18, 2022)...........................................................28

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)......................................................................................18

*In re Tesla Motors, Inc. Stockholder Litig.*,
2022 WL 1237185 (Del. Ch. Apr. 27, 2022)............................................................21

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

*In re Warner Chilcott Ltd. Secs. Litig.*,
    2008 U.S. Dist. LEXIS 99840 (S.D.N.Y. Nov. 19, 2008) ......................................................29

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..............................................................................................12, 29

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ..........................................................................................15, 25

*McCue v. MB Fin., Inc.*,
    2015 WL 1020348 (N.D. Ill. Mar. 6, 2015)...............................................................................16

*Meyenburg v. Exxon Mobil Corp.*,
    No. 05-cv-15, 2006 WL 5062697 (S.D. Ill. June 5, 2006) ........................................................30

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)...................................................................................................................32

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ...........................................................................................25

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ...................................................................................................32

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)......................................................................17, 18

*Roberti v. OSI Sys., Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ............................................................................24

*Robinson v. Fortress Acquisition Sponsor II, LLC*,
    C.A. No. 2023-0142-NAC (Del. Ch.)...................................................................................8, 20

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 2570050 (N.D. Ind. May 21, 2020) .....................................................................22, 32

*Shah v. Zimmer Biomet Holdings, Inc.*,
    2020 WL 5627171 (N.D. Ind. Sep. 18, 2020)...........................................................................14

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019).............................................................................15

*Swinton v. SquareTrade, Inc.*,
    2019 WL 617791 (S.D. Iowa Feb. 14, 2019).............................................................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .....................................................................................................13

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993)..............................................................................17, 19

*Weinstein v. RMG Networks Hldgs. Corp.*,
    C.A. No. 2018-0210-AGB (Del. Ch. July 10, 2020) ............................................................23

*White v. NFL*,
    822 F. Supp. 1389 (D. Minn. 1993)......................................................................................31

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ................................................................................................12

*Williams v. Rohm & Haas Pension Plan*,
    No. 04-cv-0078, 2010 WL 1490350 (S.D. Ind. Apr. 12, 2010)........................................28, 30

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .....................................................................................17, 27, 30

*Zhou v. Faraday Future Intelligent Electric, Inc.*,
    2024 WL 1245341 (C.D. Cal. Mar. 18, 2024)......................................................................21

**Statutes**

8 Del. C. §220 .................................................................................................................................28

15 U.S.C. §78u-4(a) ........................................................................................................................26

Private Securities Litigation Reform Act of 1995 .......................................................7, 26, 31, 32

Securities Exchange Act of 1934 ...................................................................................................10

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

**Other Authorities**

5 James Wm. Moore, *Moore's Federal Practice* §23.164[4] (3d ed. 2002) .................................30

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) .......................................................23

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds ("Lead Plaintiffs") and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System (together with Lead Plaintiffs, "Plaintiffs"), individually and on behalf of all others similarly situated, submit this memorandum in support of their Motion for Final Approval of the Settlement and Plan of Allocation. Defendants do not oppose this motion. [1]

## I.  INTRODUCTION

Plaintiffs are pleased to present for the Court's approval the proposed settlement of this securities class action. Plaintiffs and Defendants[2] reached a proposed settlement of this action and related actions for a total cash payment of $24.9 million (the "Settlement") for the benefit of class members, of which $18.9 million was specifically recovered in connection with this action.[3]

---

[1] Unless otherwise defined, all capitalized terms have the same meanings as set forth in the Stipulation and Agreement of Settlement, filed on May 13, 2024 (the "Stipulation") (ECF No. 162-1). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Van Decl." are to the Declaration of Austin P. Van, filed herewith. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata, attached as **Exhibit A** to the Van Decl. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses, and PSLRA Awards to Plaintiffs, filed herewith.

[2] Defendants are ATI Physical Therapy, Inc. ("ATI" or the "Company") f/k/a Fortress Value Acquisition Corp. II ("FVAC"), Labeed Diab, Joseph Jordan, Andrew A. McKnight, Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, Sunil Gulati, John L. Larsen, John Maldonado, Carmine Petrone, Joanne M. Burns, Christopher Krubert, James E. Parisi, Micah B. Kaplan, Cedric Coco, Ray Wahl, Daniel N. Bass, Fortress Acquisition Sponsor II LLC, and Fortress Investment Group LLC.

[3] For the sake of efficiency and judicial economy, Plaintiffs present this motion together with the plaintiffs in three actions with overlapping claims based on overlapping facts (the "*Multiplan* Plaintiffs" in the "*Multiplan* Actions") as part of a global settlement of all four actions. On December 1, 2021, May 10, 2022, and September 22, 2022, respectively, Plaintiffs Hamza Ghaith, Vinay Kumar, and Brendan Reginbald filed stockholder derivative complaints on behalf of ATI, which were subsequently consolidated and styled *In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*, No. 1-21-cv-06415 (N.D. Ill) (the "*Ghaith* Action"). The *Ghaith* Action was subsequently

- 7 -

Plaintiffs respectfully submit that the Settlement, which was reached only after protracted arm's-length negotiations conducted by well-informed and experienced counsel, is a fair, reasonable, and adequate result. As noted, the recovery in the Securities Action is $18.9 million, which exceeds 6.4% of the theoretically maximum estimated damages, and the *Multiplan* Subclass will recover $6 million for claims in the *Multiplan* Actions. If approved, the Settlement will completely resolve the Action, settling all claims of Settlement Class Members who have not submitted valid requests for exclusion. The Settlement provides a substantial recovery to the Settlement Class despite several serious risks and obstacles that Plaintiffs faced, including the amount of potentially recoverable damages, Defendants' potential defenses, Defendants' ability to pay, including due to ATI's financial troubles, and the risks of prosecuting this litigation through trial and appeals.

The terms of the Settlement are set forth in the Stipulation. In the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated May 21, 2024 ("Preliminary Approval Order") (ECF No. 172), the Court preliminarily approved the Settlement, preliminarily certified the Settlement Class for settlement purposes, and directed that notice be disseminated to potential members of the Settlement Class.

---

amended to add direct class action claims based on Delaware state law claims, in addition to the derivative claims. On February 7, 2023, Wendell Robinson filed a putative class action complaint, styled *Robinson v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0142-NAC (Del. Ch.) (the "*Robinson* Action"), in the Delaware Court of Chancery. On June 1, 2023, Phillip Goldstein filed a dual putative class action and stockholder derivative complaint, styled *Goldstein v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0582-NAC (Del. Ch.) (the "*Goldstein* Action," and together with the *Ghaith* Action and the *Robinson* Action, the "*Multiplan* Actions"). The direct class claims asserted in the *Multiplan* Actions are being resolved together with the claims in the Settlement. The derivative claims in the *Ghaith* and *Goldstein* Actions, which do not overlap with the claims here, are subject to a separate settlement, which will be presented to the Court in the *Ghaith* Action. This action and the *Multiplan* Actions are collectively referenced here and in the Stipulation of Settlement as the "Actions".

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Fed. R. Civ. P. 23(e). Plaintiffs believe their claims had merit but determined that agreeing to the Settlement was in the best interests of the Settlement Class given the serious risks faced in this complex litigation. Indeed, Plaintiffs faced potentially significant obstacles to proving their claims, such as prevailing over Defendants' serious defenses at each of class certification, summary judgment, and trial—as well as the inevitable appeals. Indeed, Defendants insisted that they did not mislead investors and that there should be no recovery at all. The recovery is especially favorable given the precarious financial condition of the Company and the fact that the Settlement amount represents virtually all of the only available source of recovery for investors—namely, the liability insurance policies that covered the conduct at issue in this Action. Rather than engaging in further expensive, protracted litigation with no assurance of success—or Defendants' ability to satisfy a judgment—Plaintiffs believe that the proposed Settlement is the best outcome for the Settlement Class as it eliminates the risks of continued litigation and ensures a substantial cash recovery for the Settlement Class. Given the obstacles to recovery and the significant amount of time, expenses and risks that continued litigation would entail, Plaintiffs respectfully submit that the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation ("Plan") is fair, reasonable, and adequate. Here, Lead Counsel developed the proposed Plan in consultation with Plaintiffs' damages expert and the Claims Administrator. The proposed Plan comports with applicable legal principles and Plaintiffs' theory of damages, and in no way favors Plaintiffs over other members of the Settlement Class. The Court should approve the Plan.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

## A.    FACTUAL BACKGROUND

During the relevant period, ATI was one of the nation's largest providers of outpatient physical therapy services, providing outpatient rehabilitation services and operating nearly 900 physical therapy clinics across 24 states.  Plaintiffs alleged that ATI and certain of its officers and directors violated Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Delaware law by, among other things, making misstatements and omissions related to ATI's physical-therapist attrition rates.  Specifically, Plaintiffs alleged that Defendants made false and misleading statements during the period from February 22, 2021 and October 19, 2021, inclusive (the "Settlement Class Period") by touting the Company's purportedly high rate of retention of physical therapists, which were essential to ATI's ability to serve its patients and critical to the Company's financial condition and growth.  Plaintiffs alleged that, in reality, ATI was suffering from severe attrition among its physical therapists.

Additionally, the *Multiplan* Actions alleged, *inter alia*, that the defendants in their actions breached their fiduciary duties to stockholders by misrepresenting and concealing critical facts necessary for stockholders to make an informed decision as to whether or not to redeem their shares for approximately $10.00 per share on June 11, 2021, and that defendants' actions were subject to entire fairness review under Delaware law.

Investors learned the truth through corrective disclosures that Plaintiffs alleged caused ATI's stock price to decline significantly.  On July 26, 2021, when ATI reported its second quarter results, the Company disclosed attrition among its physical therapists, which "prevented" it from meeting patient demand, significantly increased its labor costs and caused ATI to have to materially reduce its revenue, EBITDA and new clinic opening expectations.  As a result of these disclosures on July 26, 2021, the price of ATI stock declined 43.41%, from $8.34 per share to

- 10 -

$4.72 per share, on unusually heavy trading volume. The next day, on July 27, 2021, the price of ATI's share price declined by 19.07%, and closed at $3.82 per share.

Then, on October 19, 2021, after its Chief Executive Officer (Defendant Diab) was also terminated, ATI released its preliminary third quarter results and revealed that it had to further revise its revenue and EBITDA expectations downward because its attrition problems had materially impacted its patient visit volumes. As a result of these disclosures, the price of ATI stock declined by 21.64% on the next trading day, October 20, 2021, from $3.65 per share to $2.86 per share, on unusually heavy trading volume.

## B.    PROCEDURAL HISTORY

As detailed in Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Settlement (ECF No. 161) and the accompanying Van Declaration, the Settlement was obtained after over two years of hard-fought litigation. During the litigation, Plaintiffs investigated their claims, spoke to numerous former employees of ATI and drafted a detailed consolidated Complaint. Then, Plaintiffs briefed Defendants' voluminous motions to dismiss—and succeeded in having their claims sustained by the Court. Next, Plaintiffs engaged in substantial fact discovery, which included the production of more than 400,000 pages of documents in response to document requests, and responding to written discovery, including interrogatories. ECF No. 161, at 11-18; Van Decl., ¶¶19-26. Plaintiffs also engaged in two in-person mediation sessions, which each involved extensive negotiations—but still did not result in a resolution. It was not until several weeks later that the parties were able to reach the proposed Settlement.

The Court held oral argument on the preliminary approval motion on May 21, 2024, and entered the Preliminary Approval Order on the same day. ECF No. 172.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

## II.     ARGUMENT

### A.     The Standards For Final Approval Under Rule 23(e) and Other Factors

Rule 23(e) requires court approval for any settlement of a class action, and courts within this Circuit recognize that public policy strongly favors settlements, especially in complex class actions. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "In the class action context…there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980). A class-action settlement should be approved if it is fair, reasonable, and adequate. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011). Finally, a "strong presumption of fairness attaches to a settlement … when it is the result of … [an arm's-length] negotiation." *In re Harnischfeger Indus., Inc.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002); see also 4 NEWBERG ON CLASS ACTIONS, §11.41 (4th ed. 2010).

With respect to Rule 23(e)(2), courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)     have the class representatives and class counsel adequately represented the class;

(B)     was the proposal negotiated at arm's-length;

(C)     is the relief provided for the class adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)     the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3); and

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

(D)     does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904 at 919).

These factors are not exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918; *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional factors that are utilized by courts in the Seventh Circuit to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> In order to evaluate the fairness of a settlement, a district court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018

- 13 -

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

Amendments (324 F.R.D. at 918). As discussed below, the Settlement meets the above requirements and warrants final approval.

### B. The Settlement Is Fair, Reasonable, and Adequate

#### 1. Plaintiffs And Plaintiffs' Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." As explained below, Plaintiffs and Plaintiffs' Counsel adequately represented the Settlement Class.

First, Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class. Plaintiffs are without conflicts and their interest in obtaining the largest possible recovery in this Action is aligned with the interests of other Settlement Class Members. *See In re Northfield Labs., Inc. Sec. Litig.*, 2012 WL 366852, at *3 (N.D. Ill. Jan. 31, 2012) (finding adequacy where lead plaintiffs and class members shared the same interest—obtaining the maximum amount of recovery); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *4 (N.D. Ind. Sep. 18, 2020) ("This requirement is satisfied so long as the class representatives do not have clear conflicts of interest with the absent class members and have shown a willingness to vigorously pursue the litigation on behalf of the class."). In addition, Plaintiffs directly contributed to the Action and the recovery by scrupulously overseeing the litigation, communicating regularly with counsel, and participating in and overseeing the settlement negotiations.

Second, Plaintiffs retained counsel that are highly experienced in securities litigation, and who have a long successful track record of representing investors in such cases. *See* ECF No. 25 (Pomerantz firm resume); ECF No. 30 (BLBG firm resume); ECF No. 162, Attachment No. 9 (Levi & Korsinsky, LLP firm resume). Plaintiffs' Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Section III, *supra*) (detailing counsel's extensive investigation into

- 14 -

the Company, briefing on motions to dismiss, discovery efforts, and hard-fought mediation efforts). *See Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (finding Rule 23(e)(2)(A) satisfied where "named plaintiffs participated in the case diligently" and "class counsel fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative"). Accordingly, this factor supports final approval of the Settlement. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2. The Settlement Is Entitled to a Presumption of Fairness Because It Arose from Arm's-Length Negotiations Among Experienced Counsel

Rule 23(e)(2)(B) guides the evaluation as to whether the proposed Settlement "was negotiated at arm's-length." In this Circuit, "a settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001). Here, the Parties' settlement negotiations did not commence until after Plaintiff's Counsel engaged in extensive investigation to understand the strengths and weaknesses of the cases, defeated Defendants' wide-ranging motions to dismiss, and obtained substantial fact discovery. Further, Plaintiff's Counsel participated in significant mediation efforts and vigorous arm's length settlement negotiations. The Settlement represents a global resolution of this matter and the *Multiplan* Actions, was reached after more than two years of litigation, and was negotiated by nationally-recognized counsel with extensive experience in class action litigation, who were well versed in the strengths and weaknesses of their respective positions. Even more notably, the Settlement was negotiated under the auspices of a highly experienced mediator, former United States District Judge Layn Phillips, who ultimately made a mediator's recommendation that the

- 15 -

Parties accepted. The fact that this was a mediated outcome strongly reinforces the inference that this was an arm's-length negotiation. *See McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1, *2 (N.D. Ill. Mar. 6, 2015) (finding that settlement was the "result of extensive, arms'-length negotiations by [well-versed] counsel[,]" with the assistance of an experienced mediator, "reinforc[ing] the non-collusive nature of the settlement"). The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Judge Phillips support the conclusion that the Settlement is procedurally fair and was achieved free of collusion. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (stating that "elements [of procedural fairness] are amply satisfied here. The parties, represented by highly experienced and capable counsel, engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases."); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 377 (S.D.N.Y. 2013) (approving settlement where the "parties participated in two full-day mediation sessions" overseen by Judge Phillips).

Finally, Defendants have complied with their obligations under the Preliminary Approval Order by serving the required Class Action Fairness Action notices, and filed a status report concerning such service with the Court (ECF No. 174) and causing the remittance of the Settlement Amount in full in compliance with the Stipulation.

### 3. The Settlement is a Favorable Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant

- 16 -

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

factors. Fed. R. Civ. P. 23(e)(2)(C). As demonstrated below, each of these factors supports final approval of the Settlement.

> a.     **Complexity, Expense And Likely Duration Of The Litigation**

In determining the fairness of a settlement, courts also consider the likely "complexity, length, and expense of further litigation." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). Federal courts routinely recognize that securities litigation involves complex factual and legal issues and that continued litigation is lengthy and expensive. *See, e.g. Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at \*2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."). Here, the global Settlement resolves multiple class actions— pleading federal and state law claims—spanning multiple jurisdictions, which underscores the litigation's complexity. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). Indeed, the Settlement resolves the *Multiplan* claims that were pending in two different courts, under three different captions, involving a novel theory of liability that had only been upheld by the Chancery Court of Delaware for the first time in January of 2022. *See In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 792 (Del. Ch. 2022) (noting that "Delaware courts have not previously had an opportunity to consider the application of our law in the SPAC context" and describing SPAC case as presenting "novel issues").

Moreover, the global Settlement "avoids the expense of continuing the litigation. Continued litigation would require significant attorney and expert time, use of computer graphics

- 17 -

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

and technical support in the courtroom, as well as the usual cost of trial, such as travel or copying. Thus, the cost of litigation is quite high and is significantly reduced by settlement." *Retsky*, 2001 WL 1568856, at *2. Here, continued litigation would have been costly, risky, and protracted. Indeed, Plaintiffs in the Securities Action still faced major litigation hurdles—such as class certification, summary judgment, trial, and the inevitable appeals. Any of these events could have substantially reduced or eliminated any recovery for Class members.

Success was not, of course, a forgone conclusion. For example, although Plaintiffs believed a motion for class certification would have been meritorious, Defendants would have most likely opposed the motion. Failure to obtain class certification would have eliminated any potential benefit to the Settlement Class. Moreover, Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are by their very nature, expensive, risky, and uncertain. *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("[s]ecurities class actions are generally complex and expensive"); *Harnischfeger*, 212 F.R.D. at 409 ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."). Where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court[,]" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998), the recovery of a substantial sum certain today weighs in favor of the Settlement.

In addition, any judgment favorable to the Settlement Class would be the subject of posttrial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation); *In re Amgen, Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-

- 18 -

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation.").

Even if Plaintiffs prevailed after trial and appeals, there is no guarantee that Plaintiffs would have obtained a judgment greater than the $24.9 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief*, 840 F. Supp. at 282 ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). Indeed, beyond the usual complexities of damages analysis securities fraud litigation, no court has yet rendered a final judgment as to the damages in an action for *Multiplan* claims, and the proper measure of damages for such claims remains uncertain. The Settlement resolves all the complexities associated with any attempt to analyze and prove such damages.

   **b.**   **The Risks of Establishing Liability And Damages And The Company's Financial Condition**

Defendants raised a number of serious arguments concerning, among other things, falsity, scienter, loss causation and damages that—if accepted—would have substantially reduced, or completely eliminated, recoverable damages. For example, Defendants argued that Plaintiffs failed to plead any actionable misrepresentations because Plaintiffs would be unable to prove that ATI was experiencing actual problems with attrition and retention of physical therapists or was doing so prior to the Company disclosing it to investors. Defendants also argued that their statements concerning attrition were not materially misleading since any minor physical therapist attrition in random markets was viewed as merely short term, resulting from the lingering effects of the COVID-19 pandemic and the ensuing challenges faced by a patient services (and largely in-person) industry and the labor market generally. Relatedly, Defendants claimed that ATI was

confident that the targeted action plans the Company deployed to address the attrition problem would prevent the development of more widespread attrition that might affect the Company's bottom line, including the ability to meet forward-looking guidance for fiscal year 2021. Thus, Defendants argued, ATI did not believe that any localized attrition or staffing challenges rendered the retention statements or state-of-clinic statements materially false or misleading., nor was there any known attrition trend that ATI should (or could) have disclosed.

Defendants challenged whether the October 19, 2021 Press Release was in fact a corrective disclosure since Defendants claimed it said nothing about attrition and, thus, provided no causal connection between that disclosure and the alleged loss. If Defendants had prevailed on any or all of these issues, damages would have been significantly reduced or even eliminated. Likewise, the Securities Action asserts a class period between February 22, 2021 and October 19, 2021. If Defendants' renewed challenges to the October 19, 2021 statements were successful, the class period would be shortened and total damages would fall significantly.

The *Multiplan* Subclass also faced several additional risks absent the Settlement. As an initial matter, the *Multiplan* Subclass's claims were premised on "novel issues" that lacked a body of developed caselaw. *See MultiPlan*, 268 A.3d at 792. This undeveloped caselaw—lacking any Delaware Supreme Court SPAC decisions as guidance—raised exceptional risks and uncertainties, which posed strong threats to monetary recovery.

For example, the *Multiplan* Subclass's claims would have been worthless if the business judgment standard of review applied. During the hearing on Defendants' motions to dismiss the *Robinson* Action's complaint, the Court of Chancery suggested a willingness to apply the business judgment rule, proffered numerous criticisms of Robinson's core legal theories, and stayed

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

relatively silent during the Robinson Defendants' presentations. En. Dec. Ex. B.[4] Notably "if the business judgment rule had applied in the case, Plaintiffs presumably would have received no recovery" and would have almost certainly lost the motions to dismiss, "in which case the benefit here would be remarkable." *In re Jefferies Grp., Inc. S'holders Litig.*, 2015 WL 3540662, at *3 (Del. Ch. June 5, 2015). Even if he had overcome the motions to dismiss, Robinson faced the risk that the *Multiplan* Subclass's claims would be released without any money allocated to them specifically. *See Zhou v. Faraday Future Intelligent Electric, Inc*., 2024 WL 1245341 (C.D. Cal. Mar. 18, 2024). Moreover, absent the Settlement, the *Multiplan* Subclass would have shouldered the risk that the novel legal issues would hamper the ability to prove damages to the Court's satisfaction. *See, e.g., In re Tesla Motors, Inc. Stockholder Litig*., 2022 WL 1237185 (Del. Ch. Apr. 27, 2022) (holding that plaintiffs were not entitled to any monetary recovery because even if the entire fairness standard of review applied, the plaintiffs failed to prove damages).

Finally, even if Plaintiffs were to succeed on the merits of their claims, the reality is that they would have had little hope of any greater financial recovery that the proposed Settlement given ATI's precarious financial condition. Indeed, as recently as November 6, 2023, ATI disclosed that its limited liquidity, including less than $20 million in available cash and equivalents, posed a threat to its ability to remain a going concern. Indeed, ATI has repeatedly warned investors of the very real risk of bankruptcy should it fail to secure additional financing or successfully pursue other liquidity pathways. This risk was compounded by the fact that ATI carried indemnification obligations to the FVAC Defendants arising out of the Business Combination that applied to this (and all related) litigation. Moreover, the available insurance

---

[4] Citations to "En. Decl." are to the Declaration of Donald J. Enright in support of interveners' motion for an award of attorneys' fees, service awards, and reimbursement of litigation expenses, filed concurrently.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

coverage was in "wasting" insurance policies with modest policy limits, and is being essentially entirely exhausted by the Settlement. Facing the Actions in two different courts and at least three different cases, continued litigation would thus serve only to deplete the limited insurance coverage— what ultimately was the only realistic potential source for recovery.

Ultimately, while Plaintiffs believed their claims had merit, success was not guaranteed and a loss would have had significant negative consequences, including the potential for obtaining zero recovery for investors. *See Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 2570050, at *4 (N.D. Ind. May 21, 2020) ("Any hiccup or win for Defendants along the way would have reduced that total possible amount of recovery."). Given the totality of the circumstances, the variety and severity of the risks faced by Plaintiffs, and the significant ability-to-pay concerns, the Settlement reflects an outstanding outcome.

### c. Risks of Obtaining or Maintaining Class Action Status

The risk of obtaining and maintaining class action status supports final approval. Defendants, who previously filed multiple motions to dismiss, would likely have opposed the motion. *See Hang v. Old Dominion Freight Line, Inc.*, 2024 U.S. Dist. LEXIS 87809, at *19 (C.D. Ca. May 14, 2024) ("The Court thus finds that the complexity of the class certification process and Defendant's likely opposition, as forecasted by their multiple motions to dismiss, pose a risk to maintaining the class through trial. Accordingly, this factor weighs in favor of final approval."). Even assuming class certification was achieved, the Court could have revisited certification at any time— presenting a continuous risk that this case, or particular claims, might not be maintained on a class wide basis through trial. *See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the certification would

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

survive through trial, as Defendants might have sought decertification or modification of the class").

### d. Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation

The $24,900,000 all cash Settlement Amount is well within the range of reasonableness under the circumstances, which supports final approval of the Settlement.  Securities Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed at both summary judgment and after a jury trial, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation—*i.e.*, Plaintiffs' ***best-case scenario*** for the Securities Subclass—the total ***maximum theoretical*** damages that could conceivably be achieved would be approximately $293 million for purchasers of ATI Securities and holders of FVAC Common Stock.  Thus, the $18.9 million Settlement Amount for the Securities Subclass represents approximately 6.4% of the total ***maximum*** damages ***theoretically*** available to the Securities Subclass.  A recovery exceeding 5% is well above the median recovery in securities class action settlements.[5]

The *Multiplan* Subclass will recover $6 million in settlement of the direct claims in the *Multiplan* Actions.  This represents an outstanding result compared to many Delaware settlements.  *Cf. Weinstein v. RMG Networks Hldgs. Corp.*, C.A. No. 2018-0210-AGB (Del. Ch. July 10, 2020) (Delaware Court of Chancery approved $1.5 million settlement that would be divided among two subclasses).  This $6 million recovery is a strong outcome because, *inter alia*, the Court of Chancery expressed a willingness to dismiss the *Multiplan* Subclass's claims and apply the

---

[5] *See* ECF No. 162-8 (excerpt from Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at p. 24 (Fig. 22)) (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages); *see also id.* at 23 (Fig. 21) (median recovery was 2.8% for securities class actions with estimated damages between $100-$199 million that settled between December 2012-December 2021).

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

business judgment rule when commenting that "I don't think, under Delaware law, absent some sort of unusual circumstances, that that, itself, would give rise to application of entire fairness,"[6] that the *Multiplan* Subclass's claims presents "very unique and distinct facts from *MultiPlan*,"[7] and that "everybody's interests were aligned" as opposed to conflicted.[8]  Notably "if the business judgment rule had applied in the case, Plaintiffs presumably would have received **no** recovery had they gone to trial, in which case the benefit here would be remarkable."  *Jefferies*, 2015 WL 3540662, at *3.  Indeed, "[t]he adequacy of this amount is reinforced by the fact that the amount was originally recommended by [Hon. Layn Phillips], an objective and informed third-party during the mediation process" after several weeks of vigorous negotiations, and after the Securities Action reached an agreement in principle.  *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *4 (C.D. Cal. Dec. 8, 2015).

In light of these risks, the Settlement Amount is well within the range of reasonableness, weighing in favor of final approval.  *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

### 4. The Remaining Rule 23(e)(2)(C) Factors Support Preliminary Approval

Under Rule 23(e)(2)(C), courts also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of

---

[6] En. Dec. Ex. B at 42.
[7] En. Dec. Ex. B at 48.
[8] En. Dec. Ex. B at 47.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors generally support—and certainly do not weigh against—approval of the Settlement.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for accomplishing both tasks. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the plan of allocation), after Court approval. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[9] *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

*Second*, as disclosed in the Notice, Plaintiffs' Counsel are applying for a percentage of the common fund fee award in an amount not to exceed 25% to compensate them for the services rendered on behalf of the Settlement Class. Attorneys' fees of up to 25% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) are reasonable in light of the work performed and the results obtained.[10] More importantly, approval of the requested

---

[9] This is not a claims-made settlement. *See* Stipulation ¶14.

[10] *See, e.g.*, *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation.").

- 25 -

attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶17.

*Third*, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement pursuant to which ATI may terminate the Settlement if Settlement Class Members having a certain number of shares that calculate to a Recognized Loss Amount under the Plan of Allocation exclude themselves from the Settlement Class. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.[11]

### 5. All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. The Settlement does not provide preferential treatment to Plaintiffs or any other segment of the Settlement Class.[12] Instead, it provides for two sources of class recoveries for the two sets of claims that were being prosecuted in the Actions.

The proposed Plan of Allocation for the Securities Subclass, which was developed by Lead Plaintiffs' damages expert in consultation with Lead Counsel, is set forth in the Notice and provides a fair and reasonable method to allocate the Net Securities Settlement Fund among Securities Subclass Members who submit valid Claim Forms. *See* Notice (Ex. A to the Bravata Decl. (Van Decl., Ex. A)), ¶¶58-85. Under the Plan of Allocation, the Claims Administrator will

---

[11] *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

[12] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. § 78u-4(a).

- 26 -

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

calculate a Recognized Loss Amount for each Authorized Claimant's purchases and/or sales of ATI Securities and/or FVAC Common Stock during the Settlement Class Period for which adequate documentation is provided. *Id*. The calculation of each Settlement Class Member's Recognized Loss Amount under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the ATI Securities and/or FVAC Common Stock was purchased and sold, the purchase and sale price, and the estimated artificial inflation in the price of the common stock at the time of purchase and sale. A "Recognized Claim" under the Plan of Allocation shall be the sum of an Authorized Claimant's Recognized Loss Amounts for all shares of his, her or its ATI Securities and/or FVAC Common Stock, and the Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims. Similar plans have repeatedly been approved by courts in this District.[13]

As to the *Multiplan* Subclass, the Plan of Allocation provides that the Multiplan Subclass Fund will be allocated on a *pro rata* per share basis among Authorized Claimants who beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date who were entitled to but did not redeem such shares. Each share of FVAC Class A Common Stock that was held by an Authorized Claimant as of June 11, 2021 will be a Multiplan Eligible Share. Each Authorized Claimant will be eligible to receive a *pro rata* payment from the Multiplan Subclass Fund equal to the product of (i) the number of Multiplan Eligible Shares held by the Authorized Claimant; and (ii) the "Per-Share Recovery" for the Multiplan Subclass Fund, which will be determined by dividing the total amount of the Multiplan Subclass Fund by the total number of

---

[13] *See e.g.*, *Great Neck*, 212 F.R.D. at 410 ("The plan is similar to those utilized in other securities class action cases and provides an equitable basis for distributing the fund to eligible class members."); *Wong*, 773 F.3d at 865 (similar); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3 (N.D. Ill. July 13, 2016) (similar).

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

Multiplan Eligible Shares held by all Authorized Claimants. This is a standard method of allocation, which is routinely applied and approved in the Delaware Chancery Court for settlement of similar claims. *See, e.g.*, *In re PLX Tech. Inc. S'holders Litig.*, 2022 WL 1133118, at \*5-6 (Del. Ch. Apr. 18, 2022).

**6.      The Remaining Factors Are Satisfied**

**a.      The Extent of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved**

To ensure access to sufficient information to evaluate a case's merits and a settlement's adequacy, Seventh Circuit courts consider the stage of the litigation. *Williams*, 2010 WL 1490350, at \*7. The relevant inquiry here is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011).

Here, the Settlement represents a global resolution of this matter and the *Multiplan* Actions, and was reached after more than two years of litigation, during which Plaintiffs and their experienced counsel, *inter alia*: (i) conducted a comprehensive investigation, including the retention of a private investigator who, along with counsel, interviewed multiple former ATI employees, and consultation with accounting and finance experts; (ii) Plaintiffs in the *Multiplan* Actions conducted a substantial books and records investigation under Section 220 of the Delaware General Corporation Law, which resulted in extensive pre-litigation access to Defendants' internal non-public documents and provided substantial support for the *Multiplan* claims; (iii) drafted and filed highly detailed complaints, including the 78-page Consolidated Amended Class Action Complaint for Violation of the Federal Securities laws in the Securities Action; (iii) engaged in voluminous briefing related to Defendants' motions to dismiss; (iv) pursued considerable fact

- 28 -

discovery, which included serving and responding to party discovery requests; (v) conducted a targeted review of approximately 350,000 pages of documents produced by Defendants; (vi) conducted extensive consultations with experts to evaluate potential damages; (vii) drafted detailed mediation statements which included relevant exhibits and addressed both liability and damages; (viii) participated in two formal in-person mediation sessions before former federal judge the Honorable Layn Phillips of PADRE, one of the nation's preeminent securities class action meditators; (ix) engaged in extensive negotiations regarding the terms of the proposed Settlement; and (x) worked with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class members fairly. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *In re Warner Chilcott Ltd. Secs. Litig.*, 2008 U.S. Dist. LEXIS 99840, at *4 (S.D.N.Y. Nov. 19, 2008) ("All parties have been represented by capable counsel and this Court is persuaded that everyone has at least a relatively clear view of the strengths and weaknesses of their respective cases.").

Plaintiffs and Class Counsel were well informed to evaluate the Action's strengths and weaknesses. Accordingly, this factor weighs in favor of the Court's approval of the Settlement.

### b. Experienced Counsel and a Mediator's Opinions Favor Approval

Experienced counsel's opinions—with the support of a mediator—support final approval and carry great weight. *Isby*, 75 F.3d at 1200; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements by … well-respected attorneys"). Approval of a settlement is favored if it is "clearly and fairly arrived at through arms-length negotiations between and among some exceptionally talented attorneys, with help from some equally experienced and talented

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

mediators." *Williams v. Rohm & Haas Pension Plan*, No. 04-cv-0078, 2010 WL 1490350, at *4 (S.D. Ind. Apr. 12, 2010); *Doan v. Watson*, No. 99-4-C-B/S, 2002 WL 31730917, at *1 (S.D. Ind. Dec. 4, 2002); *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *see also Accretive*, 773 F.3d at 864 (counsel accepting mediator's proposal were highly experienced and weighed in favor of affirming district court's approval of securities settlement).

As explained above, *see supra* at II(B)(2), the Settlement was negotiated by experienced counsel on both sides with the assistance of mediator. Based on their extensive experience and expertise, with the benefit of a well-regarded mediator of complex litigation, all counsel strongly endorsed the Settlement as fair and reasonable and support final approval. These recommendations favor the Settlement's final approval. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.164[4] (3d ed. 2002) ("The more experience that Lead Counsel possesses, the greater weight a court tends to attach to counsel's opinions[.]"). Deficiency concerns are typically grounded in evidence of a previous relationship between the parties, outrageous attorneys' fees, or a class that is sold short or bitterly divided by competing interests. No such circumstances exist here. Consequently, Plaintiffs' Counsel's belief in the fairness and reasonableness of the Settlement supports approval.

### c. Settlement Class Members' Reactions Favor Approval

Settlement Class Members' reactions to the Settlement strongly favor approval. *AT&T*, 789 F. Supp. 2d at 958. A "relatively small number" of objections is "an indication of a settlement's fairness." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001); *see also Meyenburg v. Exxon Mobil Corp.*, No. 05-cv-15, 2006 WL 5062697, at *6 (S.D. Ill. June 5, 2006) (nine objections is a "minuscule" amount). Despite widespread notice, no Settlement Class Member to date has objected nor requested exclusion. Bravata Decl., ¶¶14-15. To the extent that

- 30 -

there are any objections, they will be addressed in Plaintiffs' reply papers.

### C. The Plan of Allocation Is Fair and Reasonable and Should Be Approved

Plaintiffs respectfully request the Plan of Allocation's approval because it is fair and reasonable. *Harnischfeger*, 212 F.R.D. at 410. Courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). An allocation formula need only have a reasonable, rational basis, particularly if "experienced and competent" lead counsel recommends it. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993). As detailed in Section II(B)(5) *supra*, the Plan of Allocation for the Securities Subclass provides a formula for calculating a Settlement Class Member's Recognized Loss Amount, similar to plans which have repeatedly been approved by Courts in this District. The Plan of Allocation for the *Multiplan* Subclass also sets forth a standard method of allocation, which is routinely applied and approved in the Delaware Chancery Court for settlement of similar claims. The Plan of Allocation will result in a fair and equitable distribution of proceeds among Settlement Class Members who submit valid claims, as all Settlement Class Members are treated equally with each receiving no more or less than their *pro rata* share, based on their recognized claim. To date, no Settlement Class Member has objected to the Plan of Allocation. Bravata Decl., ¶15.

### D. The Notice Program Satisfies Rule 23, the PSLRA, and Due Process

Rule 23(c)(2)(B) requires a certified class to be provided with "the best notice that is practicable under the circumstances[.]" Substantive due process requires that settlement notice "fairly apprise the … members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Consolidated Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004). Notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Courts are given substantial latitude to determine fair and expedient procedures. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). Plaintiffs provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved. In total, 33,824 potential Settlement Class Members were either mailed a Notice Packet or emailed a direct link to the Notice Packet. Bravata Decl., ¶9. The Claims Administrator also published the Court-approved Summary Notice online in *GlobeNewswire* on July 5, 2024. *Id.*, ¶11, Ex. C. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.*, ¶13. The notice plan executed here directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

As required by Fed. R. Civ. P. 23(c)(2)(B), the Notice informs Settlement Class Members of, among other things: (a) the nature of the Action; (b) the Settlement Class definition; (c) the claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a Settlement Class Member to enter an appearance; (f) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions, manner, and time for doing so; (g) the right of a Settlement Class Member to object to any aspect of the Settlement, and the instructions, manner, and time for doing so; (h) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement Hearing.

The Court in the Preliminary Approval Order (¶¶7-8) approved the Notice, the Claim Form, and the Summary Notice and found that it satisfies Rule 23, the U.S. Constitution, the Due Process Clause, and the PSLRA. Courts routinely find that these methods of notice are sufficient. *See, e.g., In re Northfield Labs.*, 2012 WL 366852; *Zimmer Biomet*, 2020 WL 2570050, at *5

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

(approving virtually identical notice program).

### E. Final Certification of the Settlement Class Is Appropriate

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes under Fed. R. Civ. P. 23(a) and (b)(3). ECF No. 172, ¶1. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' brief in support of preliminary approval (ECF No. 161), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### III. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement, notice, and Plan of Allocation and final certification of the Settlement Class.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

Dated:  August 20, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Austin P. Van*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jeremy P. Robinson
Jasmine Cooper-Little
1251 Avenue of the Americas
New York, New York   10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
jeremy@blbglaw.com
jasmine.cooper-little@blbglaw.com

*Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Bonni S. Jensen
7080 Northwest Fourth Street
Plantation, Florida   33315
Telephone: (954) 916-1202
Facsimile:  (954) 916-1232
bob@robertdklausner.com
bonni@robertdklausner.com

*Additional Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System*

- 34 -

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2024 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

- 35 -

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 1:21-CV-04349