**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Austin P. Van (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and on Behalf of All Other Persons Similarly Situated, <br><br> Plaintiffs <br><br> v. <br><br> ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI, <br><br> Defendants. | Case No.: 1:21-CV-04349 <br><br> **CLASS ACTION** <br><br> Hearing Date: September 24, 2024 <br> Time: 12:15 P.M. <br> Judge: Honorable Edmond E. Chang <br> Courtroom: 2341 |

**DECLARATION OF AUSTIN P. VAN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PSLRA AWARDS TO PLAINTIFFS**

I, Austin P. Van, hereby declare as follows:

1.    I am a Partner of the law firm of Pomerantz LLP, court-appointed Lead Counsel for Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds ("Lead Plaintiffs"), and counsel for the proposed Settlement Class.  I was personally involved in the litigation of this securities class action, together with Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Klausner, Kaufman, Jensen & Levinson, Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System ("Melbourne Firefighters," and, together with Lead Plaintiffs, "Plaintiffs").  I am admitted pro hac vice before this Court.  I have personal knowledge of the matters testified to herein and, if called upon, I could and would completely testify thereto.

2.    I submit this declaration in support of Plaintiffs' Motions for: (1) Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class; and (2) Award of Attorneys' Fees and Expenses and PLSRA Awards to Plaintiffs, filed concurrently herewith.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees, reimbursement of expenses, and award to Plaintiffs are reasonable and should be approved by the Court.

3.    The Settlement creates a gross settlement fund of $18,900,000 for the Securities Subclass (defined below) and $6,000,000 for the *Multiplan* Subclass, plus accrued interest—for a

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation and Agreement of Settlement, filed on May 13, 2024 ("Stipulation") (ECF No. 162-1). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, attached hereto as **Exhibit A**.  Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and Award to Lead Plaintiffs, filed herewith.

total recovery of $24.9 million for the benefit of the Settlement Class. After attorneys' fees, reimbursement of expenses, award to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of "all persons and entities who: (a) purchased or otherwise acquired ATI Securities between February 22, 2021 and October 19, 2021, both dates inclusive, and/or beneficially owned and/or held FVAC common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting to vote on the proposed Business Combination (the "Securities Subclass"); and/or (b) beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date and were entitled to, but did not elect to, redeem their shares (the "*Multiplan* Subclass")." Stipulation, ¶1(jjj).[2]

4.      The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

5.      Attached hereto as **Exhibit A** is a true and correct copy of the Declaration of Josephine Bravata on Behalf of Strategic Claims Services Regarding Notice Administration ("Bravata Decl."), dated August 20, 2024.

6.      Attached hereto as **Exhibit B** is a true and correct copy of the Declaration of Jeremy P. Robinson on behalf of Bernstein Litowitz Berger & Grossman in Support of Lead Counsel's

---

[2] Excluded from the Settlement Class are: "(i) Defendants; (ii) current and former Officers and directors of the Company; (iii) members of the Immediate Family of each of Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and Officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, Officers, directors, and any other individual or entity in which any of Defendants has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of all such excluded parties; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded from the Settlement Class are any persons or entities who timely and validly exclude themselves from the Class in accordance with the requirements set forth in the Notice and Rule 23 of the Federal Rules of Civil Procedure." *Id.*

Motion for Attorneys' Fees and Litigation Expenses ("BLB&G Fee Decl."), dated August 19, 2024.

7.      Attached hereto as **Exhibit C** is a true and correct copy of the Declaration of Robert D. Klausner on behalf of Klausner, Kaufman, Jensen & Levinson in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Klausner Fee Decl."), dated August 9, 2024.

8.      Attached hereto as **Exhibit D** is a true and correct copy of the Declaration of Menachem Neeman, Chief Legal Counsel of Phoenix Financial Ltd., on behalf of Lead Plaintiffs ("Neeman Decl."), dated August 20, 2024.

9.      Attached hereto as **Exhibit E** is a true and correct copy of the Declaration of Payton Jones, Chairman of the Board of City of Melbourne Firefighters' Retirement System, in Support of:  (I) Securities Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Jones Decl."), dated August 12, 2024.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.      FACTUAL BACKGROUND

10.      During the relevant period, ATI was one of the nation's largest providers of outpatient physical therapy services, providing outpatient rehabilitation services and operating nearly 900 physical therapy clinics across 24 states.  Plaintiffs alleged that ATI and certain of its officers and directors violated Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Delaware law by, among other things, making misstatements and omissions related to ATI's physical-therapist attrition rates.  Specifically, Plaintiffs alleged that Defendants made false and misleading statements during the period from February 22, 2021 and October 19, 2021, inclusive (the "Class Period") repeatedly touting the Company's purportedly

4

high rate of retention of physical therapists, which were essential to ATI's ability to serve its patients and critical to the Company's financial condition and growth. Unbeknownst to investors, however, ATI was allegedly suffering from severe attrition among its physical therapists—at a rate of more than twice the industry average—which crippled its ability to meet patient demand.

11. Investors learned the truth through two alleged corrective disclosures that caused ATI's stock price to decline significantly. The truth began to emerge before the market opened on July 26, 2021, when ATI disclosed that it was suffering from severe attrition among its physical therapists, which "prevented" it from meeting patient demand, significantly increased its labor costs and caused ATI to have to materially reduce its revenue, EBITDA and new clinic opening expectations. At the same time, further underscoring the extent of its attrition problems, ATI announced the sudden termination of its Chief Human Resources Officer.

12. As a result of these disclosures on July 26, 2021, the price of ATI stock declined 43.41%, from $8.34 per share to $4.72 per share, on unusually heavy trading volume. The next day, on July 27, 2021, the price of ATI's share price declined by 19.07%, and closed at $3.82 per share.

13. Then, on October 19, 2021, after its Chief Executive Officer (Defendant Diab) was also terminated, ATI released in a press release its preliminary third quarter results and revealed that it had to further revise its revenue and EBITDA expectations downward because its attrition problems had materially impacted its patient visit volumes. Again, ATI's stock price fell precipitously.

14. As a result of these post-market day disclosures on October 19, 2021, the price of ATI stock declined by 21.64% on the next trading day, October 20, 2021, from $3.65 per share to $2.86 per share, on unusually heavy trading volume.

B.     PROCEDURAL HISTORY

15.     The Securities Action was initiated on August 16, 2021 by Plaintiffs Kevin Burbige and Ziyang Nie.  On November 18, 2021, the Court consolidated *City of Melbourne Firefighters' Retirement System v. ATI Physical Therapy Inc.,* No. 1:21-cv-05345 (N.D. Ill.), into the Securities Action.  The Court further appointed Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds as Lead Plaintiffs.

16.     Over the next few months, Plaintiffs' Counsel conducted a comprehensive investigation into the allegedly wrongful acts of Defendants.  This investigation included extensive review of ATI's filings with the Securities and Exchange Commission, in-depth legal research, and, assisted by a private investigator, interviews of multiple former ATI employees.  Plaintiffs' Counsel also consulted with accounting and finance experts regarding Plaintiffs' claims.

17.     On February 8, 2022, Plaintiffs filed the operative complaint (the "Complaint"), which included Melbourne Firefighters as a named plaintiff and included its counsel.  ECF No. 58.  The Complaint asserts claims against Defendants under Sections 10(b), 14(a), and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rules 10b-5 and 14a-9 promulgated thereunder.  The Complaint alleges, among other things, that during the period February 22, 2021 through October 19, 2021, both dates inclusive, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about ATI, and the Company's business, operations, and prospects.

18.     Specifically, the Complaint alleges that Defendants allegedly failed to disclose to investors:  (1) that ATI was experiencing attrition among its physical therapists; (2) that ATI faced increasing competition for clinicians in the labor market; (3) that, as a result of the foregoing, the Company faced difficulties retaining therapists and incurred increased labor costs; (4) that, as a

6

result of the labor shortage, the Company would open fewer new clinics; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. The Complaint also alleges that, as a result of Defendants' alleged misrepresentations, Plaintiffs acquired ATI Securities at artificially inflated prices during the period February 22, 2021 through October 19, 2021, both dates inclusive, and/or beneficially owned and/or held shares of FVAC Class A common stock as of May 24, 2021, the Record Date for shareholders to be eligible to vote on the Business Combination, and suffered damages when the truth regarding the alleged misrepresentations was allegedly revealed.

19. Defendants denied all of the allegations, and on April 11, 2022, filed two motions to dismiss the Complaint in its entirety. One motion was filed by ATI, Labeed Diab (the former CEO of ATI), and Joseph Jordan (the CFO of ATI). ECF No. 68. The other motion was filed by Andrew McKnight, the former CEO of FVAC, and Joshua A. Pack, Marc Furstein, Leslee Cowen, Aaron F. Hood, Carmen A. Policy, Rakefet Russak-Aminoach, and Sunil Gulati. ECF No. 71.

20. Plaintiffs' Counsel thoroughly researched the issues raised by Defendants. On June 10, 2022, Plaintiffs filed an extensive opposition to Defendants' motions to dismiss. ECF No. 78. Plaintiffs' Counsel also reviewed Defendants' reply papers filed on July 25, 2022. ECF Nos. 81-82.

21. On September 6, 2023, the Court largely denied Defendants' motions to dismiss—dismissing a small number of claims.

22. Defendants answered the Complaint on October 19, 2023. ECF Nos. 116-117.

23. Thereafter, the Parties engaged in fact discovery. Plaintiffs' Counsel drafted extensive requests for production and served interrogatories. After meet and conferring,

7

Defendants produced more than 400,000 pages of documents in response to document requests, and responded to written discovery, including interrogatories. Plaintiffs' Counsel's team of attorneys conducted targeted reviews of the productions and reviewed Defendants' interrogatory responses.

## II. OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

24. During discovery, the parties to the Securities Action agreed to engage in an in-person mediation session on December 18, 2023 under the supervision of former district judge Layn Phillips, one of the nation's preeminent securities mediators.

25. In advance of the mediation, the parties exchanged detailed mediation statements. During the in-person mediation session, the parties engaged in vigorous negotiations, but did not reach a resolution at that time.

26. Following additional arm's length negotiations, Judge Phillips issued a mediator's recommendation to resolve the Securities Action for a total of $18.9 million, which the parties accepted on a double-blind basis. On January 19, 2024, the Securities Parties reached a tentative agreement in principle to settle the Securities Action. *Id*.

27. On January 22, 2024, the Securities Parties informed the Court that they had reached an agreement in principle to settle the Securities Action and requested a stay of all deadlines and proceedings, including all discovery deadlines, for fifty (50) days to allow the Parties to formalize the settlement agreement and to seek preliminary and final approval of the settlement. ECF No. 141. That same day, the Honorable Young B. Kim, who had been appointed by the Court to supervise discovery, granted the motion to stay discovery and ordered the Securities Parties to "file a joint status report by February 9, 2024, updating the court on the settlement documents." ECF No. 142.

28.     Following the January 19, 2024 settlement agreement in principle, Defendants engaged in settlement discussions, including during additional mediation sessions supervised by the Mediator, with the plaintiffs in the *Multiplan* Actions.  Stipulation, ¶(N).

29.     On February 9, 2024, the Securities Parties submitted a joint status report updating the Court of their continued efforts to file with the Court a written settlement agreement, along with a motion for preliminary approval of the settlement, by March 12, 2024.  ECF No. 144.  On February 10, 2024, Judge Kim issued a docket entry requiring the Securities Parties to submit another status report by February 19, 2024, "with more specificity on the status of the settlement documents."  ECF No. 145.

30.     On February 19, 2024, the Securities Parties submitted a status report in accordance with the Court's February 10 Order, informing the Court that "[t]he negotiation of certain terms and conditions of the settlement in principle are ongoing" and that the Securities Parties are actively engaged to finalize the settlement documentation to submit for the Court's consideration by March 12, 2024.  ECF No. 146.

31.     In light of the Parties' active negotiations, on February 20, 2024, the Court entered a docket entry that the discovery stay will be lifted "unless the parties file their motion for preliminary approval of class settlement by March 19, 2024."  ECF No. 147.

32.     Following extensive negotiations, the Parties executed the Stipulation on May 13, 2024.

33.     On May 13, 2024, Plaintiffs moved for preliminary approval of the Settlement. ECF No. 161.  The Court held oral argument on the preliminary approval motion on May 21, 2024, and entered the Preliminary Approval Order on the same day.  ECF No. 172.

34. In the opinion of Lead Counsel and, indeed, all of Plaintiffs' Counsel, the Settlement is fair, reasonable, and adequate and a strong result for the Settlement Class. The Settlement confers a certain and immediate benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

35. As set forth herein and in the Final Approval Brief, the *Multiplan* Subclass will recover $6 million in settlement of the direct claims in the *Multiplan* Actions, and the Securities Subclass will recover $18.9 million. The $18.9 million Settlement Amount represents approximately 6.4% of the total maximum damages of $293 million potentially available to the Securities Subclass under their best-case scenario as estimated by Plaintiffs' damages expert, despite significant risk. This maximum estimated amount could only be recovered if: (1) all the claims alleged survived to trial; (2) a class was certified; (3) a jury adopted Plaintiffs' expert's damages model; (4) Plaintiffs defeated any appeals; and (5) Defendants had the ability to pay such a judgment.

36. A lump sum cash settlement in the face of these challenges is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

37. For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 25% of only the portion of the Settlement Fund that was specifically

obtained in the Securities Action for the benefit of the Securities Subclass, or $4,725,000.00, plus interest earned thereon, and reimbursement of litigation expenses of $197,775.30. This fee request is within the reasonable range of percentages typically awarded to class counsel in securities class actions in the Seventh Circuit.

38. The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the Notice[3], objections to the Settlement must be received by September 3, 2024. To date, there have been no objections to the Settlement. Bravata Decl., ¶15. Plaintiffs intend to address objections, if any, received by the September 3, 2024 deadline in their reply papers in support of final approval.[4]

39. Pursuant to the Notice, requests for exclusion from the Settlement must be received by September 3, 2024. To date, there have been no requests for exclusion received by the Claims Administrator, Strategic Claims Services ("SCS"). *Id*., ¶14.

## III. NOTICE PROCEDURES

40. At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, on July 5, 202, the Claims Administrator published the Summary Notice electronically on *GlobeNewswire*. Bravata Decl., ¶11 & Ex. C. The Claims Administrator also published the current status of the case; important Settlement-related deadlines; an online claim filing link; and

---

[3] "Notice" collectively refers to the Notice of (I) Pendency of Class Actions, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Long Notice"), and the Summary Notice of (I) Pendency of Class Actions, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice"). *See* ECF No. 162-3, 162-5 and Exhibits A-1 and A-3 to the Stipulation.

[4] Plaintiffs will file a proposed order granting final approval following the deadline for exclusions and objections to the Settlement on September 3, 2024.

downloadable copies of the Notice Packet, the Preliminary Approval Order, and the Stipulation on SCS's Settlement-specific website on June 17, 2024. *Id.*, ¶13.

41. To date, 33,284 potential Settlement Class Members were notified of the Settlement by mailed Notice or by emailed link to the Settlement website with the Notice Packet. *Id.*, ¶9. SCS mailed the Notice to 48 individuals identified in the shareholder lists proved to SCS. *Id.*, ¶4. SCS mailed an additional 9,906 Notices to potential Settlement Class Members from individuals or nominees requesting that a Notice Packet be mailed by SCS. *Id.*, ¶7. SCS received a request from two nominees for 4,650 copies of the Notice Packet so that the nominees could forward them directly to their customers, and SCS received notices from three nominees that they mailed 98 Notice Packets to their customers. *Id.*

## IV. PLAN OF ALLOCATION

42. Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Bravata Decl., Ex. A (Notice Packet), ¶¶ 58-85. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

43. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will calculate a Recognized Loss Amount for each Authorized Claimant's purchases and/or sales of ATI Securities and/or FVAC Common Stock during the Settlement Class Period for which adequate documentation is provided. *Id.* The calculation of

each Settlement Class Member's Recognized Loss Amount under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the ATI Securities and/or FVAC Common Stock was purchased and sold, the purchase and sale price, and the estimated artificial inflation in the price of the common stock at the time of purchase and sale. A "Recognized Claim" under the Plan of Allocation shall be the sum of an Authorized Claimant's Recognized Loss Amounts for all shares of his, her or its ATI Securities and/or FVAC Common Stock, and the Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims. Similar plans have repeatedly been approved by courts in this District.[5]

44. As to the *Multiplan* Subclass, the Plan of Allocation provides that the Multiplan Subclass Fund will be allocated on a *pro rata* per share basis among Authorized Claimants who beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date who were entitled to but did not redeem such shares. Each share of FVAC Class A Common Stock that was held by an Authorized Claimant as of June 11, 2021 will be a Multiplan Eligible Share. Each Authorized Claimant will be eligible to receive a *pro rata* payment from the Multiplan Subclass Fund equal to the product of (i) the number of Multiplan Eligible Shares held by the Authorized Claimant; and (ii) the "Per-Share Recovery" for the Multiplan Subclass Fund, which will be determined by dividing the total amount of the Multiplan Subclass Fund by the total number of Multiplan Eligible Shares held by all Authorized Claimants. This is a standard method of allocation, which is routinely applied and approved in the Delaware Chancery Court for settlement

---

[5] *See e.g.*, *Great Neck*, 212 F.R.D. at 410 ("The plan is similar to those utilized in other securities class action cases and provides an equitable basis for distributing the fund to eligible class members."); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 865 (7th Cir. 2014) (similar); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3 (N.D. Ill. July 13, 2016) (similar).

of similar claims. *See, e.g.*, *In re PLX Tech. Inc. S'holders Litig.*, 2022 WL 1133118, at \*5-6 (Del. Ch. Apr. 18, 2022).

## V. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

45. The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Plaintiffs' Counsel had thoroughly investigated the claims and consulted with a multiple experts, including a financial economist to calculate estimated damages. The investigation consisted of an independent review of public documents and statements regarding and from ATI, retention of an investigator who interviewed former ATI employees and third parties, and serving discovery requests and responding to the same from Defendants.

46. Plaintiffs' Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial; as well as significant ability-to-pay risks arising from ATI's precarious financial position. As discussed below and in the Final Approval Brief, Plaintiffs would have faced multiple procedural hurdles and significant merit-based risks if litigation continued, which would also entail significant additional expenses and delay. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

47. Although Plaintiffs' Counsel believe Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would be able to certify a class, defeat Defendants' anticipated motion for summary judgment, or prevail at trial—or any subsequent appeals. At all of these stages, Defendants were expected to vigorously challenge whether Plaintiffs had adequately alleged the elements of falsity, scienter, and loss causation.

48. Plaintiffs faced the risk that the Court may have found that Defendants' statements were not actionably false or misleading. For example, Defendants argued that ATI was not experiencing sufficiently significant problems with attrition and retention of physical therapists prior to the Business Combination such that disclosure was required. Defendants also argued that their statements concerning attrition were not materially misleading since any minor physical therapist attrition in random markets was not then viewed as anything more than short term, resulting from the lingering effects of the COVID-19 pandemic and the ensuing challenges faced by a patient services (and largely in-person) industry and the labor market generally. Relatedly, Defendants claimed that ATI was confident that the targeted action plans the Company deployed to address the attrition problem would prevent the development of more widespread attrition that might affect the Company's bottom line, including the ability to meet forward-looking guidance for fiscal year 2021. Thus, Defendants argued, ATI did not believe that any localized attrition or staffing challenges rendered the retention statements or state-of-clinic statements that ATI "continues to match its clinical staffing levels accordingly" and was "on track" to meet its 2021 target for new clinics materially false or misleading, nor was there any known attrition trend that ATI should (or could) have disclosed.

49. Plaintiffs also faced the risk that the Court would find they had not adequately pleaded a strong inference of scienter with sufficient particularity, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Court could also have found that Plaintiffs' motive and opportunity allegations were insufficient to show scienter.

50. Plaintiffs also faced the risk that the Court would find the alleged theory of loss causation was unavailing. For example, Defendants challenged whether the October 19, 2021 Press Release was in fact a corrective disclosure since Defendants claimed it said nothing about

15

attrition and, thus, provided no causal connection between that disclosure and the alleged loss. If Defendants had prevailed on any or all of these issues, damages would have been significantly reduced, if not eliminated.

51.     Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of Plaintiffs' expert over Defendants' expert. Based on Plaintiffs' Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover their damages from purchasing ATI securities as it would be uneconomical for them to bring individual cases.

52.     Plaintiffs also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Securities Plaintiffs calculated that damages were approximately $293 million assuming it prevailed on all its claims. Based on Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

53.     Discovery would also be costly and time consuming. Plaintiffs would likely need to review thousands of documents and take several depositions of Defendants, ATI employees, and third parties. Further, since the Class Period began in 2021 and depositions would not start until at least well into 2024, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony.

54. Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals. Even if Plaintiffs were to succeed at trial, ATI's precarious financial condition meant that a significant judgment might not be recoverable from Defendants. As recently as November 6, 2023, ATI disclosed that its limited liquidity, including less than $20 million in available cash and equivalents, posed a threat to its ability to remain a going concern. Indeed, ATI has repeatedly warned investors of the very real risk of bankruptcy should it fail to secure additional financing or successfully pursue other liquidity pathways. This risk was compounded by the fact that ATI carried indemnification obligations to the FVAC Defendants arising out of the Business Combination that applied to this (and all related) litigation. Moreover, the available insurance coverage was in "wasting" directors and officers policies with modest policy limits—and is now being essentially entirely exhausted by the Settlement. Facing the Actions in two different courts and at least three different cases, continued litigation would thus serve only to deplete the limited insurance coverage.

55. In sum, in light of these significant risks, Plaintiffs believe that the proposed Settlement is a very favorable outcome for the Settlement Class.

## VI. THE FEE APPLICATION IS FAIR AND REASONABLE

56. The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one third of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $500,000 for all Plaintiffs' Counsel. Bravata Decl., Ex. A, ¶¶5, 86. As set forth in the Memorandum of Points and Authorities in Support of Motion for Award of Attorneys' Fees and Expenses and PLSRA Awards to Plaintiffs, filed herewith ("Fee Brief"), 25% of the common fund

that counsel's efforts created falls in line with similar awards that courts in this circuit have granted, and is merited here.

57.     Plaintiffs' Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves.  Throughout this litigation, Plaintiffs' Counsel were committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims.  As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

***Lead Counsel Work and Experience***

58.     Plaintiff's Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

59.     The total amount of time expended by attorneys and professional staff employed by Lead Counsel, as well as Bernstein Litowitz Berger & Grossmann LLP and Klausner, Kaufman, Jensen & Levinson (collectively, "Plaintiffs' Counsel"), is 4,595.58 hours.  A listing of the professionals at counsel's law firms who worked on this matter, the number of hours spent by each such professional, their hourly rates, and their work on this matter is set forth in detail for Pomerantz LLP below, and for Bernstein Litowitz Berger & Grossmann LLP and Klausner, Kaufman, Jensen & Levinson in the Declaration of Jeremy P. Robinson on Behalf of Bernstein Litowitz Berger & Grossmann ("BLB&G Fee Declaration") and the Declaration of Robert D. Klausner on behalf of Klausner, Kaufman, Jensen & Levinson ("Klausner Fee Declaration"), respectively.  True and correct copies of the BLB&G Fee Declaration and Klausner Fee Declaration are attached hereto as **Exhibits B and C**.

60. The total value of the services performed in this case by counsel, based upon counsel's current rates as attested to by counsel in the respective Fee Declarations, is $2,812,152.25.

61. Lead Counsel reviewed ATI's public filings and statements during the alleged Settlement Class Period, as well as other news reports and public information relating to ATI. Lead Counsel also retained an investigator to interview former ATI employees and third parties. Through its investigation, Lead Counsel determined the scope and strength of the claims Plaintiffs could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Ultimately, Lead Counsel ably synthesized these facts into a compelling presentation during settlement negotiations at and after the mediation.

62. Additionally, Lead Counsel reviewed Defendants' motion to dismiss, mediation statement and researched the applicable law with regards to Plaintiffs' claims. As a result of these efforts, Plaintiffs and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

**POMERANTZ LLP**

63. The chart below contains a summary of time expended by the attorneys and professional staff of Pomerantz on the Action, and the lodestar calculation based on their current hourly rates. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my Firm. Time spent in preparing my Firm's application for fees and reimbursement of expenses and any other time related to periodic time reporting has not been included in this chart.

| Professional (position)* | Rate | Hours | Lodestar |
|---|---|---|---|
| Jeremy Lieberman (P) | $1,325 | 120.70 | $159,927.50 |
| Louis C. Ludwig (O) | $825 | 2.20 | $1,815.00 |
| Alex Hood (P) | $975 | 6.50 | $6,337.50 |

| | | | |
|---|---|---|---|
| Austin Van (P) | $1,000 | 629.00 | $629,000.00 |
| James LoPiano (A) | $550 | 5.93 | $3,261.50 |
| Garth Lewis (PA) | $465 | 1.50 | $697.50 |
| Thomas Pryzblowski (A) | $600 | 13.95 | $8,370.00 |
| Terrence Scudieri (A) | $520 | 120.60 | $62,712.00 |
| Elina Rakhlin (A) | $500 | 235.70 | $117,850.00 |
| Lauren Molinaro (A) | $450 | 3.80 | $1,710.00 |
| Okor Ogbu (PA) | $365 | 195.50 | $71,357.50 |
| Lisa Braff (PA) | $465 | 1,160.00 | $539,400.00 |
| Alexander Yeon (PA) | $465 | 1,192.00 | $554,280.00 |
| Stephanie Weaver (A) | $450 | 76.90 | $34,605.00 |
| Elaine F. Goodman (PL) | $190 | 2.00 | $380.00 |
| Jack Lo (PL) | $365 | 14.00 | $5,110.00 |
| Ellen Jordan (PL) | $360 | 12.00 | $4,320.00 |
| **Total** | | **3,792.28** | **$2,201,133.50** |

*Partner (P), Of Counsel (O), Associate (A); Project Associate (PA); Paralegal/Other (PL)

64.     My Firm's lodestar figures are based upon the Firm's hourly rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my Firm's hourly rates.

65.     The chart below is a summary of the unreimbursed expenses incurred by my Firm in connection with the prosecution of the Action.  The expenses set forth below are reflected in the Firm's books and records.  These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for my Firm and are an accurate record of the expenses incurred in the prosecution of the Action.

| **Expenses** | **Amount** |
|---|---|
| Clerk Filing Fees | $572.00 |
| Online Computer Legal Research and Document Retrieval Fees | $1,694.88 |
| Expert Fees | $76,548.28 |
| Investigator Fees | $18,454.62 |
| Mediator Fees | $68,270.00 |
| Overtime-Clerical | $421.76 |
| Photocopying Expenses | $1,307.45 |
| Postage and Overnight Mail | $347.09 |
| Press Releases and Newswires Fees | $3,274.20 |
| Travel and Meal Expenses | $3,810.39 |

| | Total Expenses | $174,700.67 |
|---|---|---|

66.     The charts below illustrate additional counsel's hours, rates, and lodestar, and the expenses, which are true and accurate and kept in the regular course of business:

**BERNSTEIN LITOWITZ BERGER & GROSSMANN**[6]

67.     The chart below contains a summary of time expended by each attorney and professional support staff employee of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") who devoted ten (10) or more hours to the Securities Action from its inception through and including July 31, 2024, and the lodestar calculation based on their current hourly rates.  The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by BLB&G.  No time spent in preparing the application for fees and reimbursement of expenses was included.

| Professional (position)* | Rate | Hours | Lodestar |
|---|---|---|---|
| Salvatore J. Graziano (P) | $1,350 | 15.25 | $20,587.50 |
| Jeremy P. Robinson (P) | $1,050 | 243.50 | $255,675.00 |
| Hannah Ross (P) | $1,250 | 14.75 | $18,437.50 |
| Gerald Silk (P) | $1,350 | 39.00 | $52,650.00 |
| David L. Duncan (SC) | $875 | 46.25 | $40,468.75 |
| Girolamo Brunetto (A) | $700 | 25.25 | $17,675.00 |
| Jasmine Cooper-Little (A) | $425 | 117.50 | $49,937.50 |
| Milana Babic (FA) | $425 | 27.00 | $11,475.00 |
| Adam Weinschel (FA) | $625 | 19.50 | $12,187.50 |
| Jacob Foster (I) | $350 | 20.00 | $7,000.00 |
| Joelle Sfeir (I) | $525 | 65.00 | $34,125.00 |
| Jose Echegaray (CM) | $400 | 32.25 | $12,900.00 |
| Yulia Tsoy (PL) | $325 | 13.50 | $4,387.50 |
| Mahiri Buffong (MC) | $450 | 44.75 | $20,137.50 |
| Jessica Lacon (DC) | $400 | 18.50 | $7,400.00 |
| **Total** | | **742.00** | **$565,043.75** |

*Partner (P), Senior Counsel (SC), Associate (A); Financial Analyst (FA); Investigator (I); Case Manager (CM); Paralegal (PL); Managing Clerk (MC); Docket Clerk (DC).

---

[6] *See* BLB&G Fee Decl., Ex. 1, Ex. 2.

21

68.     BLB&G's lodestar figures are based upon that firm's hourly rates, which rates do not include charges for expense items.  Expense items are billed separately, and such charges are not duplicated in the hourly rates.

69.     The chart below is a summary of the unreimbursed expenses incurred by BLB&G in connection with the prosecution of the Action.  The expenses set forth below are reflected in the firm's books and records.  These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for BLB&G and are an accurate record of the expenses BLB&G incurred in the prosecution of the Action.

| Expenses | Amount |
|---|---|
| Court Fees | $320.00 |
| PSLRA Notice Costs | $2,175.00 |
| On-Line Factual Research | $9,442.67 |
| On-Line Legal Research | $2,288.61 |
| Local Transportation | $159.38 |
| Out-of-Town Travel | $1,188.97 |
| Mediation Fees | $7,500.00 |
| Total Expenses | $23,074.63 |

## KLAUSNER, KAUFMAN, JENSEN & LEVINSON[7]

70.     The chart below contains a summary of time expended by the attorneys and professional staff of Klausner, Kaufman, Jensen & Levinson on the Action through July 31, 2024, and the lodestar calculation based on their current hourly rates.  The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by Klausner, Kaufman, Jensen & Levinson.  No time spent in preparing the application for fees and reimbursement of expenses was included.

| Professional (position) | Rate | Hours | Lodestar |
|---|---|---|---|
| Robert D. Klausner (P) | $750.00 | 52.80 | $39,600.00 |
| Bonni S. Jensen (P) | $750.00 | 8.50 | $6,375.00 |

[7] *See* Klausner Fee Decl., Ex. 1.

| | Total | | 61.30 | $45,975.00 |
|---|---|---|---|---|

*Partner (P)

**ALL FIRMS' TOTALS**

| Total Expenses | Total Hours | Total Lodestar |
|---|---|---|
| $197,775.30 | 4,595.58 | $2,812,152.25 |

71.     If Lead Counsel's request for attorneys' fees of 25% of the Settlement Fund obtained for the Securities Subclass is granted, Lead Counsel would receive a fee of $4,725,000.00, plus interest earned thereon at the same rate as the Settlement Fund.  This fee award would represent a lodestar multiplier of approximately 1.68.  This multiplier is well within the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

72.     As reflected in the firms' resumes, Plaintiffs' Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases.  Counsel's Firm Resumes were previously filed at ECF No. 25 (Pomerantz firm resume) and ECF No. 30 (BLBG firm resume).

73.     Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

***The Caliber of Opposing Counsel***

74.     Defendants' Counsel, (Much Shelist, P.C.; Weil, Gotshal & Manges LLP; and Skadden, Arps, Slate, Meagher & Flom LLP, together "Defense Counsel"), vigorously represented their clients.  Defense Counsel are all highly respected defense firms with substantial securities litigation experience and resources.  In the face of this opposition, Plaintiffs and Lead Counsel

23

were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Settlement Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

75. Lead Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiffs further describe in the Final Approval Brief the significant risks counsel assumed in bringing these claims to a successful conclusion. Those same risks are relevant to an award of attorneys' fees.

76. From the outset, Plaintiffs' Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Plaintiffs' Counsel have received no compensation during the course of their involvement in this litigation.

77. The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

78. As a result of persistent efforts in the face of substantial risks and uncertainties, Plaintiffs' Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Plaintiffs' Counsels' efforts and the favorable result achieved, I believe that a 25% fee is reasonable and that the Court should approve it.

***The Reaction of the Settlement Class to the Requested Fee***

24

79.     As noted above, 33,824 potential Settlement Class Members received notice of the Settlement.  Bravata Decl., ¶9.

80.     The deadline for objections and to request exclusions from the Settlement is September 3, 2024.  To date, neither Lead Counsel nor the Claims Administrator has received any requests for exclusions or objections to any aspect of the Settlement, including the requested attorneys' fees.  Bravata Decl., ¶¶14-15.  Plaintiffs intend to address any timely objections in their reply papers in support of final approval.

## VII.     REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

81.     As detailed in the Fee Declarations, counsel have incurred $197,775.30 in litigation expenses in connection with the prosecution of the Action.

82.     From the outset, Plaintiffs' Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved.  Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action.  Thus, Plaintiffs' Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

83.     A listing of the expenses counsel incurred, compiled from the firm's regularly maintained records, are set forth in the chart above and in the respective Fee Declaration.

84.     In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

**VIII.    AWARDS TO PLAINTIFFS PURSUANT TO THE PSLRA ARE WARRANTED**

85.    Lead Plaintiffs seek an award of $15,000.00 each, or $30,000.00 in total, for their time and effort overseeing this action pursuant to the PSLRA.  Similarly, Consolidated Lead Plaintiff Melbourne Firefighters seeks an award of $5,000.00 for the time dedicated to the case by its employees.  The work that Plaintiffs completed on behalf of the Settlement Class included, *inter alia*, filing lead plaintiff motions, reviewing pleadings, communicating regularly with counsel, and discussing the Settlement with counsel.  Plaintiffs have been actively involved and put the concerns of the Settlement Class at the forefront.

86.    As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions.  They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 20th day of August 2024, at New York, New York.

By:    _____*/s/ Austin P. Van*_____
    Austin P. Van

26

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

27