# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ATI PHYSICAL THERAPY, INC. F/K/A FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, AND SUNIL GULATI, <br><br> Defendants. | Civil Action No.: 1:21-cv-04349 <br><br> Judge Edmond E. Chang <br><br> Magistrate Judge Young B. Kim |

**INTERVENORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN AWARD OF ATTORNEYS' FEES, SERVICE AWARDS, AND REIMBURSEMENT <u>OF LITIGATION EXPENSES</u>**

Intervenors Wendell Robinson[1] and Levi & Korsinsky, LLP (collectively, "Intervenors")[2] respectfully submit this memorandum of law in support of their Motion for an Award of Attorneys' Fees, Service Awards, and Reimbursement of Litigation Expenses (the "Motion").

## I. PRELIMINARY STATEMENT

If the Settlement is approved, *Multiplan* Counsel will have succeeded in obtaining an all cash, non-reversionary subclass settlement of $6,000,000.00 (the "*Multiplan* Settlement") for the benefit of the *Multiplan* Subclass. This is a considerable outcome in the face of substantial risks of no recovery and is the result of *Multiplan* Counsel's vigorous, persistent, and skilled efforts. *Multiplan* Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 25% of the Multiplan Settlement (*i.e.*, $1,500,000, plus interest accrued thereon), two service awards for the named plaintiffs totaling $5,000 to be paid out of *Multiplan* Counsel's requested fees, and reimbursement of $67,210.41 in litigation expenses. Collectively, these awards amount to approximately 26.12% of the Multiplan Settlement fund, which constitutes a substantial discount to the "typical contingency agreement in this circuit [that] might range from 33% to 40% of recovery. *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201 (N.D. Ill. 2018).

The *Multiplan* Settlement represents a substantial recovery for the *Multiplan* Subclass under the circumstances. It arises from *Multiplan* Counsel's collective efforts litigating "novel" legal theories in the *Robinson* Action and *Goldstein* Action. *See In re Multiplan Corp. Stockholders*

---

[1] Unless otherwise defined, all capitalized terms have the same meanings as set forth in the Stipulation and Agreement of Settlement dated May 13, 2024 (the "Settlement"), which was preliminarily approved by this Court on June 11, 2024. The Declaration of Donald J. Enright is cited to as "En. Dec. ____." The Declaration of Austin P. Van cited to as "Van Dec.___."

[2] The Settlement provides that Levi & Korsinsky, LLP ("LK") "is the firm representing the *Multiplan* Subclass for purposes of approval of the Settlement." ¶ Settlement (hh). In addition to LK, the term "*Multiplan* Counsel" also refers to Wolf Haldenstein Adler Freeman & Herz LLC, Glancy Prongay & Murray LLP, Ashby & Geddes, P.A, Meluney Allen & Spence, LLC, Morris Kandinov LLP ("MK"), Robbins LLP, and Johnson Fistel LLP.

*Litig.*, 268 A.3d 784, 792 (Del. Ch. 2022) (noting that "Delaware courts have not previously had an opportunity to consider the application of our law in the SPAC context" and describing SPAC case as presenting "novel issues"). "Counsel did not enter the case with a readymade exit or obvious settlement opportunity." *Sciabacucchi v. Salzberg*, 2019 WL 2913272, at *8 (Del. Ch. July 8, 2019), *vacated on unrelated grounds sub nom. Salzberg v. Sciabacucchi*, 227 A.3d 102 (Del. 2020).

The *Multiplan* Settlement was not achieved easily. Underscoring the substantial contingency risk for prosecuting these actions, during the hearing on *Robinson* Defendants' motions to dismiss, the Court of Chancery suggested a willingness to apply the business judgment rule, proffered numerous criticisms of Robinson's novel legal theories, and stayed relatively silent during the *Robinson* Defendants' presentations. *See* En. Dec. Ex. B. Notably "if the business judgment rule had applied in the case, Plaintiffs presumably would have received no recovery" and would likely have lost the motions to dismiss, "in which case the benefit here would be remarkable.*" In re Jefferies Group, Inc. Shareholders Litigation*, 2015 WL 3540662, at *3 (Del. Ch. June 5, 2015). Even if *Multiplan* Counsel overcame the motions to dismiss, *Multiplan* Counsel faced the risk that the *Multiplan* Subclass's claims would be released without any money allocated to them specifically. *See Zhou v. Faraday Future Intelligent Electric, Inc.*, 2024 WL 1245341 (C.D. Cal. Mar. 18, 2024).

Then, even if *Multiplan* Plaintiffs' claims overcame the motions to dismiss and avoided competing releases, they potentially would have continued for years, through the completion of fact discovery, expert discovery, summary judgment, trial, and likely appeals. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation); *In re Amgen, Inc. Sec. Litig.*, 2016 WL

10571773, at *3 (C.D. Cal. Oct. 25, 2016) (explaining that trial "could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). *Multiplan* Plaintiffs also would have faced the risk that the novel legal issues would hamper their ability to prove damages to the Court's satisfaction. *See, e.g., In re Tesla Motors, Inc. Stockholder Litig.*, 2022 WL 1237185 (Del. Ch. Apr. 27, 2022) (holding that plaintiffs were not entitled to any monetary recovery because even if the entire fairness standard of review applied, the plaintiffs failed to prove damages). And certainly, Defendants were represented by highly skilled and well-regarded litigators at, among other firms, Weil, Gotshal & Manges, LLP ("Weil") and Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), firms with international reputations for vigorous advocacy in the defense of complex civil cases.

In short, *Multiplan* Counsel faced numerous hurdles and risks at all relevant times, and a substantial risk of nonpayment. Despite facing long odds, *Multiplan* Counsel vigorously prosecuted these actions and their novel legal issues for more than sixteen months. Among other things, *Multiplan* Counsel:

- Researched and drafted in-depth books and records demands, pursuant to 8 Del. C. § 220, to seek the books and records of ATI. *See*, *e.g.*, ECF No. 166-1 at 3. *Multiplan* Counsel then negotiated the scope of ATI's books and records production, confidentiality agreements governing the use and production of ATI's books and records, and also analyzed and assessed ATI's corporate books and records to prepare the complaint. *See* En. Dec. ¶¶ 4, 18.

- Conducted thorough investigations of the claims asserted, which included an in-depth review and analysis of ATI's SEC filings, press releases, investor conference calls, and other public statements, publicly available documents, announcements, news articles concerning ATI, and ATI's books and records. *See* ECF No. 166-1.

- Drafted the complaints in the *Multiplan* Actions based on extensive factual investigations, especially *Multiplan* Counsel's books-and-records investigation, and analyses of Delaware law. *See*, *e.g.,* ECF No. 166-1; En. Dec. Ex. A.

- Engaged in substantial briefing related to Defendants' motions to dismiss, including supplemental briefing requested by the Court of Chancery that, among other things,

prompted *Multiplan* Counsel to prepare a Black-Scholes valuation. *See* En. Dec. Ex. C.

- Prepared for and participated in oral arguments against formidable attorneys regarding Defendants' motions to dismiss the *Robinson* Complaint in the Delaware Court of Chancery. *See* En. Dec. Ex. B.

- Prepared a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participated in an unsuccessful full-day mediation session with an experienced neutral mediator, and engaged in several weeks of further negotiations that culminated in a mediator's recommendation to resolve the *Multiplan* Subclass's claims for $6,000,000 in cash. *See* En. Dec. ¶¶ 8-9.

- Negotiated the $6 million *Multiplan* Settlement over the course of several weeks. *See* En. Dec. ¶¶ 8-14.

Intervenors, on behalf *Multiplan* Counsel, seek an award equal to 25% of the *Multiplan* Settlement fund and reimbursement of out-of-pocket litigation expenses in the amount of $67,210.41. The requested fee award is reasonable and consistent with the market rate for fees regularly awarded in class action settlements within the Seventh Circuit. Indeed, the 25% request constitutes a meaningful discount to the "customary contingency fee [] range from 33 1/3% to 40% of the amount recovered."*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001). The requested service awards for named plaintiffs of $2,500.00 are also reasonable and consistent with previous awards. *See Roberts v. Graphic Packaging Int'l, LLC*, 2024 WL 3373780, at *6 (S.D. Ill. July 11, 2024). For these reasons, as well as those set forth below, Intervenors submit that the requested attorneys' fees, service awards, and expenses are fair and reasonable and should be awarded by the Court.

**II.** **THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE AND WARRANT COURT APPROVAL**

**A.** *MULTIPLAN* **COUNSEL ARE ENTITLED TO ATTORNEYS' FEES FROM THE** *MULTIPLAN* **SETTLEMENT**

"To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years" by judicial and legislative action. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation). The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Seventh Circuit has held that "[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994); *see Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (explaining that the "common fund doctrine" is "based on the equitable notion that those who have benefited from litigation should share in its costs").

**B.** **THE REQUESTED FEE IS FAIR AND REASONABLE AS A PERCENTAGE OF THE FUND**

Intervenors respectfully submit that the Court should award a fee based on a percentage of the common fund obtained. Courts in this Circuit have discretion to choose either the lodestar or percentage method of calculating fees in common fund cases,[3] and the United States Court of

---

[3] *See Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("[I]n our circuit, it is legally correct for a district court to choose either" the percentage method or the lodestar method in determining fee awards).

Appeals for the Seventh Circuit has strongly endorsed the percentage method,[4] pursuant to which fees are awarded as a percentage of the common fund, because it closely approximates the manner in which attorneys are compensated in the marketplace for contingent work,[5] avoids incentives to run up billable hours,[6] and is simple to apply and administer.[7]

The Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In applying this standard, the Seventh Circuit considers, among other factors, (1) "awards made by courts in other class actions"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005); *see also Synthroid*, 264 F.3d at 721 (the reasonableness determination "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the

---

[4]  *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3, *5 (S.D. Ind. Sept. 4, 2019) ("In a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis."); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *14 (N.D. Ill. Aug. 29, 2016) ("The Court agrees with the Plaintiffs that a percentage-of-recovery method is proper . . . ."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. Feb. 20, 2015) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district").

[5] *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis[.]").

[6] *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (noting that the lodestar method creates the "incentive to run up the billable hours").

[7] *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572-73 (noting that it is easier to award a percentage "than it would be to hassle over every item or category of hours and expenses and what multiple to fix and so forth"); *Florin*, 34 F.3d at 566 (indicating that the Seventh Circuit has also recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration.").

litigation, and in part on the stakes of the case"). These factors strongly support the fee requested here.

### 1. The Requested Attorneys' Fees Are at the Low End of Comparable Awards

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record . . . and the fees awarded by the district court." *Taubenfeld*, 415 F.3d at 600. In complex class actions like this case, courts within the Seventh Circuit have held that percentages in the range of 33% to 40% of the recovery are appropriate. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (explaining that "an award of 33.3% of the settlement fund is within the reasonable range"); *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33⅓% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Retsky*, 2001 WL 1568856, at *4 ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered."). Here, Intervenors are applying for an award of 25% of the Settlement fund (*i.e.*, 25% of the $6 million *Multiplan* Settlement amount and any interest accrued) for *Multiplan* Counsel, which is well within the bounds of fees approved within the Seventh Circuit in analogous cases.

Indeed, the request for $1,500,000 in attorneys' fees (not including fees on accrued interest)—whether considered as 25% of the full Multiplan Settlement fund or approximately 25.3% of the fund net of expenses—is on the low end of the range of percentage fee awards that courts in the Seventh Circuit have made in class action common fund cases. *See, e.g., Hale v. State Farm Mutual Automobile Insurance Company*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.3% or higher to counsel in class action litigation."); *Leung*, 326 F.R.D. at 201 ("The Court holds that a

third of the net fund is a more appropriate award. As Class Counsel notes, a typical contingency agreement in this circuit might range from 33% to 40% of recovery."); *Wright*, 2016 WL 4505169, at *1 (awarding 30% of $10.25 million net settlement fund); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3-4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1, *4 (S.D. Ill. Jan. 31, 2014) (awarding 33.3% of $30 million). In sum, the fee requested here is below the bottom of the range of fees awarded on a percentage basis in comparable cases.[8]

## 2. The High Quality of the Legal Services Rendered Supports the Requested Attorneys' Fees

In evaluating a fee request, this Circuit has held that courts may consider the "quality of legal services rendered" by plaintiffs' counsel. *Taubenfeld*, 415 F.3d. at 600; *Synthroid*, 264 F.3d at 721. *Multiplan* Counsel practice extensively in the challenging field of complex class action litigation and have skillfully litigated these types of actions in courts across the country. *See* ECF No. 162-9. The Settlement provides that LK "is the firm representing the *Multiplan* Subclass for

---

[8] Although *Multiplan* Counsel believe that the percentage of the fund method is most appropriate, even if a lodestar cross check were to be applied, the fees and expenses are also fully justified under that methodology. The cross-check compares the lodestar against the requested fee amount, and allows the court to consider whether the resulting multiplier is reasonable. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) ("Multipliers anywhere between one and four … have been approved."). Courts in the Seventh Circuit have held that "a risk multiplier is not merely available in [contingent, representative cases] but mandated, if the court finds that counsel had no sure source of compensation for their services." *Florin,* 34 F.3d at 565 (internal quotations removed). "In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (collecting cases); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing twenty-three shareholder settlements and multipliers for each, in which the average multiplier is 3.28); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) ("In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved."). Here, the lodestar multiplier is approximately 1.5, which is at the low end of comparable multipliers. *See, e.g., Harman*, 945 F.2d at 976.

purposes of approval of the Settlement," as LK fully briefed and argued the motions to dismiss in the Delaware Court of Chancery. Settlement ¶¶ (hh). Mr. Enright, the LK partner who, *inter alia*, spearheaded the motions to dismiss briefing and participated at the motions to dismiss oral arguments, has played leading roles in stockholder class actions that have recovered hundreds of millions of dollars for stockholders. He been named as one of the leading financial litigators in the nation by Lawdragon, as a Washington, DC "Super Lawyer" by Thomson Reuters, and as one of Washington DC's "Top Lawyers" by Washingtonian magazine. ECF No. 162-9 at 32. Thus, the *Multiplan* Subclass were well represented throughout the course of litigation.

From the inception of the *Multiplan* Actions, *Multiplan* Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Multiplan Subclass. This case required novel, cutting-edge legal analysis and planning, especially because *Multiplan*-styled claims were only recently upheld by the Court of Chancery in 2022. *See Multiplan*, 268 A.3d, at 792 (noting that "Delaware courts have not previously had an opportunity to consider the application of our law in the SPAC context" and describing case as presenting "novel issues"). This case also required in-depth investigations, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants. In this regard, *Multiplan* Counsel also conducted an expansive books and records investigation; researched and briefed its opposition to the *Robinson* Defendants' motion to dismiss, including supplemental briefing that required complex financial analyses; participated in several mediation sessions after preparing a detailed mediation submission. *See* En. Dec. ¶ 18.  The quality of *Multiplan* Counsel's efforts in the litigation, their pursuit of novel claims, and their substantial experience in complex class actions provided them with the leverage necessary to negotiate the Settlement.

The quality of opposing counsel is also important in evaluating the value of *Multiplan* Counsel's work. *See, e.g., Beesley*, 2014 WL 375432, at *2 ("Litigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination."). Defendants were represented in the *Multiplan* Actions by some of the most prestigious law firms in the world, including Weil and Skadden, which are respectively ranked by Chambers and Partners as Band 2 and Band 1 for Securities Litigation: USA.[9] Notwithstanding this opposition, *Multiplan* Counsel were able to develop their case and cause Defendants to settle on terms favorable to the *Multiplan* Subclass. Accordingly, the quality of the representation supports the requested fee award.

### 3. The Contingent Nature of the Case Supports the Requested Attorneys' Fees

As noted by the Seventh Circuit in *Synthroid*, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721; *see Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Thus, "[w]hen determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit." *Dairy Farmers*, 80 F. Supp. 3d at 847-48.

Here, the contingency risk was substantial, especially because the *Multiplan*-styled claims presented "novel issues," risks, and obstacles for *Multiplan* Counsel. *Multiplan*, 268 A.3d at 792. In this regard, when LK filed the *Robinson* Action in early 2023, only one Delaware decision had adjudicated *Multiplan*-styled claims. *See id*. The lack of developed legal decisions and guidance

---

[9] *See* CHAMBERS AND PARTNERS, *Securities: Litigation | USA* (last accessed July 3, 2024) (https://chambers.com/legal-rankings/securities-litigation-usa-nationwide-5:1757:12788:1).

created meaningful risks and challenges for *Multiplan* Counsel to shoulder and surmount. By the time the *Robinson* Defendants filed their motions to dismiss, two more Delaware Court of Chancery decisions (*Gig2* and *Gig3*) adjudicated *Multiplan*-styled claims. *See Delman v. GigAcquisitions3, LLC,* 288 A.3d 692 (Del. Ch. 2023); *Laidlaw v. GigAcquisitions2, LLC*, 2023 WL 2292488 (Del. Ch. Mar. 1, 2023).

In seeking to establish the applicability of the entire fairness standard of review as opposed to the business judgment rule, Robinson had compared the Business Combination to *Multiplan*, *Gig2*, and *Gig3*. *See* En. Dec. Ex. A at 24-25. At oral arguments, however, comments were made that the Business Combination had "very unique and distinct facts from *Multiplan*, *Gig2* and *Gig3*":

> THE COURT: I mean, it's the notion that the founder shares had a low basis, but everybody's interests were aligned. And moreover, even beyond the potential for making substantial returns, the thing that's different here -- and this is what the defendants argued -- the things very different here from *Multiplan*, *Gig2* and *Gig3*, are that the founder shares would not make any money, zero dollars . . . . unless the public stockholders first made money and made quite significant money. And so -- and then you layer on top of that the PIPE investment, where, you know, if this company doesn't trade above the $10 per share mark, then that as well is a very substantial loss. And those seem like very unique and distinct facts from *Multiplan*, *Gig2* and *Gig3*.

En. Dec. Ex B. at 47-48. The request for supplemental briefing after oral arguments added uncertainty to the outcome of the case. *See* En. Dec. Ex. C. Notably "if the business judgment rule had applied in the case, Plaintiffs presumably would have received no recovery had they gone to trial, in which case the benefit here would be remarkable.*" Jefferies*, 2015 WL 3540662, at \*3. While *Multiplan* Counsel maintain that the entire fairness standard should have applied to judicial review of the Business Combination, Plaintiffs nonetheless extracted a considerable $6 million settlement from what could have been the jaws of defeat.

Then, even if the *Multiplan* Subclass's claims overcame the motions to dismiss, the claims faced numerous risks, hurdles, and obstacles to recovery. For example, *Multiplan* Counsel faced the risk that the *Multiplan* Subclass's claims would be released without any additional recovery as part of the securities class action settlement. *See Zhou,* 2024 WL 1245341, at *7-8 (granting motion for final approval of federal class action settlement despite objector's argument that settlement released Delaware claims).

If not dismissed or released, litigation of the *Multiplan* claims could have dragged on for years, through the completion of fact discovery, expert discovery, summary judgment, trial, and likely appeals. *See, e.g., Glickenhaus*, 787 F.3d 408 (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation); *Amgen, Inc. Sec. Litig.*, 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). Each stage would have carried substantial risks, including possible denial of class certification or a grant of summary judgment for Defendants. And beyond the merits and risks of establishing liability, the issue of damages posed additional risks. Indeed, there is currently no precedent calculating damages for *Multiplan*-styled claims, which would have impeded the plaintiffs' ability to prove damages to the Court's satisfaction. *See, e.g., Tesla*, 2022 WL 1237185 (entering judgment in favor of defendants because even if the entire fairness standard of review applied, plaintiffs failed to prove damages). Thus, *Multiplan* Actions bore serious risks and obstacles to recovery.

### C. THE REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES SHOULD BE APPROVED

Intervenors also request that the *Multiplan* Counsel have their litigation expenses reimbursed. "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness

costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses; and mediation." *Beesley*, 2014 WL 375432, at \*3; *see also Synthroid*, 264 F.3d at 722. Here, *Multiplan* Counsel's litigation totals $67,210.41, which includes, among other expenses, mediation fees, travel expenses, and photocopying expenses. *See* En. Dec. Exhibits D-F.

### D.  THE NAMED PLAINTIFFS' REQUEST FOR SERVICES AWARDS SHOULD BE APPROVED

Intervenors also request that the Court approve a service award for both Phillip Goldstein ("Mr. Goldstein") and Wendell Robinson ("Mr. Robinson") in the amount of $2,500.00 each and to be paid from the *Multiplan* Counsel's fee award. In this Circuit, a service "award is designed to compensate a class action plaintiff for bearing the risk of liability: 'should the suit fail, he may find himself liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorney fees.'" *Roberts*, 2024 WL 3373780, at \*6 (quoting *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012)). Here, in pursuing the *Multiplan* Subclass's claims as named plaintiffs for class actions, Mr. Robinson and Mr. Goldstein shouldered additional liability that was not carried by unnamed members of the *Multiplan* Subclass. In similar circumstances, compensatory awards of $10,000 have been approved. *See Roberts*, 2024 WL 3373780, at \*6. Thus, Intervenors respectfully submit that the proposed service awards of $2,500 are reasonable.

### E.  NO CLASS MEMBERS HAVE OBJECTED

Finally, pursuant to the Court's June 11, 2024 Order Preliminarily Approving the Settlement, the Settlement's Claims Administrator mailed 9,906 of the Notice to potential members of the *Multiplan* Subclass and nominees, and it also posted the Notice to its website. *See* Van Dec. ¶ 23. The Notice informs members of the *Multiplan* Subclass that, among other things, *Multiplan*

Counsel "will apply to the Court for an award of attorneys' fees of no more than one-third of the $6,000,000 portion of the Settlement Amount obtained for the *Multiplan* Subclass, plus interest earned at the same rate and for the same period as earned by the Settlement Fund." ECF No. 162-3, at 9. It also provides that "Securities Plaintiffs' Counsel and *Multiplan* Counsel will each separately apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution, and resolution of the claims against Defendants, in an amount not to exceed $500,000 each[.]" *Id.* While the deadline to file objections has not yet passed, to date, not a single objection to any aspect of the Settlement, including the fee and expense request, has been received. *See* Van Dec. ¶ 20; *Spano v. Boeing Co.*, 2016 WL 3791123, at *1 (S.D. Ill. Mar. 31, 2016) ("This Court finds the lack of any significant number of objections to be a sign of the Class's overwhelming support for Class Counsel's request.").

## III.    CONCLUSION

Based upon the foregoing, Intervenors respectfully request that the Court grant their Motion.

Date: August 20, 2024

*/s/ Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 545-4653
malmstrom@whafh.com

*Local Counsel for Multiplan Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright
1101 Vermont Ave. N.W., Suite 700
Washington, DC 20005
(202) 524-4290
denright@zlk.com

*Attorneys for Robinson and the Multiplan
Subclass*