# EXHIBIT C

EFiled: Dec 20 2023 04:13PM EST
Transaction ID 71664946
Case No. 2023-0142-NAC

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| WENDELL ROBINSON,<br><br>        Plaintiff,<br><br>        v.<br><br>FORTRESS ACQUISITION SPONSOR II, LLC, ANDREW. A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, SUNIL GULATI, DANIEL N. BASS, MICAH B. KAPLAN, and LABEED DIAB,<br><br>        Defendants. | Case No.: 2023-0142-NAC<br><br>**CONFIDENTIAL FILING** |

## PLAINTIFF'S SUPPLEMENTAL BRIEF

### YOU ARE IN POSSESSION OF A CONFIDENTIAL FILING FROM THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**If you are not authorized by Court Order to view or retrieve this document, read no further than this page. You should contact the following person:**

ASHBY & GEDDES, P.A.
Stephen E. Jenkins (#2152)
Richard D. Heins (#3000)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801

*Attorneys for Plaintiff*

A public version of this document will be filed on or before December 28, 2023.

{01969725;v1 }

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Plaintiff Wendell Robinson ("Plaintiff") respectfully submits this Supplemental Brief in response to the Court of Chancery's letter dated December 6, 2023 (the "Letter"). [1]

## INTRODUCTION

This Supplemental Brief's four sections correspond to the Letter's four sections of questions that are listed below:

1. As we discussed during oral argument, the unvested Founder Shares might be viewed as analytically similar to options. Plaintiff alleges that, even with the vesting thresholds in place, the Founder Shares have very substantial value that is (a) contingent on a merger (indeed, any merger) occurring and (b) unique to the Sponsor (relative to the public stockholders). Is Plaintiff's value conclusion correct if one applies, for example, a standard Black-Scholes valuation to the unvested Founder Shares? And, in the circumstances of this case, does the magnitude of the option value, then, affect the standard of review?

2. Assuming that, even with the vesting thresholds, the option value is sufficiently large, does the incentive to undertake a "bad deal" persist, similar to *MultiPlan*?

3. Arguably, one way to understand the FAII Defendants' PIPE argument is that the PIPE creates downside risk that offsets or mitigates the positive option value of the unvested Found Shares. Is that correct? And, in the circumstances of this case, should the magnitude of the PIPE relative to the option value referenced above affect the standard of review?

---

[1] Capitalized terms not defined herein have the meanings set forth in the Verified Consolidated Stockholder Class Action Complaint ("Complaint"), cited to as "¶ __."

{01969725;v1 }

1

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

4.      Does the particular vesting price (over $10 per share) matter for purposes of determining the standard of review? For example, if a third of the shares vested at $10.01 per share, a third vested at $10.02 per share, and a third vested at $10.03 per share, would the FAII Defendants' arguments concerning the standard of review still hold?

## 1.  APPLYING THE BLACK-SCHOLES FORMULA TO THE FOUNDER SHARES CONFIRMS PLAINTIFF'S VALUE CONCLUSION

Under a standard Black-Scholes valuation, the Insiders' Founder Shares were worth more than $41.7 million at the time of the Merger.[2] The Insiders extracted their 8.625 million Founder Shares for just $25 thousand.[3] According to a standard

---

[2]      This illustrative Black-Scholes valuation was generated utilizing an automated Black-Scholes calculator.  *See* MYSTOCKOPTIONS, *Black-Scholes Calculator* (https://www.mystockoptions.com/black-scholes.cfm). For the purposes of this model, Plaintiff applied a 1.57% risk-free rate based on the 10-year daily Treasury par yield curve rates. *See, e.g.*, Transmittal Affidavit of Tiffany Geyer Lydon ("Lydon Aff.") Exhibit 1 at 6 (Treasury par yield curve rates as of June 16, 2021). This calculation also was premised upon a beta of 48.7%, based on the historical volatility in the trading of the stock of a comparable company, US Physical Therapy Inc. ("USPH") from the time period immediately before the Merger. In FAII's pre-Merger SEC filings, USPH was identified as Legacy ATI's "clear" company comparable. Lydon Aff. Exhibit 2 at 303, 315 (member of the Insiders describing USPH as Legacy ATI's "clear comp" on multiple occasions); Exhibit 3 at 59 (FAII SEC filing using USPH as comparable company). A comparable company was required for calculating volatility because FAII lacked operations before the Merger.

[3]      ¶ 36.6.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Black-Scholes valuation, the Founder Shares had a value of more than $41 million at the time of the Merger. This constitutes more than a 165,000% upsurge in value.

Even this $41.7 million Black-Scholes valuation would probably still undervalue the Founder Shares at the time of the Merger. The Black-Scholes formula presumes that the options holder would be required to purchase the valued options at a strike price.[4] Here, however, the Insiders did not need to acquire the Founder Shares at a strike price, because they had already extracted the 8.625 million Founder Shares for less than $0.03 per share. Also, the illustrative Black-Scholes calculation assumes the valued options are European ones, but the Founder Shares would better resemble the "generally more valuable" American options because the Founder Shares can vest at any time in the entire span of 10 years.[5] Nevertheless, this illustrative $41.7 million Black-Scholes option value confirms that the Insiders received a massive unique benefit in connection with the Merger, and had wildly

---

[4]     *See, e.g.*, Lydon Aff. Exhibit 4 at 1 (indicating that if option reaches strike price, option holder can acquire stock at strike price).

[5]     *See, e.g.*, Lydon Aff. Exhibit 4 at 2 ("American options are generally more valuable than European options.").

3

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

different incentives in connection with the Merger as compared to the public stockholders.[6]

In the circumstances of this case, the Insiders' $41 million exclusive benefit supports the applicability of the entire fairness standard of review. Entire fairness applies if a controller extracts "'something uniquely valuable to [it], even if [it] nominally receives the same consideration as all other stockholders.'"[7] In *FBO Bobbie Ahmed*, the Court of Chancery reasoned the controller obtained a unique benefit because the challenged transaction provided it with "a means for [it] to ensure it would be able to retain" something that it had, but the minority stockholders lacked.[8] Like the *FBO Bobbie Ahmed* transaction, the Merger provided the Insiders with a means for them to ensure that they would be able to preserve their exclusive $41 million benefit.

---

[6]    *Cf., e.g.*, *Orman v. Cullman*, 794 A.2d 5, at 30-31 (Del. Ch. 2002) ("I think it would be naïve to say, as a matter of law, that $3.3 million is immaterial.").

[7]    *IRA Trust FBO Bobbie Ahmed v. Crane*, 2017 WL 7053964, at *6 (Del. Ch. Dec. 11, 2017) (quoting *In re Crimson Exploration Inc. Stockholder Litigation*, 2014 WL 5449419, at *13-14 (Del. Ch. Oct. 24, 2014)).

[8]    *Id*. at *9.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Here, this $41 million benefit was exclusively available to the Insiders, not the public stockholders. Preserving a $41 million benefit is plainly valuable.[9] Following the reasoning in *FBO Bobbie Ahmed*, the Court should find that the Insiders extracted an exclusive benefit and apply the entire fairness standard of review.

## 2. THE INSIDERS HAD DIFFERENT INCENTIVES IN BAD DEALS

The Insiders conceivably stood to profit from potential bad deals. In *Multiplan*, the controller argued that his founder shares' vesting provisions prevented him from receiving a unique benefit.[10] In response, however, the Court of Chancery was readily able to foresee a "hypothetical[]" situation in which the challenged *Multiplan* merger would be a bad deal for public stockholders while being a good deal for the controller even when considering the vesting requirements.[11] *Multiplan* then held that the "potential conflicts" caused by the "different incentives" were "sufficient to pass the 'reasonably conceivable' threshold."[12]

---

[9]     *Cf., e.g.*, *Orman*, 794 A.2d, at 30-31 ("I think it would be naïve to say, as a matter of law, that $3.3 million is immaterial.").

[10]     *See In re Multiplan Corp. Stockholders Litig.*, 268 A.3d 784, 811 (Del. Ch. 2022).

[11]     *Id.*

[12]     *Id.*

{01969725;v1 }

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Like the challenged *Multiplan* merger, one can readily foresee a hypothetical bad-deal scenario in which the Insiders here would still benefit. For example, the Founder Shares could have vested quickly after the Merger if the stock price had run up based on initial enthusiasm, even if the trading price of ATI had collapsed shortly after such vesting. Indeed, the Founder Shares could vest at any time within the entire 10-year time period only to trade below the redemption price before and after vesting. FAII's public stockholders had the incentive to avoid these bad deals, but the Insiders were exclusively poised to profit handsomely. Thus, similar to the Court of Chancery's reasoning in *Multiplan*, the Insiders had different incentives with regard to bad deals.

### 3. THE PIPE SHARES CANNOT CLEANSE THE INSIDERS' CONFLICTS FROM THEIR ENORMOUS BLACK-SCHOLES OPTION VALUE

The Insiders' PIPE argument is deeply flawed. Without a meaningful PIPE lock-up period, the Insiders were not meaningfully bound to the downside risk of their PIPE shares to offset their Founder Shares' $41.7 million Black-Scholes option value.[13] The Insiders required FAII to, "within 15 business days following the closing of the [Merger], file with the SEC . . . a shelf registration statement

---

[13]    *See, e.g., id.* at 811 (reasoning that "lock-up" period decreases value of defendants' benefit).

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

registering the resale of such [PIPE] shares, and [] use its commercially reasonable efforts to have such registration statement declared effective . . . after the filing thereof, but no later than the earlier of the 60th calendar day (or 90th calendar day if the SEC notifies FAII that it will "review" the registration statement) following the closing date of the [Merger]."[14] After this registration, it appears that the Insiders were free to sell all of their PIPE shares.[15] Thus, the PIPE shares failed to cleanse the Insiders' $41 million exclusive benefit.

The magnitude of the PIPE relative to the Insiders' Black-Scholes option value does not impact the standard of review. The entire fairness standard of review does *not* require that *every* interest that the controller has be unique, but rather the controller only needs to extract "'*something* uniquely valuable.'"[16] Preserving the $41.7 million Black-Scholes option value is something uniquely valuable regardless of the PIPE's size. Buying shares at market value (which is what the PIPE essentially accomplished for the Insiders) cannot cleanse conflicts. Indeed, for the PIPE and

---

[14] *See* Transmittal Affidavit of Ryan M. Lindsay ("Lindsay Affidavit") Exhibit 1 at 23.

[15] Indeed, the Insiders' PIPE agreement expressly sought to insulate the Insiders from any PIPE lockup. *See* Lindsay Affidavit Exhibit 1 at F-8. (stating that the Insiders "shall not in connection with the [15-day PIPE registration] be required to execute any lock-up or similar agreement or otherwise be subject to any contractual restriction on their ability to transfer the [PIPE] Shares."

[16] *FBO Bobbie Ahmed*, 2017 WL 7053964, at *6 (emphasis added).

{01969725;v1 }

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Founder Shares that were collectively worth more than $115 million at the time of the Merger, the Insiders paid just $75,025,000. The Insiders would have lost this exclusive potential windfall absent a merger.

### 4. VESTING PRICES ABOVE THE REDEMPTION PRICE CANNOT CLEANSE THE INSIDERS' CONFLICTS

The Court's hypothetical confirms that the entire fairness standard of review applies even though the vesting prices exceed the redemption price. As the Court of Chancery reasoned in *FBO Bobbie Ahmed*, when the controller preserves something uniquely valuable, the controller obtains a unique benefit.[17] If the vesting prices of the Founder Shares were even lower than $12.00, such as $10.03 or $10.10, the Insiders would obviously obtain something valuable (the potential for a windfall from a sale of their Founder Shares), and the entire fairness standard would apply. Hence, the entire fairness standard of review applies in the instant matter as well.

\* \* \* \*

For the foregoing reasons, and for those set forth in Plaintiff's Answering Brief and as argued in the hearing held before the Court on December 1, 2023, the

---

[17] *See id.* at \*6.

{01969725;v1 }

8

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Court should apply the entire fairness standard in analyzing Defendants' Motions to Dismiss, and should deny the Motions.

|  | **ASHBY & GEDDES, P.A.** |
|---|---|
|  | */s/ Tiffany Geyer Lydon* |
| *Of Counsel:* | _____ |
|  | Stephen E. Jenkins (#2152) |
| **LEVI & KORSINSKY, LLP** | Richard D. Heins (#3000) |
| Donald J. Enright | Tiffany Geyer Lydon (#3950) |
| (admitted *pro hac vice*) | 500 Delaware Avenue, 8th Floor |
| Noah R. Gemma | P.O. Box 1150 |
| (*pro hac vice forthcoming*) | Wilmington, DE  19899 |
| 1101 Vermont Ave., Suite 700 |  |
| Washington, DC 20005 | *Attorneys for Plaintiff* |
|  |  |
|  | [10-page limit per December 6 and December 12, 2023 Letters] |
|  |  |
| Dated: December 20, 2023 |  |

{01969725;v1 }

9

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2023, a true and correct copy of the foregoing was served on the following counsel of record via File & Serve*Xpress*:

Theodore A. Kittila
HALLORAN FARKAS
  + KITTILA LLP
5801 Kennett Pike, Suite C/D
Wilmington, DE 19807

Jenness E. Parker
Elisa M.C. Klein
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE 19801

William M. Alleman, Jr.
Sean A. Meluney
Matthew D. Beebe
Meluney Alleman & Spence LLC
1143 Savannah Road, Suite 3-A
Lewes, DE 19958

*/s/ Tiffany Geyer Lydon (#3950)*
Tiffany Geyer Lydon (#3950)

{01885574;v1 }