**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Austin P. Van (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                 Plaintiffs<br>    v.<br><br>ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, LABEED DIAB, JOSEPH JORDAN, ANDREW A. MCKNIGHT, JOSHUA A. PACK, MARC FURSTEIN, LESLEE COWEN, AARON F. HOOD, CARMEN A. POLICY, RAKEFET RUSSAK-AMINOACH, and SUNIL GULATI,<br><br>                 Defendants. | Case No.: 1:21-CV-04349<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF DISTRIBUTION PLAN**<br><br>**<u>CLASS ACTION</u>**<br><br>Hearing Date: May 23, 2025<br>Time: 8:30 a.m.<br>Judge: Honorable Edmond E. Chang<br>Courtroom: 2341 |

Court-appointed Lead Plaintiffs Phoenix Insurance Company Ltd. and The Phoenix Pension & Provident Funds ("Lead Plaintiffs") and Consolidated Plaintiff City of Melbourne Firefighters' Retirement System (together with Lead Plaintiffs, "Plaintiffs"), respectfully move for entry of the [Proposed] Order Approving Distribution Plan ("Class Distribution Order") for the net proceeds of the Settlement in the above-captioned securities class action ("Action"). The proposed Distribution Plan is included in the accompanying Declaration of Josephine Bravata ("Bravata Declaration" or "Bravata Decl."), submitted on behalf of the Court-authorized Claims Administrator, Strategic Claims Services ("SCS").[1]

Plaintiffs agreed to settle the Actions[2] in exchange for a total cash payment of $24.9 million for the benefit of class members, of which $18.9 million was specifically recovered in connection

---

[1] Unless otherwise indicated in this Memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Bravata Declaration or the Stipulation and Agreement of Settlement, filed on May 13, 2024 (the "Stipulation") (ECF No. 162-1). Internal citations and quotations are omitted and emphasis is added unless otherwise noted.

[2] For the sake of efficiency and judicial economy, Plaintiffs presented their Final Approval Motions together with the plaintiffs in three actions with overlapping claims based on overlapping facts (the "*Multiplan* Plaintiffs" in the "*Multiplan* Actions") as part of a global settlement of all four actions. On December 1, 2021, May 10, 2022, and September 22, 2022, respectively, Plaintiffs Hamza Ghaith, Vinay Kumar, and Brendan Reginbald filed stockholder derivative complaints on behalf of ATI, which were subsequently consolidated and styled *In re ATI Physical Therapy, Inc. S'Holder Deriv. Litig.*, No. 1-21-cv-06415 (N.D. Ill) (the "*Ghaith* Action"). The *Ghaith* Action was subsequently amended to add direct class action claims based on Delaware state law claims, in addition to the derivative claims. On February 7, 2023, Wendell Robinson filed a putative class action complaint, styled *Robinson v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0142-NAC (Del. Ch.) (the "*Robinson* Action"), in the Delaware Court of Chancery. On June 1, 2023, Phillip Goldstein filed a dual putative class action and stockholder derivative complaint, styled *Goldstein v. Fortress Acquisition Sponsor II, LLC*, C.A. No. 2023-0582-NAC (Del. Ch.) (the "*Goldstein* Action," and together with the *Ghaith* Action and the *Robinson* Action, the "*Multiplan* Actions"). The direct class claims asserted in the *Multiplan* Actions are being resolved together with the claims in the Settlement. The derivative claims in the *Ghaith* and *Goldstein* Actions, which do not overlap with the claims here, are subject to a separate settlement, which will be presented to the Court in the *Ghaith* Action. This action and the *Multiplan* Actions are collectively referenced here and in the Stipulation of Settlement as the "Actions".

with this action, and which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. The Claims Administrator has completed processing the Claims received for the Settlement and, through their current Motion, Plaintiffs seek the Court's approval to distribute the Net Settlement Fund to Settlement Class Members who submitted eligible Claims.

The Class Distribution Order will, upon being entered by the Court, permit SCS to make an Initial Distribution of the Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order will: (i) approve SCS' administrative determinations accepting and rejecting the Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund (as divided into the Securities Subclass Fund and Multiplan Subclass Fund) to Claimants whose Claims are accepted by SCS as valid and approved by the Court ("Authorized Claimants"); (iii) direct that distribution checks state that the check must be cashed within 180 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (v) approve the recommended plan for any funds remaining after the Initial Distribution; (vi) release claims related to the administration process; and (vii) authorize the destruction of Claim Forms and supporting documents at an appropriate time.

As discussed below, there are thirteen Claimants with outstanding requests for Court review of SCS's administrative determination to reject their Claims ("Disputed Claims"). Upon the filing of the Motion, the Claims Administrator will send each Claimant with a Disputed Claim a copy of the Motion, this Memorandum, the proposed Distribution Order, and the Bravata Declaration, including the supporting documentation that relates to the Claimant's Disputed Claim. The Claims Administrator will inform these Claimants that they do not need to take any further

action to have the Court consider their dispute; however, if these Claimants wish to make an additional submission, they should direct it to the Court's attention with a copy to the Claims Administrator postmarked no later than May 9, 2025. If any such submission is made, Lead Counsel will submit a reply by May 16, 2025 addressing such submission.

Pursuant to the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 19, 23, 25 ("No Defendant, nor any of Defendants' Releasees, shall be permitted to review, contest, or object to any Claim Form or any decision of the Claims Administrator or Plaintiffs' Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member."). Defendants' nonetheless attempt to contest the determination of the Claims Administrator and Plaintiffs' Counsel as to a named Defendant, Fortress Acquisition Sponsor II LLC ("FAII"). As further argued below, such objection is both without merit and expressly disallowed pursuant to the Stipulation.

## I.    INTRODUCTION

On September 24, 2024, the Court entered the Final Judgement and Order of Dismissal With Prejudice approved the Settlement. ECF No. 191 ("Final Approval Order"). The deadline for claims submission was October 18, 2024. *See* Order Preliminarily Approving Settlement and Providing for Notice at ¶10 (ECF No. 172) ("Preliminary Approval Order"). The Claims Administrator reports that all eligible claims have been received, reviewed, and are ready to be paid. The Settlement's "Effective Date" under paragraph 33 of the Stipulation has now occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants. In

accordance with paragraph 28 of the Stipulation, Plaintiffs respectfully request that the Court enter the Class Distribution Order and approve the proposed Distribution Plan.

The Claims Administrator received 10,135 Claim Forms (referred to as "Claims"), 4,432 of which meet the approved criteria for payment.[3] *See* Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process ¶¶ 9, 10(a) ("Bravata Declaration" or "Bravata Decl.") attached hereto as Exhibit 1. The 4,432 properly documented represent Recognized Claims of $156,369,212.13 for Securities Subclass and 19,701,302.4986 shares for the Multiplan Subclass. *Id.* ¶ 10(a). Lead Counsel have reviewed the Claims Administrator's findings and agree that the properly documented Claims should be paid.

The Claims Administrator rejected 5,703 Claims that failed to meet the requirements of the Stipulation. *See* Bravata Decl. ¶¶ 10(b)-(c). Included in this category are 37 inadequately documented claims, as well as 5,666 claims recommended for complete rejection, which includes: (i) claims filed for shares purchased outside of the Settlement Class Period; (ii) claims with no Recognized Losses; (iii) claims with shares sold short; (iv) claims filed for securities other than ATI Physical Therapy, Inc. ("ATI") or Fortress Value Acquisition Corp. II ("FVAC") common stock; (v) claims filed for shares that were received or transferred into an account, but not purchased; (vi) duplicate claims filed; (vii) claims filed by an excluded parties; (viii) fraudulent claims; and (ix) claims withdrawn from the filing entity. *Id.* These Claims were denied after review in accordance with the procedure approved by the Court. None of the inadequately documented deficient claimants dispute the rejection of their respective Claims. *Id.* ¶ 10(b). To

---

[3] The Claims Administrator has not processed any new claims filed after October 21, 2024, or any additional information received or submitted after March 25, 2025, due to extreme lateness and because their inclusion would have delayed the finalization of the administration. *See* Bravata Decl. ¶ 9 n.2.

date, 13 of the ineligible claimants object to or contest the Claims Administrator's determination. *Id.* ¶ 10(c). Those claims, which the Claims Administrator recommends be rejected, are described in detail in the Bravata Decl. ¶ 10(c)(1)-10(b)(8), Exhibits G-N.

Now that the claims process is complete, Lead Counsel seek to begin the distribution process. To facilitate the claims administration, Lead Counsel request that each Authorized Claimant's check state that it must be cashed within one hundred and eighty (180) days after the issue date or else is void. This deadline will encourage the prompt cashing of checks by Authorized Claimants and will also allow Lead Counsel to determine if a second distribution is feasible in a timely manner.

Accordingly, consistent with the Stipulation and the Final Approval Order, the Net Settlement Fund should be distributed to the Settlement Class as proposed in the class distribution order filed with this motion.

## II.    THE CLAIMS SUBMITTED FOR PAYMENT

All notices informed the Settlement Class that October 18, 2024 was the due date for filing Claims. As a result of the notice program (including mailings, press releases, and Settlement website portal) the Claims Administrator received 10,135 Claims in connection with the Settlement. *See* Bravata Decl. ¶ 9.

The Claims Administrator carefully reviewed, analyzed, and processed the 10,135 claims and has responded to all claimant inquiries regarding the action, the settlement and the procedures for filling out the Claim Forms, in accordance with the requirements for payment pursuant to the Plan of Allocation. Bravata Decl. ¶ 9. The Claims Administrator determined that 4,432 of the Claims were properly documented, had recognized losses, and otherwise met the requirements of the Notice (the "Authorized Claims"). *Id.* ¶ 10(a). The Authorized Claims represent

$156,369,212.13 for Securities Subclass and 19,701,302.4986 shares for the Multiplan Subclass. *Id.* These valid claims were calculated in the manner set forth in the Court-approved Plan of Allocation, included in the Notice. Attached as Exhibit B to the Bravata Decl. is a spreadsheet of the 4,432 properly documented and timely submitted.

## III. THE COURT SHOULD APPROVE PAYMENT OF THE AUTHORIZED CLAIMS

The Claims Administrator carefully reviewed, analyzed, and processed the Claims. Authorized Claims required documentation and a recognized loss as calculated under the Plan of Allocation. The Bravata Declaration discusses the Claims Administrator's review of the Claims and provides additional detail for the Court's consideration. Lead Counsel agree that the Authorized Claims should be paid from the Net Settlement as soon as possible.

The Claims Administrator will follow the procedure for payment of Authorized Claims as previously ordered in the Preliminary Approval Order and the Final Approval Order. In addition, Lead Counsel joins the Claims Administrator in its recommendation that all checks for Authorized Claim bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE" in order to encourage prompt cashing of checks. *See* Bravata Decl. ¶ 10(c). Implementing this process will save administrative costs and is necessary in order for Lead Counsel to calculate the amount of cash available for a possible redistribution within a reasonable time after the initial distribution. To the extent any monies remain in the fund six (6) months after the initial distribution, if Plaintiffs' Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator shall conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution.

Bravata Decl. ¶ 10(d). Additional redistributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Plaintiffs' Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. *Id.*

Accordingly, Lead Counsel request that the Court permit the distribution of the Net Settlement Fund to the Authorized Claimants listed in Exhibit B of the Bravata Declaration, with a requirement that checks be cashed within 180 days after the issue date.

## IV.    ALL REJECTED CLAIMS WERE PROPERLY DENIED

After reviewing all 10,135 Claims received for this action, the Claims Administrator rejected 5,703 Claims for the following reasons:

| No. of Claims | Reason for Rejection |
|---|---|
| 1,996 | Claims Did Not Result in a Recognized Loss |
| 3,273 | Claims Purchased Outside Class Period |
| 3 | Claims Withdrawn |
| 48 | Shares Not Purchased |
| 37 | Inadequate Documentation |
| 220 | Shares Sold Short |
| 20 | Duplicate Claims Filed |
| 72 | Wrong Stock |
| 18 | Claims Filed by Excluded Parties |
| 16 | Fraudulent Claims |

*See* Bravata Decl., Exs. A, D, E.

As part of the administration process, the Claims Administrator attempted to contact each Claimant with deficient or ineligible Claims to provide them with opportunities to cure the deficiencies identified in their Claims. *See* Bravata Decl. ¶¶ 10(b)-(c). Claimants with deficient claims were advised that they had the right to contest the Claims Administrator's determination of deficiencies or ineligibility and that they could request that their dispute be submitted to the Court

- 8 -

for review.  *See id*., Exs. C and F.  Of the 73 initially identified inadequately documented claims, 36 were successfully cured and are considered valid, and the remaining 37 either did not respond to the deficiency notice or responded with insufficient documentation and were sent a rejection notice setting forth the reason for their deficiency.   Bravata Decl. ¶ 10(b).  To date, none of the 37 deficient claimants has objected to or contested this determination.

**A.     Disputed Claims**

Consistent with paragraph 26(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of their right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of their Claim and request Court review of SCS's administrative determination of the Claim. *Id*. ¶ 10(b)-(c), and Exhibits C and F.  Of the 5,666 claims recommended for complete rejection, 13 ineligible claimants contested the Claims Administrator's determination and are being submitted to the Court for resolution (i.e., the Disputed Claims). *Id.* ¶ 10(c).

Exhibits G-N of the Bravata Declaration contain a copy of each Disputed Claim with its supporting documentation and sets forth the reasons for SCS's rejection of each Disputed Claim. *Id*. For privacy reasons, the documents included in Exhibits G-N have been redacted to remove personal information such as street addresses, email addresses, telephone numbers, account numbers, Taxpayer ID, Social Security, or Social Insurance Numbers, and all financial and transaction information not related to the Claimants' transactions in ATI common stock or options purchased/acquired/sold during the Class Period.

SCS recommends the thirteen (13) Disputed Claims for rejection.  *Id*.  Perhaps most significantly, Disputed Claim No. 50006 (Exhibit G) is recommended for rejection.  In this claim, a *named Defendant*, Fortress Acquisition Sponsor II LLC ("FAII"), seeks to recover almost *half*

*of the settlement* value of the Securities and Multiplan Subclasses for itself.[4]  The parties manifestly did not intend the settlement to return to Defendants almost half of the settlement value.

SCS independently determined that this claim is ineligible for the following reasons: "excluded party for the Securities Subclass and Multiplan Subclass, shares purchased prior to the Securities Subclass, and shares not purchased on the New York Stock Exchange for the Securities Subclass."  Claim 50006 was filed on behalf of Fortress Acquisition Sponsor II LLC – FIG LLC. SCS determined that this claim is ineligible as FAII as a Defendant is an excluded party for the Securities Subclass and Multiplan Subclass.  The Claimant's attorney, Jenness E. Parker, from Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") claims that a majority owner of FAII is not "a Defendant alone or with its affiliates" but a fund owned by advisory clients, and argues that FAII is therefore an Investment Vehicle.  Fortress Acquisition Sponsor II LLC is defined as one of the *Ghaith* Defendants on page 15 of the Stipulation, *Ghaith* Defendants are included in the Defendants definition on page 14 of the Stipulation, and under the Settlement Class definition on page 23 of the Stipulation[5], Defendants are excluded from the Settlement Class.

Moreover, SCS determined that 7.5 million of FAII's shares were acquired through a private placement on February 21, 2021 and 8.525 million shares converted from Class F shares to Class A common stock on February 21, 2021.[6]  The Class F common stock was defined as

---

4 Based on SCS's research and conversation with Skadden, the estimated recognized claim amount total $114,418,500 for the Securities Subclass (42.3%) and 16,025,000 shares for the Multiplan Subclass (44.9%).

5 Excluded from the Settlement Class are (i) Defendants; (ii) current and former Officers and directors of the Company; (iii) members of the Immediate Family of each of Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and Officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, Officers, directors, and any other individual or entity in which any of Defendants has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of all such excluded parties; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class.

6 https://www.sec.gov/Archives/edgar/data/1815850/000120919121042128/xslF345X03/doc4.xml

MEMORANDUM IN SUPPORT OF MOTION FOR ORDER OF DISTRIBUTION; 1:21-CV-04349

Founders' shares through the merger.[7] Pursuant to the Stipulation on page 13, ATI Securities is defined as ATI's common stock traded on the New York Stock Exchange ("NYSE") under the ticker symbol "ATIP" or FVAC that traded on the NYSE under the ticker symbol FAII; therefore, these shares would be ineligible for the Securities Subclass as they were purchased prior to the Securities Subclass Settlement Class Period and were purchased on the wrong market.

Lead Counsel agree with the claims administrators' rejection of Disputed Claim No. 50006, for these and additional reasons. FAII was one of the named defendants in each of the *Multiplan* Actions, *In re ATI Physical Therapy, Inc. S'holder Deriv. Litig.*, Case No. 1-21-cv-06415 (EEC) (N.D. Ill.) (the "*Ghaith* Action"); (iii) *Robinson v. Fortress Acquisition Sponsor II, LLC*, No. 2023-0142-NAC (Del. Ch.) (the "*Robinson* Action"); and (iv) *Goldstein v. Fortress Acquisition Sponsor II, LLC*, No. 2023-0582- NAC (Del. Ch.) (the "*Goldstein Action*," and together with the *Ghaith* Action and the *Robinson* Action, the "*Multiplan* Actions"). *See* Stipulation at p. 1, ¶¶ 1(l), (u), (z), (x), (ccc); *see* Notice ¶¶ 1, 18, 20, 22. As a named Defendant, FAII is *expressly excluded* from the Settlement Class and thus from any recovery under the Settlement. *See* Stipulation ¶ 1(jjj) ("Excluded from the Settlement Class are . . . Defendants"); Notice ¶ 32 (same); Notice ¶ 57 ("Only Settlement Class Members will be eligible to share in the distribution of the Net Settlement Fund. Persons and entities which are excluded from the Settlement Class by definition . . . will not be eligible to receive a distribution from the Net Settlement Fund").

FAII's argument that it entitled to be included in the Settlement Class rests on an untenable interpretation of the term "Investment Vehicle." *See* Stipulation ¶¶ 1(bb), 1(jjj). That term allows certain entities that that might be found to be affiliates of Defendants (or otherwise excluded) to

---

7 https://www.sec.gov/Archives/edgar/data/1815849/000119312521211848/d122377dex51.htm.

MEMORANDUM IN SUPPORT OF MOTION FOR ORDER OF DISTRIBUTION; 1:21-CV-04349

nonetheless be included in the Settlement Class. Importantly, the definition of "Investment Vehicle" expressly states that any entity in which any Defendant alone or together with his, her, or its respective affiliates is a majority owner or holds a majority beneficial interest cannot be an "Investment Vehicle" and thus cannot be brought back into the Settlement Class. FAII is a named Defendant. FAII is the majority owner of itself—FAII owns 100% of FAII. Thus, FAII is 100% (i.e., "majority") owned by a Defendant, FAII, and cannot be an "Investment Vehicle" under the terms of that carveout.

Moreover, the intent of parties is likewise dispositive. The "Investment Vehicle" carveout from those excluded from the Settlement could not possibly have been intended to permit Defendants to recover almost half of the Settlement. The Investment Vehicle carveout was included in the class definition to assure that broad terms like "affiliated" or "controlled entities" do not go too far and, for example, bar a mutual fund from participation in the class simply because it is technically affiliated with a Defendant (for example, one of the Underwriter Defendants) even though the mutual fund is actually beneficially owned by independent investors and not by defendants. The "Investment Vehicle" language includes a limitation providing that it cannot bring back into the Settlement Class an otherwise excluded person if the Investment Vehicle is majority owned or controlled by a Defendant. *A fortiori*, that language cannot allow an excluded Defendant *itself* to be brought back into the Settlement Class. It is not a supportable interpretation to argue that an entity wholly owned (or majority owned) by a Defendant would be excluded under that term, but a named Defendant itself would be allowed to participate.

Moreover, to the extent that the language of the Settlement Class is ambiguous as applied to FAII, it should be interpreted in light of the principle that Defendants cannot be included in the class because their interests are antagonistic to other class members, and their inclusion in the class

MEMORANDUM IN SUPPORT OF MOTION FOR ORDER OF DISTRIBUTION; 1:21-CV-04349

would create an irreconcilable conflict. *See, e.g., Baranski v. Vaccariello*, 896 F.2d 1095, 1097-98 (7th Cir. 1990) (in a commodities fraud class action, the Seventh Circuit found that, despite the lack of *any* express exclusion in the class definition, the named defendants must be excluded from the class because their interests "were in conflict with the rest of the class."); *Chesemore v. All. Holdings, Inc.*, 276 F.R.D. 506, 510 (W.D. Wis. 2011) (exclusion of defendants from class was appropriate, given "the obvious conflict between these defendants and the rest of the class").[8]

The Court should also consider the practical implications here. The Claims Administrator, Strategic Claims, has advised Class Counsel that if FAII's claim is accepted, FAII would receive *approximately 40%* of the total amount of the Net Settlement Fund in compensation. To return 40% of the Net Settlement Fund to one of the named Defendants would be flatly inconsistent not only with the intent of the Parties in reaching the Settlement, as noted above, but also with the approved Notice that expressly states that no portion of the Settlement Fund would be returned to Defendants. *See* Stipulation ¶ 14 ("Upon the occurrence of the Effective Date, no Defendant. . . shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever . . . "); Notice ¶ 52 ("Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf is entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final").

---

[8] *See also Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2021 WL 7081190, at *2 (C.D. Cal. Aug. 6, 2021) ("The class definition is limited by the typical exclusions to avoid conflicts of interest. . . 'Excluded from the Class are . . . Defendants'"); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550, at *8 (D. Kan. Mar. 10, 2020) ("This exclusion is needed to avoid the potential conflict that otherwise could arise by including entities in the classes who allegedly . . . benefited from defendants' [misconduct].").

In short, FAII's meritless attempt to claim 40% of the settlement amount to be paid to the victims of the alleged wrongdoing that it and the other Defendants caused is inconsistent with the text and intent of the class definition and should be promptly rejected. As Judge Hellerstein of the Southern District of New York said in a similar context, where a named defendant in a securities fraud class action attempted to benefit from the of settlement of the action:

> This is an astonishing display of chutzpah, a "legal term of art" described as "that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 n.5 (2d Cir. 2009) (quoting Leo Rosten, The Joys of Yiddish 92 (1968)). To accept Disputing Claimants' claim would effectively allow a defendant . . . to recover damages for harm he caused. Compensation in this settlement is for the plaintiffs who were injured, not the defendants who injured them.

*In re Biovail Corp. Sec. Litig*, No. 03 Civ. 8917 (AKH), slip op. at 2 (S.D.N.Y. Jan. 19, 2011), ECF No. 294, *aff'd*, 462 F. App'x 122, 125 (2d Cir. 2012).

Counsel for the *Multiplan* agree for the additional reason that FAII has waived its right to redemption as a member of the Multiplan Subclass. The Stipulation of Settlement defines the Class (including the Multiplan Subclass) as follows: "Settlement Class" means, for purposes of the Settlement only, and pursuant to Federal Rule of Civil Procedure 23(b)(3), all persons and entities who: (a) purchased or otherwise acquired ATI Securities between February 22, 2021 and October 19, 2021, both dates inclusive, and/or beneficially owned and/or held FVAC common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting to vote on the Business Combination (the "Securities Subclass"); and/or (b) *beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date who were entitled to, but did not elect to, redeem their shares (the "Multiplan Subclass")*. Excluded from the Settlement Class are (i) Defendants; (ii) current and former Officers and directors of the Company; (iii) members of the Immediate Family of each of Defendants; (iv) all subsidiaries and

affiliates of the Company and the directors and Officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, Officers, directors, and any other individual or entity in which any of Defendants has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of all such excluded parties; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class.  On May 14, 2021, the SPAC filed a Form DEF14A with the SEC.  This filing disclosed that Sponsor waived its redemption rights: "Fortress Acquisition Sponsor II LLC, a Delaware limited liability company (the "Sponsor"), and FAII's officers and directors (together with the Sponsor, the "Insiders") have agreed to waive their redemption rights in connection with the consummation of the Business Combination with respect to any shares of FAII Common Stock they may hold."  Thus, FAII cannot possibly recover as a member of the Multiplan Subclass because it was not entitled to redeem its shares.

Finally, pursuant to the Stipulation, Defendants are expressly prohibited from contesting the Claims Administrators determinations as to any claim for payment by a Settlement Class Member:

> Plaintiffs' Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. *No Defendant, nor any of Defendants' Releasees, shall be permitted to review, contest, or object to any Claim Form or any decision of the Claims Administrator or Plaintiffs' Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.* Plaintiffs' Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

Stipulation ¶ 25.  Accordingly, the Stipulation expressly forbids Defendants even from contesting or objecting to the determinations made as to their claim for payment, and any such objection should be disregarded by this Court.

- 15 -

As to the remaining contested claims, SCS has rejected them for the following reasons, which Lead Plaintiffs support. As each of these claims were filed by an excluded party, they are ineligible altogether. They are further ineligible because many shares were acquired in connection with an agreement which was entered prior to the Securities Subclass, and not purchased through the New York Stock Exchange, as further described below.

Disputed Claim No. 565 (Exhibit H) is recommended for rejection because SCS determined that this claim was ineligible for the following reasons: it was filed by an excluded party for the Securities Subclass and Multiplan Subclass, shares were purchased prior to the Securities Subclass, and shares were not purchased on the New York Stock Exchange for the Securities Subclass. Claim 565 was filed for Dakota Holdco LLC claiming a buy of 3,038,197 shares on June 17, 2021 for $10. It appears that these shares were part of the First Amendment to the Amended and Restated Registration Rights Agreement with Fortress Acquisition Sponsor II LLC (the "Dakota Agreement") entered on February 21, 2021, prior to the Securities Subclass, meaning the shares were purchased prior to the Securities Subclass, and as they were acquired through agreement, they were not purchased on the New York Stock Exchange, as required to be eligible for the Securities Subclass.[9] Additionally, Dakota Holdco LLC has four managers: Gregory Steil, Dylan Bates, Brent Mack, and Robert McKenzie. SCS' research discovered three managers were former officers of ATI: Gregory Steil was a founder and Chief Executive Officer; Dylan Bates was the Chief Executive Officer; and Brent Mack was Vice President of Operations then Chief Operating Officer; and the fourth manager, Robert McKenzie, was General Counsel for

---

[9] https://www.sec.gov/Archives/edgar/data/1815849/000119312521050079/d115588dex21.htm, https://www.sec.gov/Archives/edgar/data/1815849/000119312521230784/d122377d424b3.htm, and https://www.sec.gov/Archives/edgar/data/1815849/000114036122030504/ny20005103x1_424b3.htm#TOC

MEMORANDUM IN SUPPORT OF MOTION FOR ORDER OF DISTRIBUTION; 1:21-CV-04349

ATI. Pursuant to the Stipulation, the Settlement Class excludes former officers and legal representatives. Therefore, SCS determined that this claim was ineligible for being filed by an excluded party.

Disputed Claim No. 566 (Exhibit I) is recommended for rejection because SCS determined that this claim is ineligible for the following reasons: it was filed by an excluded party for the Securities Subclass and Multiplan Subclass, shares were purchased prior to the Securities Subclass, and shares were not purchased on the New York Stock Exchange for the Securities Subclass. Claim 566 was filed by Mr. McKenzie claiming 85,852 shares purchased on June 17, 2021 for $10 and 18,869 shares received after October 19, 2021. SCS determined that this claim is ineligible because Mr. McKenzie was General Counsel for ATI and therefore an excluded party. Mr. McKenzie claims he is not an excluded party, however, SCS's investigation indicates he was General Counsel for ATI.[10] Additionally, SCS discovered that Mr. McKenzie was a limited partner of Wilco Acquisition LP and was distributed 85,852 shares in November 2021, and the 18,869 shares were part of the 3,038,197 shares sold from Dakota Holdco LLC in the Dakota Agreement as mentioned above, meaning they were also purchased outside of the class period and not purchased on the New York Stock Exchange.

Disputed Claim Nos. 220, 221, and 222 (Exhibit J) are recommended for rejection because SCS determined that these claims are ineligible for the following reasons: they were filed by an excluded party for the Securities and Multiplan Subclasses, shares were purchased prior to the Securities Subclass, and shares were not purchased on the New York Stock Exchange for the Securities Subclass. Claims 220, 221, and 222 were filed by The Gregory F. Steil Descendants

---

[10] *See* https://www.bloomberg.com/profile/person/20792379?embedded-checkout=true.

MEMORANDUM IN SUPPORT OF MOTION FOR ORDER OF DISTRIBUTION; 1:21-CV-04349

Trust, Willowbrook Holdings Inc., and Gregory F. Steil. The total shares claimed for these three claims are 1,077,987 shares, which were part of the 3,038,197 Dakota Holdco LLC shares in the Dakota Agreement that were purchased outside of the class period and not purchased on the New York Stock Exchange. Additionally, Mr. Steil was the founder and Chief Executive Officer of ATI; therefore, SCS determined this claim to be ineligible because he was an excluded party.

Disputed Claim No. 277 (Exhibit K) is recommended for rejection because SCS determined that this claim was ineligible for the following reasons: it was filed by an excluded party for the Securities Subclass and Multiplan Subclass, shares were purchased prior to the Securities Subclass, and shares were not purchased on the New York Stock Exchange for the Securities Subclass. Claim 277 was filed by Lisa Gutierrez claiming 22,626 shares. SCS' research located that Ms. Gutierrez worked in HR at ATI. Her role in HR assisted ATI in acquisitions; therefore, SCS' determined that this claim was ineligible for being filed by an excluded party. An additional review of the Dakota Holding LLC claim uncovered that the 22,626 shares were part of the shares sold that were part of the Dakota Agreement entered on February 21, 2021, and therefore the shares were purchased prior to the Securities Subclass and were not purchased on the New York Stock Exchange. Ms. Gutierrez also provided Class B and D units from 2013 based on Award Agreements, which were also outside of the class period and not purchased on the New York Stock Exchange.

Disputed Claim No. 305 (Exhibit L) is recommended for rejection because SCS determined that this claim was ineligible for the following reasons: it was filed by an excluded party for the Securities Subclass and Multiplan Subclass, shares were purchased prior to the Securities Subclass, and shares were not purchased on the New York Stock Exchange for the Securities Subclass. Claim 305 was filed by Jason Hafner who was the Division President of ATI, and therefore this

claim was ineligible for being filed by an excluded party. The shares being claimed on this form were 195,597 shares, and Mr. Hafner became the beneficial owner of the 195,597 shares from becoming a limited partner of Wilco Acquisition, LP in or about May 2016, therefore, these shares were purchased prior to the Securities Subclass and were not purchased on the New York Stock Exchange.

Disputed Claim Nos. 227, 228, and 229 (Exhibit M) are recommended for rejection because SCS determined that these claims were ineligible for the following reasons: they were filed by an excluded party for the Securities Subclass and Multiplan Subclass, shares were purchased prior to the Securities Subclass, and shares were not purchased on the New York Stock Exchange for the Securities Subclass. Claims 227, 228, and 229 were filed by Dylan Bates who was the Chief Executive Officer of ATI, and therefore SCS determined this claim to be ineligible for being an excluded party. The total shares claimed for these three claims are 3,981,802 shares. Out of these shares, 807,989 shares are part of the 3,038,197 Dakota Holdco LLC shares from the Dakota Agreement, and therefore were purchased prior to the Securities Subclass, and not purchased on the New York Stock Exchange.

Disputed Claim Nos. 170 and 214 (Exhibit N) are recommended for rejection because SCS determined that these claims are ineligible for the following reasons: they were filed by an excluded party for the Securities Subclass and Multiplan Subclass, 90,064 shares were purchased prior to the Securities Subclass, 90,064 shares were not purchased on the New York Stock Exchange for the Securities Subclass, as well as no purchase documentation provided for the 342,649 shares. SCS determined Claims 170 and 214 to be ineligible for being filed by an excluded party because Claim 170 was filed by Christopher Orr who SCS located online to be the Senior Vice President of Real Estate and Clinic Development for ATI, and Claim 214 was filed

by Brent Mack who was the Vice President of Operations, and later Chief Operating Officer for ATI. The total shares claimed for these claims are 432,713 shares (90,064 shares were part of the 3,038,197 Dakota Holdco LLC shares that were part of the February 21, 2021 Agreement, and therefore were purchased prior to the Securities Subclass and not purchased on the New York Stock Exchange). Additionally, no purchase documentation was provided with these claims, as the original claims only show the shares being held.

Those claims, which the Claims Administrator recommends be rejected, are described in detail in the Bravata Decl. ¶ 10(c)(1)-10(b)(8), Exhibits E, G-N. Lead Counsel has reviewed the Claims Administrator's determinations concerning the thirteen contesting ineligible claimants, and concur that the Disputed Claims should be rejected for the reasons set forth in the Bravata Declaration and herein. In anticipation of completing this administration, Lead Counsel respectfully requests that the Court reject the thirteen claims in light of the Claims Administrator's determinations. Bravata Decl. ¶ 11.

## V. BAR FOR FURTHER CLAIMS AGAINST THE NET SETTLEMENT FUND

In order to facilitate the efficient distribution of the Net Settlement Fund, it is respectfully requested that the Court bar any further Proofs of Claim against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, it is respectfully requested that Court reject as untimely any claims received after October 21, 2024, any responses to deficiency and/or rejection notices

received after March 25, 2025, and the claims that dispute the Claims Administrator's determination. *See* Bravata Decl. ¶11.

## VI. RECORDS RETENTION AND DESTRUCTION

The Claims Administrator reports that if it is required to maintain documentation related to Claim Forms for an extended period, it will incur additional storage expenses and related costs for storing such documentation. *See* Bravata Decl. ¶ 12(g). To prevent additional charges to the Settlement Class, Lead Counsel request that the Court order that: (i) in no less than one (1) year after the Distribution of the Net Settlement Fund, SCS may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, SCS may destroy the electronic copies of the Claim Forms and all supporting documentation. *Id.* This is the customary document retention period SCS uses to prevent additional costs to the Class for storage expenses and related fees. *Id.*

## VII. CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court enter the proposed class distribution order: (a) approving the Claims Administrator's determinations concerning the acceptance and rejection of the Claims submitted; (b) directing payment of the Net Settlement Fund to Authorized Claimants with a 180-day period for cashing checks; and (c) permitting the Claims Administrator to destroy Claim Forms and supporting documentation one year after the distribution.

Dated:  April 25, 2025

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Austin P. Van*
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jeremy P. Robinson
1251 Avenue of the Americas
New York, New York   10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
jeremy@blbglaw.com

*Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Bonni S. Jensen
7080 Northwest Fourth Street
Plantation, Florida   33315
Telephone: (954) 916-1202
Facsimile:  (954) 916-1232
bob@robertdklausner.com
bonni@robertdklausner.com

*Additional Counsel for Consolidated Plaintiff City of Melbourne Firefighters' Retirement System*

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

MEMORANDUM IN SUPPORT OF MOTION FOR ORDER OF DISTRIBUTION; 1:21-CV-04349