# EXHIBIT 1
# Part 2 of 3

## Messages *(continued)*

OTHER SOURCES OF REVENUE TO PERSHING

As a custodian, Pershing receives compensation from third parties for the services it provides to support certain products, including but not limited to, mutual funds, 529 plans, money funds, bank deposit sweep products, annuities, alternative investments, and ETFs.

CREDIT INTEREST AND CHECK DISBURSEMENTS

Under certain conditions, Pershing earns revenue based on free credit balances in client accounts. A small number of firms share in a portion of that revenue. In situations where you request a check disbursement from your account, Pershing will continue to earn revenue based on the amount of the check from the date that it is disbursed until its final settlement and payment. Free credit balances in your account are for investment purposes. If you currently maintain free credit balances in your account solely for the purpose of receiving credit interest and have no intention of investing the funds in the future, contact your firm to discuss your investment options.

MUTUAL FUND FEES AND REVENUE SHARING

Pershing provides operational services to mutual fund companies and receives fees for those services. These fees are paid to Pershing for its work on behalf of the funds, such as dividend calculations and posting, accounting, reconciliation, client confirmation and statement preparation   and mailing, and tax statement preparation and mailing.

Where applicable, Pershing facilitates payments of SEC Rule 12b-1 fees received from mutual funds and paid to you or your firm. In limited circumstances, pursuant to agreements with certain firms, Pershing retains a portion of those fees.

Pershing offers a mutual fund no-transaction-fee program called FundVest® and Offshore Flex (for non-US clients). Pershing receives fees from mutual funds that participate in FundVest and Offshore Flex. There are some firms that choose to participate in this program and have agreements with Pershing to share in the fees received by Pershing.

These fees are considered revenue sharing and are a source of revenue for Pershing and, where applicable, a source of revenue for your firm. These fees create an incentive for Pershing to support these products on its platform.

**PERSHING LLC ANNUAL DISCLOSURE OF IMPORTANT INFORMATION**

Pershing LLC (Pershing), as the custodian for your accounts, is required to disclose certain information to you on an annual basis. This document contains those disclosures.

TRADING ACTIVITY DISCLOSURES

CASH BALANCE/"FLOAT" DISCLOSURE

Pershing obtains a financial benefit attributable to the cash balances in any account (including Employee Retirement Income Security Act accounts that are held by Pershing). Pershing's financial benefit is in the form of either interest on such balances and/or reductions in expenses that Pershing would otherwise pay to such banks. These cash balances result from: (1) cash awaiting investment; or (2) cash pending distribution. With respect to cash awaiting investment (e.g., new contributions), Pershing obtains such financial benefit until the funds are automatically invested into a money market fund or bank deposit sweep product ("Sweep Product") or are used for other purposes, such as to purchase securities. If an account agreement provides for the automatic investment into a Sweep Product, such investment will take place on the day after the receipt of cash (and the financial benefit will be one day), unless timely instructions are received to manually purchase the Sweep Product on the same day that cash is received, which may be accommodated in certain cases. If the account agreement does not provide for automatic investment into a Sweep Product, no automatic investment will occur until the day after the appropriate instructions are added to your account by your firm. When Pershing receives a request for a distribution by check, the account is charged (debited) on the date the check is written. Pershing mails disbursement checks on the same day that they are written. Pershing may obtain the financial benefit described above from the date the check is written until the date the check is presented for payment, the timing of which is beyond Pershing's control. When a distribution is requested using an Automated Clearing House instruction, Pershing receives a one-day financial benefit in connection with the distribution. If the distribution is made using the Federal Reserve wire system, Pershing receives no financial benefit in connection with the distribution.

**Account Number:**
A0140895CSF108DP-SD

GOPAPERLESS
ASK ABOUT EDELIVERY

STATEMENT

Rated Excellent
Every Year Since 2007
DALBAR RATED COMMUNICATIONS
EXCELLENCE

Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon)

Pershing LLC, member FINRA, NYSE, SIPC

**Northwestern Mutual**®
Northwestern Mutual Investment Services, LLC
Northwestern Mutual Wealth Management Company
720 E. Wisconsin Avenue, Milwaukee, WI 53202-4797
1-866-950-4644

June 1, 2024 - June 30, 2024
JASON HAFNER

## Messages *(continued)*

FOREIGN CURRENCY TRANSACTIONS

Pershing will execute foreign currency transactions as principal for your account. Pershing's compensation for such transactions is based on the difference between the prevailing Foreign Exchange Interbank market and the rate applied at the time of the trade. Each currency conversion rate applied by Pershing will not exceed the highest interbank conversion rate identified from customary banking sources on the conversion date or prior business day, increased by up to 1%, unless a particular rate is required by applicable law. Some firms increase or decrease the currency conversion rate you are charged by Pershing and such increase or decrease in the rate results in compensation to your firm. Conversion rates may differ from rates in effect on the date a dividend, interest payment or corporate action is credited or declared. Unless you instruct your firm otherwise, Pershing automatically converts foreign currency to or from U.S. dollars for dividends, interest and corporate actions.

STOP ORDER ELECTION/TRIGGER

Equity odd-lot sales count toward consolidated and participant exchange volumes, but do not update the last-sale, open, close, high, or low price. Since odd-lot executions are not last-sale eligible, they will not trigger non-directed stop, stop-limit or trailing-stop orders routed to Pershing for execution.

CONFIRMATION OF EXECUTIONS AND/OR CANCELLATIONS

Confirmations of executions and/or cancellation requests may be delayed, erroneous (e.g., due to computer system issues) or subject to further edits including cancellation by a market center. A customer is bound by the conditions of the actual order execution if consistent with the customer's order instructions. Further, requests to cancel an order are not guaranteed, and will only be cancelled if received and applied to the still unexecuted order at the relevant market center. Customers may not assume that any order has been executed or cancelled until the customer has received a transaction or cancellation confirmation from Pershing. Even in the event such execution or cancellation is reported to a customer, any reporting or posting errors, including errors in reporting or posting execution prices or cancellations, may be corrected to reflect what actually occurred in the marketplace. Note that during market hours, it is rarely possible to cancel a market order or a marketable limit order as such orders are subject to immediate execution.

## Important Information and Disclosures

The Role of Pershing
- **Pershing LLC, member FINRA, NYSE, carries your account as clearing broker pursuant to a clearing agreement with your financial institution.** Pershing is not responsible or liable for any acts or omissions of your financial institution or its employees and it does not supervise them. Pershing provides no investment advice nor does it assess the suitability of any transaction or order. Pershing acts as the agent of your financial institution and you agree that you will not hold Pershing or any person controlling or under common control with it liable for any investment losses incurred by you.
- Pershing performs several key functions at the direction of your financial institution. It acts as custodian for funds and securities you may deposit with it directly or through your financial institution or that it receives as the result of securities transactions it processes.
- Your financial institution is responsible for adherence to the securities laws, regulations and rules which apply to it regarding its own operations and the supervision of your account, its sales representatives and other personnel. Your financial institution is also responsible for approving the opening of accounts and obtaining account documents; the acceptance and, in certain instances, execution of securities orders; the assessment of the suitability of those transactions, where applicable; the rendering of investment advice, if any, to you and in general, for the ongoing relationship that it has with you.
- Inquiries concerning the positions and balances in your account may be directed to the **Pershing Customer Service Department at (201) 413-3333.** All other inquiries regarding

Account Number
A0140895CSF108DP-SD



Rated Excellent
Every Year Since 2007
DALBAR RATED COMMUNICATIONS
EXCELLENCE

Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon)
Pershing LLC, member FINRA, NYSE, SIPC

## Important Information and Disclosures *(continued)*

### The Role of Pershing *(continued)*

your account or activity should be directed to your financial institution. Your financial organization.s contact information can be found on the first page of this statement.

| For a description of other functions performed by Pershing please consult the Disclosure Statement provided to you upon the opening of your account. This notice is not meant as a definitive enumeration of every possible circumstance, but as a general disclosure. If you have any questions regarding this notice or if you would like additional copies of the Disclosure Statement, please contact your financial institution.

| Pershing is a member of the Securities Investor Protection Corporation (SIPC®). Please note that SIPC does not protect against loss due to market fluctuation. In addition to SIPC protection, Pershing provides coverage in excess of SIPC limits. For more detailed information please visit: www.pershing.com/about/strength-and-stability.

| This statement will be deemed conclusive. You are advised to report any inaccuracy or discrepancy (including unauthorized trading) promptly, but no later than ten days after receipt of this statement, to your financial organization and Pershing. Please be advised that any oral communication should be re-confirmed in writing to further protect your rights, including your rights under the Securities Investor Protection Act.

| Your financial organization.s contact information can be found on the first page of this statement. Pershing.s contact information is as follows: **Pershing LLC, Legal Department, One Pershing Plaza, Jersey City, New Jersey 07399; (201) 413-3330.** Errors and Omissions excepted.

### Important Arbitration Disclosures

| All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

| Arbitration awards are generally final and binding; a party.s ability to have a court reverse or modify an arbitration award is very limited.

| The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

| The arbitrators do not have to explain the reason(s) for their award, unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

| The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

| The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

| The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

### Important Arbitration Agreement

Any controversy between you and Pershing LLC shall be submitted to arbitration before the Financial Industry Regulatory Authority. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action, who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until; (I) the class certification is denied; (II) the class is decertified; or (III) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein. The laws of the State of New York govern.

Pershing.s contact information is as follows: **Pershing LLC, Legal Department, One Pershing Plaza, Jersey City, New Jersey 07399; (201) 413-3330.**

**Account Number**
A0140895CSF108DP-SD

GOPAPERLESS
ASK ABOUT EDELIVERY

STATEMENT

Rated Excellent
Every Year Since 2007
DALBAR RATED COMMUNICATIONS
EXCELLENCE

Clearing through Pershing LLC, a wholly owned
subsidiary of The Bank of New York Mellon
Corporation (BNY Mellon)

Pershing LLC, member FINRA, NYSE, SIPC

**TERMS AND CONDITIONS**

**TRANSACTIONS**

- ALL ORDERS AND TRANSACTIONS SHALL BE SOLELY FOR YOUR ACCOUNT AND RISK SHALL BE SUBJECT TO THE CONSTITUTION, RULES, REGULATIONS, CUSTOMS, USAGES, RULINGS AND INTERPRETATIONS OF THE EXCHANGE OR MARKET AND THE CLEARING FACILITY, IF ANY, WHERE THE TRANSACTIONS ARE EXECUTED AND/OR SETTLED, OR IF APPLICABLE, OF THE FINANCIAL INDUSTRY REGULATORY AUTHORITY AND TO ALL APPLICABLE LAWS AND REGULATIONS.
- TITLE TO SECURITIES SOLD TO YOU, WHERE PERSHING HAS ACTED AS PRINCIPAL, SHALL REMAIN WITH PERSHING UNTIL THE ENTIRE PURCHASE PRICE IS RECEIVED OR UNTIL THE SETTLEMENT DATE, WHICHEVER IS LATER.
- YOU MAY HAVE RECEIVED CONFIRMATIONS FOR TRANSACTIONS WHICH DO NOT APPEAR ON YOUR STATEMENT. IF SO, THE TRANSACTIONS WILL APPEAR ON YOUR NEXT PERIODIC STATEMENT. SUCH TRANSACTIONS MUST BE CONSIDERED BY YOU WHEN COMPUTING THE VALUE OF YOUR ACCOUNT. THIS IS ESPECIALLY TRUE IF YOU HAVE WRITTEN OPTIONS WHICH HAVE BEEN EXERCISED.

**FREE CREDIT BALANCES:** ANY FREE CREDIT BALANCE CARRIED FOR YOUR ACCOUNT REPRESENTS FUNDS PAYABLE UPON DEMAND WHICH, ALTHOUGH PROPERLY ACCOUNTED FOR ON PERSHING'S BOOKS OF RECORD, ARE NOT SEGREGATED AND MAY BE USED IN THE CONDUCT OF ITS BUSINESS.

**DEBIT BALANCES:** INTEREST CHARGED ON DEBIT BALANCES IN YOUR ACCOUNT APPEARS ON THE STATEMENT. THE RATE OF INTEREST AND PERIOD COVERED ARE INDICATED. THE RATE MAY CHANGE FROM TIME TO TIME DUE TO FLUCTUATIONS IN MONEY RATES OR OTHER REASONS. INTEREST IS COMPUTED AS DESCRIBED IN MATERIAL PREVIOUSLY FURNISHED TO YOU. PLEASE CONTACT YOUR FINANCIAL INSTITUTION IF YOU DESIRE ADDITIONAL COPIES.

**MARGIN INFORMATION:** IF YOU MAINTAIN A MARGIN ACCOUNT, THIS IS A COMBINED STATEMENT OF YOUR GENERAL ACCOUNT AND A SPECIAL MEMORANDUM ACCOUNT MAINTAINED FOR YOU UNDER REGULATION T OF THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM. THE PERMANENT RECORD OF THE SEPARATE ACCOUNT AS REQUIRED BY REGULATION T IS AVAILABLE FOR YOUR INSPECTION UPON REQUEST.

**TAX INFORMATION**

- AFTER YEAR END, PERSHING IS REQUIRED TO PROVIDE TAX INFORMATION TO THE INTERNAL REVENUE SERVICE AND OTHER GOVERNMENTAL AUTHORITIES. AT THAT TIME PERSHING WILL PROVIDE THAT INFORMATION ON THE ANNUAL TAX INFORMATION STATEMENT TO YOU; USE THAT STATEMENT TO PREPARE YOUR TAX FILINGS. THE TAX STATEMENT ALSO INCLUDES OTHER USEFUL INFORMATION TO ASSIST IN ACCUMULATING THE DATA TO PREPARE YOUR TAX RETURNS.
- DIVIDENDS, INTEREST AND OTHER DISTRIBUTIONS SHOWN ON THIS STATEMENT WERE CLASSIFIED AS TAXABLE OR NONTAXABLE BASED ON CERTAIN INFORMATION KNOWN AS OF THE DISTRIBUTION DATE. THIS CLASSIFICATION IS SUBJECT TO CHANGE AND IS SOLELY INTENDED FOR USE AS GENERAL INFORMATION.
- PERSHING DOES NOT PROVIDE TAX, INVESTMENT OR LEGAL ADVISORY SERVICES AND NO ONE ASSOCIATED WITH PERSHING IS AUTHORIZED TO RENDER SUCH ADVICE. DO NOT RELY UPON ANY SUCH ADVICE, IF GIVEN. INVESTORS ARE ENCOURAGED TO CONSULT THEIR TAX ADVISORS TO DETERMINE THE APPROPRIATE TAX TREATMENT OF THEIR BUSINESS.

**GENERAL INFORMATION**

- WHENEVER YOU ARE INDEBTED TO PERSHING LLC ("PERSHING") FOR ANY AMOUNT, ALL SECURITIES HELD BY IT FOR YOU IN ANY ACCOUNT IN WHICH YOU HAVE ANY INTEREST SHALL SECURE ALL YOUR LIABILITIES TO PERSHING, AND PERSHING MAY IN ITS DISCRETION AT ANY TIME, WITHOUT TENDER, DEMAND OR NOTICE TO YOU, CLOSE OR REDUCE ANY OR ALL OF YOUR ACCOUNTS BY PUBLIC OR PRIVATE SALE OR PURCHASE OR BOTH OF ALL OR ANY SECURITIES CARRIED IN SUCH ACCOUNTS; ANY BALANCE REMAINING DUE PERSHING TO BE PROMPTLY PAID BY YOU.
- WHENEVER YOU ARE INDEBTED TO PERSHING FOR ANY AMOUNT, ALL SECURITIES CARRIED FOR YOUR ACCOUNT ARE OR MAY BE, WITHOUT FURTHER NOTICE TO YOU, LOANED OR PLEDGED BY PERSHING, EITHER SEPARATELY OR UNDER CIRCUMSTANCES WHICH WILL PERMIT THE COMMINGLING THEREOF, WITH OTHER SECURITIES FOR ANY AMOUNT LESS THAN, EQUAL TO OR GREATER THAN YOUR LIABILITIES TO PERSHING, BUT NOT UNDER CIRCUMSTANCES FOR AN AMOUNT PROHIBITED BY LAW.
- PERSHING MAY TRADE FOR ITS OWN ACCOUNT AS A MARKET MAKER, SPECIALIST, ODD LOT DEALER, BLOCK POSITIONER, ARBITRAGEUR OR INVESTOR. CONSEQUENTLY, AT THE TIME OF ANY TRANSACTION YOU MAY MAKE, PERSHING MAY HAVE A POSITION IN SUCH SECURITIES, WHICH POSITION MAY BE PARTIALLY OR COMPLETELY HEDGED.
- IF AVERAGE PRICE TRANSACTION IS INDICATED ON THE FRONT OF THIS STATEMENT YOUR FINANCIAL INSTITUTION OR PERSHING MAY HAVE ACTED AS PRINCIPAL, AGENT OR BOTH. DETAILS AVAILABLE UPON REQUEST.
- A FINANCIAL STATEMENT OF PERSHING IS AVAILABLE FOR YOUR PERSONAL INSPECTION AT PERSHING'S OFFICES. A COPY OF IT WILL BE MAILED UPON YOUR WRITTEN REQUEST OR YOU CAN VIEW IT ONLINE AT WWW.PERSHING.COM.
- FOR BUSINESS CONTINUITY AND ADDITIONAL DISCLOSURES: WWW.PERSHING.COM/us/en/disclosures.html
- THIS STATEMENT SHOULD BE RETAINED FOR YOUR RECORDS.

**PAYMENT FOR ORDER FLOW AND ORDER ROUTING POLICY DISCLOSURES (REGULATION NMS – RULE 607 (A) (1) – (2))**

PERSHING SENDS EQUITY AND OPTION ORDERS TO EXCHANGES, OR BROKER–DEALERS AS MARKET MAKERS OR AUTOMATED TRADING SYSTEMS (ATSS). CERTAIN OF THESE VENUES PROVIDE PAYMENTS TO PERSHING OR CHARGE ACCESS FEES TO PERSHING DEPENDING UPON THE CHARACTERISTICS OF THE ORDER AND ANY SUBSEQUENT EXECUTION. THE DETAILS OF THESE PAYMENTS AND FEES ARE AVAILABLE UPON WRITTEN REQUEST. COMPENSATION IS GENERALLY IN THE FORM OF A PER SHARE OR PER OPTION CONTRACT CASH PAYMENT. IN ADDITION, PERSHING EXECUTES CERTAIN TRANSACTIONS IN EQUITY PREFERRED SECURITIES AND FRACTIONAL SHARES AS PRINCIPAL. PERSHING ALSO ROUTES CERTAIN EQUITY ORDERS TO ITS AFFILIATE, BNY MELLON CAPITAL MARKETS, LLC, FOR EXECUTION AS PRINCIPAL.

**BEST EXECUTION:** NOTWITHSTANDING THE PREVIOUS PARAGRAPH REGARDING PAYMENT FOR ORDER FLOW, PERSHING SELECTS CERTAIN MARKET CENTERS TO PROVIDE EXECUTION OF OVER-THE-COUNTER AND EXCHANGE-LISTED SECURITIES TRANSACTIONS WHICH AGREE TO ACCEPT ORDERS, TRANSMITTED ELECTRONICALLY UP TO A SPECIFIED SIZE, AND TO EXECUTE THEM AT OR BETTER THAN THE NATIONAL BEST BID OR OFFER (NBBO). IN CERTAIN SECURITIES THAT ARE NOT ELECTRONICALLY QUOTED, PERSHING DIRECTLY CONTACTS MARKET CENTERS TO OBTAIN AN EXECUTION. THE DESIGNATED MARKET CENTERS TO WHICH ORDERS ARE AUTOMATICALLY ROUTED ARE SELECTED BASED ON THE CONSISTENT HIGH QUALITY OF THEIR EXECUTIONS AND THEIR ABILITY TO PROVIDE OPPORTUNITIES FOR EXECUTIONS AT PRICES SUPERIOIR TO THE NBBO. PERSHING ALSO REGULARLY REVIEWS REPORTS FOR QUALITY OF EXECUTION PURPOSES.

IF ANY OF THE ABOVE TERMS AND CONDITIONS ARE UNACCEPTABLE TO YOU, PLEASE NOTIFY PERSHING IMMEDIATELY IN WRITING BY CERTIFIED MAIL TO ONE PERSHING PLAZA, JERSEY CITY, NJ 07399, ATTN: LEGAL DEPT

Account Number:

A0140895CSF108DP-SD

GOPAPERLESS
ASK ABOUT EDELIVERY

Rated Excellent
Every Year Since 2007
DALBAR RATED COMMUNICATIONS
EXCELLENCE

Clearing through Pershing LLC, a wholly owned subsidiary of The Bank of New York Mellon Corporation (BNY Mellon)

Pershing LLC, member FINRA, NYSE, SIPC

ATI Class Actions Settlement
c/o Strategic Claims Services
600 N. Jackson Street - Suite 205
Media, PA  19063

Phone (866) 274-4004
Fax (610) 565-7985

Email: info@strategicclaims.net

## NOTICE OF INELIGIBILITY

**CONTROL#:**   305
JASON HAFNER

**February 27, 2025**

**ACCOUNT#:**

Your claim in the above matter is ineligible for the following reason(s):

| Description: | Shares: |
| --- | --- |
| This claim was filed on behalf of an excluded party and it is not eligible. Pursuant to the Stipulation and Agreement of Settlement, excluded from the Settlement Class are (i) Defendants; (ii) current and former Officers and directors of the Company; (iii) members of the Immediate Family of each of Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and Officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, Officers, directors, and any other individual or entity in which any of Defendants has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of all such excluded parties; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. | |

**We strongly suggest you contact our office for any question or clarification you may have. It is important that you contact us before any further action is taken in the event that a processing error has occurred.**

If you feel you received this notice in error and would like to contest our determination, please contact our office in writing no later than twenty (20) calendar days after the date of this notice. Please be sure to include your Control number as noted above, your reason for contesting our determination, and documentation supporting your reason. You can also contact our office at 1-866-274-4004 or info@strategicclaims.net. If after contacting us, you still disagree, you can request in writing to Plaintiffs' Counsel to review your claim.

When calling our office, please have ready the Control Number found at the top left-hand corner of this form.

# SUPPORT CENTER
Support Ticket System

03/18/2025 01:42:40 PM

# Ticket #848585

| | | | | |
|---|---|---|---|---|
| **Status** | Completed | | **Name** | jason hafner |
| **Priority** | Normal | | **Email** | |
| **Department** | Claims Administrators | | **Phone** | |
| **Create Date** | 03/18/2025 01:32:05 PM | | **Source** | Email |

| | | | | |
|---|---|---|---|---|
| **Assigned To** | George Allen | | **Help Topic** | Claims |
| **SLA Plan** | Default SLA | | **Last Response** | 03/18/2025 01:41:58 PM |
| **Due Date** | 03/19/2025 01:32:05 PM | | **Last Message** | 03/18/2025 01:32:06 PM |

**Ticket Details**

*dispute*

**Case:** ATI

**Control Number:** 305

## Notice if Ineligibility Control # 305

---

03/18/2025 01:32:06 PM Notice if Ineligibility Control # 305      jason hafner

To whom it may concern,

I write to follow-up on the Notice of Ineligibility I received dated February 27th, 2025 to contest your determination that Jason Hafner, Control #305/Account #     is ineligible to participate in the ATI Class Action Settlement.

The "Company," as defined in the Notice of (I) Pendency of Class Actions, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), is ATI Physical Therapy,
Inc. *See,* https://www.strategicclaims.net/wp-content/uploads/2024/06/ATI-Final-Long-Notice-and-Claim-Form2.pdf. ATI Physical Therapy, Inc. was organized as Fortress Value Acquisition Corp. II and was renamed ATI Physical Therapy, Inc. after its subsidiary, FVAC Merger Corp. II merged with Wilco Holdco, Inc. in or about June
2021. *See,* https://www.sec.gov/Archives/edgar/data/1815849/000119312521161982/d1216 14ddefm14a.htm.

---

# SUPPORT CENTER
### Support Ticket System

03/18/2025 01:42:40 PM

I ceased my employment with a subsidiary of Wilco Holdco, Inc., and resigned any and all roles with Wilco Holdco, Inc. and its affiliates, in November 2020. I was never, and could never have been, an officer, director or employee of Fortress Value Acquisition Corp. II n/k/a ATI Physical Therapy, Inc. because it did not become affiliated with Wilco Holdco, Inc. until 6 months after my resignation from all roles with Wilco Holdco, Inc. and/or its affiliates.

In addition:

1) I am not a Defendant;
2) I am not a current or former officer or director of the Company, i.e. Fortress Value Acquisition Corp. II n/k/a ATI Physical Therapy, Inc.;
3) I am not an immediate family member of a Defendant;
4) I am not a subsidiary or affiliate of the Company, i.e. Fortress Value Acquisition Corp. II n/k/a ATI Physical Therapy, Inc., or a director or office of a subsidiary or affiliate of the Company; and
5) No Defendant had or has a controlling interest in me, individually.
6) I am not a legal representative, agent, affiliate, heir, successor-in-interest, or assign off all such excluded parties.

As set forth above, I dispute your determination that I am ineligible to participate in the ATI Class Action Settlement. Please provide your response to this dispute as soon as possible.

-Jason Hafner

# SUPPORT CENTER
Support Ticket System

03/18/2025 01:42:40 PM

| 03/18/2025 01:41:58 PM | George Allen |
|---|---|

Good afternoon,

We have received your information and will pass it on for further review.

Thank you.

--

Claims Administrator
Strategic Claims Services, Inc.
600 N. Jackson St. - Suite 205
Media PA 19063
Phone: 610-565-9202
Fax: 610-565-7985
Toll Free: 1-866-274-4004

*IMPORTANT: The information contained in this message is confidential and is intended only for the named addressee(s). If the reader of this message is not an intended recipient (or the individual responsible for the delivery of this message to an intended recipient), please be advised that any re-use, dissemination, distribution or copying of this message is prohibited. If you have received this message in error, please reply to the sender that you have received the message in error and then delete it. Thank you.*

Page Reviewed ☐ | Sign Off Levels L1☐ | L2☑ | L3☑ | L4☐

651113

☐ Final K-1     ☐ Amended K-1     OMB No. 1545-0123

## Schedule K-1 (Form 1065)

**2016**

Department of the Treasury
Internal Revenue Service

For calendar year 2016, or tax
year beginning  03/21 , 2016
ending  12/31 , 20 16

**Partner's Share of Income, Deductions, Credits, etc.**

▶ See back of form and separate instructions.

### Part I — Information About the Partnership

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code
WILCO ACQUISITION, LP
790 REMINGTON BLVD
BOLINGBROOK, IL  60440

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code
JASON HAFNER

**G** ☐ General partner or LLC member-manager     ☒ Limited partner or other LLC member

**H** ☒ Domestic partner     ☐ Foreign partner

**I1** What type of entity is this partner?     INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | | 0.127194% |
| Loss | | 0.127194% |
| Capital | | 0.127194% |

**K** Partner's share of liabilities at year end:
Nonrecourse . . . . . . . . . $
Qualified nonrecourse financing . . . $
Recourse . . . . . . . . . $

**L** Partner's capital account analysis:
Beginning capital account . . . . . $
Capital contributed during the year . . $  1,200,000
Current year increase (decrease) . . $
Withdrawals & distributions . . . . $
Ending capital account . . . . . . $  1,200,000

☐ Tax basis     ☐ GAAP     ☒ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes     ☒ No
If "Yes," attach statement (see instructions)

### Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) | | 15 | Credits |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | | |
| 9a | Net long-term capital gain (loss) | | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | | |
| 12 | Section 179 deduction | | 19 | Distributions |
| | | | A | |
| 13 | Other deductions | | 20 | Other information |
| 14 | Self-employment earnings (loss) | | | |

*See attached statement for additional information.

For IRS Use Only

Schedule K-1 (Form 1065) 2016                                                                                    Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

**1. Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | Report on |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

**2. Net rental real estate income (loss)** See the Partner's Instructions
**3. Other net rental income (loss)**
Net income — Schedule E, line 28, column (g)
Net loss — See the Partner's Instructions
**4. Guaranteed payments** — Schedule E, line 28, column (j)
**5. Interest income** — Form 1040, line 8a
**6a. Ordinary dividends** — Form 1040, line 9a
**6b. Qualified dividends** — Form 1040, line 9b
**7. Royalties** — Schedule E, line 4
**8. Net short-term capital gain (loss)** — Schedule D, line 5
**9a. Net long-term capital gain (loss)** — Schedule D, line 12
**9b. Collectibles (28%) gain (loss)** — 28% Rate Gain Worksheet, line 4 (Schedule D instructions)
**9c. Unrecaptured section 1250 gain** — See the Partner's Instructions
**10. Net section 1231 gain (loss)** — See the Partner's Instructions
**11. Other income (loss)**
Code
A Other portfolio income (loss) — See the Partner's Instructions
B Involuntary conversions — See the Partner's Instructions
C Sec. 1256 contracts & straddles — Form 6781, line 1
D Mining exploration costs recapture — See Pub. 535
E Cancellation of debt — Form 1040, line 21 or Form 982
F Other income (loss) — See the Partner's Instructions
**12. Section 179 deduction** — See the Partner's Instructions
**13. Other deductions**
A Cash contributions (50%)
B Cash contributions (30%)
C Noncash contributions (50%)
D Noncash contributions (30%)
E Capital gain property to a 50% organization (30%)
F Capital gain property (20%)
G Contributions (100%) — See the Partner's Instructions
H Investment interest expense — Form 4952, line 1
I Deductions—royalty income — Schedule E, line 19
J Section 59(e)(2) expenditures — See the Partner's Instructions
K Deductions—portfolio (2% floor) — Schedule A, line 23
L Deductions—portfolio (other) — Schedule A, line 28
M Amounts paid for medical insurance — Schedule A, line 1 or Form 1040, line 29
N Educational assistance benefits — See the Partner's Instructions
O Dependent care benefits — Form 2441, line 12
P Preproductive period expenses — See the Partner's Instructions
Q Commercial revitalization deduction from rental real estate activities — See Form 8582 instructions
R Pensions and IRAs — See the Partner's Instructions
S Reforestation expense deduction — See the Partner's Instructions
T Domestic production activities information — See Form 8903 instructions
U Qualified production activities income — Form 8903, line 7b
V Employer's Form W-2 wages — Form 8903, line 17
W Other deductions — See the Partner's Instructions
**14. Self-employment earnings (loss)**

Note: If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

A Net earnings (loss) from self-employment — Schedule SE, Section A or B
B Gross farming or fishing income — See the Partner's Instructions
C Gross non-farm income — See the Partner's Instructions
**15. Credits**
A Low-income housing credit (section 42(j)(5)) from pre-2008 buildings
B Low-income housing credit (other) from pre-2008 buildings
C Low-income housing credit (section 42(j)(5)) from post-2007 buildings
D Low-income housing credit (other) from post-2007 buildings — See the Partner's Instructions
E Qualified rehabilitation expenditures (rental real estate)
F Other rental real estate credits
G Other rental credits
H Undistributed capital gains credit — Form 1040, line 73; check box a
I Biofuel producer credit
J Work opportunity credit — See the Partner's Instructions
K Disabled access credit

| Code | | Report on |
|---|---|---|
| L | Empowerment zone employment credit | |
| M | Credit for increasing research activities | |
| N | Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| O | Backup withholding | |
| P | Other credits | |

**16. Foreign transactions**
A Name of country or U.S. possession
B Gross income from all sources — Form 1116, Part I
C Gross income sourced at partner level
*Foreign gross income sourced at partnership level*
D Passive category
E General category — Form 1116, Part I
F Other
*Deductions allocated and apportioned at partner level*
G Interest expense — Form 1116, Part I
H Other — Form 1116, Part I
*Deductions allocated and apportioned at partnership level to foreign source income*
I Passive category
J General category — Form 1116, Part I
K Other
*Other information*
L Total foreign taxes paid — Form 1116, Part II
M Total foreign taxes accrued — Form 1116, Part II
N Reduction in taxes available for credit — Form 1116, line 12
O Foreign trading gross receipts — Form 8873
P Extraterritorial income exclusion — Form 8873
Q Other foreign transactions — See the Partner's Instructions
**17. Alternative minimum tax (AMT) items**
A Post-1986 depreciation adjustment
B Adjusted gain or loss
C Depletion (other than oil & gas) — See the Partner's Instructions and the Instructions for Form 6251
D Oil, gas, & geothermal—gross income
E Oil, gas, & geothermal—deductions
F Other AMT items
**18. Tax-exempt income and nondeductible expenses**
A Tax-exempt interest income — Form 1040, line 8b
B Other tax-exempt income — See the Partner's Instructions
C Nondeductible expenses — See the Partner's Instructions
**19. Distributions**
A Cash and marketable securities
B Distribution subject to section 737 — See the Partner's Instructions
C Other property
**20. Other information**
A Investment income — Form 4952, line 4a
B Investment expenses — Form 4952, line 5
C Fuel tax credit information — Form 4136
D Qualified rehabilitation expenditures (other than rental real estate) — See the Partner's Instructions
E Basis of energy property — See the Partner's Instructions
F Recapture of low-income housing credit (section 42(j)(5)) — Form 8611, line 8
G Recapture of low-income housing credit (other) — Form 8611, line 8
H Recapture of investment credit — See Form 4255
I Recapture of other credits — See the Partner's Instructions
J Look-back interest—completed long-term contracts — See Form 8697
K Look-back interest—income forecast method — See Form 8866
L Dispositions of property with section 179 deductions
M Recapture of section 179 deduction
N Interest expense for corporate partners
O Section 453(l)(3) information
P Section 453A(c) information
Q Section 1260(b) information
R Interest allocable to production expenditures — See the Partner's Instructions
S CCF nonqualified withdrawals
T Depletion information—oil and gas
U Reserved
V Unrelated business taxable income
W Precontribution gain (loss)
X Section 108(i) information
Y Net investment income
Z Other information

WILCO ACQUISITION, LP

PARTNER:     Jason Hafner                                                                    EIN:

THE PARTNERSHIP'S INVESTMENT STRUCTURE INCLUDES COMMON UNITS AND INCENTIVE UNITS.
YOUR COMMON UNIT OWNERSHIP IS REPORTED ON THE FACE OF THE SCHEDULE K-1.
YOUR EXPECTED FULLY DILUTED OWNERSHIP % IS:                                     0.38%

**THO**
**NEBRASKA**
Good Life. Great Service.
DEPARTMENT OF REVENUE

**Nebraska Schedule K-1N –**
**Partner's Share of Income, Deductions, Modifications, and Credits**

**FORM 1065N**
Schedule K-1N
**2016**

| Partnership's Name and Mailing Address | Partner's Name and Mailing Address |
|---|---|
| Name Doing Business As (dba) | Name |
| | JASON HAFNER |
| Legal Name | |
| WILCO ACQUISITION, LP | |
| Street or Other Mailing Address | Street or Other Mailing Address |

Check One:
[X] Partnership  [ ] LLC

| Nebraska ID Number | Federal ID Number |
|---|---|

| Nebraska ID Number | Federal ID Number |
|---|---|
| Social Security Number | Spouse's Social Security Number |

Taxable Year of Organization

Check One:
[ ] Resident Individual  [X] Nonresident Individual  [ ] Estate or Trust
[ ] Other (describe)

Beginning 03/21, 20 16 and Ending 12/31, 20 16

| Partnership's Nebraska Apportionment Factor | Nebraska Receipts | Total Receipts | Partner's Share of Income Percentage | If applicable, check the appropriate box: |
|---|---|---|---|---|
| NONE % | | | 0.130 % | [ ] Final  [ ] Amended |

**Part A**
**Partner's Share of Income and Deductions**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 1 | |
| 2 | Net income (loss) from rental real estate activities | 2 | |
| 3 | Net income (loss) from other rental activities | 3 | |
| 4 | Guaranteed payments | 4 | |
| 5 | Interest income | 5 | |
| 6 | Dividend income | 6 | |
| 7 | Royalties | 7 | |
| 8 | Net short-term capital gain (loss) | 8 | |
| 9 | Net long-term capital gain (loss) | 9 | |
| 10 | Net Section 1231 gain (loss) | 10 | |
| 11 | Other income (loss) | 11 | |
| 12 | Charitable contributions | 12 | |
| 13 | Section 179 expense deduction | 13 | |
| 14 | Other deductions and losses | 14 | |

**Part B**
**Partner's Share of Modifications**

| | | | |
|---|---|---|---|
| 15 | Qualified U.S. government interest deduction | 15 | |
| 16 | State and local bond interest and dividend income | 16 | |
| 17 | Income (loss) from non-Nebraska sources (use only if you checked the LLC box above) | 17 | |

**Part C**
**Partner's Share of Credits**

| | | | |
|---|---|---|---|
| 18 | Community Development Assistance Act credit | 18 | |
| 19 | Form 3800N credits (see instructions) | | |
| | a Employment and Investment Growth Act | 19 a $ | |
| | b Nebraska Advantage Act | 19 b $ | |
| | c Nebraska Advantage Rural Development Act | 19 c $ | |
| | d Nebraska Advantage Research and Development Act | 19 d $ | |
| | e New Markets Tax Credit | 19 e $ | |
| | f Nebraska Histroic Tax Credit | 19 f $ | |
| | Total of 19a through 19f | 19 | |
| 20 | Contractor withholding (see instructions) | 20 | |
| 21 | Nebraska income tax withheld (see instructions) | 21 | NONE |

revenue.nebraska.gov, 800-742-7474 (NE and IA), 402-471-5729

6Y3002 1.000
0796LY  5263

8-691-2016

149

Page Reviewed ☐

**SCHEDULE NJK-1**
(Form NJ-1065)
**2016**

## STATE OF NEW JERSEY
# PARTNER'S SHARE OF INCOME

For Calendar Year 2016, or Fiscal Year Beginning ___03/21___ , 2016 and ending ___12/31___ , 20 _16_

| PART I | General Information | PARTNER NUMBER 33 |
|---|---|---|

| Partner's SS # or Federal EIN | Partnership's Federal EIN |
|---|---|

| Partner's Name JASON HAFNER | Partnership's Name WILCO ACQUISITION, LP |
|---|---|

| Street Address | Partnership's Street Address 790 REMINGTON BLVD |
|---|---|

| City | State | Zip Code | City BOLINGBROOK | State IL | Zip Code 60440 |
|---|---|---|---|---|---|

What type of entity is partner? (see instructions) ___NR___
Code

Date Partner's Interest in Partnership began: ___03/21/2016___
Month   Day   Year

☐ Final NJK-1
☐ Amended NJK-1
☐ Hedge Fund
☐ Member of Composite Return

Enter Partner's percentage of:

| | (i) Before Decrease or Termination | (ii) End of Year |
|---|---|---|
| Profit Sharing | 0.000000 % | 0.001272 % |
| Loss Sharing | 0.000000 % | 0.001272 % |
| Capital Ownership | 0.000000 % | 0.001272 % |

## PART II   Income Information

| Income Classifications | A. Total Distribution | NJ-1040 Filers Enter Amounts on Line Shown Below | B. New Jersey Source Amounts | NJ-1040NR Filers |
|---|---|---|---|---|
| 1. Partnership Income (loss) | NONE | | NONE | |
| 2. Net Guaranteed Payments | | | | |
| 3. Partner's 401(k) Contribution | | | | |
| 4. Distributive Share of Partnership Income (loss) (Line 1 plus Line 2 minus Line 3) | NONE | Line 20, Page 2 | NONE | Line 22, Page 1 |
| 5. Pension | | Line 19, Page 2 | | |
| 6. Net Gain (loss) from Disposition of Assets as a Result of a Complete Liquidation | | Line 18, Page 2 | | Line 18, Page 1 |

## PART III   Partner's Information

| | | |
|---|---|---|
| 1. Nonresident Partner's Share of NJ Tax . . . . . . . . . . . . . . . . . . | 1. | Line 19a, Page 1 CBT-100 Line 10a, Page 1 CBT-100S Line 7, NJ-CBT-1065 Line 47, NJ-1040NR Line 21, NJ-1080C Line 32a, NJ-1041 |
| 2. Partner's HEZ Deduction . . . . . . . . . . . . . . . . . . . . . | 2. | |
| 3. Partner's Sheltered Workshop Tax Credit . . . . . . . . . . . . . . . | 3. | |

## PART IV   Supplemental Information (Attach Schedule)

**THIS FORM MAY BE REPRODUCED**

6Q3313 1.000
0796LY   5263

150

1607318068

PA Schedule NRK-1 (05-16)
**2016 Nonresident Schedule**
**of Shareholder/Partner/Beneficiary Pass Through Income, Loss and Credits**

HAFNER                                                JASON

Final    N

(Individual=1, PA S Corp=2, All Other Corp=3,        Owner    1
Estate/Trust=4, Partnership=5, LLC=6, Exempt=7)

Shareholder's Stock Ownership %    00000

Amended    N

Beneficiary's year-end Distribution %    00000

Partner's % of:

WILCO ACQUISITION, LP                                Profit sharing %    00013

BOLINGBROOK        IL    60440    812690350          Loss sharing %    00013

Capital
Fiscal Year    Y    032116    (Estate/Trust=E, Partnership=P, PA S Corp =S, LLC=L)    P    Ownership %    00013

Short Year    Y    123116    General Partner or    N    Limited Partner or    Y
                            LLC Member-Manager        Other LLC Member

**NOTE: Amounts from this schedule must be reported on the appropriate PA Tax Return.**

| | | | |
|---|---|---|---|
| 1 | PA-Taxable Business Income (Loss) from Operations | 1 | 0 |
| 2 | Net Gain (Loss) from the Sale, Exchange or Disposition of Property | 2 | 0 |
| 3 | Net Income (Loss) from Rents, Royalties, Patents and Copyrights | 3 | 0 |
| 4 | Income of/from Estates or Trusts | 4 | 0 |
| 5 | Gambling and Lottery Winnings (Loss) | 5 | 0 |
| 6 | PA Nonresident Tax Withheld | 6 | 0 |
| 7 | **Total Other Credits.** Submit statement. | 7 | 0 |
| 8 | Distributions of Cash, Marketable Securities, and Property - not including guaranteed payments | 8 | 109 |
| 9 | Guaranteed Payments for Capital or Other Services | 9 | 0 |
| 10 | All Other Guaranteed Payments for Services Rendered (PA-Apportioned Amount Only) | 10 | 0 |
| 11 | Guaranteed Payments to the Retired Partner | 11 | 0 |
| 12 | Distributions from PA Accumulated Adjustments Account        Liquidating | 12 | 0 |
| 13 | Distributions of Cash, Marketable Securities, and Property | 13 | 0 |
| 14 | Nontaxable income (loss) or nondeductible expenses required to calculate owner's economic investment. Submit statement. | 14 | 0 |

Part II / Part III / Part IV / Part V / Part VI / Part VII

**Note: Lines 15 through 18 are for information purposes only.**

| | | | |
|---|---|---|---|
| 15 | Owner's Share of IRC Section 179 allowed according to PA rules | 15 | 0 |
| 16 | Owner's Share of Straight-Line Depreciation | 16 | 0 |
| 17 | Partner's Share of Nonrecourse Liabilities at year-end | 17 | 0 |
| 18 | Partner's Share of Recourse Liabilities at year-end | 18 | 0 |

6Y4606 2.000



1607318068                                            1607318068

*Execution*

## ROLLOVER AND CONTRIBUTION AGREEMENT

This ROLLOVER AND CONTRIBUTION AGREEMENT (this "Agreement"), dated as of March 25, 2016, is entered into by and between the undersigned (the "Investor"), and Wilco Acquisition, LP, a Delaware limited partnership ("Parent"). Capitalized terms used but not defined herein shall have the meanings assigned thereto in the Purchase Agreement (as defined below).

## RECITALS

WHEREAS, concurrently herewith, an indirect subsidiary of the Parent, Wilco Purchaser, Inc., a Delaware corporation ("Purchaser"), is entering into that certain Stock Purchase Agreement, of even date herewith (the "Purchase Agreement"), with ATI Holdings Acquisition, Inc., a Delaware corporation (the "Company"), and ATI Physical Therapy Holdings, LLC, a Delaware limited liability company ("Seller"), pursuant to which Purchaser will acquire all of the issued and outstanding capital stock, other than certain shares of stock (i) being contributed to Parent pursuant to this Agreement and similar agreements, and (ii) being contributed to Parent's subsidiary, Wilco Holdco, Inc. ("Holdco"), in exchange for shares of preferred stock of Holdco, of the Company (the "Stock Purchase");

WHEREAS, the Investor is currently an equity holder of Seller, and immediately prior to the Closing (as defined in the Purchase Agreement), Seller shall distribute to the Investor in lieu of cash in an amount equal to the Investor Rollover Amount (as defined below) that would otherwise be distributed to Investor with respect to his, her or its equity in Seller pursuant to Seller's Amended and Restated Limited Liability Company Agreement, dated as of December 21, 2012, by and among Seller, the KRG Members (as defined therein), and each of the other Members (as defined therein) listed on the signature pages thereto (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Seller LLC Agreement"), that number of shares of common stock, par value $0.001 per share, of the Company (the "Company Common Stock") equal to (i)(A) the Investor Rollover Amount, divided by (B) the Cash Consideration to be received by Seller upon the Closing, assuming the Investor Rollover Amount and the Seller Contribution Amount are equal to zero dollars ($0) for the purposes of calculating Cash Consideration, multiplied by (ii) 100,000 (such number of shares of Company Common Stock resulting from the product of clause (i) and (ii), the "Rollover Shares"); where the "Investor Rollover Amount" means the lesser of (i) the amount set forth on Schedule I and (ii) an amount equal to the portion of the actual Cash Consideration that would, but for such distribution of Company Common Stock, be distributed to the Member pursuant to the Seller LLC Agreement promptly following the Closing;

WHEREAS, subject to the terms and conditions of this Agreement, the Investor desires, immediately prior to the Closing, to contribute the Rollover Shares to Parent (the "Contribution") in exchange for that number of newly issued Class B Common Units of Parent (the "Parent Class B Common Units") equal to (i) the Investor Rollover Amount divided by (ii) the price per unit at which the Advent Investors (defined below) purchase Class A Common Units of Parent at the Closing (such number of Parent Class B Common Units, the "Exchange Units");

WEIL:\95645638\18\11623.0311

WHEREAS, Parent and the Investor agree that the transactions contemplated by this Agreement are intended to, and shall, result in the Investor investing in Parent Class B Common Units through the Contribution at the same price per unit at which the Advent Investors at Closing shall acquire Class A Common Units of Parent at the Closing;

WHEREAS, Parent desires to issue to the Investor such Exchange Units in exchange for the Investor's contribution to Parent of the Rollover Shares;

WHEREAS, subject to the terms and conditions of the Equity Commitment Letter, dated of even date herewith by and among affiliated investment funds of Advent International Corporation ("Advent") and Purchaser, substantially simultaneously with the consummation of the Contribution, Advent and/or one or more of its affiliated funds, successors or assigns (together with Advent, the "Advent Investors") will capitalize Parent with up to $887,162,500 in cash (the amount actually contributed pursuant to the Equity Commitment Letter, the "Cash Equity Capitalization"), with such Cash Equity Capitalization to be contributed by Parent indirectly to Purchaser (through intermediate holding companies) immediately prior to the Closing, and Parent will issue to the Advent Investors newly issued Class A Common Units of Parent in consideration for the Cash Equity Capitalization;

WHEREAS, for United States federal income tax purposes, it is intended that the contribution by the Investor of the Rollover Shares to Parent in exchange for the Exchange Units will qualify as a transaction described in Section 721(a) of the Internal Revenue Code of 1986, as amended (the "Code"); and

WHEREAS, substantially simultaneously with the execution and delivery of this Agreement, Parent, the Investor, the Advent Investors and certain other rollover investors will enter into an Amended and Restated Agreement of Limited Partnership of Parent substantially in the form attached as Exhibit A hereto which will automatically become effective as of the Closing without further action on behalf of the parties (the "Partnership Agreement").

NOW, THEREFORE, in order to implement the foregoing and in consideration of the mutual representations, warranties, covenants and agreements contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

AGREEMENT

Section 1.     Contribution of the Rollover Shares.

1.1     Contribution of the Rollover Shares in Exchange for the Exchange Units. On the terms and conditions set forth herein, (i) the Investor agrees, at the closing of the Contribution (the "Contribution Closing"), to contribute to Parent the Rollover Shares, free and clear of any and all Liens (as defined in Section 3.1 below), in exchange for the issuance by Parent to the Investor of the Exchange Units, and (ii) Parent agrees, at the Contribution Closing,

2

to issue to the Investor the Exchange Units in exchange for the contribution by the Investor to Parent of the Rollover Shares.

1.2 Closing. The Contribution Closing shall occur immediately prior to the consummation of the Stock Purchase on the Closing Date (as defined below). The Contribution Closing shall take place at the offices of Weil, Gotshal & Manges LLP located at 100 Federal Street, Boston, MA 02110, or such other place as agreed upon by the parties.

1.3 Conditions to Closing. The Contribution Closing shall be subject to the satisfaction of the following conditions unless waived in writing by Parent and the Investor (in the case of clause (a)), by Parent (in the case of clause (b)) or by the Investor (in the case of clause (c)):

(a) Purchase Agreement Conditions. The conditions set forth in Article 7 of the Purchase Agreement (other than those conditions that can be satisfied only by virtue of this Agreement and those conditions that may only be satisfied as of the Closing) shall have been satisfied or waived and the parties to the Purchase Agreement shall have indicated that they intend to consummate the Stock Purchase immediately following the consummation of the Contribution.

(b) Representations, Warranties and Covenants of the Investor. All representations and warranties made in this Agreement by the Investor shall be true and correct in all respects on the date when made and on and as of the Contribution Closing with the same effect as if made on and as of the Contribution Closing, and the Investor shall have performed or complied in all material respects with all covenants and agreements to be performed by the Investor under this Agreement at or prior to the date of the Contribution Closing (the "Closing Date").

(c) Representations, Warranties and Covenants of Parent. All representations and warranties made in this Agreement by Parent shall be true and correct in all respects on the date when made and on and as of the Contribution Closing with the same effect as if made on and as of the Closing Date, and Parent shall have performed or complied in all material respects with all covenants and agreements to be performed by Parent under this Agreement at or prior to the Closing Date.

1.4 Parent Deliveries. At the Contribution Closing, Parent shall deliver to the Investor (a) certificates or other documentation representing the Investor's Exchange Units and (b) an executed copy of the Partnership Agreement.

1.5 Investor Deliveries. At the Contribution Closing, the Investor shall deliver to Parent (a) an executed stock power in form and substance reasonably satisfactory to Parent and (b) a duly executed signature page to the Partnership Agreement.

3

1.6     Profits Interests. In connection with the Contribution and upon consummation of the Contribution Closing, Parent will also grant the Investor profits interests upon the terms and conditions in the Incentive Equity Term Sheet attached hereto as Exhibit C.

Section 2.     Representations and Warranties of Parent. Parent hereby represents and warrants to the Investor as follows:

2.1     Organization. Parent is a limited partnership, duly organized, validly existing and in good standing under the Laws of the State of Delaware.

2.2     Authority. Parent has the requisite power and authority to enter into and deliver this Agreement, perform its obligations herein, and consummate the transactions contemplated hereby. Parent has duly executed and delivered this Agreement and, assuming the due authorization, execution and delivery by the Investor, this Agreement is a valid, legal and binding obligation of Parent, enforceable against Parent in accordance with its terms, except to the extent that enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and subject to general principles of equity (regardless of whether such enforcement is considered in a proceeding at Law or at equity).

2.3     Shares Duly Authorized. All of the Class B Common Units of Parent to be issued to the Investor under this Agreement, when issued and delivered in accordance with the terms of this Agreement, will be duly authorized, validly issued, fully paid and non-assessable without being subject to preemptive rights, and shall be free of rights of first refusal or similar rights (except such rights granted to the Investor and the other partners of Parent pursuant to, or limitations set forth in, the Partnership Agreement). The Investor will acquire good, valid, and marketable title to the Exchange Units, free and clear of all mortgages, liens, pledges, charges, claims, security interests, agreements, and encumbrances whatsoever, other than those imposed by law or contemplated by this Agreement and the Partnership Agreement or those that result from action by the Investor.

2.4     Capitalization. Following consummation of the transactions contemplated by this Agreement and the Purchase Agreement, the outstanding securities of Parent and the authorized and outstanding securities of Holdco will be as indicated on Exhibit B and Holdco will own, directly or indirectly, all of the issued and outstanding securities of Purchaser. Except for this Agreement, the Purchase Agreement, the Amended and Restated Limited Partnership Agreement of Parent (the "LP Agreement"), the 2016 Equity Incentive Plan of Parent, any award agreements issued in connection with the profits interests issued at Closing pursuant to the LP Agreement, and that certain Stockholders Agreement by and among Holdco, Seller, Parent and certain other parties thereto (such agreements collectively being referred to herein as the "Transaction Documents"), neither Parent nor any of its Subsidiaries is a party to any option, warrant, purchase right, or other contract or commitment that would require it to sell, transfer, or otherwise dispose of any of its securities or that imposes any Lien on any of its securities. Except for and as contemplated by the Transaction Documents, there are no outstanding (i) securities convertible into or exchangeable for securities of Parent or any of its Subsidiaries, (ii)

4

subscriptions, options, warrants, calls or rights of any kind to purchase or otherwise acquire securities of Parent or any of its Subsidiaries to which Parent or any of its Subsidiaries is a party, or (iii) contracts of any kind by which Parent or any of its Subsidiaries is bound requiring the issuance after the date hereof of or relating to (x) any securities of Parent or any of its Subsidiaries, (y) any convertible or exchangeable security of the type referred to in clause (i) or (z) any options, warrants, calls or rights of the type referred to in clause (ii). Except for the Transaction Documents, there are no outstanding or authorized stock appreciation, phantom stock, profit participation, or similar rights with respect to Parent or any of its Subsidiaries by which Parent or any of its Subsidiaries is bound. Except for the Transaction Documents, there are no voting trusts, proxies or other contracts, agreements or understandings with respect to the securities of Parent or any of its Subsidiaries or restrictions on the transfer of the securities of Parent or any of its Subsidiaries to which Parent or any of its Subsidiaries is a party.

2.5     No Conflicts; No Consents. The execution and delivery of this Agreement by Parent, the performance by Parent of its obligations hereunder, and the consummation by Parent of the transactions contemplated hereby, do not and will not (a) conflict with Parent's agreement of limited partnership, (b) materially violate or materially conflict with any constitution, law, ordinance, regulation, statute or treaty of any Governmental Authority ("Law") applicable to Parent or any of Parent's assets or properties or (c) violate or conflict with in any material respect, result in any material breach of, or constitute a material default (or event which with the giving of notice or lapse of time, or both, would become a default) under, any agreement to which Parent is a party or by which any of its assets or properties is bound. No consent, approval, authorization, license, order or permit of, or declaration, filing or registration with, or notification to, any Governmental Authority, or any other Person, on the part of Parent is required to be made or obtained in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, other than any filings as may be required under applicable state "Blue Sky" Laws.

2.6     Newly-Formed.     Parent was newly formed to facilitate and in contemplation of the transactions contemplated by the Transaction Documents. Other than the Transaction Documents and other agreements, certificates and instruments contemplated thereby and all transactions contemplated by any of the foregoing (including, but not limited to, the financing of the transactions contemplated by the foregoing and all agreements, certificates and instruments entered into in connection therewith), Parent has conducted no business activities and has not entered into any contracts or agreements.

Section 3.     Representations and Warranties of Investor. The Investor hereby represents and warrants to Parent as follows:

3.1     Ownership of the Rollover Shares. At the Contribution Closing, the Investor will be the record and beneficial owner of the Rollover Shares, free and clear of all pledges, liens, proxies, claims, charges, security interests, preemptive rights, voting trusts, voting agreements, options, rights of first offer or refusal and any other encumbrances or arrangements whatsoever with respect to the ownership, transfer or other voting of the Rollover Shares ("Liens"). Neither the Investor nor any of his or her Affiliates is a party to, or bound by, any

5

contract, arrangement, agreement, instrument or order (other than this Agreement and the Seller LLC Agreement) (i) relating to the sale, repurchase, assignment or other transfer of any capital stock or equity securities of the Company, (ii) relating to the receipt of dividends, proxy rights or voting rights of any capital stock or other equity securities of the Company or (iii) relating to the rights to registration under the Securities Act of 1933, as amended (the "Securities Act"), or the Securities and Exchange Act of 1934, as amended (the "Exchange Act"), of any capital stock or equity securities of the Company.

3.2     Authority.  The Investor has the requisite power and authority to enter into and deliver this Agreement, perform his or her obligations herein, and consummate the transactions contemplated hereby.  This Agreement has been duly executed and delivered by the Investor and, assuming the due authorization, execution and delivery by Parent, this Agreement is a valid, legal and binding obligation of the Investor, enforceable against the Investor in accordance with its terms, except to the extent that enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and subject to general principles of equity (regardless of whether such enforcement is considered in a proceeding at Law or in equity).

3.3     Investor Intent.  The Investor is acquiring the Exchange Units for the Investor's own account as principal, for investment purposes only, not for any other Person and not for the purposes of resale or distribution. The Investor is not subscribing for the Exchange Units from Parent in a fiduciary capacity.

3.4     Financial Status.  The Investor is an "accredited investor" as such term is defined in Regulation D promulgated under the Securities Act.  The Investor is able to bear the economic risk of an investment in the Exchange Units for an indefinite period of time, has adequate means of providing for its current financial needs and business contingencies, has no need for liquidity in the investment in the Exchange Units, understands that the Investor may not be able to liquidate the Exchange Units in an emergency, if at all, and can afford a complete loss of the investment. The Investor has received no advice from Parent or any of its Affiliates as to the legal, investment or tax consequences of the Contribution contemplated by this Agreement or the Investor's investment in the Exchange Units.

3.5     Access to Information.  The Investor has been given the opportunity to ask questions of and receive answers from Parent and its representatives concerning (i) the terms and conditions of the issuance of the Exchange Units and the other transactions contemplated in connection with the Contribution and the Purchase Agreement and (ii) the financial condition, operation and prospects of Parent and its subsidiaries after giving effect to the Stock Purchase.

3.6     No Other Representation.   The Investor has received no other representations or warranties from Parent or any other Person acting on behalf of the Company or Parent, other than those contained in Section 2 of this Agreement.

3.7     No Conflicts; No Consents.  The execution and delivery of this Agreement by the Investor, the performance by the Investor of his or her obligations hereunder and the

6

consummation by the Investor of the transactions contemplated hereby do not and will not (a) materially violate or materially conflict with any Law applicable to the Investor or any of the Investor's assets or properties or (b) violate or conflict with in any material respect, result in any material breach of, or constitute a material default (or event which with the giving of notice or lapse of time, or both, would become a default) under, any agreement to which the Investor is a party or by which any of his or her assets or properties is bound. No consent, approval, authorization, license, order or permit of, or declaration, filing or registration with, or notification to, any Governmental Authority, or any other Person, is required to be made or obtained by the Investor in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby that has not been made or obtained or will not be made or obtained on or prior to the Contribution Closing.

Section 4.     Agreements and Acknowledgements of the Investor. The Investor hereby agrees and acknowledges to Parent as follows:

4.1     No Registration. The Investor understands and agrees that the Exchange Units are being acquired by the Investor in a transaction not involving any public offering within the meaning of the Securities Act, in reliance on an exemption therefrom. The Investor understands that the Exchange Units have not been, and will not be, approved or disapproved by the Securities and Exchange Commission or by any other federal or state agency, and that no such agency has passed on the accuracy or adequacy of disclosures made to the Investor by Parent. No federal or state governmental agency has passed on or made any recommendation or endorsement of the Exchange Units or an investment in Parent.

4.2     Limitations on Disposition and Resale. The Investor understands and acknowledges that the Exchange Units have not been and will not be registered under the Securities Act, or the securities laws of any state and, unless the Exchange Units are so registered, they may not be offered, sold, transferred or otherwise disposed of except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act and any applicable securities laws of any state or foreign jurisdiction. The Investor agrees not to sell, transfer or otherwise dispose of the Exchange Units unless the Exchange Units have been so registered or an exemption from the requirement of registration is available under the Securities Act and any applicable state securities laws. The Investor further acknowledges and agrees that his or her ability to dispose of the Exchange Units will be subject to restrictions contained in the Partnership Agreement. The Investor recognizes that there will not be any public trading market for Parent Class B Common Units and, as a result, the Investor may be unable to sell or dispose of his or her interest in Parent. The Investor further acknowledges and agrees that, except as may be set forth in the Partnership Agreement, Parent shall have no obligation to register any Parent Class B Common Units.

4.3     Legend. The Investor acknowledges and agrees that the Exchange Units received in the Contribution, to the extent represented by physical certificates, will bear the following legend (or one to substantially similar effect):

7

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES OR BLUE SKY LAWS. THESE SECURITIES MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN EXEMPTION THEREFROM UNDER SAID ACT OR LAWS. THE SECURITIES REPRESENTED BY THIS CERTIFICATE ARE ALSO SUBJECT TO A PARTNERSHIP AGREEMENT DATED AS OF MARCH [___], 2016 BY AND AMONG WILCO ACQUISITION, LP ("PARENT") AND THE OTHER PARTIES NAMED THEREIN. THE TERMS OF SUCH PARTNERSHIP AGREEMENT INCLUDE, AMONG OTHER THINGS, RESTRICTIONS ON TRANSFER. A COPY OF SUCH AGREEMENT WILL BE FURNISHED WITHOUT CHARGE BY PARENT TO THE HOLDER HEREOF UPON WRITTEN REQUEST."

    4.4    Newly Formed Entity. The Investor recognizes that Parent was only recently formed and, accordingly, has no financial or operating history and that the investment in Parent is extremely speculative and involves a high degree of risk.

Section 5.    Tax Treatment. For U.S. federal income tax purposes, the parties hereby agree to treat the contribution of the Rollover Shares solely in exchange for the Exchange Units as a transaction intended by the parties to qualify under Section 721(a) of the Code, and neither of the parties shall take any position inconsistent with such treatment on any tax return except as otherwise required by a change in law following the date of this Agreement or pursuant to a good faith resolution of a tax dispute.

Section 6.    Governing Law, Severability, Consent to Jurisdiction, Waiver of Jury Trial. This Agreement is governed by and shall be construed in accordance with the Laws of the State of Delaware applicable to contracts made and to be performed entirely in such state, without giving effect to conflicts of Law principles thereunder that would give effect to the Laws of another jurisdiction. Each of the parties hereto, on behalf of itself and its respective Affiliates, (i) consents to submit to the personal jurisdiction of the Delaware Court of Chancery or the other courts of the State of Delaware, in each case in connection with any action arising out of, in connection with, in respect of, or in any way relating to the negotiation, execution and performance of this Agreement and the transactions contemplated hereby and waives any right to trial by jury with respect to any such matters. Each party hereto, on behalf of itself and its respective Affiliates, irrevocably and unconditionally waives any objection to the laying of venue of any claim, action or proceeding arising out of, in connection with, or in respect of this Agreement. If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of that provision to other persons or circumstances shall not be affected thereby, and that provision shall be enforced to the greatest extent permitted by Law.

8

Section 7.     Notices.   All notices and other communications among the parties shall be in writing and shall be deemed to have been duly given when (i) delivered in person, (ii) three (3) days after posting in the United States mail having been sent registered or certified mail return receipt requested, or (iii) delivered by telecopy and promptly confirmed by delivery in person or post as aforesaid in each case, with postage prepaid, addressed as follows:

(a)     If to Parent, then to:

c/o Advent International Corporation
375 Park Avenue
New York, NY 10152
Attention: John Maldonado
Facsimile No.: (617) 951-0566
E-mail: jmaldonado@adventinternational.com

and

c/o Advent International Corporation
75 State Street
Boston, MA 02109
Attention: James Westra
Facsimile No.: (617) 951-0566
E-mail: jwestra@adventinternational.com

and

Weil, Gotshal & Manges LLP
100 Federal Street, 34th Floor
Boston, MA 02210
Attention: Marilyn French Shaw
Facsimile No.: (617) 772-8333
E-mail: marilynfrench.shaw@weil.com

(b)     If to the Investor, then to the address set forth on Schedule II and a copy to:

Paul Hastings LLP
71 S. Wacker Drive, 45th Floor
Chicago, Illinois  60606
Attention: Brian F. Richards
Facsimile:  (312) 499-6100
E-mail: brianrichards@paulhastings.com

9

Section 8.    Assignment.  No party shall have the right or the power to assign or delegate any provision of this Agreement except with the prior written consent of Parent, in the case of an assignment or delegation by the Investor, or with the prior written consent of the Investor, in the case of an assignment or delegation by Parent; provided, however, that Investor may assign any or all of its rights hereunder, without the prior written consent of Parent, to any of Investor's Affiliates who own shares of Company Common Stock; provided further that any such assignee shall agree to be bound by all of the terms of this Agreement, including the representations and warranties hereunder, and shall assume all obligations hereunder. Such assignment shall not release the Investor from liability in the event that such assignee fails to perform its obligations hereunder.  Except as provided in the first sentence of this Section 8, this Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors, assigns, executors and administrators.

Section 9.    Counterparts.  This Agreement may be executed in counterparts, including via facsimile, each of which shall be deemed an original and all of which taken together, shall constitute one and the same document.

Section 10.    Entire Agreement.  This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and may be amended only in a writing executed by the party to be bound thereby.  This Agreement supersedes all prior and contemporaneous agreements of the parties hereto, whether written, oral or otherwise, that directly or indirectly bear on the subject matter hereof.

Section 11.    Termination of this Agreement.  This Agreement shall terminate and no longer have any force or effect upon on the earlier of (i) the mutual written consent of Parent and the Investor and (ii) the termination of the Purchase Agreement pursuant to its terms.

Section 12.    Remedies.  The parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with its specific terms or were otherwise breached.  Accordingly, the parties agree that, in the event of any breach or threatened breach by the other party of any covenant or obligation in this Agreement, such other party shall be entitled (in addition to any other remedy that may be available whether in Law or in equity) to seek and obtain (i) a decree or order of specific performance to enforce the observance and performance of such covenant or obligation, and (ii) an injunction restraining such breach or threatened breach.  The parties agree that neither party shall be required to obtain, furnish or post any bond or similar instrument in connection with or as a condition to obtaining any remedy referred to in this Section 12, and each party irrevocably waives any right it may have to require the obtaining, furnishing or posting of any such bond or similar instrument.

Section 13.    No Third Party Beneficiaries.  This Agreement shall be binding on the undersigned solely for the benefit of the undersigned parties to this Agreement, and nothing set forth herein shall be construed to confer upon or give to any person other than the parties to this Agreement any benefits, rights, or remedies under or by reason of, or any rights to enforce or cause such parties to enforce, the transactions contemplated hereby or any provision of this Agreement.

WEIL:\95645638\18\11623.0311

Section 14.     Further Assurances.  Subject to the terms and conditions provided herein, each party hereto agrees to use all commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things necessary, proper or advisable, whether under applicable Laws or otherwise, in order to consummate and make effective the transactions contemplated by this Agreement.

11

**IN WITNESS WHEREOF**, the parties have hereby executed this Rollover Agreement as of the date first above written.

**WILCO ACQUISITION, LP**

By:    WILCO GP, INC.
        its general partner

By:

        Name: John Maldonado
        Title:  President

By:
      Name: Jason Hafner

[SIGNATURE PAGE TO ROLLOVER AND CONTRIBUTION AGREEMENT]

**SCHEDULE I**

$ 1,200,000

## SCHEDULE II

**Investor's Address**

Jason Hafner

 **Gmail**

**Fwd: ATI Physical Therapy, Inc. Securities Litigation - Final Determination and Request for Documents**
1 message

**James Facciolla** <jfacciolla@strategicclaims.net>                                          Tue, Mar 25, 2025 at 6:56 PM
To: Josephine Bravata <jbravata@strategicclaims.net>

---------- Forwarded message ---------
From: **jason hafner** <                              >
Date: Tue, Mar 25, 2025, 6:24 PM
Subject: Re: ATI Physical Therapy, Inc. Securities Litigation - Final Determination and Request for Documents
To: James Facciolla <jfacciolla@strategicclaims.net>

James, I write to follow-up on your email sent on March 20th, 2025  I dispute the determination set forth in your email regarding Jason Hafner, Control #305, and request court review. I have attached supporting documents as well.

As more fully set forth below, I do not believe that we engaged in an equity conversion or made a claim related to private shares of "'old' ATI," but instead purchased or acquired Company stock.  Had this been a conversion there would have been no exchange of any prior equity interest for new equity interests, but instead, I would have retained my as-converted original equity interests.  That did not happen here as I gave up my original equity interests and received new, completely different, equity interests in a completely different entity.

Also, I believe that I acquired shares of the Company in or about June 2021 and that any prior equity interests were not shares of or equity interest in the Company.  I believe that since there was no conversion of shares, but instead I gave up my original equity interests and received new, completely different, equity interests in a completely different entity, I did not acquire those new equity interests prior to the settlement period.

As you are aware, I submitted an individual claim related to 195,597 shares of the Company's common stock.  In or about May, 2016, I became a limited partner of Wilco Acquisition, LP and through Wilco Acquisition, LP I became a beneficial owner of 195,597 shares of the Company's common stock that were distributed to me in or about November, 2021.  *See*, the Company's General form for registration of securities under the Securities Act of 1933 filed on or about July 9, 2021 which provides that "Wilco Acquisition intends to distribute such shares of Common Stock to its limited partners and general partner, each of which will be a permitted transferee under the A&R RRA and is named as a selling securityholder herein."  https://www.sec.gov/Archives/edgar/data/1815849/000119312521211848/d122377ds1.htm.

I understand that Wilco Acquisition, LP failed or refused to file a claim in this matter and, as a result, I filed my individual claim as I was the beneficial owner of the shares.  I have attached a copy of a Rollover and Contribution Agreement made effective in May, 2016 (Exhibit A redacted), reflecting my initial investment of $1,200,000 in Wilco Acquisition, LP.

I again direct you to the *Amended and Restated Registration Rights Agreement* included in the Definitive proxy statement relating to merger or acquisition filed with the SEC on or about May 14, 2021. https://www.sec.gov/Archives/edgar/data/1815849/000119312521161982/d121614ddefm14a.htm (last visited March 20, 2025).  Wilco Acquisition, LP was a "New Holder" under the Amended and Restated Registration Rights Agreement, as confirmed by its signature page included therewith.  The Amended and Restated Registration Rights Agreement provided that New Holders, including Wilco Acquisition, LP, would receive "shares of common stock, par value $0.0001, of the Company ("Company Stock"), upon the Closing (as defined in the Merger Agreement)."  The Amended and Restated Registration Rights Agreement defined "Company" as Fortress Value Acquisition Corp. II.

In addition, the Definitive proxy statement relating to merger or acquisition filed with the SEC on or about May 14, 2021 provided the following description of how holders of common stock of Wilco Holdco, Inc. would receive common stock of the Company:  " Each share of [Wilco Holdco, Inc.] common stock issued and outstanding immediately prior to the effective time will be converted into the right to receive (A) a number of shares of ATI Class A common stock equal in value to (1) $1,303,000,000 <u>divided by</u> (2) the number of shares of Company common stock outstanding as of immediately prior to the effective time…"

Thus, Wilco Acquisition, LP, in consideration of agreeing to convert certain of its rights in common stock of Wilco Holdco, Inc. valued at $1,303,0000,000 (which I believe represents Wilco Acquisition, LP's cost basis, but not necessarily tax basis, in the common stock), purchased or otherwise acquired 130,300,000 shares of common stock of Company **(of which 195,597 shares, with a cost basis of $1,200,000, were beneficially owned by Jason Hafner, individually),** valued at $10.00 per share, upon the Closing, as set forth in the Definitive proxy statement relating to merger or acquisition filed with the SEC on or about May 14, 2021: "the remaining amount of merger consideration will constitute FAII Class A common stock valued at $10.00 per share to [Wilco Holdco, Inc.] stockholders."  See also the Company's General form for registration of securities under the Securities Act of 1933 filed on or about July 9, 2021, which confirms the number of shares issued to Wilco Acquisition, LP: https://www.sec.gov/Archives/edgar/data/1815849/000119312521211848/d122377ds1.htm.

Thank you

On Thursday, March 20, 2025 at 12:04:56 PM CDT, James Facciolla <jfacciolla@strategicclaims.net> wrote:

Hello Jason,

I am reaching out to clarify the ineligibility letter you received from Strategic Claims Services, mailed February 27, 2025.

Our final determination is as follows.

**Your claim (see below) remains ineligible for the following reasons.**

| Claim | Name 1 |
|-------|--------|
| 305 | JASON HAFNER |

(1) Per the definition in the Stipulation of Settlement (https://www.strategicclaims.net/wp-content/uploads/2024/06/FULLY-EXECUTED-ATI-Stipulation-of-Settlement-PDF-00609416xC40C2.pdf), *"ATI Securities" means ATI Physical Therapy, Inc.'s common stock trading on the New York Stock Exchange ("NYSE") under the ticker symbol "ATIP" or FVAC common stock that traded on the NYSE under the ticker symbol FAII.* Equity conversions, or private shares of "old" ATI do not classify as a purchase or acquisition based upon the language of the Stipulation of Settlement.

(2) Your shares were acquired prior to the Settlement Class Period, in order to participate in the Settlement, shares must have been *(a) purchased or otherwise acquired ATI Securities between February 22, 2021 and October 19, 2021, both dates inclusive, and/or beneficially owned and/or held FVAC common stock as of May 24, 2021 and were eligible to vote at FVAC's June 15, 2021 special meeting to vote on the Business Combination (the "Securities Subclass"); and/or (b) beneficially owned and/or held FVAC Class A common stock as of the June 11, 2021 Redemption Date who were entitled to, but did not elect to, redeem their shares (the "Multiplan Subclass").* Per the ATI IPO Filing and Prospectus, these shares were held prior to the Settlement Class Period dates making them ineligible.

If you disagree with our determination please provide us the necessary supporting documentation to allow us to amend or confirm the above. Some examples of supporting documentation could include monthly statements from your financial institution, grant or option agreements, copies of checks, wires or other payment related receipts, etc. We already have your documents from the Transfer Agent, Continental, so you do not need to resend those documents. Any additional documents should be sent directly to me.

If you feel you still have received this notice in error and would like to contest our determination, please respond to this email in writing no later than Tuesday, March 25, 2025 officially requesting for Court review. Please be sure to include your claim number as noted above, your reason for contesting our determination, and documentation supporting your reason. If we do not hear from you by the above date, we will assume you agree with our determination and close out the dispute without Court review.

Thank you,

--
James Facciolla
Institution Relations Manager
Strategic Claims Services, Inc.
600 N. Jackson Street
Suite 205
Media, PA 19063
610-565-9202

*IMPORTANT: The information contained in this message is confidential and is intended only for the named addressee(s). If the reader of this message is not an intended recipient (or the individual responsible for the delivery of this message to an intended recipient), please be advised that any re-use, dissemination, distribution or copying of this message is prohibited. If you have received this message in error, please reply to the sender that you have received the message in error and then delete it. Thank you.*

**2 attachments**

 **Wilco 2016 K1.PDF**
5126K

**Rollover and Contribution Agreement Jason Hafner.PDF**
10675K

**EXHIBIT M**

227                                                                                             ATI

## Claimant Information

Bates Enterprises LLC                                          Phone:
                                                              Phone:
                                                              Email:
                                                              SSN/TaxID:
                                                              Date Submitted: 2024-10-13 17:52:02
                                                              SubmissionTieBack: 9KN3INK

## Transaction Information

Beginning Balance: 0

| Purchases | | | Sales | | |
|---|---|---|---|---|---|
| Buy Date | Shares | Net Amount | SaleDate | Shares | Net Amount |
| 6/17/2021 | 248186 | 2481860 | | | |
| 10/20/2021 | 0 | 0 90-Day | | | |

   Ending Balance: 248186

   Beginning Balance: [BegBalance1]

| Purchases | | | Sales | | |
|---|---|---|---|---|---|
| Buy Date | Shares | Net Amount | SaleDate | Shares | Net Amount |

   Ending Balance: [EndBalance1]

   Beginning Balance: [BegBalance2]

| Purchases | | | Sales | | |
|---|---|---|---|---|---|
| Buy Date | Shares | Net Amount | SaleDate | Shares | Net Amount |

   Ending Balance: [EndBalance2]

   Beginning Balance: [BegBalance3]

| Purchases | | | Sales | | |
|---|---|---|---|---|---|
| Buy Date | Shares | Net Amount | SaleDate | Shares | Net Amount |

Ending Balance: [EndBalance3]

## Documentation List

134-f70bb1fb72c1b125fbfaf7985e2064b8\2024\10\Bates-Enterprises-Morgan-Stanley-Jan-31-2022.pdf
134-f70bb1fb72c1b125fbfaf7985e2064b8\2024\10\Bates-Enterprises-Cont-Transfer.pdf

**Direct Registration / Book Entry Account Statement**



F508COMA    ATI PHYSICAL THERAPY

| **Account Number** | **Statement Date** |
|---|---|
| | **12/15/2021** |

**BATES ENTERPRISES LLC**

### Share Transaction Request

☐ Deposit the enclosed certificate(s) for _____ shares to my account.

**Address and Phone Number change:**

_____

_____

_____

**Signature(s)**  All registered owners must sign

_____

_____

--------------------------------------------------------------------------------
^ FOLD AND DETACH HERE ^

BATES ENTERPRISES LLC

**Shareholder Account #:**

**Total DRS / Book Shares:** 248,186

**Account Value:** 0.00

**ATI PHYSICAL THERAPY**

**Broker/Dealer Name:**

**CUSIP:**           00216W109

**Broker/Dealer DTC Participant #:**

**Stock Symbol:**    ATIP

**Customer Account #:**

**Stock Price:**

| Total DRS / Book Entry Shares | Total Restricted Book Entry Shares |
|---|---|
| 248,186 | 0 |

| Transaction Date | Transaction Type | Number Shares | Share Balance | Restriction Code(s) |
|---|---|---|---|---|
| 11/24/21 | LOADED TRANSACTION | 205,329 | 205,329 | F508G |
| 12/03/21 | LOADED TRANSACTION | 42,857 | 248,186 | F508G |
| 12/13/21 | LOADED TRANSACTION | -248,186 | 0 | F508G |
| 12/13/21 | LOADED TRANSACTION | 248,186 | 248,186 | |

This statement is a record of rights of the shareholder at the time of its issuance. Delivery of this statement of itself conveys no rights to the recipient. This statement is neither a negotiable instrument nor a security.

CONTINENTAL STOCK TRANSFER & TRUST COMPANY
1 State Street | 30th Floor | New York, NY | 10004
212-509-4000

CSTDRS

# Morgan Stanley
## PRIVATE WEALTH MANAGEMENT

**CLIENT STATEMENT** | For the Period January 1-31, 2022

**STATEMENT FOR:**
BATES ENTERPRISES LLC
C/O DYLAN P BATES

**TOTAL VALUE OF YOUR ACCOUNT** (as of 1/31/22) **$733,098.33**
*Includes Accrued Interest*

*Morgan Stanley Private Wealth Management, a division of Morgan Stanley Smith Barney LLC.*
*Member SIPC.*

**Your Private Wealth Advisor**
**Andrew Jones**
Senior Vice President
Andrew.M.Jones@morganstanleypwm.com
858 597-7791

**Your Branch**
4350 LA JOLLA VILLAGE DR STE 1000
SAN DIEGO, CA 92122
Telephone: 858-597-7777; Alt. Phone: 800-821-4593; Fax: 858-597-0455

#BWNJGWM

BATES ENTERPRISES LLC
C/O DYLAN P BATES

*Stocks were sold after 1/14/22*

**Supervisory Location**

**Client Service Center** (24 Hours a Day; 7 Days a Week): 800-668-8168
**Access Your Account Online:** www.morganstanley.com/PWM

*INVESTMENTS AND INSURANCE PRODUCTS: NOT FDIC INSURED • NOT A BANK DEPOSIT •*
*NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY • NOT BANK GUARANTEED •*
*MAY LOSE VALUE*

811 - 012275 - 459 - 4 - 3

# Morgan Stanley
PRIVATE WEALTH MANAGEMENT

**CLIENT STATEMENT** | For the Period January 1-31, 2022

Page 3 of 8

Active Assets Account

**BATES ENTERPRISES LLC**
**C/O DYLAN P BATES**

## Account Summary

### CHANGE IN VALUE OF YOUR ACCOUNTS (includes accrued interest)

| | This Period (1/1/22-1/31/22) | This Year (1/1/22-1/31/22) |
|---|---|---|
| **TOTAL BEGINNING VALUE** | **$841,350.54** | **$841,350.54** |
| Credits | — | — |
| Debits | (159,773.07) | (159,773.07) |
| Security Transfers | — | — |
| **Net Credits/Debits/Transfers** | **$(159,773.07)** | **$(159,773.07)** |
| **Change in Value** | **51,520.86** | **51,520.86** |
| **TOTAL ENDING VALUE** | **$733,098.33** | **$733,098.33** |

### MARKET VALUE OVER TIME

The below chart displays the most recent thirteen months of Market Value.



This chart does not reflect corrections to Market Value made subsequent to the dates depicted. It may exclude transactions in Annuities or positions where we are not the custodian, which could delay the reporting of Market Value.

### ASSET ALLOCATION (includes accrued interest)

| | Market Value | Percentage |
|---|---|---|
| Cash | $505,948.05 | 69.02 |
| Equities | 227,150.28 | 30.98 |
| **TOTAL VALUE** | **$733,098.33** | **100.00%** |

FDIC rules apply and Bank Deposits are eligible for FDIC insurance but are not covered by SIPC. Cash and securities (including MMFs) are eligible for SIPC coverage. See Expanded Disclosures. Values may include assets externally held, which are provided to you as a courtesy, and may not be covered by SIPC. For additional information, refer to the corresponding section of this statement.



This asset allocation represents holdings on a trade date basis, and projected settled Cash/BDP and MMF balances. These classifications do not constitute a recommendation and may differ from the classification of instruments for regulatory or tax purposes.