UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN BURBIGE and ZIYANG NIE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ATI PHYSICAL THERAPY, INC. f/k/a FORTRESS VALUE ACQUISITION CORP. II, *et al.*, <br><br> Defendants. | No. 1:21-CV-04349 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In June 2021, Fortress Value Acquisition Corp. II, a special-purpose acquisition company (commonly known in the financial industry as a SPAC) completed a merger with ATI Physical Therapy, which converted ATI from a publicly held outpatient physical-therapy company into a privately held company.[1] The transaction led to a class action lawsuit in which the Plaintiffs alleged violations of federal securities laws under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934.[2] The ATI Defendants filed two motions to dismiss the Plaintiffs' complaint, arguing that the Plaintiffs failed to plausibly allege several elements of each of their fraud claims. This Court granted the motions in part and allowed other claims against

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

certain defendants to proceed to discovery. *See Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*, 690 F. Supp. 3d 862 (N.D. Ill. 2023). The discovery phase came to an early close May 2024 when the parties jointly moved for preliminary approval of the class action settlement and the Court ordered final approval of the settlement a few months later. R. 161, Joint Mot. Preliminary Approval; R. 190, 09/24/2024 Order.

The Plaintiffs ask this Court to approve the distribution plan as recommended by the claims administrator. R. 201, Pls.' Mot. to Disburse Funds. But several defendants, on behalf of 13 rejected claims, dispute the claims administrator's decisions on their claims. *See* R. 210, FAII's Resp.; R. 211, Disputed Claimants' Resp. After a review of the disputed claims, the Court approves disbursement of settlement funds for the authorized claims and for the Individual Claimants and Dakota Claimants (Claim Nos. 170, 214, 220, 221, 222, 227, 228, 229, 277, 305, 565 and 566), and denies disbursement of settlement funds to Fortress Acquisition Sponsor II LLC (Claim No. 50006).

## I. Background

### A. Factual & Procedural Background

The prior proceedings in this case are described in the Court's opinions in *Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*, 690 F. Supp. 3d 382 (N.D. Ill. 2023), and in a related suit, *In re ATI Physical Therapy, Inc. S'holder Derivative Litig.*, 2024 WL 1376068 (N.D. Ill. Mar. 31, 2024). For the reader's convenience, the relevant facts are discussed in this Opinion.

2

ATI is a provider of physical-therapy services. This lawsuit arises from a 2021 SPAC transaction to take ATI public.³ A SPAC is a shell company with no independent operations; instead, it raises money through an initial public offering for the purpose of acquiring or merging with an existing privately held company. *In re ATI Physical Therapy, Inc. S'holder Derivative Litig.*, 2024 WL 1376068, at \*1. The combined company then trades publicly, taking the place of the SPAC on a public exchange. *Id.*. Here, Fortress Investment Group LLC formed two companies to undertake a SPAC transaction: a SPAC called Fortress Value Acquisition Corp. II (FVAC for short), and an LLC called Fortress Acquisition Sponsor II LLC (for convenience's sake, FAII). *Id.*. The alleged purpose of the second, "sponsor" company FAII was to carry out a merger for FVAC, and to buy and hold the "founders shares" that entitled it to elect all FVAC board directors prior to a successful SPAC combination. *Id.*.

FVAC completed its initial public offering on August 14, 2020, selling 34.5 million "units"⁴ to investors at $10 each. *In re ATI Physical Therapy, Inc. S'holder Derivative Litig.*, 2024 WL 1376068, at \*1. Eventually, on June 17, 2021, ATI became a publicly traded company after merging with FVAC. Consolidated Am. Compl. ¶¶ 5, 62. A few weeks later, in late July 2021, ATI issued its second-quarter results for

---

³For readability, this Opinion will refer to both the pre-merger, private form and post-merger, public form of the Company as "ATI." When necessary, the Opinion will clarify if it is referring to the pre-merger or post-merger form.

⁴According to the consolidated complaint, "ach unit consisted of one share of FVAC Class A common stock and one-fifth of one redeemable public warrant of FVAC Each public warrant entitled the holder to purchase one share of FVAC Class A common stock at an exercise price of $11.50 per share." R. 58, Consolidated Am. Compl. ¶ 52.

3

2021. *Id.* ¶ 111. The post-merger company disclosed increased attrition among its therapists. *Id.* So it reduced its projections for revenue and new-store openings. *Id.* But ATI had not previously disclosed any problems with its retention or hiring. *See id.* ¶¶ 105–09. The mismatch between expectations and reality allegedly caused the company's stock price to fall over a couple of days to close at $3.82 per share on July 27. *Id.* ¶ 113. Then, about three months later, ATI once again reduced revenue guidance. *Id.* ¶¶ 118–22. The Plaintiffs allege that the Defendants knew or should have known before the merger about the physical therapist hiring-and-retention problems but waited to disclose them until after the transaction closed. *Id.* ¶¶ 1–10. The Defendants allegedly had personal incentives to force through the merger, regardless of their obligations to the company. *Id.* ¶ 184.

The Plaintiffs brought claims against the Defendants for securities fraud under Section 10(b) of the Securities Exchange Act and accompanying SEC Rule 10b-5, Section 20(a), and for misstatements or missions in proxy statements under Section (14)(a). Am. Compl. ¶¶ 204–20, 231–56. In an earlier opinion, this Court held that the Section 10(b) claims against ATI, Diab, and Jordan survived, but the same claim against McKnight was dismissed. Similarly, for related Count 2, the Section 20(a) claims against Diab and Jordan survived, but the claim against McKnight was dismissed. *Phoenix Ins. Co.*, 690 F. Supp. 382 at 897. The Section 14(a) claims against all of the Defendants survived. *Id.* And finally, the Section 20(a) claims against Diab and Jordan survived, but were dismissed as to all other Defendants. *Id.*

### B. The Settlement

After the briefing on the motion to dismiss concluded, the case headed into fact discovery. *See* R. 107, 9/27/2023 Minute Entry (setting the discovery schedule and other deadlines). But discovery came to an early close in January 2024, when the parties asked to stay all deadlines in light of a proposed settlement. R. 141, Joint Mot. to Stay Based on Settlement. The magistrate judge granted the stay, R. 142, 01/22/2024 Minute Entry, and a few months later, the parties submitted their proposed Settlement Agreement. R. 161. Joint Mot. for Preliminary Approval; R. 162, Van Decl. The proposed Settlement Agreement laid out the details of the settlement, such as who is included as Plaintiffs and Defendants, definitions of key terms used in the agreement, a description of the use of the settlement fund, and a description of how the settlement is to be administered. R. 162-1, Settlement Agreement. The parties also expressed their intention to "fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice the … claims asserted [] or that could have been asserted" in this case. *Id.* at 5. The Court entered final approval of the settlement on September 24, 2024, and dismissed the case with prejudice. *See* 09/24/2024 Order; R. 191, 09/24/2024 Dismissal Order.

**B. Claims Process**

The final approval of the settlement set in motion the claims-submission process. Potential claimants were permitted to submit their claims for settlement funds to the claims administrator for ATI securities acquired between February 22, 2021, through October 19, 2021. R. 172, Preliminary Approval Order at 6. The claims administrator received 10,135 Claim Forms, and 4,432 of them were deemed by the

5

Claims Administrator to meet the criteria for payment. R. 202-1, Bravata Decl. ¶¶ 9–10. Only 13 of the ineligible claimants (out of the thousands that were rejected) object to or contest the Claims Administrator's determination. *Id.* ¶ 10(c).

The contested claims are divided into two categories. First, FAII contests the rejection of its claim, Claim No. 50006. FAII Resp. The Claims Administrator recommends rejection of this claim because FAII is an "excluded party for the Securities Subclass and Multiplan Subclass"; FAII purchased its shares prior to the time period covered by the Securities Subclass; and its shares were not "purchased on the New York Stock Exchange for the Securities Subclass." Bravata Decl. ¶ 10(c)(1). The remaining 12 contested claims, brought by claimants Dakota Holdco, LLC, Robert McKenzie, Gregory Steil (on behalf of himself, Gregory F. Steil Descendants Trust, and Willowbrook Holdings Inc.), Dylan Bates (on behalf of himself, Bates Enterprises, LLC, and Bates Investment LLC), Brent Mack, Jason Hafner, Lisa Gutierrez, and Christopher Orr,[5] were rejected because those claims were also filed by an excluded party; the claimants' shares were acquired "with an agreement which was entered prior to the Securities Subclass"; and the shares were not purchased on the New York Stock Exchange. *Id.* ¶¶ 10(c)(2)–(8).

The Plaintiffs agree with the Claims Administrator's rejection of the disputed claims and ask the Court to disburse the settlement funds according to the Administrator's recommendation. Pls.' Mot. to Disburse Funds. The 13 opposing claimants

---

[5]For convenience, this Opinion will refer to the "Individual Claimants" and the Dakota Claimant Defendants collectively as the "Disputed Claimants."

ask the Court to approve their claims for disbursement as well. FAII's Resp; Disputed Claimants' Resp.

## II. Analysis

### A. Excluded Party

#### 1. FAII

FAII argues that it should *not* be excluded as a named defendant because it is an investment vehicle that is permitted to file a claim for settlement funds under the terms of the settlement agreement. FAII Resp. at 3–6. The Plaintiffs respond that FAII is a named defendant, so the Settlement Agreement's carveout for investment vehicles does not apply to FAII regardless of its investors. Pls.' Mot. to Disburse Funds at 11–15. The Plaintiffs are correct: the terms of the Settlement Agreement clearly exclude FAII from recovering from the settlement fund.

The starting point is that "Defendants," as defined in the Settlement Agreement, are excluded from the Settlement Class. Settlement Agreement ¶ 1(jjj) ("Excluded from the Settlement Class are … Defendants"). With that premise in place, two other definitions in the settlement agreement show why FAII's claim must be rejected. First, FAII is explicitly listed as a named defendant in the "Overview of the *Ghaith* Action." That paragraph provides, in relevant part:

> On November 21, 2022, Plaintiffs Kumar, Nie, Chang, and Reginbald (collectively, the "*Ghaith* Plaintiffs") filed a consolidated amended stockholder derivative action against Nominal Defendants ATI and Defendants Fortress Investment Group LLC, *Fortress Acquisition Sponsor II*, LLC, … (collectively the "*Ghaith* Defendants") in the Court, asserting claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, contribution, indemnification, and violations of Section 14(a) of the Exchange Act.

Settlement Agreement at 7–8 (emphasis added). Then, in the definitions section in the Agreement, the parties agreed that "'Defendants means, collectively, the Securities Defendants, the *Ghaith* Defendants, the *Robinson* Defendants, and the *Goldstein* Defendants (and each individually, a "Defendant"). *Id.* ¶ 1(*l*). Put another way, any time the Settlement Agreement refers to a "Defendant," that includes the "*Ghaith* Defendants," which in turn includes FAII. The plain meaning of these two definitions clearly shows that the parties characterized FAII as a "Defendant" for purposes of the Settlement Agreement—thus excluding it from the Settlement Class. This makes perfect sense because FAII was the investment vehicle that brought ATI public, thus enabling it to engage in the alleged fraud.

Against this, FAII points to a provision in the Settlement Agreement that explicitly permits investment vehicles to claim settlement funds so long as they are not majority owned or controlled by a named defendant. That provision states:

> Excluded from the Settlement Class are (i) Defendants; (ii) current and former Officers and directors of the Company; (iii) members of the Immediate Family of each of Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and Officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, Officers, directors, and any other individual or entity in which any of Defendants has a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of all such excluded parties; *provided, however*, that any Investment Vehicle shall not be excluded from the Settlement Class."

Settlement Agreement ¶ 1(jjj) (emphasis in original). In turn, "Investment Vehicle" is defined as "any investment company … in which any Defendant has or may have a direct or indirect interest, … but in which any Defendant alone or together

8

with … its respective affiliates is not a majority owner or does not hold a majority beneficial interest." *Id.* ¶ 1(bb).

The exclusion provision, by its terms, excludes all Defendants (including the *Ghaith* Defendants and thus FAII) from the Settlement Class, along with other kinds of persons involved in the allegedly fraudulent transactions. It is true that the definition goes on to save defined "Investment Vehicles" as part of the Settlement Class. But the investment-vehicle exception itself contains an exception: the definition of "Investment Vehicle" makes clear that *not all* investment vehicles qualify for the exception. Any investment vehicle in which a Defendant is a majority "owner" is carved out from the definition of "Investment Vehicle." Settlement Agreement ¶ 1(bb). FAII asserts that it is not "owned by itself," FAII Resp. at 4, pointing out that certain advisory client funds possess the ownership interest in FAII, *id.* at 3. But that drapes the term "owner" with a meaning that runs far astray from plain meaning. It is the equivalent of saying that Walmart is not an entity that has legal rights and legal obligations just because thousands of separate shareholders "own" the company. What's more, consider the Settlement Agreement's context: FAII is explicitly listed as a "Defendant" excluded from the class, ¶¶ 1(*l*), 1(u), 1(jjj)—but then the parties agreed to usher FAII through the recovery backdoor via the general definition of "Investment Vehicle"? When walking through the backdoor results in more than 40% of the settlement proceeds being funneled to FAII? To ask those questions is to answer them.

9

The Plaintiffs are also right that if FAII were correct—that is, if FAII does not own itself and that no Defendant owns part of FAII—then FAII would no longer be an Investment Vehicle as defined by the Settlement Agreement. R. 214, Pls.' Reply at 6. Remember that an Investment Vehicle is defined as an investment company "in which any Defendant has or may have a direct or indirect interest." Settlement Agreement ¶ 1(bb). To FAII's way of thinking, it does not have an ownership interest in itself—but if that is right, then it is *not* an Investment Vehicle under the Settlement Agreement. R. 210-1, Meisels Decl. ¶ 4 (list of advisory client funds with ownership interest). And if FAII is not an Investment Vehicle, then it does not enjoy the benefit of being included in the Settlement Class via that category.

Lastly, the Plaintiffs are right that this is the only way to interpret the Settlement Agreement "in light of the principle that Defendants cannot be included in the class because their interests are antagonistic to other class members, and their inclusion in the class would create an irreconcilable conflict." Pls.' Reply at 6 (citing *Baranski v. Vaccariello*, 896 F.2d 1095, 1097–98 (7th Cir. 1990)). FAII was a named defendant in the action and allegedly committed the misconduct that caused the damages to the Settlement Class. For FAII—or those entities that have an ownership interest in FAII—to tap into the settlement funds is the equivalent of recovering damages that FAII itself caused. That is the height of an antagonistic interest to class members. Indeed, in all the cases that the Court's independent research found using the same carveout for investment vehicles, there was no mention of a named-defendant investment vehicle even submitting a claim. *See, e.g.*, *In re Refco, Inc. Sec. Litig.*,

10

2010 WL 11586941 (S.D.N.Y. May 11, 2010); *In re Wachovia Equity Sec. Litig.*, 2012 WL 2774969 (S.D.N.Y. June 12, 2012); *Hill v. State St. Corp.*, 2015 WL 127728 (D. Mass. Jan. 8, 2015); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 2570050 (N.D. Ind. May 21, 2020); *Machniewicz v. Uxin Ltd.*, 2021 WL 9409860 (E.D.N.Y. Sept. 8, 2021); *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021); *In re JPMorgan Precious Metals Spoofing Litig.*, 2021 WL 5998410 (S.D.N.Y. Dec. 20, 2021); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022); *Derr v. Ra Med. Sys., Inc.*, 2022 WL 21306534 (S.D. Cal. Sept. 23, 2022); *In re 2U, Inc. Sec. Class Action*, 2022 WL 22839218 (D. Md. Dec. 9, 2022); *In re Honest Co. Sec. Litig.*, 2023 WL 3190506 (C.D. Cal. May 1, 2023); *Nacif v. Athira Pharma, Inc.*, 2024 WL 643513 (W.D. Wash. Feb. 15, 2024); *Doyle v. Reata Pharms., Inc.*, 2024 WL 4579610 (E.D. Tex. Mar. 29, 2024); *Bilinsky v. Gatos Silver, Inc.*, 2024 WL 4494290 (D. Colo. Oct. 15, 2024). The silence speaks volumes: FAII is not part of the Settlement Class.

## 2. Individual Claimants

The Plaintiffs also ask the Court to exclude the Individual Claimants from the Settlement Class because they were former directors or officers of ATI. R. 202, Pls.' Br. at 16. The Individual Claimants argue that they should not be excluded because the Plaintiffs do not offer evidence that the Individual Claimants were directors or officers of *ATI*. Disputed Claimants Resp. at 11. The Individual Claimants further explain that "[n]one of the Claimants ever worked at ATI, which did not exist and/or

11

was not affiliated with the ATI Physical Therapy family of companies" when the Individual Claimants held positions with the ATI Physical Therapy family of companies. *Id.* And to extent any of the Individual Claimants worked for an ATI Physical Therapy company, they left their position by 2020. *Id.*

The Settlement Agreement excludes from the Settlement Class the current and former directors of the "Company." Settlement Agreement ¶ 1(jjj) (excluding current and former Officers and directors of "the Company"). In turn, the "Company" is defined as "ATI Physical Therapy, Inc.," and "Wilco Holdco, Inc." *Id.* ¶ 1(b). So not every ATI-related entity is covered by the definition of the "Company." According to the sworn declaration of Erik Kantz, the Chief Legal Officer of ATI, none of the Individual Claimants was ever an officer or director of ATI Physical Therapy, Inc., nor were they a director or officer of one of its parent companies or subsidiaries. R. 211-2, Kantz Decl. ¶¶ 4–5. Against this, the Plaintiffs only assert in their brief that Gregory Steil, Dylan Bates, Brent Mack, and Robert McKenzie were "former officers" of ATI Physical Therapy, Inc. Pls.' Br. at 16–17. But the Plaintiffs offer no evidence for that proposition. And there is no evidence suggesting that any of the Individual Claimants were officers or directors of Wilco Holdco, Inc. Without sufficient (or any) evidence from the Plaintiffs, the Court concludes that the Individual Claimants are not disqualified as purported former officers or directors of ATI Physical Therapy, Inc., or Wilco Holdco, Inc.

### B. Purchased on the NYSE[6]

The Disputed Claimants also challenge the Claims Administrator's finding that certain of their shares are ineligible for the Securities Subclass because they were "purchased on the wrong market." Disputed Claimants' Resp. at 9–10. The claimants assert that the definition of "ATI Securities" does not require that the shares were purchased on the New York Stock Exchange, but instead only requires that the shares be more generally traded on the New York Stock Exchange. Disputed Claimants' Resp. at 9–10.

The Settlement Agreement defines "ATI Securities" as "ATI Physical Therapy, Inc.'s common stock trading on the New York Stock Exchange ('NYSE') under the ticker symbol 'ATIP.'" Settlement Agreement ¶ 1(c). The key phrase is "trading on." The present-tense version (present participle, to be precise) of the phrase describes the shares as they are, not by how (or where) they were obtained. Note too that the Settlement Agreement covers all claimants who "purchased or otherwise *acquired*" shares of ATI. Settlement Agreement ¶ 1(jjj) (emphasis added). The phrase "otherwise acquired" further supports the understanding that the settlement agreement refers merely to shares that were trading on the New York Stock Exchange at the time that they were acquired, not where they were purchased. Understood this way, the

---

[6]FAII's argument explaining that qualifying shares need only be traded on the NYSE rather than purchased directly from the NYSE does not meaningfully differ from the Disputed Defendants' argument. FAII's Resp. at 5. Though the Court agrees with this position, FAII is excluded from the Settlement Class because it is a named defendant, as explained earlier in this Opinion.

13

claimants are correct to acknowledge that their claims "should be in the class because they suffered the same injuries based on the same events as the other class members regardless of how they came to acquire their shares in ATI Securities." Disputed Claimants Resp. at 10. The securities of the Disputed Claimants qualify as "ATI Securities."

### C. Acquisition Period[7]

Finally, the Disputed Claimants challenge the Claims Administrator's finding that their shares are ineligible for the Securities Subclass because the Disputed Claimants acquired the shares "prior to the Securities Subclass Settlement Class Period." Disputed Claimants' Resp. at 9–10. The Settlement Class Period is defined as February 22, 2021, through October 19, 2021. Settlement Agreement ¶ 1(jjj). The Plaintiffs contend that the Dakota Claimants obtained their shares when they entered into an agreement with Fortress Acquisition Sponsor II LLC on February 21, 2021, and that the Individual Claimant's shares are derived from that agreement. Pls.' Mot. to Disburse Funds at 16–20. This would mean that the shares were acquired one day before the Settlement Class Period, making the Disputed Claimants ineligible to recover from the Settlement Fund.

But as the claimants point out, February 21, 2021, represents the date that the merger occurred. Disputed Claimants' Resp. at 10–11. The transaction did not *close*

---

[7]FAII argues that its shares should not be disqualified because they were purchased within the Settlement Period. But FAII is excluded from the class as a named defendant, so the Court will not consider this argument.

14

until June 17, 2021. Settlement Agreement at 5. Because the closing date of the transaction marks the date that the Dakota Claimants acquired their shares, the shares were acquired within the Settlement Class Period. This too is not a basis to reject the Dakota Claimants' claims.

### III. Conclusion

The Plaintiffs' motion for disbursement of funds, R. 201, is granted in part and denied in part. The Court approves disbursement of settlement funds for the authorized claims and for the Individual Claimants and the Dakota Claimants (Claim Nos. 170, 214, 220, 221, 222, 227, 228, 229, 277, 305, 565 and 566). The Court disallows disbursement of settlement funds to Fortress Acquisition Sponsor II LLC (Claim No. 50006).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 8, 2025